STEVEN G. KALAR
Federal Public Defender
BRANDON M. LEBLANC
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Email: brandon_leblanc@fd.org

ERIK G.  BABCOCK
Law Offices of Erik Babcock
717 Washington St., 2d Floor
Oakland, CA 94607
Telephone: 510-452-8400
Email: erik@babcocklawoffice.com

Counsel for Defendant Luke Brugnara

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>LUKE BRUGNARA,<br><br>　　　　　Defendant. | CASE NO. CR 08-0222 WHA<br>CASE NO. CR 14-0306 WHA<br><br>**DEFENDANT'S MOTION TO RECONSIDER ORDER DENYING REVOCATION OF DETENTION ORDERS** |

　　　　　Defendant Luke Brugnara, by and through his counsel, Brandon LeBlanc and the Office of the Federal Public Defender, respectfully hereby moves this Court to reconsider its June 30, 2014 order denying Mr. Brugnara's motion to revoke.  Specifically, Mr. Brugnara asks that this Court reconsider imposing its initial oral tentative ruling and order Mr. Brugnara released on a $500,000 bond secured by his wife's property at 224 Sea Cliff Avenue, as well as the signatures

of his wife and would-be custodian, Kay Brugnara, as well as his close friend Bishop Donald Pipkins–subject to his residing continuously at a halfway house under stringent conditions.

Mr. Brugnara's history of successful supervision under similar circumstances shows that he is amenable to supervision. Mr. Brugnara deeply apologizes to the Court for his outbursts during the June 30 hearing. The fact remains, however, that there is feeble evidence that Mr. Brugnara poses any danger to the community, economic or otherwise, or that he poses a flight risk. Moreover, releasing Mr. Brugnara on a secured bond to a halfway house would give him much better access to needed mental health treatment as well as to his trial counsel as he prepares for his upcoming trial next month.

## I. PROCEDURAL BACKGROUND

The procedural history of this case is lengthy and familiar to this Court. Relevant here, Magistrate Judges Corley and Cousins both ordered Mr. Brugnara detained, citing primarily the economic danger he allegedly posed to the community and emphasizing his in-court demeanor in support of their findings. *See* CR 14-00306 WHA, Docket Entry Nos. 7, 15. Mr. Brugnara subsequently moved this Court to revoke the detention orders. *See* CR 14-00306 WHA, Docket Entry No. 30.

On June 30, 2014, this Court conducted a detention hearing. At the outset of the hearing, Mr. Brugnara addressed the Court at length. Thereafter, the Court orally indicated that its tentative ruling would be to release Mr. Brugnara to a halfway house, on a $500,000 bond secured by his wife's property at 224 Sea Cliff Avenue, as well as the signatures of his wife and Bishop Donald Pipkins–both of whom were present in court. The Court then took a recess and after the recess, the Court indicated it was still tentatively inclined to release Mr. Brugnara. Government counsel objected and asked the Court to enter into the record a January 2014 psychological assessment by Dr. Catherine Barrett. As government counsel read from the report, Mr. Brugnara interrupted and began responding to the parts of the report that counsel had recited, stating his disagreement. Government counsel then addressed the Court, and Mr. Brugnara

interrupted the government and the Court. After admonishing Mr. Brugnara for interrupting again, this Court denied Mr. Brugnara's motion, finding that his in-court behavior once again showed that he would not be amenable to supervision. *See* CR 14-00306 WHA, Docket Entry Nos. 39-40. This Court subsequently issued a written order denying Mr. Brugnara's motion to revoke the detention orders, ruling that Mr. Brugnara posed an economic danger to the community and emphasizing its finding that Mr. Brugnara would not be amenable to supervision. *See* CR 14-00306 WHA, Docket Entry No. 40.

## II.    ARGUMENT

As this Court has already tentatively acknowledged, Mr. Brugnara can be released to a halfway house subject to stringent conditions of supervision, and he has shown in the past that he is amenable to such supervision. Accordingly, Mr. Brugnara respectfully asks this Court to reconsider his motion to revoke the prior detention orders and to release him on a $500,000 secured bond, subject to stringent conditions of supervision at a halfway house.

Mr. Brugnara apologizes extensively to this Court for his interruptions at the June 30, 2014 detention hearing. Mr. Brugnara recognizes that it was inappropriate for him to interrupt government counsel and address the Court out of turn. Indeed, Mr. Brugnara independently decided (without any direction from undersigned counsel) to mail the Court an ex parte letter of apology for his behavior, which the Court should receive soon. While it is entirely understandable that this Court has tired of Mr. Brugnara's at times obstreperous demeanor, the core inquiry under the Bail Reform Act is to determine whether Mr. Brugnara poses a flight risk or a danger to the community. *See* 18 U.S.C. § 3142(g); *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (courts should consider relevant statutory factors "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community"). Notwithstanding his behavior in court, Mr. Brugnara remains a non-violent defendant charged with a white-collar crime, and he is precisely the sort of defendant that the Bail Reform Act envisioned should be released. *Cf. United States v. Gebro*, 948 F.2d 1118, 1121

(9th Cir. 1991) ("Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor.")

This Court properly declined to find that Mr. Brugnara posed a flight risk or a physical danger to others or the community. *See* CR 14-00306 WHA, Docket Entry No. 40 at 2. As outlined in Mr. Brugnara's prior briefing, *see* CR 14-00306 WHA, Docket Entry No. 30 at 7-11, any such finding would be unjustified because he has consistently appeared at every court date when he was previously on pre-trial and post-conviction release, and he has no violent criminal history. Further, Dr. Catherine Barrett of the San Francisco Forensic Institute assessed Mr. Brugnara's mental health and treated him on a weekly basis from January until May of this year, and her January 2014 report was made a part of the record during the June 30 proceeding. Dr. Barrett holds the professional opinion that Mr. Brugnara is not a dangerous person and does not pose any danger to the community. *See* Exhibit A: *Declaration of Catherine Barrett*.

The articulated reason for this Court's denial of Mr. Brugnara's motion was that Mr. Brugnara posed an economic danger to the community; however, as outlined in his original motion, the primary evidence of economic danger stems from the unproven allegations underlying the new mail fraud offense. *See* CR 14-00306 WHA, Docket Entry No. 30 at 11-15. Moreover, Mr. Brugnara's courtroom demeanor does not have any bearing on whether he poses an economic danger to the community. The fact that Mr. Brugnara is sometimes animated in court does not in any way show that he is dangerous to the community. In any event, Mr. Brugnara is certainly not so economically dangerous that his continuous residency in a halfway house would not "reasonably assure" the economic safety of the community. *See United States v. Hir*, 517 F.3d 1081, 1091-92 (9th Cir. 2008) ("Even where a defendant poses a danger, he must still be released if there is a 'condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community.'" (quoting 18 U.S.C. § 3142(e))).

Mr. Brugnara is amenable to stringent terms of supervision, as demonstrated by his long history of compliance with both pre-trial and post-conviction supervision in the tax prosecution

Def.'s Motion to Reconsider, *Brugnara*
CR 08-00222 WHA & CR 14-00306 WHA         4

1  before this Court.  Beginning in April 2008, Mr. Brugnara was on pre-trial release for 20 months
2  without issue.  Later, he was granted post-conviction release, and he spent nearly two months on
3  release and self-surrendered to a Bureau of Prisons ("BOP") facility in Texas without incident.
4  *See* CR 08-00222 WHA, Docket Entry Nos. 130, 139.  After release from the BOP in Texas, Mr.
5  Brugnara traveled alone to California and served the remainder of his BOP sentence in a halfway
6  house in San Francisco and then in home detention with electronic monitoring, again without
7  incident.  In these ways, Mr. Brugnara has proven that he can comply with stringent terms of
8  supervision at a halfway house because he has complied with stringent terms of supervision at a
9  halfway house.  This is the best possible evidence of amenability to supervision, and it is
10 certainly more relevant than Mr. Brugnara's inappropriate conduct at the detention hearing before
11 this Court and in prior proceedings.
12       Finally, Mr. Brugnara maintains that his release to a halfway house would better allow
13 him to seek needed mental health treatment, which his evaluating psychologist has stated would
14 benefit Mr. Brugnara and which he is not receiving at his current detention facility.  *See* Exhibit
15 A: *Declaration of Catherine Barrett*.  Relatedly, release to a halfway house will also better
16 enable Mr. Brugnara to confer with trial counsel to prepare for the upcoming trial in his case,
17 which this Court commented was an animating basis for its tentative ruling to release him on
18 bond to the halfway house.
19 //
20 //
21 //

## III. CONCLUSION

Again, Mr. Brugnara deeply apologizes to the Court for his inappropriate behavior at the detention hearing. Mr. Brugnara is not economically dangerous to the community, and he has a long history of successfully complying with pre-trial and post-conviction supervision. Accordingly, he respectfully requests that this Court reconsider its order denying revocation of the detention orders, and that it order Mr. Brugnara released on a $500,000 secured bond, subject to the supervision of a halfway house under stringent conditions.

Dated: July 09, 2014

Respectfully submitted,

BRANDON M. LEBLANC
ERIK G. BABCOCK


By: /s/ Brandon M. LeBlanc
Attorneys for Luke Brugnara