MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

W. DOUGLAS SPRAGUE (CABN 202121)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    doug.sprague@usdoj.gov
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NOS. CR 14-00306 WHA |
|     Plaintiff, |                   CR 08-00222 WHA |
|     v. | UNITED STATES' MOTIONS *IN LIMINE* ONE THROUGH THREE |
| LUKE D. BRUGNARA, | Trial Date:    August 4, 2014 |
|     Defendant. | Pretrial Date: July 30, 2014 |
| | Court:        Hon. William H. Alsup |

## I.    INTRODUCTION

The defendant, Luke Brugnara, is charged with one count of mail fraud, in violation of 18 U.S.C. § 1341, arising from his scheme to defraud Rose Long out of works of art. Trial is scheduled to begin August 4, 2014, with jury selection that day and opening statements and evidence scheduled to begin August 11, 2014.[1] The defendant is separately charged with a violation of his supervised release in

---

[1] As the government stated in court, the government intends to seek a superseding indictment in this matter.

related case CR 08-0222 WHA. The United States hereby files its motions *in limine* to address certain evidentiary issues before trial.

## II. FACTUAL BACKGROUND

Given the extensive testimony presented at the defendant's supervised release revocation hearings in CR 08-0222, the facts of the case are now familiar. The United States alleges that, beginning in approximately March 2014, the defendant engaged in numerous communications with Rose Long regarding his purchase of valuable artwork. In sum, the defendant promised to pay approximately $11 million to Ms. Long for the artwork, which included pieces by Edgar Degas, Willem de Kooning, Joan Miró, Pablo Picasso, and George Luks. The defendant stated that he would place the art in a museum that he was building. Their communications indicated that he had five days to inspect the art and to make payment for it or to return it. The defendant, however, had no income, assets, or other means to pay for the art that he had agreed to purchase, nor was he building a museum. On April 7, 2014, the art, packaged in five crates, was delivered from storage in New York to the defendant's house in San Francisco. Ms. Long traveled to San Francisco to be present for the delivery of the art and to participate in the defendant's inspection of it. When she arrived, however, the defendant stated that he was too busy to inspect the art and would later arrange for a time to inspect it. After taking possession of the art, the defendant refused to make payment for it, refused to return it, and claimed that it was a gift. On or around May 28, 2014, the FBI searched the defendant's residence and recovered four crates of the art. The fifth crate, which contained a Degas sculpture for which the defendant had agreed to pay approximately $3 million, was not recovered and remains missing.

## III. MOTIONS *IN LIMINE*

**A. Motion *in Limine* No. 1 – The Defense Should Be Precluded from Any References to Potential Punishment.**

The defense, and the defendant should he testify, should be prohibited from making any reference to the potential penalty he may suffer if convicted. Information about penalty and punishment "draw[s] the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided." *United States v. Olano*, 62 F.3d

1180, 1202 (9th Cir. 1995) (citing *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992)); *see also Frank*, 956 F.2d at 879 ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). For these reasons, it is the practice in the federal courts to instruct juries that they are not to be concerned with the consequences to the defendant of the verdict, except where required by statute. *See Rogers v. United States*, 422 U.S. 35, 40 (1975) (holding that jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (finding that trial judge properly instructed jury that "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court. It should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused"). Indeed, the United States will request that this Court instruct the jury that it is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. *See* 9th Cir. Model Criminal Jury Instructions § 7.4.

Any argument or reference to punishment at the trial of this matter would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and by prejudice against the United States. The United States respectfully requests this Court to preclude any mention of the possible penalties at any point during the trial.

**B.      Motion *in Limine* No. 2 – The Court Should Preclude the Defense from Eliciting Testimony and Making Statements Regarding the Existence of a Contract between Rose Long and the Defendant.**

During cross-examination of Rose Long at the defendant's supervised release revocation hearing, defense counsel elicited testimony from Ms. Long regarding whether a contract for the sale of art existed between the defendant and Ms. Long. Whether the communications between the defendant and Ms. Long were sufficient to establish a contract between the parties under state law is irrelevant to the government's mail fraud case. Because testimony over the legal question of whether there was a contract is likely to confuse the jury, it should be excluded.

To prove that the defendant committed mail fraud, the government must show that: (1) the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a

UNITED STATES' MOTIONS *IN LIMINE* ONE THROUGH THREE
CR 14-00306 WHA & CR 08-00222 WHA

scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; (3) the defendant acted with the intent to defraud; and (4) the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme. 9th Cir. Model Criminal Jury Instructions § 8.121–Mail Fraud. The existence of a contract is not one of the elements of mail fraud. *Cf. United States v. Williams*, 402 Fed. Appx. 861, 863 (5th Cir. 2010) (noting that existence of a contract is not an element of wire fraud under 18 U.S.C. § 1343). In general, evidence of reliance, damages, or other similar conduct on the part of a victim is unnecessary to establish that the defendant created or intended to create a scheme to defraud. *See Neder v. United States*, 527 U.S. 1, 24–25 (1999).

The government does not need to prove that a contract for the sale of the art existed. Instead, the government has met its burden if it proves that the defendant's material false representations or omissions to Ms. Long were intended to cause or did cause Ms. Long to ship the artwork to the defendant and allow him to take custody of the artwork, and further permitted him to maintain custody of the fifth crate of art that is still missing.

Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401, and "irrelevant evidence is not admissible," Fed. R. Evid. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403; *see also* Advisory Committee Notes to Fed. R. Evid. 403 (defining "unfair prejudice" to be "an undue tendency to suggest decision on an improper basis").

The content of the communications between Ms. Long and the defendant is generally relevant to this point. Questions, testimony, and argument about whether there was a contract, however, are not relevant and will be confusing to the jury. The government moves to preclude them.

**C.     Motion *in Limine* No. 3 – The Court Should Exclude Evidence Regarding the Victims' Character or Alleged Prior Misconduct.**

During the supervised release revocation proceedings, the defendant repeatedly cited unsubstantiated complaints posted on the Internet against Ms. Long. The government moves for this

Court to exclude references to these facts or any other unsubstantiated allegations against witnesses under Rule 404 and Rule 608.

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." Fed. R. Evid. 404(a). Such evidence is only admissible in the limited circumstances delineated by the rules, "for pertinent character traits of an '*accused*,' Fed. R. Evid. 404(a)(1), a '*victim*,' Fed. R. Evid. 404(a)(2), or a '*witness*,' Fed. R. Evid. 404(a)(3), 607, 608, 609." *United States v. McCourt*, 925 F.2d 1229, 1232 (9th Cir. 1991) (emphasis in original). "Rules 404, 607, 608, and 609 specifically set out what character and misconduct evidence is admissible, and who may introduce it." *Id.* If a form of character evidence does not fall under one of these rules, it is inadmissible. *See id.* Rules 404(a)(2) and 608 set out the instances in which prior misconduct or other character evidence may be admissible in this case.

Rule 404(a)(2)(B) provides that, "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait." The Ninth Circuit has generally equated pertinence under Rule 404(a)(2)(B) with the test for relevance under Rule 401. *See, e.g.*, *United States v. Keiser*, 57 F.3d 847, 854 (9th Cir. 1995) (explaining that victim's violent character was relevant to the defendant's self-defense claim in an assault case and thus admissible under Rule 404(a)(2)). The elements of the offense of mail fraud do not depend on the actions of the victim, thus making evidence of the victim's characteristics irrelevant and inadmissible. Instead, what matters are the actions and intent of the defendant. *See United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam) (explaining that, in mail fraud case, "[w]hat is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose"). As a result, such evidence cannot be admitted under Rule 404(a)(2)(B).

If any victims testify, their character for truthfulness will be relevant under Rule 608. Under Rule 608(a), a witness's credibility "may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Extrinsic evidence of specific instances of conduct is, however, always inadmissible under Rule 608(b), and such instances "can only be inquired into if they are probative of

the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b)(2). Furthermore, such evidence is always subject to the general requirement that it must be more probative than prejudicial. Fed. R. Evid. 403. As a result, this Court should preclude both extrinsic evidence and inquiry into unsubstantiated allegations on the Internet, any websites the witnesses have maintained, or prior names which witnesses may have used. It is unclear why the existence of a website under an alternative name for the victim is in the least bit probative of truthfulness. And given the ease with which anyone can post negative comments on the Internet and the inherent unreliability of such complaints, their probative value is nonexistent and they will only create unfair prejudice and serve to distract the jury.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that its motions *in limine* be granted in their entirety.

DATED: July 16, 2014

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
W. DOUGLAS SPRAGUE
BENJAMIN KINGSLEY
Assistant United States Attorneys

UNITED STATES' MOTIONS *IN LIMINE* ONE THROUGH THREE
CR 14-00306 WHA & CR 08-00222 WHA