1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  W. DOUGLAS SPRAGUE (CABN 202121)
   BENJAMIN KINGSLEY (NYBN 4758389)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        Fax: (415) 436-7234
8       doug.sprague@usdoj.gov
        benjamin.kingsley@usdoj.gov
9
   Attorneys for the United States
10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15 UNITED STATES OF AMERICA,           )  Case Nos. CR 08-00222 WHA
                                        )            CR 14-00306 WHA
16         Plaintiff,                   )
                                        )  UNITED STATES' MOTION REGARDING
17    v.                                )  ATTORNEY-CLIENT PRIVILEGE AND ADVICE
                                        )  OF COUNSEL
18 LUKE D. BRUGNARA,                    )
                                        )  Trial Date:    August 4, 2014
19         Defendant.                   )  Pretrial Date: July 30, 2014
                                        )  Court:         Hon. William H. Alsup
20 _____ )

21                      **INTRODUCTION**

22         The United States moves this Court to find that the defendant has waived attorney-client

23 privilege with respect to communications between himself and any of his lawyers, that were made

24 between the delivery of the artwork on April 7, 2014 and the defendant's arrest and partial seizure of the

25 art on May 28, 2014, and that are regarding the defendant's possession and retention of the art.

26         Additionally, regardless of whether this Court holds that the defendant has already waived his

27 attorney-client privilege to that extent, the United States moves for notice of the defendant's intent to

28 raise an advice of counsel defense at trial with respect to any aspect of this case, but particularly the

1   defendant's actions in maintaining custody of the artwork after April 7, 2014.  If the defendant intends

2   to raise such a defense at trial, the government is entitled to fair notice in order to investigate the

3   materials that could serve as a basis for such a defense, and is also entitled to discovery on the

4   defendant's communications with his lawyers that could serve as the basis for such a defense.

**ARGUMENT**

## I.   The Defendant Waived His Attorney-Client Privilege in a Limited Manner.

7        Under Ninth Circuit law, the defendant has already waived, in part, his attorney-client privilege

8   protection for communications with his attorneys regarding his continued custody of the artwork.

9        The attorney-client privilege may be waived, and the party asserting the privilege has the burden

10  to prove that the privilege applies.  *See United States v. Plache*, 913 F.2d 1375, 1379 & n.1 (9th Cir.

11  1990).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly

12  construed."  *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).  Two possible forms of waiver

13  recognized by the Ninth Circuit are at issue here.  First, the attorney-client privilege may be waived by

14  voluntary disclosure of privileged information to a third-party.  *Plache*, 913 F.2d at 1379–80.  Second,

15  the attorney-client privilege can be implicitly waived when a party puts the advice it received from

16  counsel at issue in a dispute.  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999); *see also*

17  *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992); *Bittaker v. Woodford*, 331 F.3d

18  715, 720 (9th Cir. 2003) (en banc).  In such cases, even if the party asserting advice of counsel does not

19  disclose the content of attorney-client communications, he puts at issue the advice of counsel he

20  received simply by using advice of counsel as a shield against investigation or judicial proceedings.  *See*

21  *Chevron*, 974 F.2d at 1162–63.

22       The defendant voluntarily disclosed his communications with counsel in multiple proceedings

23  during this case.  In both sworn testimony and unsworn statements, the defendant cited communications

24  with counsel as a reason why he did not return the crates of art to Rose Long after receiving them.  The

25  defendant similarly asserted an advice of counsel defense during bail proceedings and his supervised

26  release revocation hearings by claiming—often along with disclosing the communications with

27  counsel—that he failed to return the crates of art to Rose Long because of a legal strategy crafted by and

28

with his lawyers.  The defendant's disclosures and use of an advice of counsel defense constitute a limited waiver of his attorney-client privilege under Ninth Circuit law.

### A.   The defendant disclosed the contents of communications with his counsel, constituting a limited waiver of his attorney-client privilege.

The defendant waived his attorney-client privileges under Ninth Circuit law by voluntarily disclosing the contents of communications with his counsel in various proceedings in this Court. When a party voluntarily discloses the content of privileged communications with a third party, that party waives "the privilege on all other communications on the same subject."  *Plache*, 913 F.2d at 1380; *see also Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (holding that disclosures of privileged information resulted in waiver of privilege with respect to the subject of those disclosures).  Such disclosure need not occur in open court.  *Weil*, 647 F.2d at 25. Misstating the attorney-client communication in the disclosure does not make the waiver ineffective. *United States v. Mendelsohn*, 896 F.2d 1183, 1189 (9th Cir. 1990).  Inadvertent disclosure—for example, unintentionally producing documents to a third-party—does not, as a matter of law, prevent a finding of waiver, though it is a factor the court can consider.  *Bittaker*, 331 F.3d at 719 n.4 ("[T]he privilege may be waived by the client's, and in some cases the attorney's, actions, even if the disclosure that gave rise to the waiver was inadvertent.").  An inadvertent disclosure in a federal proceeding does not constitute a waiver if "the holder of the privilege or protection took reasonable steps to prevent disclosure" and "the holder promptly took reasonable steps to rectify the error . . . ."  *See* Fed. R. Evid. 502(b).  The court may evaluate whether one party was tricked by the other into revealing privileged communications.  *See Plache*, 913 F.2d at 1380.

Two cases, *Plache* and *Mendelsohn*, are particularly illuminating.  In *Plache*, the Ninth Circuit held that Plache waived his attorney-client privilege with respect to communications with his attorney on the same subject matter as communications about which he testified before a grand jury.  *Id.* at 1380. Plache testified in the grand jury about advice he received from his attorney, saying "I met with him several times and he expressed concern about the concept of this being an exempt security."  *Id.*  The court held that Plache waived his attorney-client privilege at approximately this point in his testimony. *See id.*  The court held that the government's questions, which asked him about a questionnaire from the

1   SEC inquiring about his securities trading program, *see id.* at 1377, 1379–80, did not use any "trickery"

2   to invoke Plache's testimony, *id.* at 1380.  And, while the court held that Plache's disclosure was

3   voluntary and not inadvertent, the court noted that the inadvertence of the disclosure does not prevent a

4   waiver as a matter of law.  *Id.*

5        In *Mendelsohn*, the court held that Mendelsohn's statements to an undercover detective about

6   what his attorney had said constituted a waiver, albeit limited, of Mendelsohn's attorney client privilege.

7   *Mendelsohn*, 896 F.2d at 1188–89.  Mendelsohn sent the undercover detective a program that

8   Mendelsohn knew could be used for illegal bookmaking, and told the detective that his attorney said that

9   selling the program was legal.  *Id.* at 1184, 1188.  Mendelsohn also later told the undercover detective

10   that his attorney said he did not know what would happen if Mendelsohn sold the program interstate.  *Id.*

11   The court held that Mendelsohn's statements constituted a waiver of the attorney-client privilege limited

12   to the subject matter of the disclosures.  *Id.* at 1188–89.  Further, the court held that whether

13   Mendelsohn intended to waive his attorney-client privilege is not dispositive, and that Mendelsohn may

14   have misstated what his attorney told him does not make the waiver ineffective.  *Id.* at 1189.

15        Here, the defendant's multiple disclosures of his attorney-client communications similarly

16   waived the attorney-client privilege.  In proceedings before Magistrate Judge Corley on May 30, 2014,

17   the defendant stated, "I immediately contacted Brandon LeBlanc and brought in Harris [Taback] to get a

18   third opinion, what should we do. . .  He said, I have to get a release signed."  Transcript of May 30,

19   2014 Hearing at 18 (attached hereto as Exhibit 1).  In proceedings before this Court on June 3, 2014, the

20   defendant stated, "I engaged counsel day one.  I told [Brandon] LeBlanc and even involved Harris

21   Taback . . . for a third counsel.  And they all said the same thing, Your Honor.  They said, 'Get those

22   boxes of [sic] out of your garage.'"  Transcript of June 3, 2014 Hearing at 19 [hereinafter June 3

23   Hearing] (attached hereto as Exhibit 2).  Though these statements were unsworn, so were the statements

24   to the detective in *Mendelsohn*.

25        In the evidentiary proceedings before this Court on June 17, 2014, the defendant gave sworn

26   testimony disclosing privileged communications.  In his direct examination about the position he and his

27   counsel took in negotiations with Rose Long and her attorney, he stated: "So we took the posturing

28

approach.  'We got a gift.' . . . It was a posturing of legal confrontation with Harvey Schochet, him

taking an absurd position that we have a contract and we owe this money and us taking a counter-

position to mitigate this mess.  But the instructions moving forward were 'Take that position and get the

crap out of my garage.  Make sure you get a release and an indemnity.'"  Transcript of June 17, 2014

Testimony of Luke Brugnara at 45–46 [hereinafter June 17 Testimony] (attached hereto as Exhibit 3).

And, the defendant further testified, again referring to himself and his counsel, that "we conceded our

position that it was a gift.  So it was a good—it was a good strategy from a legal-maneuvering

standpoint because they conceded their position that it was a contract, and we conceded our position that

it was a gift."  *Id.* at 48; *see also id.* at 53 ("[W]e took the legal position that they were a gift with the

understanding that the boxes were to be removed from the property and taken off the property.").  The

defendant was also plainly referring to statements made by his attorneys when he stated that "certain

parties" told him not to open the boxes:  "Who knows what the hell is in those boxes?  Certain parties,

without waiving attorney-client privilege, said, 'Man, there could be drugs in those boxes.  There could

be guns in those boxes.' . . . 'Don't open the boxes.  Don't touch the boxes.  Don't move the boxes.'"

*Id.* at 44–45.

Furthermore, the defendant was aware of the risk of creating an attorney-client privilege waiver.

Before the defendant began his testimony in the evidentiary proceedings, this Court warned the

defendant about creating an attorney-client privilege waiver:  "Also, keep in mind if you start waiving

the privilege of bringing up what you talked to the lawyers about, that can be such a mess for you," and

the defendant responded, "I'm aware of that," and his counsel stated, "That's another issue we

discussed, Your Honor."  Transcript of June 17, 2014 Hearing at 26–27 [hereinafter June 17 Hearing]

(attached hereto as Exhibit 4).  All of the defendant's above-quoted statements or testimony were either

unsolicited or made on direct examination in response to questions from the defendant's attorney.  The

defendant repeatedly indicated that he did not want to waive the privilege, demonstrating that he was

aware both of the existence of the privilege and that he was making statements that at least risked

waiving it.  *See, e.g.*, Transcript of June 18, 2014 Testimony of Luke Brugnara at 9 [hereinafter June 18

Testimony] (attached hereto as Exhibit 5) ("Without waiving attorney-client privilege, that was a legal

1  position to counter ."); *id.* at 57–58 ("We're not waiving the attorney-client privilege.  The facts speak

2  for themselves in that case, and we're not waiving that right.").  Although he stated that he did not want

3  to waive the privilege, and although his counsel requested at one point that he not reveal any privileged

4  attorney client information, June 17 Testimony at 50, these statements did not stop the defendant from

5  revealing what his counsel had told him.  As *Plache* demonstrates, merely stating that a question is not

6  meant to get into any attorney-client privilege does not nullify a subsequent disclosure.  *See Plache*, 913

7  F.2d at 1380 (noting that the defendant's grand jury testimony answer that revealed privileged

8  communications resulting in a waiver in response to a question that instructed him not to reveal

9  privileged attorney client communications "simply did not heed the Government attorney's advice").

10       These were also not inadvertent disclosures.  As the court held in *Plache*, the defendant's

11  purposeful, voluntary testimony about conversations with an attorney are "not inadvertent."  *Id.* at 1380.

12  But, even if they were, the defendant has taken no reasonable steps to prevent disclosure or taken

13  prompt reasonable steps to rectify the error under Fed. R. Evid. 502.  The defendant has revealed these

14  communications in multiple proceedings, and the transcripts of these proceedings have been available

15  for several weeks.  The defendant has not sought to strike this testimony or taken any other steps to

16  rectify the disclosures under Fed. R. Evid. 502(b).  To the contrary, as discussed below, he has

17  repeatedly used them as a sword, and cannot, at the same time, use the privilege as a shield.

18       The defendant partially waived his attorney client privilege through his voluntary disclosures of

19  attorney-client communications in proceedings before this Court.  That waiver is effective for all

20  communications on the same subject of the disclosures, which includes all communications between the

21  defendant and his attorneys regarding the art transaction with Rose Long from when the crates were

22  delivered on April 7 until his arrest on May 28.

23     **B.**    **The defendant has asserted an advice of counsel defense to explain why he did not
24            return the art crates, resulting in an implied attorney-client privilege waiver.**

25       The defendant asserted an advice of counsel defense in various proceedings, making his

26  privileged communications with his counsel an issue in this case and resulting in a waiver of attorney-

27  client privilege under Ninth Circuit law.  When a party defends its actions by claiming that they were

28  undertaken at the advice of counsel, the party puts at issue the advice of counsel it received.  *See*

1    *Chevron*, 974 F.2d at 1162–63.  "Where a party raises a claim which in fairness requires disclosure of

2    the protected communication, the privilege may be implicitly waived."  *Id.* at 1162.  To evaluate

3    whether the attorney-client privilege has been waived, the court uses a three-pronged test:  The court

4    first assesses whether the party is asserting the privilege as the result of some affirmative act; second, the

5    court determines whether "through this affirmative act, the asserting party puts the privileged

6    information at issue[;]" and, third, "the court evaluates whether allowing the privilege would deny the

7    opposing party access to information vital to its defense."  *See Amlani*, 169 F.3d at 1195.  This test helps

8    to evaluate the fairness concerns of an attorney-client privilege waiver, as "the doctrine of waiver of the

9    attorney-client privilege is rooted in notions of fundamental fairness," and its main purpose is "to protect

10   against the unfairness that would result from a privilege holder selectively disclosing privileged

11   communications to an adversary, revealing those that support the cause while claiming the shelter of the

12   privilege to avoid disclosing those that are less favorable," *Tennenbaum v. Deloitte & Touche*, 77 F.3d

13   337, 340–41 (9th Cir. 1996).

14          As a general matter, "[t]he privilege which protects attorney-client communications may not be

15   used as both a sword and shield."  *Chevron*, 974 F.2d at 1162.  *Chevron* is illustrative—in that case, the

16   court held that Chevron was entitled to discovery of Pennzoil's communications with counsel after

17   Pennzoil claimed that its tax position was reasonable because it was based on the advice of Pennzoil's

18   tax counsel, constituting a waiver of attorney-client privilege on those communications.  *See Chevron*,

19   974 F.2d at 1162–63.  "[T]o the extent that Pennzoil claims that its tax position is reasonable because it

20   was based on advice of counsel, Pennzoil puts at issue the tax advice it received."  *Id.*  And though the

21   dispute in *Chevron* arose from a motion for summary judgment, the assertion of an advice of counsel

22   defense can constitute a waiver even if raised outside of the context of a determinative motion or

23   hearing.  *See United States v. Cook*, No. CR05-424Z, 2007 WL 391559 at *5 (W.D. Wash. Jan 23,

24   2007) (holding defendants' sworn statements to the government about what their attorney told them in

25   an attempt to avoid indictment constituted waiver of their attorney-client privilege and that the

26   defendants "cannot use their communications with [their attorney] as an excuse for their conduct and

27   then hide behind the privilege at trial").

28

1      The defendant has already put an advice of counsel defense at issue in various hearings before

2  this Court.  In the June 3, 2014 hearing before this Court, counsel for the defendant proffered the

3  defendant's advice of counsel defense:

> The facts that will come before the Court is that Mr. Brugnara was attempting to work with counsel to return this art, and he was operating under advice; and that Mr. LeBlanc was actually actively involved in the e-mail communication between the attorney for the art dealer, Mr. Brugnara's attorney, and then Mr. LeBlanc, as well, which—I am just basing this on Mr. Brugnara's word, and also the word of counsel, that Mr. LeBlanc was actively—he knew about the situation, and he was attempting to advise Mr. Brugnara to return this art; but the advice was to obtain a release.

8  June 3 Hearing at 8–9.  The defendant repeatedly testified on direct and cross-examination during

9  revocation proceedings that his counsel and he took the position that the art was a gift to counter Rose

10  Long's and her counsel's position that it was not:  "So, we countered that absurd position that it's a gift.

11  It was a legal posture to counter their absurd position."  June 18 Testimony at 9 (direct); *see also id.* at

12  172–73 (cross); June 17 Testimony at 44–51 (direct); *id.* at 53–54 (direct).

13      On direct examination on June 18th, the defendant testified that the reason he did not just return

14  the crates of art to Rose Long was because of legal concerns for which he engaged counsel:  "[Y]ou

15  can't do that [return the art crates] in a situation like this where someone is claiming that—a potential

16  breach of contract when there was no contract.  And based upon my experience, you know, 20 years, I

17  immediately contacted civil counsel[,] without breaching attorney-client privilege[,] and put it in his

18  hands to get the items returned to her as quickly as possible with a release that indemnified me and her

19  from claims."  June 18 Testimony at 12.  Because of these concerns, the defendant, at the advice of

20  counsel, took the position that the art was a gift instead of returning the art directly:  "I never once took

21  the position it was a gift prior to counsel being engaged."  *Id.* at 16.

22      These statements and testimony, as well as those quoted in Part I.A containing communications

23  with attorneys, satisfy *Amlani*'s three-pronged test for waiver of attorney-client privilege.  First, the

24  defendant would assert the privilege in response to his affirmative acts of testifying about these

25  communications and using them as part of an advice of counsel defense to his detention and the

26  revocation of his supervised release.  Second, the defendant's testimony put the privileged

27  communications at issue.  *See Amlani*, 169 F.3d at 1195.  Third, allowing the privilege would deny the

28

opposing party access to information vital to its defense, because the government cannot possibly investigate the merits of such a defense when the content of the defendant's communications with his lawyers is privileged, *see Chevron*, 974 F.2d at 1162–63.  Accordingly, allowing the defendant to assert this defense, as he has already, and then hide behind attorney-client privilege on the same subject would contravene the principle that the attorney-client privilege "may not be used both as a shield and a sword," *Chevron*, 974 F.2d at 1162.  By making what his attorneys told him an issue in this case, the defendant waived his attorney client privilege for all communications on the same subject as that which he disclosed.  *See Hernandez*, 604 F.3d at 1100.

The defendant raised advice of counsel as a substantive defense to his detention and during his supervised release revocation proceedings, which are still pending before this Court.  He cannot now use privilege as a shield to prevent the government, and the Court, from determining whether, and in what manner, he relied on counsel in maintain possession of the crates of art.

**II.    The Defendant Must Give Notice that He Intends to Raise an Advice of Counsel Defense at Trial and Provide Reciprocal Discovery to the Government.**

Separately from whether the defendant has already limitedly waived attorney-client privilege by stating that he was following the advice of his lawyers, the defendant appears likely to present an advice of counsel defense at trial.  Based on the defendant's prior statements in court, the government believes that the defense may argue at trial that his failure to return the artwork once he had obtained possession of it was the result of the advice of various attorneys.  If the defense intends to present such a defense at trial, either by seeking a jury instruction on advice of counsel or seeking to admit evidence regarding his communications with counsel, the defense must provide ample notice of his intent to the government, explicitly waive the privilege, and provide reciprocal discovery of all documents he intends to present.

A defense at trial of "[a]dvice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."  *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961).  "To qualify for an advice of counsel instruction, the defendant must show that there was full disclosure to his attorney of all material facts, and that he relied in good faith on the specific course of conduct recommended by the attorney."  *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987).  "The defendant must

1   also show that he actually relied on the advice, believing it to be correct." *United States v. Conforte*,

2   624 F.2d 869, 877 (9th Cir. 1980).[1]

3        As explained above, "[t]he privilege which protects attorney-client communications may not be

4   used as both a sword and shield," and if the defendant intends to assert such a defense at trial, he will

5   waive his privilege with respect to the communications at issue. *Chevron*, 974 F.2d at 1162–63.  Under

6   these circumstances, it is appropriate for this Court to "give[] the holder of the privilege a choice: If you

7   want to litigate this claim, then you must waive your privilege to the extent necessary to give your

8   opponent a fair opportunity to defend against it." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir.

9   2003).

10        To properly investigate the defense, the government needs time to obtain and review what

11   would, absent waiver, be privileged communications between the defendant and his lawyers.  The

12   government is entitled to notice of this defense, and the resulting waiver of privilege, so it can undertake

13   this investigation.  The government therefore requests that the Court order that the defendant to make

14   such a determination by the pretrial conference, or preclude any evidence or argument on advice of

15   counsel as prejudicial to the government.  Further, the government is entitled to prompt reciprocal

16   discovery under Rule 16(b)(1)(A) of any communications relating to this defense.

17   ### CONCLUSION

18        The government respectfully requests that this Court find that the defendant has already waived

19   his attorney-client privilege with respect to communications between himself and any of his lawyers,

20   that were made between the delivery of the artwork on April 7, 2014 and the defendant's arrest and

21   partial seizure of the art on May 28, 2014, and that are regarding the defendant's possession and

22   retention of the art.

23        In any event, the government respectfully requests that the Court require the defendant to

24   indicate by no later than the date of the pretrial conference on July 30, 2014 whether he intends to raise

25

26       [1] The advice of counsel defense that the defendant has already raised in prior proceedings, even
if supported by the evidence, would not shield him entirely against proof of fraudulent intent.
27   According to the defendant, he did not engage lawyers until after he had already obtained the art from
Rose Long, and the government alleges, and intends to offer proof, that the defendant's scheme included
28   obtaining the art in a fraudulent manner.

UNITED STATES' MOTION REGARDING ATTORNEY-CLIENT PRIVILEGE AND ADVICE OF COUNSEL
CR 08-00222 WHA and CR 14-0306 WHA

1  an advice of counsel defense at trial.  If he does so intend, the Court should find the privilege waived

2  and order disclosure of all communications between the defendant and his attorneys on the relevant

3  subject matter.  If he does not so intend, the Court should order that the defense is precluded from

4  mentioning any advice received from counsel or making any other reference to a reliance upon advice of

5  counsel at trial.

6

7  DATED: July 16, 2014                              Respectfully submitted,

8                                                    MELINDA HAAG
                                                     United States Attorney
9

10                                                   _____/s/_____

11                                                   W. DOUGLAS SPRAGUE
                                                     BENJAMIN KINGSLEY
12                                                   Assistant United States Attorneys

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES' MOTION REGARDING ATTORNEY-CLIENT PRIVILEGE AND ADVICE OF COUNSEL
CR 08-00222 WHA and CR 14-0306 WHA