LAW OFFICES OF ERIK G. BABCOCK
ERIK G. BABCOCK, No. 172517
717 Washington Street, 2nd Floor
Oakland, CA 94607
Tel: (510) 452-8400
Fax: (510) 452-8405

Attorney for Defendant
LUKE BRUGNARA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0222 WHA |
| | No. CR 14-0306 WHA |
| Plaintiff, | |
| | **DEFENDANT'S MOTION FOR** |
| v. | **EVIDENTIARY HEARING TO** |
| | **REFUTE ECONOMIC DANGER** |
| LUKE BRUGNARA, | |
| Defendant. _____/ | |

INTRODUCTION

Defendant, Luke Brugnara, by and through his counsel, Erik Babcock, hereby moves this Court to declare that Luke Brugnara is not an economic danger and the Court should modify his bail conditions forthwith to reflect this conclusion.

Luke Brugnara is a well-respected commercial real estate investor and developer on the West Coast of the United States. Luke has completed, without partners, over $2 billion of commercial real estate transactions since 1992, including commercial real estate purchases, sales and leases. Luke has borrowed over $1 billion of commercial real estate loans since 1992 and has paid back all of his lenders in full over the past 22 years as President and CEO of Brugnara Properties.

No one, other than Rose Long, has ever accused Luke of any criminal misconduct in his prolific quantity of commercial real estate transactions totaling over $2 billion.  This fact alone proves Luke is not an economic danger.

The witnesses in this motion detailed below, will further affirm Luke's success, acumen and ethical standard in his business dealings.  All of these esteemed witnesses, the top professionals in their area of expertise and finance, will affirm Luke's reputation and the respect her commands as a man who honors his word and commitment:

1.  Tony Crossley, VP Colliers International.  Mr. Crossley is the top producing commercial real estate broker in San Francisco for over 20 years and the top producer at Colliers International worldwide, the largest commercial real estate company in the world.  Tony Crossley has brokered all of Luke's leases, purchases and sales since 1993, totaling over $2 billion, and has experienced no incidents of any criminal or ethical conduct from Luke.  Luke is one of Collier International's top respected clients.

2.  Nick Barbato, VP Cooper Horowitz.  Cooper Horowitz is the largest commercial real estate investment banker in New York City placing over $20 billion of loans annually.  Mr. Barbato has placed $500 million of loans for Luke over the past 20 years without any issues or incidents of any criminal or ethical conduct.  Cooper Horowitz considers Luke a valued client and top commercial real estate investor and developer on the West Coast.

3.  Mike Shustek, CEO. Destin is a NASDAQ traded public mortgage REIT. Destin has lent Luke $200 million over the past 15

years without any problems or issues and no claims of commercial or unethical conduct. Shustek considers Luke a valued client and its largest borrower and the top commercial real estate investor and developer on the West Coast.

4.   Frank Sanders, StoneTree Financial.  Mr. Sanders has placed over $200 million of commercial real estate loans since 1993 for Luke.   There have been no incidents of unethical or criminal misconduct and Luke is considered a valued, well-respected client who is the top commercial real estate investor and developer on the West coast over the past 20 years.

5.   Jennifer Senhaji, Old Republic Title Company.  Ms. Senhaji has insured over $1 billion of commercial real estate transactions for Brugnara over 15 years and has had no insurance claims on title or any issues of inaccurate information, fraud or unethical or criminal conduct whatsoever.   Luke has a flawless record as a client of Old Republic Title Company and is esteemed and respected for his acumen and success.

6.   Dr. Cathy Barrett, psychiatrist.  Ms. Barrett will affirm that Luke is not an economic danger and has no predisposition or desires to defraud or commit acts that are unacceptable in business.  Dr. Barrett will affirm Luke is very proud of his business record that is flawless as a borrower and investor.

<u>ARGUMENT</u>

This Court, for over six years, has determined that Luke Brugnara is NOT an economic danger.  The Bureau of Prisons, by allowing Luke to work at home confinement and the halfway home for Brugnara Properties during his sentence, determined Luke not to be

1   an economic danger.  United States Probation during Luke's two

2   years of supervised release, including a Form 12 issue on October,

3   2013, determined that Luke is NOT an economic danger.  The United

4   States Attorney never disclosed that Luke was an economic danger

5   during the 2008-2010 tax case where he was on "OR" release, or

6   after release from prison from 2012-2014 when he was on supervised

7   release, until Rose Long made these claims against Luke.  Rose Long

8   claims DO NOT usurp 22 years of excellence in business and

9   performance as an ethical and trusted businessman at the top of his

10  profession.

11      Luke should be allowed to close his current transaction

12  in Las Vegas to support his family and pay the $1.9 million

13  restitution.  It is illogical to deny him the right to work to

14  support his family and pay his obligation based upon one person's

15  claims, a person who impeached herself 17 times as detailed herein,

16  during her testimony.

17      This Court is not a forum for personal vindictiveness or

18  retribution; nor a venue for prosecutorial misconduct to enforce

19  personal agendas.  Neither the government, nor the public, nor Luke

20  benefits from restricting his right to work as he is presumed

21  innocent.

22   MR. BRUGNARA DOES NOT POSE AN ECONOMIC DANGER TO THE COMMUNITY

23      Mr. Brugnara does not pose any economic danger to the

24  community.  See *United States v. Reynolds*, 956 F.2d 192-93 (9th Cir.

25  1992)(danger to the community under section 3143 "may, at least in

26  some cases, encompass pecuniary or economic harm").  The primary

27  evidence proffered by the government that Mr. Brugnara poses an

28  economic danger to the community relates to the unproven

allegations underlying the new mail fraud charge.  But because Mr.
Brugnara is presumed innocent of the charge against him, this Court
should afford less weight to those allegations in determining
whether Mr. Brugnara poses an economic danger to the community.
See *United States v. Madoff*, 586 F. Supp. 2d 240, 252-53 (S.D.N.Y.
2009)("[A] presumption of innocence may be a factor in determining
the weight of an alleged economic harm and whether it would rise to
the level of danger to the community.").  And, as noted above, the
weight of the evidence against Mr. Brugnara is the least important
factor to consider.  See *Motamedi*, 767 F.2d at 1408.

Moreover, even if this Court considers the underlying
allegations, the scope of the alleged fraudulent conduct is quite
limited, involving only a single art dealer; all but one of the
pieces of art at issue have been returned; and the location and
provenance of the remaining piece is still a matter of dispute.
See Exhibit F: *Articles*.  Thus the scope of the alleged economic
danger based on the charged conduct is not vast, has already been
abated and was not faced by the community at large.  Further, the
alleged economic danger posed by Mr. Brugnara pales in comparison
to numerous white-collar defendants who have faced much more
serious fraud charges, and who have been released on appropriate
conditions pending trial.  See, e.g. *Madoff*, 586 F.Supp.2d at 255
(denying government's motion to detain Bernard Madoff based on
economic danger her posed to the community); see also *United States
v. Madoff*, 826 F.Supp.2d 699, 700 (S.D.N.Y. 2011)(noting that
Madoff's fraud scheme cost his clients billions of dollars); *United
States v. Giordano*, 370 F.Supp. 2d 1256, 1264 (S.D. Fla.
2005)(denying government's detention motion even when defendant was

1  charged with 35 counts of various fraud offenses and explaining

2  that "In economic fraud cases, it is particularly important that

3  the government proffer more than the fact of a serious economic

4  crime that general great sums of ill-gotten gains ... evidence of

5  strong foreign family or business ties is necessary to detain a

6  defendant even in the face of a high monetary bond").

7      A.  **Mr. Brugnara Does Not Have a Propensity to Commit Fraud**

8          While this Court may validly consider Mr. Brugnara's

9  propensity to commit crime generally in determining whether he

10 poses an economic danger, Mr. Brugnara has not shown any such

11 propensity.  See *United States v. Provenzano*, 605 F.2d 85, 95 (3d

12 Cir. 1979)("[A] defendant's propensity to commit crime generally,

13 even if the resulting harm would be not solely physical, may

14 constitute a sufficient risk of danger to come within the

15 contemplation of the [Bail Reform] Act."). Mr. Brugnara's criminal

16 history is limited and does not include any prior fraud

17 convictions.  Nor has ever previously been criminally charged with

18 fraud.  Obviously, his prior tax convictions before this Court, as

19 with the instant offense, involve elements of dishonesty or

20 misrepresentation; but this does not demonstrate that he is prone

21 to committing fraud; particularly in that all of the prior

22 allegations of fraudulent conduct and/or filing false tax returns

23 are distinct in kind.

24         Under the government's reasoning, however, virtually all

25 white-collar defendants with no history of assertive violence would

26 be subject to detention on the ground that they posed an economic

27 danger, simply because their alleged fraudulent conduct involved

28 large sums of money.  But such reasoning runs contrary to the Bail

Reform Act, which demands that "[o]nly in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor[,]" see *Gebro*, 948 F.2d at 1121, and further "mandates [the] release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required."   See *Motamedi*, 767 F.2d at 1405 ("The Fifth and Eighth Amendments' prohibitions of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected.").

B.   **Rose Long's Testimony At the Form 12 Hearing Was Not Credible**

Rose Long lied numerous times during her Form 12 testimony and impeached herself at least 17 times.   She is simply not credible.   Her testimony cannot trump and supercede 22 years of flawless business performance by Luke Brugnara on over $2 billion of commercial real estate without any issues of claims of criminal misconduct.

The specific lies and impeachments revealed during Rose Long's Form 12 testimony include:

1.   She lied that she gave invoices to Luke when none were given; more incredulous is that she testified that the invoice she forwarded to her attorney Harvey Schoslett at DWT was not an accurate invoice, yet Schosett advanced that invoice to attorney Bob Kane by e-mail as an accurate invoice, yet she testified it was not accurate or valid.

2.   She testified to five different versions of the "deal"/"contract" with Luke to buy the art; each version is dramatically different.

       1.  50 percent in 5 days, 50 percent in 365 days

       2.  100 percent in 365 days

       3.  100 percent in 5 days

       4. $6.1 million for the DeKoonings

       5. $7.5 million for the DeKoonings

3.   She claimed in numerous e-mails that she had a partner when she had no partner.

4.   She claimed that Sotheby's and Christie's had not seen the artwork in her e-mails, yet Maibaum the FBI statement refutes that claim and states the auction houses don't accept these works as authentic.

5.   She testified twice that the Sea Cliff garage was empty, when it is loaded to the hilt with garbage for 10 years.

6.   She lied that the shipment was insured when it was not insured.

7.   She lied that she was sending an original Degas that she owned for years worth over $20 million when she did not own it, nor was it an original Degas, as it is a copy, stamped "reproduction."

8.   She testified she counted and inspected the crates, yet her texts and affidavits to FBI state she did not.

9.   She testified she owned a SECOND Little Dancer Degas when she does not own a second Little Dancer Degas.

10.  She lied in numerous e-mails to me and her attorney that she owned the art when she never owned the art.

1    11.  She lied about not knowing about her ALIAS website

2  when she ordered it to be posted.

3    12.  She lied about her education and degree.

4    13.  She lied about selling Luke a Picasso in 2004.

5    14.  She lied that she didn't know my museum was going to

6  be in Las Vegas yet her FBI report affirms she knew this fact.

7    15.  She lied that she brought a bag of tools.

8    16.  She lied that a crew delivered the crates, yet only

9  one tiny (5'5") Hispanic man unloaded the crates.

10    17.  She lied that I didn't return her calls when I

11  returned all of her calls.

12                            CONCLUSION

13    A man who has completed a mind-numbing $2,000,000,000 of

14  commercial real estate transactions over 22 years, without any

15  prior claims of criminal misconduct (save for Rose Long's claims)

16  cannot be considered an "economic threat."  A man or woman is

17  judged by his/her body of work, not an unadjudicated isolated claim

18  inconsistent with the volume of work and success an ethical

19  excellence as affirmed by the evidence and testimony from credible

20  esteemed professionals affirming this fact.  For the overwhelming

21  evidence presented herein and testimony this Court should declare

22  Luke Brugnara not dangerous and an economic benefactor to the

23  //

24

25

26

27

28

- 9 -

1  capitalist democracy that we embrace, and immediately release

2  Brugnara from the halfway house to home confinement at 224 Sea

3  Cliff Avenue, San Francisco.

4  DATED: September 10, 2014

5                                  Respectfully submitted,

6

7                          By _____/s/_____

8  _____                      ERIK G. BABCOCK
                              Attorney for defendant
                              LUKE BRUGNARA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28