MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

W. DOUGLAS SPRAGUE (CABN 202121)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    doug.sprague@usdoj.gov
    benjamin.kingsley@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. CR 14-0306 WHA |
|---|---|---|
| | ) | CR 08-0222 WHA |
| Plaintiff, | ) | |
| | ) | MOTION TO STAY ORDER RE CONDITIONS OF |
| v. | ) | RELEASE DATED SEPTEMBER 10, 2014 |
| | ) | |
| LUKE D. BRUGNARA, | ) | |
| | ) | |
| Defendant. | ) | |

    Based in part upon information received in the last three hours regarding allegedly unauthorized phone calls made by defendant from the halfway house, the United States moves this Court to stay its Order Re Conditions of Release Dated September 10, 2014. In support of this motion, the United States offers the following:

    First, by way of background, the United States wants to reiterate why it believes strict conditions of release are paramount in this case. The United States is not seeking to trick defendant or to set up hypertechnical constraints just so defendant cannot abide by them. The United States, along with multiple magistrates and this Court, believes that defendant represents a severe risk of danger to the community, particularly a severe risk of economic danger. To be more specific, the United States

believes defendant will use whatever freedom he is provided to defraud others into providing him money, whether by pursuing some real estate or other deal using fake art, or, even more specifically, by fencing a stolen Degas statue. Not only would such conduct create more victims, but this money, in turn, could be used for any number of purposes, forcing the government to trace the transactions and to seek forfeiture from potentially unwitting recipients of such funds. In short, that there are unaccounted for assets at issue in this case is quite important in considering strict conditions of release.[1]

In the two most recent hearings regarding these conditions, defendant at best misled Magistrate Cousins and this Court. On September 3 (before Magistrate Cousins) and on September 9 (before this Court), defendant made at least misleading allegations about the circumstances at the halfway house to which he previously requested to be released. Based on those allegations, both Magistrate Cousins and this Court provided more leeway to defendant. Magistrate Cousins amended the release terms to allow defendant to meet with his counsel of record, Erik Babcock, not only in the halfway house, but also in the federal building. Based on government counsels' recollection, those allegations included that the halfway house conference room was too small, that the halfway house had a policy that the door to the conference room must remain open even when attorneys are meeting with clients, that people could and did remain just outside that door (i.e., at least implying they would overhear privileged communications), and more. Over the government's objections, Magistrate Cousins allowed defendant to come to the federal building to meet with Attorney Babcock.

On September 9, again with no notice to the United States, the defense again complained about the conditions at the halfway house to which they sought and attaned release and asked for more leeway. This time the defense complained that defendant had been forced to wait "three hours" to call his lawyer, that the halfway house "counted" calls from defendant to his attorney that did not result in a conversation (i.e., voicemail) and would limit defendant to two calls whether they were connected or not, and that defendant needed to call other lawyers – not just Attorney Babcock – in an effort to retain private counsel. Pretrial Services was not present at this hearing, and the Court told counsel for the

---

[1] Exacerbating such concerns is that defendant, who has millions of dollars in debt and who has repeatedly claimed he has no money or assets to repay any of it or afford counsel, now claims to be able to hire probably one of the most expensive defense attorneys in the world.

United States to follow up on these issues.

Immediately after that September 9 hearing, the United States followed up on the issues raised in it. That very morning, multiple representatives of the United States Attorney's Office, including undersigned counsel, walked to the halfway house along with an FBI agent. We met with GeoCare's Western Region Area Manager, who we understand oversees all of the halfway houses in that region. We met in the conference room at issue. It measures approximately 17 feet by 10 feet. We were informed that contrary to defendant's representations, the halfway house does not have a policy that the door cannot be closed during attorney-client meetings; there may be an issue with latching the door because it locks, but the door can be closed at least to the point of touching the door jam, such that no one could see or hear through it. We also were informed that defendant did not have to wait "three hours," or anywhere near that amount of time, to call his attorney. To the contrary, he was trying to schedule a medical appointment during this time, which he was permitted to do. In this period, there were communications involving defendant, the halfway house, Pretrial Services, and the medical provider's office. Defendant was allowed to leave for a medical appointment, and he was out of the halfway house for more than two hours allegedly obtaining medical treatment.[2] We also were informed that contrary to defendant's assertions, the halfway house does not count "attempts" to call an attorney (i.e., voicemail) as calls with an attorney; in other words, only conversations count. We also were informed that contrary to defendant's assertions, the halfway house does not make him provide two hours' notice before he can call an attorney; even though that was the order and the halfway house could enforce it, the halfway house does not enforce it. We were informed that defendant asks to use the phone "about every 15 minutes;" although that was an exaggeration, the point was made.

**Perhaps most importantly, we discovered information that defendant has violated the terms of his release by calling his wife, despite repeatedly being told by this Court, Magistrate Cousins, and Pretrial Services that this would be a plain violation of court orders.**

Later that afternoon and while the government was finalizing its response to defendant's motion to recuse the United States Attorney's Office, the Court issued its Order Re Conditions of Pretrial

---

[2] Defendant was supposed to provide a doctor's note. He did not. As of this morning, despite requests from the halfway house and Pretrial Services, he still had not provided one.

Mot. to Stay;
CR 14-0306 WHA and CR 08-0222 WHA

Release.  That order appears to have been based, at least in part, on allegations that now have been exposed as unsubstantiated at best.

In addition, just late this morning the United States was informed of more unauthorized calls by defendant.  **Specifically, we were informed that defendant called at least two numbers that are not attorneys; one of the numbers belongs to his wife, who also is the surety securing defendant's release from pretrial custody.**

The United States was informed that the halfway house was preparing "an incident report" outlining what halfway house personnel deemed "unauthorized phone calls."  The United States was informed that the incident report would be submitted to Pretrial Services within two hours, which would be approximately 2:00 p.m. today.

Based on this developing information, the United States respectfully moves as follows: (1) that this Court STAY its Order Re Conditions of Pretrial Release dated September 10, 2014; in light of both the misleading information that defendant proffered that appears to have contributed to that Order, and in light of the allegations of repeated violations of one of the key restrictions this Court (and Magistrate Cousins) imposed upon defendant, defendant should not be allowed to have a cell phone, at least until the Court can review the forthcoming incident report and the parties can address it; and (2) that Pretrial Services shall forward the "incident report" to the Court and the parties immediately upon receiving it.  If the facts turn out to be as alleged, the United States will move for defendant's immediate remand.

In the alternative, the United States respectfully requests that the Court amend the Order as follows:  (1) Pretrial Services shall obtain a phone for defendant [the United States is concerned that defendant could read the existing Order to allow him to leave the halfway house to obtain the phone]; (2) to the extent possible, that phone shall not have the capability of sending or receiving text messages or email; and (3) the word "should" on page 2, line 4, be modified to "shall."

In light of this Court's Notice of Unavailability for today and tomorrow, the United States will alert both the duty district court judge and Magistrate Cousins of this filing and will hand-deliver copies to those chambers.

DATED: September 11, 2014

                /s/
W, DOUGLAS SPRAGUE
BENJAMIN KINGSLEY
Assistant United States Attorneys

Mot. to Stay;
CR 14-0306 WHA and CR 08-0222 WHA

4