1  ERIK BABCOCK (Cal. 172517)
2  JAMES STEVENS
   717 Washington St., 2d Floor
3  Oakland, CA 94607
   (510) 452-8400 Tel
4  (510) 452-8405 Fax

5  Attorneys for Defendant
6  LUKE BRUGNARA

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,                No. CR 14-00306 WHA

13         Plaintiff,                        **OPPOSITION TO GOVERNMENT'S
                                             MOTIONS IN LIMINE ONE
14  v.                                       THROUGH SIX**

15  LUKE BRUGNARA,                           Date: December 10, 2014
                                             Time: 8:00 a.m.
16  _____Defendant_____/     Dept: WHA

17

18         The government filed six in limine motions.  Motions numbered One through Three were

19  filed on July 16, 2014 (Dkt. 46).  Motions Four through Six were filed November 25, 2014 .  Mr.

20  Brugnara does not oppose Motion Number One.  His response to the motions numbered Two

21  through Six are set forth below.

22  **A.     Gov Motion No. 2: Defendant Must Be Allowed To Cross Examine Rose Long
23          About Her Understanding of Her Arrangement With the Defendant**

24         The government argues that the Court should preclude the defense from eliciting any

25  testimony or making any statements regarding the existence of a contract between Rose Long and

26  Mr. Brugnara.

27

28

Although the existence of a contract is not an element of the charges against Mr. Brugnara, Ms. Long's perception of whether or not a contract existed between her and Mr. Brugnara is relevant as to whether or not Mr. Brugnara defrauded Ms. Long. Ms. Long's perception of whether a contract existed is relevant to whether or not Mr. Brugnara made statements or omitted facts that were part of a scheme to defraud Ms. Long, which is one of the elements required to prove mail fraud. 9th Cir. Model Criminal Jury Intructions section 8.121 – Mail Fraud.

The existence of a contract is also relevant with regards to Mr. Brugnara's mental state. The government must show Mr. Brugnara intended to defraud Rose Long and had a plan for obtaining money or property by means of false pretenses. The existence or not of a contract between him and Ms. Long is relevant to those elements. In other words, if Mr. Brugnara thought he had a contract with Ms. Long, and thought he was adhering to the terms of that contract, there would be no intent to defraud.

Therefore, although the jury will not be required to determine whether a contract existed as a matter of law, they will be required to determine Mr. Brugnara's intent and Ms. Long's understanding of her dealings with Ms. Brugnara. Accordingly, the Court should allow evidence of the communications between defendant and Ms. Long.

Moreover, it would a violation of Mr. Brugnara' Sixth Amendment right to confront the witnesses against him to allow Ms. Long to testify that she was defrauded without allowing the defense to cross examine her about her communications with Mr. Brugnara. The terms on which she thought she agreed to sell the art to Mr. Brugnara are inextriacbly intertwined in that cross examination.

As a practical matter, Ms. Long is expected to testify at length about the existence of a

contract between Mr. Brugnara and herself.  It will be difficult, if not impossible, to cross-examine her without her mentioning the existence of an agreement between Mr. Brugnara and herself.  This prohibition could also potentially make it difficult or impossible to impeach Ms. Long with her testimony from the Rule 12 hearing.  For all of these reasons, the government's motion should be denied.

**B.      Gov Motion No. 3: Defendant Must Be Allowed To Impeach Rose Long's Credibility**

Mr. Brugnara does not anticipate offering anonymous internet evidence of Ms. Long's alleged past fraudulent art dealings.

However, Mr. Brugnara must be allowed to fully cross examine Rose Long to impeach her credibility.   The Sixth Amendment guarantees the right of a defendant to confront the witnesses against him or her. Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). See also Alford v. United States, 282 U.S. 687, 51 S. Ct. 218, 75 L. Ed. 624 (1931). This right to confrontation is embodied substantially by the right to cross-examine adverse witnesses. See Davis, supra, 415 U.S. at 315-16, 94 S. Ct. at 1109-1110; Skinner v. Cardwell, 564 F.2d 1381, 1388 (9th Cir. 1977), cert. denied, 435 U.S. 1009, 98 S. Ct. 1883, 56 L. Ed. 2d 392 (1978). As the Ninth Circuit said in Burr v. Sullivan, 618 F.2d 583, 586 (9th Cir. 1980), "The right to confront witnesses guaranteed by the sixth and fourteenth amendments includes the right to cross-examine witnesses to show their possible bias or self-interest in testifying." Although a trial court normally has broad discretion concerning the scope of cross-examination, a certain threshold level of cross-examination is constitutionally required, and in such cases the discretion of the trial judge is obviously circumscribed. As the court in Chipman v. Mercer, 628 F.2d 528

(9th Cir. 1980), overruled on other grounds in <u>United States v. Owens</u>, 789 F.2d 750 (9th Cir. Cal.

1986), said:

> the scope of cross-examination is within the discretion of the trial judge, this
> discretionary authority to limit cross-examination comes into play only after there
> has been permitted as a matter of right sufficient cross-examination to satisfy the
> Sixth Amendment.

<u>Id.</u> (quoting <u>States v. Elliott</u>, 571 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S. Ct. 349,

58 L. Ed. 2d 344 (1978)).

Federal Rule of Evidence 607 provides that "the credibility of a witness may be attacked

by any party." While the use of extrinsic evidence to impeach testimony brought out on

cross-examination is limited, a witness's testimony on direct examination may be impeached by

contradiction through use of extrinsic evidence, such as a rebuttal witness. See <u>United States v.</u>

<u>Castillo</u>, 181 F.3d 1129, 1132-33 (9th Cir. 1999). Such "impeachment by contradiction" attempts

to show the falsity of specific testimony by introducing contradictory evidence. See id. A district

court has "broad discretion over whether to admit extrinsic evidence to rebut a witness's direct

testimony, particularly on a matter collateral to the case." <u>United States v. Chu</u>, 5 F.3d 1244,

1249 (9th Cir. 1993).

The government does not state precisely what evidence it is trying to exclude beyond

"unsubstantiated complaints posted on the Internet ... or other unsubstantiated allegations."  Gov.

Motion at pp. 4-5.  Defendant does not intend to introduce extrinsic evidence of anonymous

internet complaints about Rose Long.  But he must be allowed in inquire of her on cross

examination about whether she has ever sold anyone art that was not authentic. Moeover,

whether she sold art using other names is relevant because she denied selling art using a website

1  when the email address on the site was the same one she used to correspond with Mr. Brugnara

2  before he was arrested in this case.

3  **C.     Gov Motion No. 4: Defendant Must Be Allowed To Impeach Rose Long and Walter**
4  **Maibaum's Credibility Regarding the Authenticity and Value of the Art**

5          The government cannot have it both ways.  It has said for months that Mr. Brugnara is

6  guilty of stealing a very valuable Degas sculpture worth millions of dollars.  The complaining

7  witness in this case, Rose Long, represented to Mr. Brugnara that these were authentic and

8  valuable pieces of art worth millions of dollars.    The federal government would never have

9  charged this case as a federal wire fraud if it did not believe the pieces were valuable and

10  authentic.

11
12          Now the government asks this Court to shield its witnesses, and its case-in-chief, from

13  uncomfortable cross-examination and/or evidence about whether the art Rose Long represented

14  was genuine and valuable is in fact genuine and valuable.    The court should reject this effort as

15  a denial of fundamental fairness and Mr. Brugnara's right to confront and cross examine the case

16  and witnesses against him.  At the point, the government should not be allowed to have it both

17  way.

18
19          Defendant concedes that the government does not have to prove the actual market value

20  of the art that was shipped to Mr. Brugnara as an element in its case in chief.    However, the

21  evidence must be admitted for other reasons.

22
23          Rose Long will tell the jury that she shipped pieces of art to the defendant that were made

24  by; DeKooning, Degas, and other lesser well-known but still famous artists.  Unless the defense

25  is allowed to explore these issue of the art's authenticity and value by cross examination and/or

26  defense evidence, the jury will assume–just hearing the names of very famous artists-- the art is

27
28

valuable.   Defendant must be allowed to try and rebut that assumption. Moreover, Long will

testify that Mr. Brugnara represented to her that he would pay her millions of dollars for the art.

If the art shipped by Long really is genuine and valuable, then the government need not worry

about the strength of its case in chief.   The fact that the government is trying to prevent the jury

from hearing any evidence to the contrary should give this court pause and be rejected..

      The case cited by the government, <u>United States v. Oren</u>, 893 F.2d 1057 (9th Cir. 1990) is

simply inapposite.   The issue presented there was whether the district court correctly refused to

allow a defendant to introduce evidence of the value of a piece of land to show that he did not

intend to cause the victim to pay more than market value.   He claimed that otherwise there was

not intent to defraud.    The Ninth Circuit properly held that an intent to defraud did not require

an intent to cause someone to pay more than market value.

      Here, on the other hand, evidence of the authenticity and value of the art is directly

relevant to the credibility of the government chief witnesses, Rose Long and Walter Maibaum.  It

is therefore imperative that the defendant be allowed to cross examine on those subjects.

**D.**     **Gov Motion No. 5: Defendant Must Be Allowed To Impeach Rose Long**

      Defendant does not intend to argue that Rose Long is gullible.  Quite the contrary.

      Defendant does intend to argue, if the evidence at trial warrants, that Ms. Long and/or Mr.

Maibaum attempted to defraud defendant by selling him art that was not authentic, or was not

valuable, contrary to what he was told.  Such evidence and argument would be relevant to their

credibility and must be allowed.  Fraud is, of course, is a classic example of a crime involving

moral turpitude and therefore an appropriate basis on which to attack a witnesses credibility.  If

defendant were to raise a reasonable doubt whether Mr. Maibaum and/or Ms. Long were

attempting to defraud Mr. Brugnara, they would be allowed to consider that fact in weighing their

testimony.   Counsel will not "blame the victim" as a legal defense, per se, but the credibility of the victim is the entire case against Mr. Brugnara and a proper subject of both cross examination and argument.

**E:    Gov Motion No. 6: Defendant Must Be Allowed To Introduce Evidence Of the Complaining Witnesses Other Misconduct Rising to the Level of Moral Turpitude**

The government seeks to exclude probative and relevant evidence that would tend to show that the two complaining witnesses, Rose Long and Walter Maibaum, are not credibile.

First, Mr. Maibaum has a history of selling art under dubious circumstances.  He bought an alleged Picasso for thousand of dollars and then had his wife sell it just weeks later for millions of dollars.  Christies, the auction house involved in the deal, later sued for recission.  Defendant must be allowed to cross examine Mr. Maibaum regarding his prior fraudulent dealings, particularly when they bear such an obvious resemblance to the facts of this case.  Rose Long pretended to own certain pieces of art and offered to sell them to Mr. Brugnara.  It turns out she did not own all of the art and that it belonged to Mr. Maibaum.   Defendant does not intend to offer extrinsic evidence and turn this into a mini trial on the Christies case.  But it is an appropriate area of inquiry on cross examination.

As to Ms. Long, the government contends–apparently with a straight face--that Ms. Long's conduct in (1) lying to a pharmacist to obtain prescription drugs, and (2) assaulting the arresting officer, is not relevant to her credibility.   Both contentions are wrong.  An officer responded to a pharmacy on a complaint that Rose Long was making a disturbance.  The pharmacist stated that Long erroneously told him her prescription had been given to someone else.   When the officer tried to escort her from the scene she assaulted him.  She was arrested on

misdemeanor charges of disorderly conduct and assault on an officer.  The charges are apparently

still pending and unresolved.

Lying in order to obtain prescription drugs is clearly a crime of moral turpitude and

reflects adversely on a person's credibility.  Ms. Long told a pharmacist that her prescription had

been given to someone else, not to her, but when the Memphis Police Department viewed the

video of the transaction it showed that Ms. Long had in fact picked up the medicine, thus proving

her statement to the pharmacist to be a lie.  Such conduct clearly reflects poorly on her

credibility.  Indeed, lying to obtain prescription drugs could have been charged as a felony if it

happened in the State of California.

Second, although simple assault does not reflect on credibility, aggravated assault is

considered to be a crime of moral turpitude and does reflect negatively on a persons' veracity and

character for truthfulness.  In the Ninth Circuit, an assault on a peace officer is considered an

aggravated assault:

> Some assault statutes, though, have been held to be CIMTs [crimes
> involving moral turpitude]. Those statutes include as an element
> "some aggravating dimension" sufficient to increase the culpability
> of an assault or battery and so to transform the offense into one
> categorically a CIMT. The "aggravating dimensions" recognized as
> sufficiently increasing the culpability of an assault to turn an
> assault into a CIMT have been the use of a deadly weapon, and a
> victim who has a special status or trust relationship vis a vis the
> perpetrator, such as a domestic partner or spouse, a child, or a
> peace officer.  As these categories of cases illustrate, to rise to the
> level of moral turpitude, an assault crime must involve a particular
> type of aggravating  factor, one that says something about the
> turpitude or blame-worthiness inherent in the action.

Uppal v. Holder, 605 F.3d 712, 716 (9th Cir. 2010)(internal citations omitted; emphasis added);

see also Nunez v.Holder, 594 F.3d 1124, 1131 & n.4 (9th Cir. 2010).

1    Defendant must therefore be allowed to cross examine Rose Long about (1) her

2  fraudulent attempt to obtain prescription medicine, and (2) her subsequent assault on the

3  arresting officer.   Such evidence is relevant to and probative of her credibility.

4                                **CONCLUSION**

5    Based on the foregoing, defendant requests that the government's motions in limine be

6  denied.

7

8  DATED: December 3, 2014 _____  /S/Erik Babcock

9  _____  ERIK BABCOCK
                                           Attorney for Defendant
10                                          LUKE BRUGNARA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28