IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LUKE D. BRUGNARA,<br><br>    Defendant.<br>                                             / | No. CR 14-00306 WHA<br><br>**FINDINGS ON ATTORNEY-CLIENT PROCEDURES AT GLENN DYER DETENTION CENTER AND ORDER ON DEFENDANT'S APPEAL OF MAGISTRATE'S DETENTION ORDER** |

    At the pre-trial conference, Attorney Erik Babcock, appointed under our CJA program to represent the accused, stated he had experienced unreasonable obstacles in trying to meet with Luke Brugnara, his client, at the Glenn Dyer Detention Facility in Alameda County. Attorney Babcock also complained that jail staff confiscated a redweld of discovery documents that he had left with defendant during their contact visit on December 9, 2014.

    On December 12, 2014, the Court held an evidentiary hearing to determine what happened during Attorney Babcock's visits with defendant at Glenn Dyer and to get to the bottom of recurring complaints and outbursts by the accused in open court concerning jail restrictions that allegedly interfere with his ability to have effective representation. The government presented the testimony of four Glenn Dyer staff members who are familiar with the process for attorney-client visits and exchange of documents at the jail. Attorney Babcock and

defendant also testified at the hearing. The government submitted supplemental briefing containing declarations from Glenn Dyer staff.

This order also resolves a related matter, a second appeal from an order of Magistrate Judge Nat Cousins again denying pre-trial release, the appeal based in part on allegedly unreasonable conditions at Glenn Dyer.

We have held more than sixteen different hearings in this case since this prosecution began on May 27, 2014. The substance of those hearings is detailed in the Court's most recent detention order (Dkt. No. 169), which our court of appeals recently affirmed. *United States of America v. Luke D. Brugnara*, No. 14-10483, slip op. (9th Cir. Dec. 9, 2014). In brief, in this fraud prosecution, defendant was released pending trial to a halfway house and promised to abide by whatever conditions the Court imposed. Defendant violated several of those conditions and was eventually remanded into custody. Defendant's latest argument to get out of pre-trial detention excoriates conditions at Glenn Dyer jail.

Based on the evidence presented at the hearing, the Court finds that defendant has not demonstrated that the conditions imposed at Glenn Dyer unduly interfere with effective representation. Defendant's appeal of Judge Cousins' detention order is **DENIED**.

### 1. Visiting Hours and Document Procedures at Glenn Dyer.

Defendant's motion makes two general allegations regarding the procedures in place at Glenn Dyer: (1) attorney-client visiting hours are inadequate; and (2) defendant does not have sufficient access to written discovery.

At the evidentiary hearing, Glenn Dyer personnel described the way in which attorneys visit with their clients. Lieutenant Yesenia Sanchez, the executive officer of Glenn Dyer, and Sergeant James LaRosa, the administrative sergeant at Glenn Dyer, testified about the attorney-inmate visitation procedures. Based on this testimony, the Court finds as follows.

Attorneys can conduct either contact visits or non-contact visits with their clients at Glenn Dyer. Contact visits take place in one of two interview rooms at the facility, each of which contains two chairs or stools and a table, the one with chairs being more comfortable than the one with stools, but both being adequate. Typically, Glenn Dyer requires attorneys to

schedule contact visits at least 24 hours in advance, but the staff will try to accommodate last-minute requests, sometimes with success and sometimes not. Contact visits are also typically limited to two hours, but the Court finds that the time limit will usually be extended upon request. In this case, the United States Marshal states that an arrangement has been made to allow counsel for the accused to have up to these hours. There is no limit on the number of days in a week that an attorney may have contact visits (subject to room availability).

Non-contact visits occur in one of the facility's visiting rooms, which are on each jail floor. During a non-contact visit, attorney and client are separated by a glass screen (with no pass-through slot for documents and no phone). Non-contact visits do not need to be scheduled in advance. Attorney visiting hours for both contact and non-contact visits are from 9 A.M. to 3 P.M. and from 5:30 P.M. to 10 P.M., seven days a week.

An attorney limitation on non-contact visits is that they cannot take place during family and friend visiting hours, which occur for three hours on either Thursdays and Saturdays *or* Fridays and Sundays, depending on which floor the inmate is housed. During contact visits, counsel may bring documents and go over those documents with the client, but counsel must take the documents when counsel leave. The Court agrees that non-contact visits are adequate for routine meetings but agrees with the accused that they would be inadequate when extensive documents need to be discussed. For the latter case, however, contact visits are available (contact visits by attorneys are available regardless of the number of documents to be reviewed).

All written discovery or other material that an attorney wishes to go back to an inmate's cell must go through the Inmate Services Department. There are three ways in which an attorney can physically transfer documents to an inmate for such use. *First*, an attorney can mail the documents to Inmate Services at the jail. The lawyer is supposed to remove any staples, binder clips, paper clips, or any other inappropriate content. If the lawyer neglects to do so, Inmate Services will remove the inappropriate material, but this may slow down the delivery of the documents to the inmate. Once Inmate Services receives the package, this security process typically takes a day at most. *Second*, an attorney can physically bring the documents, pre-cleared of clips and staples, to Inmate Services during its operating hours, which are from 7

1 A.M. to 3 P.M. on weekdays. Inmate Services will then remove any contraband contained in the documents, as described above, and deliver the documents to the inmate. *Third*, if an attorney visits Glenn Dyer when Inmate Services is closed, the attorney can leave the documents with the lobby staff, who will forward the documents to the Inmate Services Department.

There is no limit on the number of documents an attorney can deliver to Glenn Dyer for an inmate's review. For fire safety reasons, however, an inmate may only have two banker-sized boxes in the cell at one time. Any additional documents will be housed in an inmate's property file. The inmate may swap any box in the cell for a different box in the property room by making a written request with Inmate Services. Moreover, the Court finds that attorneys and inmates may review discovery during both contact visits and, with varying degrees of difficulty, during non-contact visits.

Inmates who have a voluminous amount of discovery may make arrangements with Inmate Services to use the "discovery room" to review documents. This allows inmates to review more than two boxes at one time. Inmates are allowed to bring pencils and scratch paper into the discovery room, but cannot bring any documents back to their cells. While defendant has not requested use of this room, the government states in its briefing that it has now made arrangements for defendant to use the discovery room Monday through Thursday, from 8 A.M. to 2 P.M. (Sanchez Decl. ¶ 11).

### 2. Defense Counsel's Experience at Glenn Dyer.

In his motion, Attorney Babcock states that the hours available for contact visits are "between 8 A.M. to 11:30 A.M., and 12:30 P.M. to 3 P.M." and that non-contact visits are between "9 A.M. to 11:30 A.M. and 12:30 P.M. to 3 P.M." (Br. 5).

This is not accurate. As stated above, and eventually made clear from the witnesses' testimony, attorney visiting hours for both contact and non-contact visits are from 9 A.M. to 3 P.M. and from 5:30 P.M. to 10 P.M., seven days a week. In fact, while Attorney Babcock claims that the visiting hours are inadequate, he does not cite any example of his being denied a request to visit his client based on visiting hours or space availability. Although two contact interview

4

1 rooms may well be insufficient for 250–400 inmates, the fact remains that Attorney Babcock has
2 not cited one instance in which this has bene an issue.

3       The Glenn Dyer visit logs are revealing. Since Attorney Babcock became defendant's
4 attorney in July, he scheduled two contact visits before the pre-trial conference held on
5 December 10. *First*, Attorney Babcock scheduled a contact visit on August 14, but he failed to
6 show up for that visit. *Second*, Attorney Babcock scheduled a contact visit on December 9, and
7 conducted a two-hour contact session with defendant on that date. The logs show that Attorney
8 Babcock has additionally had ten non-contact visits with defendant over the last five months.
9 Moreover, Attorney James Stevens, a younger attorney appointed by the Court under the CJA
10 Act to assist Attorney Babcock, has had four non-contact visits with defendant. Again, defense
11 counsel does not cite to any specific instance in which the lack of visiting hours prohibited him
12 from seeing defendant (Govt. Exhs. 3–4).

13       Defense counsel also states that with the current procedures in place at Glenn Dyer,
14 defendant "cannot possibly review but a small fraction of the more than 12,000 pages of
15 discovery in this case in the next three weeks before trial" (Br. 5). This order rejects this
16 assertion. As stated above, defendant can have two boxes of documents in his cell at any time.
17 He can swap out the boxes with others in the property room as he goes through them. He can
18 arrange with Inmate Services to use the discovery room. And he can review additional discovery
19 during attorney visits. Moreover, Attorney Babcock has had months to provide this discovery to
20 defendant (trial continuances have previously been granted on the assumption that counsel would
21 do whatever would be needed to be ready for the trial date defense counsel himself requested).

22       Defense counsel's one specific discovery-related complaint stems from the contact visit
23 on December 9. At the end of Attorney Babcock's contact visit with defendant, he left a redweld
24 with several documents with defendant for his review. These had not been pre-cleared by
25 Inmate Services, so these documents were soon confiscated from defendant, placed in
26 defendant's personal property locker, and defendant was told he could make a formal request for
27 the documents from Inmate Services. Defendant did not make such a request. After the
28

5

complaint arose at the Court's December 12 hearing, Inmate Services processed the documents and provided them to defendant by 5 P.M. on that day.

No doubt, the incident is irritating but, simply put, Attorney Babcock did not follow the rules. As stated above, any documents an attorney wishes to leave with an inmate must first go through Inmate Services. There are valid security reasons for maintaining this rule. Attorney Babcock replies that he told a guard who escorted him from the front desk to the interview room that he would like to leave the documents with his client and the guard somehow approved the request. Accepting this at face value for the sake of argument, the fact remains that Attorney Babcock knows the rules, has been going to Glenn Dyer for 20 years, and his office is two blocks from the jail. He is not free to disregard the known procedures just because he proposed a deviation to a hallway guard who seemed to acquiesce in the proposed violation. If Attorney Babcock wishes to deliver documents to his client, he should follow the rules and send them through Inmate Services. There has been plenty of time in this case to do it right.

Lastly, the conversation that occurred between the accused and Deputy Matthew Campi on December 11 is noteworthy. Defendant told Deputy Campi, the day before the evidentiary hearing, that defendant would be making unreasonable complaints and requests in an effort to be released from custody. Deputy Campi testified that defendant told him that defendant knew his grievances were "unreasonable . . . and that [because] we couldn't accommodate his grievances and requests, that he may be garnered a greater ability to be posting bail." Defendant testified Deputy Campi misunderstood his words. The Court finds, however, that this conversation took place as described by Deputy Campi.

This jailhouse remark is emblematic of a pattern by the accused in this case of making accusations — usually blurted out during outbursts in open court — against the jail, the prosecutors, the pre-trial services officer, the magistrate judge, the district judge, at least one appellate judge (on the panel affirming the detention order), the witnesses against him, and even his own attorney. These accusations have typically been, to be generous, greatly exaggerated, and, to be candid, false and misleading, as shown in many evidentiary hearings held herein to get to the bottom of them. Recently, for example, defendant blurted out that he'd only met Attorney

6

Babcock "one time in seven months." He made this claim several times (Tr. 117, 139, 141, 171). When the evidentiary hearing was held to inquire into the jail conditions, however, the jail records plainly showed that there had been eleven visits by Attorney Babcock and four by Attorney Stevens (Govt. Exh. 3). Lamely, the accused retreated to saying that he had not counted non-contact visits (Tr. 161).

This leads to one last point — if there is an appeal, the appellate judges may be taken aback by the accused's many outbursts complaining about his attorney and/or others and may wonder whether the accused was denied effective assistance of counsel or was otherwise mistreated. Please, in that event, be mindful that the accused has a history and pattern of making exaggerated, untrue, and groundless complaints — the remark to Deputy Campi reveals their true purpose: to insinuate error or to game the system — and please be aware of the many times judges on this district court have heard evidence to determine the extent to which his grievances have any merit.

**CONCLUSION**

For the reasons stated above, the Court finds that defendant has failed to show that the conditions at Glenn Dyer unconstitutionally interfere with trial preparation. For the same reason, defendant's appeal of Magistrate Cousins' detention order is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 19, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE