**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

LUKE D. BRUGNARA,

    Defendant.

                            /

No. CR 14-00306 WHA

**MEMORANDUM OPINION AND FURTHER ORDER RE DEFENDANT'S EXERCISE OF HIS CONSTITUTIONAL RIGHT TO PROCEED *PRO SE*; APPOINTMENT OF ATTORNEYS JAMES STEVENS AND RICHARD TAMOR AS ADVISORY COUNSEL**

**INTRODUCTION**

This criminal fraud and perjury prosecution, involving innumerable pretrial hearings, would have gone to verdict by now save and except for the fact that the accused absconded while on furlough from pretrial detention. After the United States Marshals tracked him down and returned him to custody, his lawyer moved to withdraw, which had to be granted. Rather than accept a new free lawyer, the accused demanded to waive his right to counsel and represent himself. A main purpose of this memorandum opinion is to set forth the procedural history leading to this decision and to the two-day *Faretta* hearing employed to vet the accused's decision.

**STATEMENT**

This prosecution began with a mail fraud indictment issued in June of 2014. For most of the time, the accused has been in pretrial detention, a decision affirmed by our court of appeals.

United States District Court

For the Northern District of California

1   Federal Public Defender Brandon LeBlanc was appointed to represent defendant and a trial was

2   set for July 23.  Then, at an evidentiary hearing before trial, defendant testified that Attorney

3   LeBlanc had blessed the plan for defendant to maintain possession of the artwork at issue.  This

4   made Attorney LeBlanc a potential witness in the case, necessitated his moving to withdraw, and

5   led to the appointment of new counsel.

6          Attorney Erik Babcock was next appointed to represent the accused and a trial was set for

7   August 4.  Two weeks before that date, the grand jury issued a superceding indictment, adding

8   wire fraud and false statement charges.  As a result, the trial was continued to September 17.

9   Several weeks later, Attorney Babcock stated that he could not be ready for that date and the trial

10  was continued to October 22.  Time passed.  Due to a conflicting trial for another client,

11  Attorney Babcock requested another continuance to January 5, to ensure he could adequately

12  prepare for defendant Brugnara's trial.  To help the defense prepare for trial, the undersigned

13  judge put in place a procedure so the accused could be furloughed (in civilian clothes) to the

14  custody of Attorney Babcock for the sole purpose of meeting in the attorney lounge at the federal

15  building for trial preparation (Dkt. No. 257).  Despite this, Attorney Babcock again told the

16  Court that he could not be ready for a January 5 trial date.  The trial was continued to February

17  26 (necessitating the re-alignment of prosecutors due to the departure of the lead prosecutor at

18  the end of January).  The defense was warned that no more continuances would be granted.

19         On February 5, however, the accused absconded while on furlough, leaving the federal

20  building and remaining at large for six days until caught by U.S. Marshals.  In subsequent

21  hearings, the accused has blurted out that Attorney Babcock "greenlighted" his dash out of the

22  courthouse.  The grand jury issued a second superceding indictment, adding escape and

23  contempt charges.  Attorney Babcock moved to withdraw and the undersigned judge granted his

24  motion (since Attorney Babcock will likely be a witness to whether he "greenlighted" the

25  absconding).

26         Attorney Jeffrey Bornstein was then appointed to represent defendant.  Only one week

27  later, he moved to withdraw from the case, due to a severe personal conflict in style.  This

28  motion was heard in camera, in part, and ultimately granted.

United States District Court

For the Northern District of California

1    Defendant then expressed that he wished to proceed *pro se.*  A *Faretta* hearing was set

2    for the following week.  While defendant had blurted out in previous hearings that he "wanted to

3    go *pro se*," he had always thought better of these requests and made up with counsel.  This time,

4    however, defendant remained adamant about his desire to waive his right to counsel.  The Court

5    asked Attorney Bornstein to attempt to reconcile his differences with defendant and to explain to

6    him the dangers of waiving his right to counsel.  This was done.  Attorney Bornstein reiterated

7    his need to withdraw from the representation and his motion to withdraw was granted.

8    In anticipation of Attorney Bornstein's withdrawal, the Court inquired as to whether

9    Attorney George Boisseau would be willing to take on the representation, as defendant's fourth

10   attorney in less than eight months.  Attorney Boisseau stated that he would take the case, could

11   be ready for a July 6 trial date (but not sooner), and appeared at both days of the *Faretta* hearing.

12   Although Attorney Bornstein had explained the dangers of self-representation to the

13   accused, the Court understood its duty under *Faretta* and held a hearing devoted to that issue,

14   covering two days, on March 24 and 26.  At the hearing, defendant was made aware of the nature

15   of the charges against him, the possible penalties, and the dangers and disadvantages of self-

16   representation.  The undersigned judge stressed to defendant that he would have difficulty

17   preparing for trial from jail and thoroughly explained the consequences of waiving his right to

18   appointed counsel.  Sergeant Daniel Dixon of Glenn Dyer jail testified at the second day of the

19   hearing.  He meticulously described the restrictions and privileges available to *pro se* defendants

20   at Glenn Dyer.  Sergeant Dixon also entered into the record a four-page document laying out the

21   procedures for *pro se* defendants at Glenn Dyer.  Defendant took the time to read this document,

22   stated that he understood it, and reiterated his unequivocal request to proceed *pro se*.

23   During the *Faretta* colloquy, the Court made clear to defendant that he could have

24   Attorney Boisseau, one of the finest trial lawyers in California, represent him free of charge.

25   Attorney Boisseau met the accused, talked with him, and stood beside the accused at the *Faretta*

26   hearing.  However, the Court also made clear that Attorney Boisseau would not be able to come

27   up to speed and try the case until at least July 6 — nor could any other new attorney in this case.

28   The Court further stressed that while it would attempt to make an April 27 trial date work, if the

3

United States District Court

For the Northern District of California

1   accused represented himself, it could not guarantee that trial would begin on that date even if

2   defendant proceeded *pro se*, and that defendant should not make his decision based on the

3   premise of an April 27 trial date.  The accused was advised that he had a clear choice to go with

4   Attorney Boisseau standing then beside him or to forego that opportunity and to exercise his

5   right to self-representation.  He chose to represent himself.

6        While neither party made a motion for a mental competency exam, the Court, on its own,

7   raised the issue.  Defendant remained vehement that he was and is mentally competent to

8   represent himself.  The Court agrees.  While defendant frequently has outbursts and is

9   confrontational in open court, these actions are part of his strategy of "persistence wears down

10  resistence," as he himself put it.  The Court has become extremely familiar with defendant,

11  having presided over his original tax fraud case, as well as this case, which has consisted of more

12  than twenty hearings.  Thus, the Court has a good layman's sense of the true mental competency

13  of the accused and this order finds, as he himself maintains, that defendant is mentally competent

14  to represent himself at trial and to waive his right to counsel.  Defendant is a forceful, pushy, and

15  demanding man who tries to bull his way through — but he is mentally competent and insists

16  (correctly) that he is.

17       Based on defendant's responses at the *Faretta* hearing, this order finds as follows:

18  Defendant understands the charges against him and the possible penalties.  Defendant

19  understands the dangers and disadvantages of self-representation.  Defendant understands that he

20  has a constitutional right to a free lawyer, but has refused one.  Defendant has unequivocally and

21  voluntarily waived his right to a lawyer and has unequivocally and voluntarily exercised his

22  constitutional right to represent himself.  Defendant understands the consequences of his

23  decision and is mentally competent to make this decision.

24       During the *Faretta* hearing, defendant was told that he had no right to advisory or

25  standby counsel, and that he should not proceed *pro se* with the expectation that he would be

26  provided with the help of a lawyer.

27       Nevertheless, after defendant fully waived his right to appointed counsel, the Court, in its

28  discretion, appointed Attorney James Stevens in a limited role to assist with the mechanics of

4

**United States District Court**
For the Northern District of California

transacting documents.  Attorney James Stevens is allowed to act as a paralegal for defendant, to

be paid at a rate of $85/hour.  Stevens is authorized to spend a maximum of fifteen hours per

week on this case.  Stevens' duties are as follows:

- assist with the transition of documents to and from defendant (including subpoenas and other court documents, as well as helping defendant file documents under seal);

- ensure that defendant is provided with copies of the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the Criminal Local Rules;

- Stevens shall meet with defendant twice a week for a maximum of one hour to transfer documents back and forth (once on either Monday or Tuesday and once on either Thursday or Friday of each week, at the discretion of Stevens);

- Stevens shall meet with the investigator who has been involved with the case and pass on any information and documents from the investigator to defendant, redacting any social security numbers and dates of birth;

- watch any video discovery with defendant during visits, abiding by the Glenn Dyer procedures for *pro se* defendants;

- ensure that defendant has copies of all discovery produced by the government that defendant does not currently have (including the witness list the government produced for the pretrial conference in December).

- assist with the facilitation of loading an MP3 player with audio calls, upon request of defendant for duplication and processing funds — this includes Stevens dropping off and picking up the materials to be loaded onto the MP3 player at Colour Drop — defendant, however, will be responsible for preparing the ex parte application and order directing Glenn Dyer to allow him to have access to the MP3 player.

Under no circumstances may Stevens conduct any legal research for defendant, assist

defendant in preparing a bail motion, assist defendant in preparing an appeal, or fill out any

subpoena forms for defendant (though Stevens may bring the forms for defendant to fill out

himself and Stevens may fill out the address portion of the subpoena forms for defendant).

Because Attorney Stevens has limited experience, the Court sought out one of the

esteemed members of our Criminal Justice Act panel, Richard Tamor, to act as advisory counsel

to the accused in the ways spelled out below.  Attorney Tamor's role shall be as follows:

Attorney Tamor shall meet a maximum of twice per week with defendant in order to

provide technical assistance to help him prepare for trial.  He shall also attend all hearings,

attend each day of the trial, and be available for consultations with the accused.

5

**United States District Court**
For the Northern District of California

1    "Technical assistance includes":

2          A.    Informing defendant of the format of motions or other pleadings or

3                documents;

4          B.    Informing defendant of technical pre-trial and trial procedure (*i.e.*, format

5                and phases of discovery and trials);

6          C.    Providing materials available on the Northern District of California

7                website;

8          D.    Answering questions regarding non-legal technical aspects;

9          E.    Explaining the rules of evidence, local rules, criminal rules, and how they

10               pertain to trial procedure.

11    Attorney Tamor will not make any arguments or representations on defendant's behalf or

12    sign any pleadings or any other documents on his behalf to this Court, any other court, agency or

13    entity.

14    Attorney Tamor  will not under any circumstances provide any substantive legal advice

15    of any kind or nature.

16    "Substantive legal advice" includes, but is not limited to:

17         A.     legal research;

18         B.    drafting, preparing, reviewing, responding to or researching of any

19               pleadings or motions whatsoever;

20         C.    giving any strategical advice whatsoever;

21         D.    drafting, preparing, or responding to motions in limine;

22         E.    giving advice regarding the admissibility of evidence; and/or

23         F.    giving advice regarding jury instructions.

24    Attorney Tamor will not act as a messenger, paralegal, or administrative assistant and

25    will not act or function as a messenger or conduit between defendant and the Court or

26    government counsel or any other agency or entity (but Attorney Stevens has responsibilities in

27    this regard).

28

6

1    Attorney Tamor will be appointed and compensated pursuant to the Court's inherent

2  authority as an expert consultant under 5 U.S.C. Section 3109, and not under the Criminal

3  Justice Act.  Attorney Tamor will therefore serve exclusively on behalf of the Court to protect

4  the integrity and continuity of proceedings and again does not represent defendant.

5

6

7    **IT IS SO ORDERED.**

8

9  Dated: April 2, 2015.

    WILLIAM ALSUP
10   UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

7