MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROBIN L. HARRIS (CABN 123364)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    robin.harris2@usdoj.gov
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 14-0306 WHA |
| Plaintiff, | |
| v. | **UNITED STATES' FURTHER MOTIONS IN LIMINE** |
| LUKE D. BRUGNARA, | Trial Date: April 27, 2015 |
| Defendant. | Pretrial Date: April 22, 2015 |
| | Court: Hon. William H. Alsup |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................II

ARGUMENT ........................................................................................................................1

    A.     Motion *in Limine* No. 1 – Portions of the Video Deposition of Natalia Shlyapina Should Be Admitted.................................................................................1

    B.     Motion *in Limine* No. 2 – Business Records Should Be Admissible as Authentic, Non-Hearsay. ..................................................................................3

    C.     Motion *in Limine* No. 3 – Defendant's Prior Statements in Court and Court Filings Should Be Admissible as Authentic, Non-Hearsay. ...............................4

    D.     Motion *in Limine* No. 4 – Evidence Regarding How Defendant's Felony Status Affected His Creditworthiness Is Admissible..........................................5

    E.     Motion *in Limine* No. 5 – Defendant Should Be Precluded from Referencing Punishment, His Custodial Status, His Pro Se Status, Hearsay Statements about His Case, and Other Irrelevant or Inadmissible Facts...............................5

    F.     Motion *in Limine* No. 6 – Extrinsic Character Evidence of Victims Should Be Excluded. ....................................................................................................6

    G.     Motion *in Limine* No. 7 – Expert Testimony on Valsuani Degas Should Be Excluded. ....................................................................................................9

CONCLUSION.....................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Halbert*,
    640 F.2d 1000 (9th Cir. 1981) .................................................................................. 8

*United States v. Keiser*,
    57 F.3d 847 (9th Cir. 1995) ...................................................................................... 8

*United States v. McCourt*,
    925 F.2d 1229 (9th Cir. 1991) .................................................................................. 7

*United States v. Wacker*,
    72 F.3d 1453 (10th Cir. 1995) .................................................................................. 5

## STATE CASES

*Christie's Inc. v. SWCA, Inc.*,
    867 N.Y.S.2d 650 (N.Y. Sup. Ct. 2008) ................................................................... 7

## FEDERAL RULES

Fed. R. Evid. 403 ................................................................................................................ 9

Fed. R. Evid. 404(a) ........................................................................................................... 7

Fed. R. Evid. 404(a)(1) ...................................................................................................... 7

Fed. R. Evid. 404(a)(2) ...................................................................................................... 7

Fed. R. Evid. 404(a)(3) ...................................................................................................... 7

Fed. R. Evid. 405 ................................................................................................................ 8

Fed. R. Evid. 405(a) ........................................................................................................... 8

Fed. R. Evid. 405(b) ........................................................................................................... 8

Fed. R. Evid. 608(b)(2) ...................................................................................................... 9

Fed. R. Evid. 801(d)(2)(A) ................................................................................................. 4

Fed. R. Evid. 902(11) ......................................................................................................... 3

Federal Rules of Evidence 803(6) ..................................................................................... 3

Federal Rules of Evidence 902(1) ..................................................................................... 4

**INTRODUCTION**

In anticipation of earlier trial dates, the government previously filed, and this Court resolved, six motions in limine. Dkt. 224. The government now files seven further motions in limine, requesting that (1) portions of the video deposition of Natalia Shlyapina be admitted into evidence, along with the transcript of those portions of the video that are admissible; (2) the Court rule that various business records are authentic and not hearsay, and thus admissible barring objections on other grounds to be raised at trial; (3) the Court rule that defendant's various statements made in filings to this Court or on the record, as recorded in transcripts, are authentic and not hearsay if offered by the government, and thus admissible barring objections on other grounds to be raised at trial; (4) the Court rule that defendant's statements to Jennifer James or other witnesses regarding how his felony status has affected his creditworthiness are admissible; (5) defendant be precluded from referencing his custody, punishment, representation status, or various other irrelevant facts to the jury; (6) the Court exclude the testimony of defendant's extrinsic character or impeachment witnesses; and (7) the Court exclude the testimony of defendant's Degas experts.

The facts of this case are well-known. Defendant is charged with four counts of wire fraud (Counts One through Four) and one count of mail fraud (Count Five) in connection with his allegedly fraudulent purchase of fine artwork by Edgar Degas, Willem de Kooning, Joan Miró, Pablo Picasso, and George Luks. Defendant is also charged with two counts of making false declarations to a court (Counts Six and Seven), regarding defendant's testimony that he "heard back" from a Sotheby's employee the weekend of April 4–6, was told that some of the artwork was "not authentic," and then phoned Rose Long and informed her of this information. Defendant is charged with one count of escape (Count Eight) and one count of contempt (Count Nine) arising from his escape and absconding from the custody of Attorney Erik Babcock in the federal building on February 5, 2015, three weeks in advance of trial.

**ARGUMENT**

**A.  Motion in Limine No. 1 – Portions of the Video Deposition of Natalia Shlyapina Should Be Admitted.**

Defendant moved to exclude the entirety of Natalia Shlyapina's Rule 15 deposition from evidence based on Rule 15(e)(3) and the Jencks Act. Dkt. 362 at 1–2; Dkt. 315. The government

separately responded to that motion. Dkt. 397.

The government moves that the relevant portions of Ms. Shlyapina's testimony be admitted, and seeks a ruling on what is admissible so it can appropriately edit the DVD of the testimony for trial. The transcript of her deposition is attached as Exhibit 1, with the portions that the government seeks to admit highlighted.

The government seeks to admit the entirety of the Ms. Shlyapina's introduction and background, from page 7, line 3 through page 13, line 20. Defendant did not object to that testimony. The government also seeks to admit the entirety of Ms. Shlyapina's testimony on how she met defendant and her relationship with him, from page 13, line 21 through 24. Defendant objected to parts of that testimony based on relevance, but the existence of a relationship between defendant and Ms. Shlyapina is plainly relevant. It explains how she knew defendant, and helps establish why defendant would confide in her and provide her with a book he received as part of this transaction. It also goes to her credibility—that she is now offering testimony that harms defendant despite her prior romantic relationship with him only makes her more credible as a witness.

The government does not seek to admit that defendant is the father of Ms. Shlyapina's child at this time. However, the government may do so if defendant puts it at issue in some way—for example, by denying it or stating that he is a family man and that all he cares about is his family.

The government also seeks to admit the discussion of defendant's job status during their relationship and some of his statements regarding the delivery of the artwork, from page 19, line 1 through page 21, line 17. Defendant did not object to this testimony.

The government does not seek to admit defendant's self-serving statements regarding Rose Long, as relayed by Ms. Shlyapina, that appear on page 21, line 18 through page 22, line 7. These statements are hearsay if offered by defendant.

The government then seeks to admit much of the remainder of the direct examination, page 22, line 8 through page 26, line 1. This portion includes defendant's statements about what artwork he was receiving and his delivery of the Hermitage Museum book to Ms. Shlyapina, her visual identification of defendant, and her identification of the phone number at which defendant contacted her.

The government may seek to admit defendant's stipulation to the authenticity of and voices on

the jail calls between defendant and Ms. Shlyapina, discussed on page 27, line 5 through line 21.

The government does not seek to admit the discussion of what happened in the lobby of the federal building on the day of the deposition.

The government moves to exclude the entirety of Attorney Babcock's cross-examination and further examinations of Ms. Shlypina, which only concerned whether she loved defendant (or had stated as such) or whether she talked to FBI agents about defendant and whether those agents tried to dissuade her from having a relationship with defendant. These portions of the deposition are not relevant to this case or to Ms. Shlyapina's credibility as a witness.

### B. Motion in Limine No. 2 – Business Records Should Be Admissible as Authentic, Non-Hearsay.

The government moves for this Court to hold that six sets of business records are authentic and non-hearsay under Federal Rules of Evidence 803(6) and 902(11). They include the following records:

(1) AT&T records for defendant's cellular phone;

(2) AT&T records for the "burner" cellular phone that defendant obtained after he escaped from the federal building on February 5, 2015;

(3) Verizon records for the phone of Abidja (a/k/a "Jameth" or "Jamie") Record, from February 1, 2015 (shortly before defendant's escape) through defendant's apprehension on February 11, 2015;

(4) Bank of America records for defendant's personal bank account;

(5) Wells Fargo records for an account associated with Brugnara Properties VII; and

(6) Wells Fargo records for the mortgage on 224 Sea Cliff.

The Rule 902(11) certifications for each set of records, along with a sample page from the records, are attached as Exhibit 2.

Under Rule 902(11), these records can be authenticated without extrinsic evidence when they include a certification that meets the requirements of the business records hearsay exception at Rule 803(6). Fed. R. Evid. 902(11). They are also excepted from the hearsay rule under Rule 803(6) if they include such a certification. Fed. R. Evid. 803(6). Each of these five sets of records includes such a certification, establishing, pursuant to Rule 803(6), that: (A) the records were made at or near the time

United States' Further Motions in Limine
CR 14-0306 WHA                             3

of the events depicted in them by someone with knowledge; (B) they were kept in the course of regularly conducted activity of the relevant business; and (C) making the record was a regular practice of that business activity.  Ex. 2.  Admitting these records pursuant to these rules will streamline the trial and may avoid the need to call custodians of records.

### C. Motion in Limine No. 3 – Defendant's Prior Statements in Court and Court Filings Should Be Admissible as Authentic, Non-Hearsay.

The government intends to use, in its case-in-chief, statements that defendant has made in written filings on the record and in oral statements, both sworn and unsworn, made on the record during various hearings in this matter, including but not limited to his testimony at his revocation hearing on June 17, 2014 and June 18, 2014.  These various statements are not hearsay so long as they are introduced by the government and not defendant.  Many will be introduced not for the truth of the matter asserted but for the fact that defendant made the statements.  To the extent they are introduced for the truth of the matter asserted, they are covered by Federal Rule of Evidence 801(d) as statements by a party opponent.  See Fed. R. Evid. 801(d)(2)(A).

Defendant's statements at various court hearings will be introduced via copies of the official court transcripts of the relevant hearings pursuant to Federal Rules of Evidence 902(1) and 902(4).  These two rules allow for the authentication via seal or certification of public documents.  Rule 902(1) provides that "[a] document that bears: (A) a seal purporting to be that of the United States . . . or a department, agency, or officer of any entity named above; and (B) a signature purporting to be an execution or attestation" requires no extrinsic evidence of authenticity to be admitted.  Similarly, Rule 902(4) provides that "[a] copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by: (A) the custodian or another person authorized to make the certification; or (B) a certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court" also requires no evidence of authenticity to be admitted.

The government has procured or will procure certified, signed, and sealed copies of the relevant transcripts and filings that it intends to introduce as evidence from the Office of the Clerk of the Northern District of California.  These documents meet the requirements of Rule 902.  They are

United States' Further Motions in Limine
CR 14-0306 WHA                          4

admissible at trial at any time barring other objections, and the government can move and read them into the record when it deems appropriate. The statements that the government intends to introduce in its case-in-chief will be identified in the United States' Preliminary Exhibit List.

### D. Motion in Limine No. 4 – Evidence Regarding How Defendant's Felony Status Affected His Creditworthiness Is Admissible.

As the government explained in Dkt. 400 at 6–8; Ex. 3 (defendant's 2013 submission to Jennifer James), defendant made both oral and written statements to his former probation officer, Jennifer James, explaining that his creditworthiness had been negatively affected by his convictions, among other reasons. These statements directly contradict his testimony at the Form 12 hearing, and other statements he has made, that he could obtain a loan to buy the artwork at any time. The government has also interviewed at least one witness who would testify that he informed defendant prior to the events at issue in this case that his felon status would affect his ability to get a loan.

This evidence is strongly probative of defendant's intent to defraud. The government is entitled to rebut defendant's false exculpatory explanation for his fraud, even if doing so puts into evidence the fact that defendant was previously convicted. The precise nature of the convictions may not be necessary to prove this point and the government can limit the evidence to exclude references to the substance of defendant's prior convictions (unless he testifies). See United States v. Wacker, 72 F.3d 1453, 1472 (10th Cir. 1995) (holding that the "use of a redacted record, stipulation, affidavit, or other similar technique whereby the jury is informed only of the fact of a prior felony conviction, but not the nature or substance of the conviction" avoids risk of unfair prejudice). The government moves to admit this evidence through Jennifer James or other witnesses to whom defendant made similar comments or who made similar comments to defendant.

### E. Motion in Limine No. 5 – Defendant Should Be Precluded from Referencing Punishment, His Custodial Status, His Pro Se Status, Hearsay Statements about His Case, and Other Irrelevant or Inadmissible Facts.

As this Court is aware, defendant regularly engages in lengthy monologues in court on certain subjects which would not be appropriate to discuss or introduce as evidence during a trial. Many of these are topics that a lawyer would not reference during a trial, but that a pro se defendant may.

This Court previously granted the government's motion to preclude any references to potential

punishment. Dkt. 224 at 5. The government respectfully requests that the Court also preclude defendant from referencing his current or prior custodial status, his pro se status, and his prior relationships or disputes with his attorneys. For example, defendant may (falsely) state, in an attempt to garner sympathy from the jury, that he only went pro se because this Court "fired" all of this lawyers. He may complain, as he does regularly, that he has been mistreated and treated unjustly by being held in detention pretrial. He may discuss his conditions of confinement during his prior federal sentence at FCI La Tuna and Texarkana. Any of these subjects would plainly be irrelevant and inappropriate to reference to the jury, whether in argument, examination, or testimony.

Defendant also has a tendency to (likely falsely) restate hearsay facts about his case. Defendant is, of course, allowed to introduce statements made to him to the extent that they go to his mental state. But he is not permitted to introduce hearsay statements for other purposes. For example, defendant will frequently state in court that his attorneys have informed him about some particular aspect of his case— or the entire prosecution—being unjust or wrong in some manner. Those statements are hearsay. He will state that he read something on the Internet, or in a newspaper article, or elsewhere, about one of the victims. Those statements are hearsay. This Court has explained to defendant that hearsay is inadmissible, but defendant appears likely to nonetheless make reference to hearsay in his jury addresses and testimony. The government respectfully requests that defendant be instructed not to do so.

### F. Motion in Limine No. 6 – Extrinsic Character Evidence of Victims Should Be Excluded.

At the hearing on April 7, 2015, defendant reiterated his request to subpoena various witnesses to testify about the character of Walter Maibaum and Rose Long, the two primary victims in this case. Defendant should not be entitled to elicit collateral, extrinsic evidence relating to the character of these victims, under either Rule 404 or Rule 608.

The collateral witnesses that defendant has identified are Jack Shaoul and SI Newhouse, who were involved with Mr. Maibaum in the Picasso sculpture scale that resulted in litigation in New York (though Mr. Maibaum sold the sculpture through others to Mr. Newhouse and does not appear to have interacted with him directly); someone named Stanley John Allen, who, according to defendant's statements in court on April 7, had some prior failed dealings with Mr. Maibaum; and Officer Lambert

of the Memphis Police Department.  As the government understands it, the Court agreed to order subpoenas for Mr. Shaoul and Mr. Newhouse, but not for Mr. Allen and Officer Lambert.

Even assuming these witnesses could testify about Mr. Maibaum or Ms. Long engaging in fraudulent or false transactions in some way, none could offer admissible testimony at this trial.  This trial is not about whether Mr. Shaoul sold a fake sculpture to Mr. Maibaum who sold it to another art dealer who sold it to Christie's which sold it to Mr. Newhouse in 2002.[1]  It is not about whether Mr. Maibaum did not pay Mr. Allen for artwork, as defendant alleged in court on April 7.  It is not, as this Court has ruled, about whether Ms. Long lied to a pharmacist or police officer in Memphis.  Defendant aims to turn this trial into a series of sideshows about the character of his victims, to distract from his own fraud.

As the government has previously stated in its earlier motions in limine, Dkt. 46, extrinsic evidence of character for truthfulness (or other traits) must be considered under Rule 404 and Rule 608.  Under Rule 404, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." Fed. R. Evid. 404(a). Such evidence is only admissible in the limited circumstances delineated by the rules, "for pertinent character traits of an 'accused,' Fed. R. Evid. 404(a)(1), a 'victim,' Fed. R. Evid. 404(a)(2), or a 'witness,' Fed. R. Evid. 404(a)(3), 607, 608, 609." United States v. McCourt, 925 F.2d 1229, 1232 (9th Cir. 1991) (emphasis in original).  "Rules 404, 607, 608, and 609 specifically set out what character and misconduct evidence is admissible, and who may introduce it." Id.  If a form of character evidence does not fall under one of these rules, it is inadmissible. See id.  Rules 404(a)(2) and 608 set out the instances in which prior misconduct or other character evidence regarding the victims may be admissible here.

Rule 404(a)(2)(B) provides that, "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait."  The comment notes to the rule offer examples of when

---

[1] Indeed, a New York trial court opinion strongly suggested that there was no basis to critique the authenticity of that sculpture. *Christie's Inc. v. SWCA, Inc.*, 867 N.Y.S.2d 650, 654 (N.Y. Sup. Ct. 2008) ("Christie's decision to rescind based upon its fear of exposure to liability appears to have been motivated more by rumor and speculation . . . .").

United States' Further Motions in Limine
CR 14-0306 WHA                                7

character traits of victims would be pertinent, "as in support of a claim of self-defense to a charge of homicide or consent in a case of rape." Rule 404(a) advisory committee's note (1972). The Ninth Circuit has generally equated pertinence under Rule 404(a)(2)(B) with the test for relevance under Rule 401. See, e.g., United States v. Keiser, 57 F.3d 847, 854 (9th Cir. 1995) (explaining that victim's violent character was relevant to the defendant's self-defense claim in an assault case and thus admissible under Rule 404(a)(2)). The elements of the offense of mail and wire fraud do not depend on the actions or character of the victim in any manner, thus making evidence of the victim's characteristics irrelevant and inadmissible. Instead, what matters are the actions and intent of defendant. See United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam) (explaining that, in mail fraud case, "[w]hat is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose"). This Court suggested during the April 7 hearing that some limited evidence of a character trait of the victims—such as propensity to sell fake artwork—may be "pertinent," but as the Court rightly noted later in the hearing, the government's entire case for fraud can be proven even if the victims were, in fact, defrauding defendant by selling him fake artwork.

As a result, character evidence with respect to Mr. Maibaum and Ms. Long cannot be admitted under Rule 404(a)(2)(B). It is not legally relevant to this case. Moreover, even if their character were in the least bit "pertinent" to this case, Rule 405 limits the type of admissible character evidence, providing that "when evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). As the comments explain, "testimony of specific instances is not generally permissible on the direct examination of an ordinary opinion witness to character." Fed. R. Evid. 405 advisory committee's note (1972). Only "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character trait may also be proved by relevant specific instances of the person's conduct." Fed. R. Evid. 405(b). The Ninth Circuit has explicitly held that "victim character evidence introduced to support a claim of self-defense or defense of another should be limited to reputation or opinion evidence." Keiser, 57 F.3d at 855. Unlike whatever relevance theory defendant seeks to admit this evidence under here, self-defense is actually a legal defense to various crimes, recognized by the law—and in those instances, a defendant can only use opinion testimony.

In sum, defendant should not be allowed to introduce character evidence of the victims under Rule 404(a)(2)(B). If the Court nonetheless allows character evidence, it cannot be of specific instances of conduct—for example, Jack Shaoul and SI Newhouse cannot testify about that particular art transaction, but only about the victims' reputations in the community. Moreover, if defendant introduces any evidence of the character of the victims, the government is entitled to offer evidence to rebut it and evidence of "defendant's same trait" under Rule 404(a)(2)(B)(ii). If that trait is a propensity to fraudulent business dealings (in art or otherwise), this will open the door to the government introducing substantial extrinsic evidence of defendant's character for deceit and dishonesty in his business practices.

If any victims testify, their character for truthfulness will be relevant under Rule 608. Under Rule 608(a), a witness's credibility "may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Extrinsic evidence of specific instances of conduct is, however, always inadmissible under Rule 608(b), and such instances "can only be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b)(2). Furthermore, such evidence is always subject to the general requirement that it must be more probative than prejudicial. Fed. R. Evid. 403. The Court has previously ruled that Ms. Long's arrest does not meet these criteria and has excluded any reference to it on cross-examination. Dkt. 224 at 7–8. Though the Court deferred judgment on the impeachment of Mr. Maibaum on cross-examination, it should rule that extrinsic evidence to impeach him on collateral issues is not admissible at trial.

**G.    Motion in Limine No. 7 – Expert Testimony on Valsuani Degas Should Be Excluded.**

Defendant has also asked the Court to issue subpoenas to Gary Tinterow and Patricia Failing to offer testimony regarding the Valsuani Degas sculpture that was delivered to defendant's garage and which has now been missing for approximately a year. Mr. Tinterow is the Director of the Museum of Fine Arts in Houston. Ms. Failing is an emeritus professor of art history at the University of Washington. Both are described in articles on the Internet as experts who are opposed to the authenticity of the Valsuani Degas sculptures, and presumably that is why defendant seeks to admit their testimony. Putting aside the problems with defendant issuing trial subpoenas to expert witnesses (as

opposed to hiring them) and calling expert witnesses for whom he has given no expert notice to the government, neither of these witnesses could offer admissible testimony.

The Court has previously denied the government's motions in limine to exclude evidence regarding the value or authenticity of the artwork during trial, explaining that if the art "were worth only a few hundred dollars, then even a broke defendant could have scrounged around for the money" and that "the value goes to the credibility of the government's victim witnesses." Dkt. 224 at 6. But neither Mr. Tinterow nor Ms. Failing could offer testimony that would be relevant and admissible on either point.

On the first possible basis for relevance, the government's case is not that defendant could not have paid anything for the artwork. Instead, it is that he had no intention of paying for it and, through false representations and omissions, led Ms. Long and Mr. Maibaum to believe that he was agreeing to pay millions of dollars for it. That defendant had no ability to pay the prices that he led the victims to believe he could afford is relevant to the case, and, for that reason, the subjective views of the parties to the transaction (including Ms. Long, Mr. Maibaum, and defendant) regarding the value of the artwork may be relevant.

However, the third-party, objective views that the Degas sculpture is not authentic and should not be worth anything is simply not relevant. As far as the government is aware, neither defendant nor the victims contacted either Mr. Tinterow or Professor Failing for their views on the artwork leading up to or after his purchase, so their views could never have been offered to any of the relevant parties such that it would have affected their mental state with respect to this transaction. As far as the government is aware, neither examined the particular sculpture in question (and now that sculpture is missing), so any testimony about it would lack a foundation.

Under Rule 401, that third-party experts who had no involvement or knowledge of the particular transaction and have neither seen nor examined the particular sculpture would only pay $100 for that missing sculpture would not "make any fact of consequence in the proceeding more or less likely." It would not make it more likely that defendant could pay millions of dollars for the artwork, through his own assets, a loan, or otherwise. It would not make it more likely that defendant had a museum. It would not make it more likely that defendant intended to return the artwork that he refused to return. It

would not make it more likely that someone had stolen the Degas sculpture from his garage because he left his garage door open.

On the second basis for relevance, if Mr. Maibaum or Ms. Long had talked to either of these experts, and they had informed Mr. Maibaum or Ms. Long that they did not believe the Degas sculpture was valuable and yet Mr. Maibaum and Ms. Long sold it anyway, that, in theory, could have some minimal impeachment value. There is no evidence that this happened. But even if it had, their testimony does not meet the requirements of Rule 403. There are people in the art world who dispute the value and authenticity of the Valsuani Degas sculptures; Mr. Maibaum has written extensively in rebuttal to them, and it is undoubtedly an ongoing debate that can be easily identified by searching "Valsuani Degas" on the Internet. Mr. Maibaum would not deny this fact. Ms. Long, in her emails to defendant, attached the provenance of the Degas sculpture, which clearly states that it was a Valsuani Degas "Little Dancer." Ex. 4 (email from Rose Long to defendant). Defendant was clearly aware of this debate, as he mentioned it to Natalia Shlyapina. Ex. 1 at 22 ("I remember one conversation when he mentioned that there actually was some Russian person who early in the 20th Century discovered some molds of the sculptures by Degas."). The book that Ms. Long gave defendant and defendant gave Ms. Shlyapina, Ex. 1 at 23, is about the history of Hébrard and Valsuani Degas sculptures and the accompanying debate surrounding the authenticity of the Valsuani Degas sculptures.

In sum, there is no evidence that the victims deceived defendant into believing that the sculpture was something other than what it was. Turning the trial into a sideshow about whether the Valsuani Degas sculptures should be considered "authentic" will confuse and mislead the jury and cause substantial delay while adding little, if any, relevant evidence to the case.

## CONCLUSION

The government respectfully requests that the Court grant its motions in limine in their entirety.

Respectfully submitted,

MELINDA HAAG
United States Attorney

DATED: April 8, 2015

/s/
ROBIN L. HARRIS
BENJAMIN KINGSLEY
Assistant United States Attorneys

United States' Further Motions in Limine
CR 14-0306 WHA                              11