Allison Davis (CA State Bar No. 139203)
Gwen L. Fanger (CA State Bar No. 191161)
Sanjay Nangia (CA State Bar No. 264986)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Email:        allisondavis@dwt.com
              gwenfanger@dwt.com

Attorneys for Third Party Modernism Fine Arts Inc

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUKE BRUGNARA,<br><br>Defendant. | Case No. CR-14-0306-WHA;<br>CR-08-00222-WHA<br><br>**THIRD PARTY MODERNISM FINE ARTS INC'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS OR OBJECTS IN A CRIMINAL TRIAL; MEMORANDUM OF POINTS AND AUTHORTIES**<br><br>Date: April 22, 2015<br>Time: 12:00 p.m.<br>Place: Courtroom 8, 19th Floor<br>Before the Hon. William Alsup |

TO DEFENDANT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 22, 2015 at 12:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 8, 19th Floor, of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable William Alsup presiding, Third Party Modernism Fine Arts Inc ("MFA") will and hereby does move this Court pursuant to Fed. R. Crim. Proc. 17(c) and Crim. L.R. 17(c) for an order to quash the Subpoena to Produce Documents or Objects in a Criminal Trial (the "Subpoena") issued in the above-captioned matter.

MFA makes this motion on the grounds that the Subpoena fails to satisfy the requirements of Rule 17(c) of the Federal Rules of Criminal Procedure of relevance, admissibility, and

1

specificity, and compliance with the Subpoena would be unreasonable and oppressive. Subject to and without waiving these objections, MFA nevertheless will produce copies of all documents that it previously provided to the U.S. Attorney in this matter, which include, among other things, emails and authentication documentation related to sale of the works of Artwork at Issue in this case to Defendant. Subject to this limitation, MFA respectfully requests that the Court otherwise quash the Subpoena on the grounds that it fails to meet the Rule 17(c) standards. MFA bases this Motion on the Notice of Motion and Motion, Memorandum of Points and Authorities in Support, the complete files and records in this action, and such other oral or documentary evidence and argument as may be presented at or before the hearing on this Motion.

DATED this 16th day of April, 2015.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
Allison A. Davis
Gwen L. Fanger

Attorneys for Third Party Modernism Fine Arts Inc

# TALBE OF CONTENTS

|   |   |   | Page(s) |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 1 |
| | A. | Summary of documents already produced by MFA | 1 |
| | B. | Summary of Subpoena Requests | 2 |
| III. | ARGUMENT | | 3 |
| | A. | Summary of Legal Standard | 3 |
| | B. | The Subpoena is unreasonable in scope and places an oppressive burden on a third party to comply | 5 |
| | | 1. Requests 1 through 5 related to the Artwork at Issue fail to satisfy the Rule 17(c) standard | 6 |
| | | 2. The materials sought by Request 6 regarding art other than the Artwork at Issue do not satisfy Rule 17(c) | 8 |
| | | 3. Requests 7-8 seeking materials related to MFA's licensing of Degas sculptures fail to meet the Rule 17(c) requirements | 9 |
| | | 4. The materials sought by Request 9 regarding "any" disputes over art involving Mr. Maibaum fail to satisfy the Rule 17(c) standard. | 10 |
| | | 5. Request 10 also seeks materials that fail the Rule 17(c) standards. | 10 |
| IV. | CONCLUSION | | 11 |

# TALBE OF AUTHORITIES

Page(s)

**Cases**

*Monotype Corp. PLC v. International Typeface Corp.*,
    43 F.3d 443 (9th Cir. 1994) ...................................................................................................... 7

*United States v. Collins*,
    2013 U.S. Dist. LEXIS 35794 (N.D. Cal. 2013) ............................................................ *passim*

*United States v. Cuthbertson*,
    651 F.2d (9th Cir. 1981) ....................................................................................................... 4, 6

*United States v. Eden*,
    659 F.2d 1376 (9th Cir. 1981) ........................................................................................ 4, 5, 10

*United States v. Fields*,
    663 F.2d 880 (9th Cir. 1981) .................................................................................................... 6

*United States v. George*,
    883 F.2d 1407 (9th Cir. 1989) ............................................................................................. 4, 5

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................................................ 4, 9

*United States v. Swanson*,
    2007 U.S. Dist. LEXIS 86412 (N.D. Cal. Nov. 16, 2007) ...................................................... 7

**Other Authorities**

Crim. L.R. 17(c) .................................................................................................................. *passim*

Fed. R. Crim. Proc. 17(c)(2) ........................................................................................................ 3

Fed. R. Evid. 403 ....................................................................................................................... 10

Fed. R. Evid. 801(a) .................................................................................................................... 7

Fed. R. Evid. 801(c) .................................................................................................................... 7

Fed. R. Evid. 803(b)(3) ............................................................................................................... 7

Federal Rule of Evidence 1001 ............................................................................................... 2, 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On or about April 8, 2015, Defendant Luke Brugnara ("Defendant") served third party Modernism Fine Arts Inc ("MFA") with a Subpoena to Produce Documents or Objects in a Criminal Case (the "Subpoena") in the above-captioned action. Defendant provided no notice to MFA of any motion issuance of the Subpoena. The Subpoena, which was not directed to any custodian of records or individual or agent, directs MFA to produce an extremely broad collection of unnecessary documents most of which are unrelated to the underlying criminal matter. Defendant has engaged in an impermissible fishing expedition against MFA on the eve of his criminal trial and thus, the Subpoena should be quashed as Defendant cannot meet the stringent test established by the Ninth Circuit and the Rule 17(c) standard.

## II. STATEMENT OF FACTS

The underlying matter involves criminal allegations of mail fraud, among others, by Defendant related to certain works of fine art by Willem de Kooning, Pablo Picasso, Joan Miro, George Luks, and Edgar Degas delivered to Defendant (collectively, the "Artwork at Issue"). On or about April 8, 2015, Defendant served MFA with the Subpoena containing 10 broad document requests, many of which seek cumulative or duplicative materials that MFA has already provided, and a due date of April 25, 2015.

### A. Summary of documents already produced by MFA

In connection with this case, MFA has provided hundreds of pages of documents to the U.S. Attorney regarding the sale of the Artwork at Issue to Defendant. These documents include, among other things, emails, letters, and other documentation related to the sale, price, authentication, provenance, insurance, and appraisal of the Artwork at Issue (the "Document Production"). The Document Production also includes materials that are unrelated to the instant litigation, including documents regarding other sales, other lawsuits (e.g., deposition transcripts, correspondence, and complaints), and articles involving other works of art not at issue in this case. MFA understands that the U.S. Attorney provided copies of the entire Document Production to Defendant.

1

THIRD PARTY MODERNISM FINE ARTS' MOTION TO QUASH
Case No. CR-14-0306-WHA; CR-08-00222-WHA
v -

In an effort to cooperate, MFA will provide a copy of the Document Production that it gave to the U.S. Attorney to Defendant, which contains documents responsive to the Subpoena; provided, however, that MFA does not concede any relevance, admissibility, and specificity of any of the materials contained in the Document Production as set forth below.

### B. Summary of Subpoena Requests

Despite the volume of documents already provided in the Document Production, Defendant has served MFA with a far-reaching subpoena that is not bounded within the constraints of Rule 17(c) and appears largely intended to distract the Court from the issues before it. Some of the requests in the Subpoena seek documents related to the purchase, sale and authentication of the Artwork at Issue delivered to Defendant. A great majority of the requests, however, seeks documents irrelevant to and beyond the scope of the case, including for example, documents related to MFA's licensing, sales of works of art not at issue, communications with other third parties about unrelated sales of works of art and other unrelated lawsuits. In particular, the Subpoena asks:

> **Requests Nos. 1-4**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts mentioning or relating to any of the purchase, potential sale, and authentication of the [de Kooning, Picasso, Miro and Luks works of art] that were shipped under the direction of Rose Long to 224 Seacliff Ave, San Francisco, CA and are at issue in Federal District Court of Northern California case #14-00306-WHA. This should include authentication history and documentation, provenance documentation, purchase history and documentation, appraisal history and documentation, and insurance history and documentation for all the aforementioned works."
>
> **Request No. 5**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts mentioning or relating to any of the purchase, potential sale, and authentication of the "La Petite Danseuse de 14 Ans" sculpture attributed to Edgar Degas that was shipped under the direction of Rose Long to 224 Seacliff Ave, San Francisco, CA and are at issue in Federal District Court of Northern California case #14-00306-WHA. This should include authentication history and documentation, provenance documentation, purchase history and documentation, appraisal history and documentation, and insurance history and documentation for all the aforementioned works. This should include any communication between Walther Maibaum and Rose Long concerning any "Tiny Dancer" sculptures attributable to Edgar Degas."
>
> **Request No. 6**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts mentioning or relating to

2

any of the purchase, potential sale, and authentication of any other "La Petite Danseuse de 14 Ans" sculptures attributed to Edgar Degas that are possessed by or have been possessed by Walter Maibaum or any of the organizations under his ownership or control. This should include authentication history and documentation, provenance documentation, purchase history and documentation, appraisal history and documentation, and insurance history and documentation for all the aforementioned works. This should also include any communications between Modernism Fine Arts and any prospective purchaser, seller, sales agent, advertiser, or any other person involved in the marketing and sale of the aforementioned sculptures including Leonardo Benatov, Gregory Hedberg, Alex Rosenberg, Rose Long, Walter Maibaum, and the Valsuani Foundry."

**Request No. 7**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts relating to its license to produce and/or sell Degas sculptures."

**Request No. 8**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts relating to the production, licensing, sale, valuation, appraisal, and price of any sculptures attributable to Edgar Degas under Modernism Fine Art's ownership or control."

**Request No. 9**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts relating to any disputes over the sale, authenticity, delivery, inspection, and/or licensing of any art owned, sold, or controlled by Walter Maibaum including, but not limited to, lawsuits involving Yank Barry or Christie's Fine Art Auction House."

**Request No. 10**. "All documents as defined in Federal Rule of Evidence 1001 including written and electronic mail maintained by Modernism Fine Arts that consist of communications between Modernism Fine Arts and Rose Long or Rose Long Fine Arts concerning the sale of art to Luke Brugnara or the sale of the art described in the above paragraphs 1 through 6 to any other individual."

As explained below, each of these broadly worded requests lack the necessary relevance, admissibility and specificity that are required under Rule 17(c) to be produced in advance of trial and the Subpoena should be quashed.

### III.   ARGUMENT

#### A.   Summary of Legal Standard

There are strict limitations on a criminal defendant's right to obtain documents by subpoena and the Court has the authority to quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. Proc. 17(c)(2); Crim. L.R. 17(c). The party seeking production must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (citation omitted). The Rule 17(c) burden is difficult to meet and not meant to be a discovery tool. "A subpoena such as this one ... is 'not intended to provide a means of discovery for criminal cases.'" *United States v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989). "(O)nly materials that are 'admissible as evidence' are subject to subpoena under the rule." *United States v. Cuthbertson*, 651 F.2d, 189, 192 (9th Cir. 1981) (finding materials not obtainable by a Rule 17(c) subpoena).

The party seeking to use a subpoena bears the burden to show "1) relevancy, 2) admissibility, ***and*** 3) specificity." *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (*citing Nixon* and finding subpoena properly quashed by trial court where defendant failed to show relevance of documents sought) (emphasis added); *see also United States v. Collins*, 2013 U.S. Dist. LEXIS 35794, *11 (N.D. Cal. 2013) (proponent of the subpoena "bears the burden of providing a 'rationale inference' that the information sought is relevant, admissible and specific.").

Failure to meet any one of these three requirements is fatal. First, the relevancy prong requires a specific showing by Defendant of demonstrable relevance "other than mere conclusory statements." *Eden*, 659 F.2d at 1381.

Second, Defendant must show under the admissibility prong that the materials be "admissible as evidence." *Cuthbertson*, 651 F.2d at 195. Hearsay, for example, that does not fall within one of the limited hearsay exceptions, is inadmissible and thus not subject to a Rule 17(c) subpoena. *Id.*

Third, as to the specificity requirement, Defendant must show that the requests are targeted to obtain specific pieces of admissible evidence. Broad subpoenas with "'any and all' requests are particularly suspect in any Rule 17(c) analysis." *Collins*, 2013 U.S. Dist. LEXIS 35794 at *12 (internal citations omitted) (finding subpoena requests asking for "all documents and communications" did not satisfy the specificity requirement necessary to justify the subpoena).

4

Indeed, a "demand for 'any and all documents relating to several categories of subject matter…rather than specific evidentiary items,' suggests the subpoena's proponent 'seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose – to secure the production for a court proceeding of specific admissible evidence.'" *Id.*, n. 17 (internal citations omitted).

Lastly, the requested documents must not be publicly available or obtainable from other sources. "In order to justify a subpoena for production before trial, the proponent must also demonstrate that the subpoenaed materials are not available from any other source and their examination and processing should not await trial in the circumstances shown." *Eden*, 659 F.2d at 1381.

### B. The Subpoena is unreasonable in scope and places an oppressive burden on a third party to comply

An overly broad subpoena that has the "earmarks of a wild goose chase" does not fall within the requirements of Rule 17(c) and should be quashed. *George*, 883 F.2d at 1418 (motion to quash overbroad subpoena properly granted). Defendant has served MFA with an exceedingly broad subpoena that asks for voluminous materials most of which are beyond the scope of the issues in this case. Compliance with Defendant's all-encompassing requests for materials about works of art other than the Artwork at Issue, MFA's licensing authority, disputes with other parties, and communications about the sale of artwork to individuals other than Defendant would be unreasonable and oppressive, particularly when there is little to no probative value gained by permitting this unfettered inquiry by Defendant into MFA's and other non-parties' unrelated business dealings. Although each of the Subpoena Requests fall short of the 17(c) standards as set forth below, the overall burden of compliance also justifies quashing the Subpoena.

As a whole, Defendant's "wild goose chase" is illustrated by the fact that the Subpoena seeks documents that are largely duplicative of those already given to Defendant in the Document Production. For example, Defendant is seeking emails related to the "purchase, potential sale, and authentication" the Artwork at Issue, which are included in the Document Production. *See e.g.*, Requests 1-5. Similarly, while wholly irrelevant to the case and as explained further below,

THIRD PARTY MODERNISM FINE ARTS' MOTION TO QUASH
Case No. CR-14-0306-WHA; CR-08-00222-WHA
v -

Defendant also seeks documents related to other disputes over artwork not involving the Artwork at Issue or Defendant. The Document Production also contains such materials. Thus, the duplicative and cumulative nature of the Subpoena justifies that it be quashed.

In addition, Defendant's intended use of the materials requested in the Subpoena – particularly those unrelated to the Artwork at Issue or charges against Defendant – is unclear as he has not directed the Subpoena to any individual and no one has testified yet in the trial. To the extent Defendant seeks to obtain any materials for impeachment purposes prior to trial, such use of the Subpoena is not permitted. *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981) (a pretrial subpoena may not be used to gather evidence for possible impeachment). Indeed, it is an abuse of discretion to issue such a subpoena before witnesses have testified. *Id.* at 881. The Rule 17(c) bar is quite high and "naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule." *Cuthbertson*, 651 F.2d at 195.

The Subpoena contains broad sweeping requests for materials related to other artwork, other sales of artwork to other individuals, other disputes over artwork not at issue and not involving Defendant, as well as the licensing authority of MFA. *See e.g.*, Requests 5-10. Such materials can only be intended to distract from the issues in the case against Defendant, namely whether he is guilty of fraud. Defendant's attempt to obtain these materials prior to trial to use for impeachment purposes against witnesses or potential witnesses who have not yet testified is strictly not a permitted use of a pretrial Rule 17(c) subpoena.

Furthermore, Defendant served MFA with the Subpoena less than three weeks before trial is set to begin. Given the broad scope of the Subpoena and risk of delaying the trial, it would be unreasonable for MFA to comply within such a short time frame. It would serve only to distract the Court from the issues in the case by focusing on Defendant's incredibly non-specific request for a tremendous volume of materials that are wholly unrelated to the issues in this case.

1. **Requests 1 through 5 related to the Artwork at Issue fail to satisfy the Rule 17(c) standard**

Although Requests 1-5 seek documents relating to the "purchase, potential sale, and authentication" of the Artwork at Issue, they are not limited to Defendant. To the extent they seek

materials related to the "purchase, potential sale, and authentication" of the Artwork at Issue involving anyone *other than* Defendant, they are irrelevant to whether Defendant is guilty of the charges against him. Further, unlike Requests 1-4, Request 5 also seeks "any communication between Walther Maibaum and Rose Long concerning *any* 'Tiny Dancer' sculptures attributable to Edgar Degas." Req. No. 5 (emphasis added). This portion of Request 5 also is irrelevant because it expressly seeks materials beyond those related to the Degas sculpture at issue.

Even if Requests 1-5 are deemed relevant, they nevertheless fail the admissibility and specificity requirements of a Rule 17(c) subpoena. *See Collins*, 2013 U.S. Dist. Lexis 35794 at *11-13 (subpoena requests that were deemed relevant nevertheless fell short of the Rule 17(c) standards because they were not admissible and specific). Requests 1-5 ask for "written and electronic mail," and "communications," which are plainly hearsay. Statements are inadmissible hearsay if they are offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(a), (c). Here, the only contemplated use by Defendant of the requested documents about the Artwork at Issue purportedly authored by third parties in this case would be for establishing their contents. In addition, Defendant cannot justify that any of these classic hearsay materials qualify one of the limited hearsay exceptions.[1] Thus, written and electronic mail and other communications are inadmissible and not the proper subject of a Rule 17(c) subpoena.

Requests 1-5 also seek various unspecified authentication/purchase/appraisal and provenance history and documentation, which may also be inadmissible hearsay. Previous evaluations of art not at issue may not qualify as "business records" if they "lack[] the hallmarks of reliability that justify the admission of run-of-the-mill business records." *Collins*, 2013 U.S. Dist. Lexis 35794 at *12 (one-time financial evaluation of loss or damage caused by event at issue

---

[1] Although the intended use of the letters, emails and "communications" is unclear, Defendant may attempt to argue that they fall within the business records exception. They do not and are therefore inadmissible. *United States v. Swanson*, 2007 U.S. Dist. LEXIS 86412 (N.D. Cal. Nov. 16, 2007) ("The court has already determined that emails standing alone are not business records"); *Monotype Corp. PLC v. International Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (affirming exclusion of evidence and rejecting theory that email record was admissible under business record exception). Nor would they fall under the statement against interest exception. This exception applies only if the witness is unavailable and to the extent they would be used with respect to Mr. Maibaum's statements, they are nevertheless inadmissible because Mr. Maibaum will be available. Fed. R. Evid. 803(b)(3).

7

lacked "hallmarks of reliability" and thus was inadmissible and not a proper request under Rule 17(c)).

Lastly, Requests 1-5 also fail to satisfy the specificity requirement. Requests 1-5 broadly ask for "***all documents***" that "mention or relate to" the Artwork at Issue. There is no limiting topic and their sweeping scope does not target a single piece of specific, admissible evidence. As explained above in Section III(A), such broad requests, even if arguably relevant, fail to meet the specificity requirement under Rule 17(c). *Collins*, 2013 U.S. Dist. LEXIS 35794 at *12.

### 2. The materials sought by Request 6 regarding art other than the Artwork at Issue do not satisfy Rule 17(c)

Request 6 is even more attenuated and has no demonstrable relevance other than to cause undue hardship for MFA. In particular, it seeks all documents "mentioning or relating to" the purchase, potential sale, and authentication of "***any other*** 'La Petite Danseuse de 14 ans' sculptures by Degas…." Req. No. 6 (emphasis added). Thus, Request 6 is irrelevant because it asks documents that are not related to the Artwork at Issue. In addition, Request 6 also seeks information relating to "communications" between MFA and "any prospective" purchaser or seller or "any other person involved in the marketing or selling" of art that has nothing to do with the Artwork at Issue. This Request for materials about other third parties and unrelated art bears no relevance to the charges against Defendant.

Request 6 related to "***any communications***" involving any other sale with any other person of the Artwork at Issue impinges on the privacy rights of individuals not involved in the case. The issues in the case relate to whether Defendant is guilty of fraud charges involving the Artwork at Issue and no one else. Thus, the request for confidential, private sales or purchase information involving other third parties should be quashed.

Regardless of relevance, Request 6 also fails to meet the Rule 17(c) standard because it seeks non-specific materials that are not admissible at trial. For the same reasons as those discussed for Requests 1-5 above, Request 6 also explicitly asks for inadmissible hearsay in the form of "written and electronic mail," "communications," and other

8

1  authentication/purchase/appraisal and provenance history and documentation. *See* Sections III(A)
2  and III(B)(2).
3       Request 6 also should be quashed because it is non-specific as to any admissible evidence.
4  Similar to Requests 1-5, Request 6 asks for "all documents" about Degas sculptures that are not
5  included in the Artwork at Issue and involve "any" other individuals. *See* Sections III(A) and
6  III(B)(2). As unequivocally demonstrated by the Supreme Court in *Nixon*, Rule 17(c) will not
7  tolerate such an excessively broad and irrelevant "fishing expedition" by Defendant. *Nixon*, 418
8  U.S. at 699-700.

### 3. Requests 7-8 seeking materials related to MFA's licensing of Degas sculptures fail to meet the Rule 17(c) requirements

11  Defendant also is fishing through Requests 7 and 8 by asking for licensing materials
12  related to MFA meant to distract the Court from the charges against Defendant. This is not a case
13  against MFA. This is a case about whether Defendant is guilty of fraud. The information sought
14  by Request 7 relating to MFA's license to produce or sell Degas sculptures in general bears
15  absolutely no relevance to whether or not Defendant defrauded MFA of the Artwork at Issue.
16  Request 8 is largely duplicative of Requests 5-7 and is even more far reaching in that it asks for
17  materials related to the "production, licensing, sale, valuation, appraisal, and price of *any*
18  sculptures" attributable to Degas. Req. 8 (emphasis added). To the extent Requests 7 and 8 seek
19  information unrelated to the Artwork at Issue, they are irrelevant and improper under Rule 17(c).
20  Moreover, the issue of licensing by MFA bears no demonstrated relevance to the criminal mail
21  fraud charges against Defendant.
22       Requests 7 and 8 also should be quashed because they expressly seek inadmissible hearsay
23  and are too generalized to comply with the very narrow, intended scope of a Rule 17(c) subpoena.
24  As discussed above, the requests for "written and electronic mail" in Requests 7 and 8 ask for
25  documents that are rank hearsay. Although the exact purpose of the use of the materials sought by
26  Requests 7 and 8 are unknown, given their wholly irrelevant relation to the charges against
27  Defendant involving the Artwork at Issue, they have zero probative value. Further, for the same
28  reasons as explained above, the wide scope of the two requests (e.g., asking for "all documents")

*Davis Wright Tremaine LLP*

9

THIRD PARTY MODERNISM FINE ARTS' MOTION TO QUASH
Case No. CR-14-0306-WHA; CR-08-00222-WHA
v -

that do not identify any particular pieces of admissible evidence fail to meet the specificity requirement as explained in *Collins*. *See* Sections III(A) and III(B)(2).

### 4. The materials sought by Request 9 regarding "any" disputes over art involving Mr. Maibaum fail to satisfy the Rule 17(c) standard.

Request 9 further demonstrates Defendant's wild goose chase in seeking unrelated, irrelevant and inadmissible materials in an attempt to discredit witnesses prior to trial. Request 9 should be quashed because it asks for "all documents" including "written and electronic mail" about "*any* disputes" over art between Mr. Maibaum and other parties, namely Yank Barry and Christie's Fine Art Auction. Req. 9 (emphasis added). Again, this Request about purported dealings between Mr. Maibaum and parties other than Defendant is wholly irrelevant to the issues and charges in this case involving Defendant's actions. Moreover, any relevance of the materials sought by Request 9, however remote, is outweighed by the prejudice to Mr. Maibaum – who has not testified in this case – and therefore may be properly excluded. Fed. R. Evid. 403.

In addition, even if Request 9 is marginally relevant, it does not meet the other two requirements for a Rule 17(c) subpoena. Again, the intended use of these wholly irrelevant materials is unclear, although Request 9 appears targeted to challenge the character of Mr. Maibaum, which is not the proper use of a pretrial Rule 17(c) subpoena. *See* Section III(A) above (impeachment evidence not obtainable prior to witness testimony). And, as with the other requests described above, Request 9 also explicitly asks for inadmissible hearsay in that it requests "written and electronic mail." Similarly, Request 9 also is impermissibly broad in scope as it asks for "all documents" without limiting the subject of the request in any meaningful way. *See* Section III(A).

Lastly, information about prior cases is publicly available and thus Defendant may obtain any information on this issue from sources other than MFA. *Eden*, 659 F.2d at 1381.

### 5. Request 10 also seeks materials that fail the Rule 17(c) standards.

Request 10 asks for "communications" between MFA and Rose Long "concerning the sale of art to Luke Brugnara or the sale of art described [in Requests 1-6] *to any other individual*." Req. 10 (emphasis added). The portion of Request 10 seeking materials involving the sale of art

10

to anyone other than Defendant and art other than the Artwork at Issue asks for confidential information involving the privacy rights of other individuals not related to this case. Materials about sales to other individuals is unreasonable and entirely irrelevant to the charges against Defendant and should be quashed.

Further, to the extent Request 10 is marginally relevant, it nevertheless should be quashed because it fails to meet the other standards for a Rule 17(c) subpoena in that it seeks inadmissible hearsay in the form of written and electronic mail and communications and is non-specific in its request for "all documents" as explained above. *See* Section III(A) and III(B)(2).

## IV. CONCLUSION

Defendant has served MFA, a third party, with an unreasonable and sweeping Subpoena, the response to which would be oppressive. For the reasons above, MFA respectfully requests that the Subpoena be quashed.

DATED this 16th day of April, 2015.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____
Allison Davis
Gwen L. Fanger

Attorneys for Third Party Modernism Fine Arts Inc

11

THIRD PARTY MODERNISM FINE ARTS' MOTION TO QUASH
Case No. CR-14-0306-WHA; CR-08-00222-WHA
DWT 26634260v1 0100073-000001