IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

LUKE D. BRUGNARA,

    Defendant.

No. CR 14-00306 WHA

**OMNIBUS ORDER RE MOTIONS IN LIMINE AND OTHER RECENTLY FILED MOTIONS**

    This order, following full briefing and oral argument at the pretrial conference, rules on the parties' motions *in limine* as follows.

### **GOVERNMENT'S MOTIONS IN LIMINE**

**1.  MOTION TO INCLUDE PORTIONS OF NATALIA SHLYAPINA'S VIDEO DEPOSITION.**

    Both parties have filed motions regarding Natalia Shlyapina's testimony (the government to include her deposition testimony and defendant to exclude it).  Shlyapina, a citizen of Russia, is currently in Russia and, although in the United States at the time in question, is now unavailable to testify at trial.  The government deposed Shlyapina pursuant to FRCrP 15 in August of 2014 and interviewed her three times before the video deposition, each time in the presence of an FBI agent.  Before the deposition, the government provided defendant with FBI Form 302 reports from the first two interviews.  The government's third interview of Shlyapina, however, took place only one day before the deposition.  While FBI Special Agent Elizabeth Hadley took handwritten notes during that interview, she did not finalize the Form 302 report

until October, and the Form 302 was not given to defendant until November, after the deposition. Agent Hadley, in a sworn affidavit, has stated that her handwritten notes from the third interview were not a verbatim transcription of Shlyapina's statement and were never shown nor read to Shlyapina (Gov't Exh. 4).

Under FRCrP 15, prospective witnesses in criminal cases may be deposed before trial. Before doing so, the government must provide the defendant "for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial." FRCrP 15(e)(3). Both parties agree that this rule descends from the Jencks Act, which requires that the government produce to the defense, in response to a motion by the defendant after a witness has testified, "any statement" of a witness who has testified for the government on cross examination. 18 U.S.C. 3500(b). Here, the issue is whether the government was required to produce to defendant Agent Hadley's handwritten notes, taken at an interview a day before the deposition, in advance of the deposition.

In this context, our court of appeals has defined a statement as follows: "A statement is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury." *United States v. Alvarez*, 358 F.3d 1194, 1207 n. 7 (9th Cir. 2004). Moreover, in the specific context of FBI interview notes, our court of appeals has held that if "the notes were neither read to the witness nor adopted by them . . . the notes are not statements subject to production." *United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir. 1991). The undersigned judge, in a different case, held that "FBI Interview Report Forms, known as Form 302s, do not qualify as Jencks Act statements unless they are either 'a substantially verbatim recital of an interviewed witness's oral statement and [are] prepared contemporaneously with the interview or are signed or otherwise adopted or approved by the witness.'" *United States v. Cerna*, No. CR 08–0730 WHA, 2009 WL 2998929 at \*13 (N.D. Cal. Sept. 19, 2009) (quoting *United States v. Rewald*, 889 F.2d 836, 867–68 (9th Cir. 1989)).

Here, Agent Hadley's notes were not "statements" that the government was required to produce. Agent Hadley, in a sworn declaration, stated that she did not show or read her handwritten notes to Shlyapina. Thus, under the *Boshell* standard, there is no way Shlyapina could have adopted the notes as a "statement" and defendant has provided no evidence suggesting that Shlyapina did somehow adopt these notes. Rather, defendant merely states that "the United States Attorneys intentionally withheld the FBI 302 interviews and notes of the interviews with Ms. Shlyapina from then-appointed defense counsel, Erik Babcock" (Dkt. No. 362).

In defendant's original motion to exclude this testimony, filed while he was represented by counsel, defendant relied on *Campbell v. United States*, 365 U.S. 85 (1961). That decision, however, is consistent with *Alvarez* and *Boshell*, described above. In relevant part, *Campbell* held:

> "Statements" under that subsection are not limited to such as the witness himself set down on paper. They include also a statement written down by another which the witness "signed or otherwise adopted or approved" as a statement "made by the said witness." True, the report does not bear Staula's signature and the witness testified "I think I had to sign" the original paper. However, if the paper was otherwise adopted or approved by the witness, his signature was not essential.

In our case, there is no evidence that Shlyapina ever approved, signed, or adopted Agent Hadley's notes as her own statement. In fact, Agent Hadley swears that she never even showed Shlyapina the notes.

Defendant further argues that the government's failure to disclose Agent Hadley's notes from Shlyapina's interview on August 26, before the deposition on August 27, violated the Supreme Court's ruling in *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires that the government disclose to the defendant any exculpatory evidence that is material to either guilt or punishment in a criminal case. In making his *Brady* argument, defendant points to three alleged inconsistencies between the FBI Form 302 from the August 26 interview and the Form 302s from the two previous interviews. While defendant points out some inconsistencies in Shlyapina's statements, the government's failure to disclose these inconsistencies does not rise

3

1  to the level of a *Brady* violation and defendant has not made a sufficient showing that he lacked
2  information necessary to impeach Shlyapina at her deposition.

3      *First*, defendant argues that at the July 17 interview, Shlyapina stated she had been seeing
4  defendant three to four times per week before he was arrested. At the August 26 interview,
5  Shlyapina stated that as time went on, she saw defendant less and less, and was only seeing him
6  about once a month by February 2014. While Shlyapina's story is not crystal clear from these
7  statements, they are not materially inconsistent and the government's failure to disclose the notes
8  before the deposition certainly does not rise to the level of a *Brady* violation.

9      *Second*, defendant points out that at the July 17 interview, Shlyapina stated that she had
10 been to defendant's house once. At the August 26 interview, she stated that she had been there
11 approximately five times. These statements are inconsistent. At the deposition, however,
12 Shlyapina testified that she had been to defendant's house "not more than four or five times" (Tr.
13 17:20). Thus, if defendant believed the inconsistency between her July 17 statement and her
14 actual statement at the deposition was relevant, he could have impeached her then. The
15 government's failure to disclose this inconsistency, when it already came to light at the
16 deposition itself, does not constitute a *Brady* violation. Furthermore, defendant has not made
17 any showing that this inconsistency was at all material.

18     *Third*, defendant points to Shlyapina's statement at the July 17 interview, that defendant
19 never mentioned that paintings were included among the other art Rose Long was going to send
20 defendant. At the August 26 interview, Shlyapina stated that defendant told her that Rose Long
21 had contacted him and wanted to send him art by Degas, de Kooning, and several others. At the
22 deposition, Shlyapina stated that defendant "named several artists, but [she] only remember[s]
23 two, Degas and de Kooning" (Tr. 25:3–4). Defendant argues that there is an inconsistency
24 because Shlyapina originally said that she did not know if any paintings were included in the art,
25 but later said that defendant had mentioned de Kooning (a painter). The short answer is that at
26 the deposition, the witness repeated what was, more or less, in the interview, so the August 26
27 interview could not have been used to impeach her. The July 17 interview could have been used
28

4

to impeach her, but the Form 302 from that interview was provided to defense counsel before the deposition.

Therefore, defendant's motion to exclude the entirety of Natalia Shlyapina's testimony is **DENIED**.

In addition, the government moves to admit portions of Shlyapina's video deposition (Gov't Exh. 1). Defendant objects to any of her testimony coming in for the same reasons stated above — that he was not provided with the FBI 302 before the third interview. Defendant does not object specifically to any of the portions described below.

The government seeks to include testimony related to Shlyapina's background (Tr. 7:3–13:20). This lays the foundation for her testimony, is relevant and more probative than prejudicial under FRE 403, and it will be included. The government next seeks to include testimony regarding how Shlyapina met defendant (Tr. 13:21–24). At the deposition, defendant objected to this based on relevance. This appears to be relevant background information as to Shlyapina and defendant's relationship, is more probative than prejudicial under FRE 403, and will thus be included. Next, the government seeks to include Shlyapina's testimony regarding defendant's job status (unemployed with no money) and his statements to Shlyapina regarding Rose Long's delivery of the artwork. These statements are plainly relevant, are more probative than prejudicial under FRE 403, and will be allowed into evidence. They are statements by a party opponent and thus are not hearsay. The government next seeks to include Shlyapina's testimony relating to the Hermitage Museum book that defendant allegedly gave to Shlyapina, her visual identification of defendant, and her phone number which defendant contacted her on. These are plainly relevant, more probative than prejudicial under FRE 403, and will be included.

Lastly, the government moves to exclude defense Attorney Erik Babcock's cross examination of Shlyapina. This consisted of Attorney Babcock asking Slyapina if she loved defendant (yes) and whether FBI agents had dissuaded her from continuing her relationship with defendant (no). At this point, these items from Attorney Babcock's cross examination appear relevant, more probative than prejudicial under FRE 403, and they will be allowed into evidence if defendant seeks to introduce them.

5

**2.     MOTION TO INCLUDE BUSINESS RECORDS AS AUTHENTIC, NON-HEARSAY.**

The government seeks to introduce six sets of business records under FRE 803(6) and 902(11). These records include:

- AT&T records for defendant's cell phone;
- AT&T records for the "burner" cell phone that defendant allegedly obtained after he absconded on February 5, 2015;
- Verizon records for the phone of Abidja (aka Jameth) Record, from February 1, 2015 through February 11, 2015 (when defendant was apprehended);
- Bank of America records for defendant's personal bank account;
- Wells Fargo records for an account associated with Brugnara Properties VII; and
- Wells Fargo records for the mortgage on defendant's residence located at 224 Sea Cliff Ave.

The government has included the FRE 902(11) certifications (Gov't Exh. 2). Under FRE 803(6), records of regularly conducted activity are not hearsay if: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; and (D) all these conditions are shown by . . . a certification that complies with FRE 902(11).

The government's certifications for each of these sets of records appear to comply with the requirements of FRE 902(11). Thus, they fall under the hearsay exception and custodians will not need to testify to their authenticity. This ruling is without prejudice to defendant objecting to their introduction based on relevance.

Defendant argues that the records related to Brugnara Properties should not be admitted because Brgunara Properties is not a defendant in our case. He also argues that the records related to his residence are irrelevant. These arguments, however, do not object to the authenticity of the business records. This order holds that the FRE 902(11) certifications are valid and that the records fall under the hearsay exception. Defendant does business (or has

done business) through various "Brugnara Properties" entities, so these records are relevant and are more probative than prejudicial under FRE 403.

### 3. MOTION TO INCLUDE DEFENDANT'S PRIOR STATEMENTS IN COURT AND COURT FILINGS AS AUTHENTIC, NON-HEARSAY.

The government states that it intends to introduce, in its case-in-chief, statements that defendant has made orally and in written filings, both sworn and unsworn. The government intends to introduce some of these for the truth of the matter asserted and others to demonstrate that defendant made the statements. These statements will be introduced via certified public transcripts. Any statement defendant has made is a statement by a party opponent, and is thus not hearsay under FRE 801.

Defendant argues that no statements of his, except those under oath, should be admitted. Defendant, however, provides no support for this argument and defendant's position is legally incorrect. These statements will be admitted at trial to the extent relevant and more probative than prejudicial under FRE 403. This ruling merely finds that defendant's prior statements are not hearsay, and is without prejudice to defendant objecting to any introduction of his statements on relevance grounds.

### 4. MOTION TO INCLUDE EVIDENCE REGARDING HOW DEFENDANT'S FELONY STATUS AFFECTED HIS CREDITWORTHINESS.

A previous order regarding motions *in limine*, issued after the pretrial conference for an earlier-scheduled trial date, ruled on whether evidence of defendant's past crimes or bad acts could come into evidence, holding: "Because the government states that it does not intend to introduce any FRE 404(b) evidence, and the financial statements are independently relevant, defendant's motion to exclude 'other acts' evidence is Denied" (Dkt. No. 224 at 3).

Since then, it has developed more clearly that the accused will argue to the jury that he could have borrowed the money needed to purchase the art. This new line of defense changes the landscape. The government will provisionally now be free to place evidence before the jury of his 2010 felony convictions and how those convictions would have tarnished his creditworthiness. This will include both oral and written admissions defendant made to his probation officers, Jennifer James and Jamie Zhuang, concerning how the convictions hurt his

creditworthiness. Before making a final decision, the Court will take into account the opening statements and possibly other parts of the trial.

Additionally, if defendant testifies at trial (although he has stated in his filings that he will not), then his prior crimes relating to his character for truthfulness will be allowed in as impeachment evidence, subject to FRE 403.

### 5. MOTION TO PROHIBIT DEFENDANT FROM REFERENCING PUNISHMENT, HIS CUSTODIAL STATUS, HIS PRO SE STATUS, HEARSAY STATEMENTS ABOUT HIS CASE, AND OTHER IRRELEVANT OR INADMISSIBLE FACTS.

The previous order regarding motions *in limine* held that defendant may not reference potential punishment at trial (Dkt. No. 224 at 5). This ruling stands. The Court will explain to the jury that the accused has been offered free counsel but he has elected instead to represent himself, as he is entitled to do under the Bill of Rights. His custodial status at the time of the escape must go before the jury as an element of the offense.

### 6. MOTION TO EXCLUDE EXTRINSIC CHARACTER EVIDENCE OF VICTIMS.

At several pretrial hearings, defendant has indicated his intent to call witnesses to testify regarding Victim Rose Long and Victim Walter Maibaum's character and prior fraudulent acts. This includes supposed internet snippets and possibly even testimony of witnesses who were allegedly defrauded by Long and Maibaum in prior art dealings.

Under FRE 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." The rule, however, provides for an exception for the victim in a criminal case. FRE 404(a)(2)(B) states that "subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait." Our court of appeals has interpreted this exception narrowly, and only applied it in a few specific circumstances. The most common application is to a criminal defendant, accused of a violent crime, who rebuts the charge with a claim of self-defense. In that instance, the defendant is permitted to introduce evidence relating to the victim's pertinent trait for violence, to back up his self-defense argument. *See, e.g., United States v. Keiser*, 57 F.3d 847, 854 (9th Cir. 1995).

8

Moreover — and quite pertinent here — even when "pertinent trait" evidence of the victim is admissible in a criminal case, it is limited to *reputation* or *opinion* evidence, *and does not extend to specific-act evidence*. As our court of appeals stated in *Keiser*: "Under the Federal Rules of Evidence, only reputation or opinion evidence is proper to show that the victim of an assault had a propensity toward violence. The excluded testimony, on the other hand, would have constituted paradigmatic 'specific act' evidence." *Id*. at 855. *This means that Rule 404(a)(2)(B) in no way allows the accused to mention specific prior bad acts of the victims, Long and Maibaum, before the jury.*

Beyond this, moreover, the undersigned judge has reviewed every decision from our court of appeals interpreting the "pertinent trait" exception and our court of appeals has never held that a criminal defendant may introduce extrinsic evidence of the victims' character for committing fraud in a mail or wire fraud case. On its face, this makes sense. The elements of fraud in a criminal case can be proven even if the victim was attempting to reciprocally defraud the defendant. In other words, FRE 404(a)(2)(B) does not authorize character (or specific act) evidence to show a victim's trait in a mail or wire fraud case. It is no defense to wire or mail fraud that the victim was himself, or herself, a fraudster.

If Long and Maibum *testify* in the government's case-in-chief, however, defendant will be allowed to impeach their character for truthfulness. FRE 608(a) states that a "witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." However, FRE 608(b) states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Thus, if Long or Maibaum testifies, defendant will be allowed to attack their credibility with *opinion* testimony of their character for truthfulness. *Defendant will not, however, be allowed to introduce evidence related to any specific acts that demonstrate their alleged character for dishonesty.*

9

### 7. MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING VALSUANI DEGAS SCULPTURE.

Defendant has indicated his intent to call Patricia Failing and Gary Tinterow, two purported experts on Valsuani Degas sculptures, to testify to the authenticity of the artwork at issue. As of now, neither of the subpoenaed witnesses has filed a motion to quash, although Failing has sent the Court a letter stating that she is not qualified to testify as an expert.

Preliminarily, defendant has not provided the government with any expert notice or disclosure under FRCrP 16(b)(1)(C).

Passing that problem, the government's main argument is that these witnesses' testimony would be irrelevant, as the value of the art is irrelevant to defendant's intent to defraud. The previous order regarding motions *in limine*, however, held that the "value and authenticity of the art is an important part of the *res gestae* of this case" (Dkt. No. 224 at 6). At this point, expert testimony on the Valsuani Degas will not be categorically ruled out. Some of it may, however, be excluded at trial under FRE 403 on a question-by-question basis.

### 8. MOTION TO FIND THAT DEFENDANT HAS WAIVED HIS ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO ATTORNEY ERIK BABCOCK.

The government moves for a finding that defendant has waived his attorney-client privilege with Attorney Babcock regarding communications surrounding defendant's abscond. Defendant has stated on several occasions that Attorney Babcock "greenlighted" his escape (Dkt. No. 347 at 7:22–8:17; Dkt. No. 395 at 58:16–59:25). Our court of appeals has held that when a party discloses the content of a privileged communication with a third party, that party waives "the privilege on all other communications on the same subject." *United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990).

Here, by defendant's stating several times in open court that Attorney Babcock "greenlighted" his escape, the waiver argument is strong with respect to any communications between defendant and Attorney Babcock regarding his alleged abscond. Before making a final ruling on this, however, the Court will listen to the opening statements and possibly other proceedings and see how defendant himself pitches the Babcock events to the jury.

That said, there is still a lot that Attorney Babcock may testify to that has nothing to do with any privilege, for example, the clear-cut restrictions in the order for parole to the lawyer's lounge, the drill followed in the parole from the lock-up to the lawyer's lounge, and the run-away by defendant.  At most, only one-on-one communications between the two could possibly be privileged in the first place.

### 9. MOTION REGARDING DEFENDANT'S CONDUCT DURING TRIAL.

The government has filed a motion regarding its expectation of defendant's conduct during trial.  The Court addressed this on the record at the pretrial conference.  Opening statements will be limited to forty minutes per side.

### 10. MOTION TO PROHIBIT DEFENDANT FROM MAKING SPECIFIC COMMENTS AT TRIAL.

The government moves for a written order explicitly forbidding defendant from addressing inappropriate topics at trial and violating court orders.  This order reaffirms that defendant may not violate any court orders regarding what he is prohibited from referencing at trial.  *Specifically, the government is concerned that defendant will reference Rose Long's alleged drug use, alleged arrest, the medications she takes, any mental illness she may have, or internet posts about her.*

*This order holds that defendant may not reference any of these topics regarding Rose Long during trial.  He may not in the presence of the jury reference at all in any circumstance, whether in opening, any examination, or closing, these topics without prior express Court approval.*

### DEFENDANT'S MOTIONS IN LIMINE

### 1. MOTION TO EXCLUDE TESTIMONY OF NATALIA SHLYAPINA.

Defendant moves to exclude the deposition testimony of Natalia Shlyapina.  For the reasons stated above, this motion is **DENIED**.

### 2. MOTION TO EXCLUDE FRE 404(B) EVIDENCE.

Defendant moves to exclude any FRE 404(b) evidence of his previous crimes or bad acts. If defendant suggests in the presence of the jury that he could have borrowed the money to purchase the art, then the government will be allowed to introduce evidence relating to how

11

1  defendant's felony status affected his creditworthiness. This will include both oral and written
2  admissions defendant made to his probation officers, Jennifer James and Jamie Zhuang.
3  Additionally, if defendant testifies at trial, then his prior crimes relating to his character for
4  truthfulness will be allowed in as impeachment evidence, subject to FRE 403.

### 3. MOTION TO EXCLUDE THE TESTIMONY OF PROBATION OFFICERS JENNIFER JAMES AND JAMIE ZHUANG.

If defendant suggests in the presence of the jury that he could have borrowed the money to purchase the art, or puts his creditworthiness at issue in a different manner, then the government will be allowed to introduce evidence relating to how defendant's felon status affected his creditworthiness. This will include both oral and written statements defendant made to his probation officers, Jennifer James and Jamie Zhuang.

### 4. MOTION TO EXCLUDE FINANCIAL STATEMENTS PROVIDED TO THE PROBATION OFFICE.

Defendant moves to exclude the financial statements he submitted to his probation officer, which stated that he had no income or assets when the alleged fraudulent transaction took place. The same previous order regarding motions *in limine* decided this issue as well, stating (Dkt. No. 224 at 3):

> If defendant stipulates that he wrote and submitted these financial statements, then the government may introduce only the April 2014 financial statement in redacted form, omitting any reference to defendant's supervised release status. If defendant refuses to stipulate, however, the April 2014 financial statement will be allowed in evidence, possibly without any redactions. The January 2013 financial statement will not be allowed into evidence or referenced at this time. If it becomes relevant enough at a later time, the Court will consider allowing it into evidence.

The April 2014 financial statement, redacting any reference to defendant's supervised release status, will be allowed into evidence. It is more probative than prejudicial under FRE 403. If defendant stipulates that he wrote and submitted the financial statements, then only the April 2014 statement will come into evidence, and it will remain in redacted form. If defendant refuses to stipulate, however, the April 2014 statement will come into evidence without any redactions. At the pretrial conference, the undersigned judge granted Attorney James Stevens permission to help defendant draft a written stipulation.

The January 2013 statement will not be allowed in evidence at this time, but may be allowed in at trial, if the government can show that the trial record has developed in such a way as to justify its admission.

### 5. MOTION TO INCLUDE EVIDENCE OF ROSE LONG'S ARREST.

Defendant next moves to introduce testimony regarding Victim Rose Long's alleged abuse of prescription drugs and arrest for assaulting a police officer. A previous order already resolved this issue, stating (Dkt. No. 224 at 7):

> defense counsel stated that Rose Long was recently arrested for assaulting a peace officer in Memphis. Defense counsel further claimed that the arrest occurred after Ms. Long allegedly lied about a prescription. Defense counsel conceded, however, that no charges were filed against Ms. Long. Since this event was dropped and no charges were filed, it would take an undue consumption of time and would prove almost nothing, so the alleged prescription lie and assault on an officer story are barred from use or evidence.

For these same reasons, defendant's motion to include evidence relating to Rose Long's recent arrest is **DENIED**. Any allegations regarding Long's use of prescription drugs and recent arrest for assault on a police officer will not be allowed into evidence. This exclusion covers any testimony from Sergeant Lambert, of the Memphis Police Department, whom defendant has indicated his intent to call as a witness.

### 6. MOTION TO INCLUDE TESTIMONY FROM MAIBAUM'S VICTIMS OF ALLEGED PREVIOUS FRAUD.

As stated above, if Victim Maibaum testifies, then defendant will be allowed to impeach his character for truthfulness. This may be done through testimony regarding Maibaum's reputation for honesty. Defendant will not, however, be allowed to introduce extrinsic evidence related to specific fraudulent acts.

### 7. MOTION TO EXCLUDE ANY COMMUNICATIONS BETWEEN DEFENDANT AND HIS ATTORNEYS.

Next, defendant moves to exclude any communications between himself and his attorneys. Similar to other issues described above, this issue has already been ruled on and a process has been put in place to review defendant's attorney-client communications (Dkt. No. 223). If defendant raises privileged matters before the jury or relies on an advice of counsel

defense, then he will have waived his attorney-client privilege on the subject matter of those statements.

In regards to communications between defendant and Attorney Babcock, please see Number 8 under the government's motions.

### 8. MOTION TO EXCLUDE EVIDENCE OF DEFENDANT'S DEFAULT ON CERTAIN LOANS AND HIS CORPORATE BANKRUPTCIES.

This motion is moot unless and until the government seeks to introduce such evidence, which it says it does not intend to do.

### 9. MOTION TO EXCLUDE EMAIL BETWEEN ATTORNEY BOB KANE AND ATTORNEY HARVEY SCHOCHET REGARDING HERMITAGE BOOK.

Defendant argues that this email should be excluded because it was part of settlement negotiations between defendant and Rose Long, and should thus be excluded under FRE 408. He also argues that Attorney Kane was not defendant's agent in any way, and thus the email is irrelevant. Defendant's motion to exclude is **DENIED**. The relevant passages are not covered by FRE 408, and are more probative than prejudicial under FRE 403. In order for the government to get this into evidence, of course, the government must lay a proper foundation.

### 10. MOTION TO EXCLUDE HERMITAGE MUSEUM BOOK.

Defendant moves to exclude the Hermitage Museum (Russian language) book because the government supposedly did not produce it to defendant in discovery. The parties discussed this item of evidence at the hearing on April 14. Apart from prior opportunities, defendant was granted thirty minutes to view the book in the presence of the US Marshals and was allowed to designate twenty pages from the book to be photocopied. Thus, at this point, defendant's motion is **DENIED**.

### 11. MOTION TO EXCLUDE ANY TESTIMONY RELATING TO ALLEGED SEXUAL RELATIONSHIPS BETWEEN DEFENDANT AND ANYONE ELSE.

Defendant claims that any evidence regarding his sexual relationships is irrelevant. The government claims that defendant's sexual relationships with Shlyapina and Jameth Record, the woman he stayed with while on the lam, are relevant.

Both are relevant and are more probative than prejudicial under FRE 403. In the case of Shlyapina, it shows a relationship of trust and confidence, thus making his statements about the

book all the more credible. In the case of Record, it would undermine defendant's claim that he absconded in order to get medical treatment. As to the latter, the government may not use the sexual relationship until after defendant has suggested in the presence of the jury that he absconded in order to receive medical attention.

### 12. MOTION TO EXCLUDE "WILLOW STREET" VIDEO FROM TRIAL.

Defendant moves to exclude a video that supposedly documents his dash from the courthouse on February 5. Defendant claims that it appears to be "computer generated," but does not provide any basis for its exclusion. On its face, the video (which has not been provided in full to the Court) would seem very relevant to the escape charge and more probative than prejudicial under FRE 403, assuming a foundation is laid. Thus, defendant's motion is **DENIED**.

### 13. MOTION TO EXCLUDE ANY MENTION OF PRIOR SALES OF VALSUANI LITTLE DANCER SCULPTURE.

Defendant moves to exclude any mention or discussion of previous sales of the Valsuani Little Dancer sculpture, unless the sale is "proved up with verifiable proof of payment." It is unclear what exactly defendant means by this or what he is trying to exclude. This issue will be decided at trial on a case-by-case basis. For now, defendant's motion is **DENIED**.

### 14. MOTION TO INCLUDE VOICEMAIL DEFENDANT LEFT FOR DAWN TOLAND WHILE HE WAS ON THE LAM.

The Court has already ruled on the record that defendant cannot introduce this voicemail because it is self-serving hearsay (Dkt. No. 449 at 4–5). Thus, defendant's motion to include it is **DENIED**. No reference at all will or should be made by the accused to this message in the presence of the jury.

### 15. MOTION TO ALLOW DEFENDANT TO BE IMMEDIATELY RELEASED UPON VERDICT IF HE IS FOUND NOT GUILTY.

If defendant is acquitted of all charges, he will, of course, be released from custody. If defendant is found guilty only of the escape charge, we will discuss his custody status then.

### 16. MOTION TO EXCLUDE GOVERNMENT WITNESSES AND EXHIBITS.

Defendant moves to exclude several government witnesses because he states that he does not know who they are or what they intend to testify to. Defendant also moves to exclude several government exhibits because they are hearsay, his own unsworn statements, or

15

government videos that are "not verified." Specifically, defendant moves to exclude government exhibits 1–8, 10–13, 26, 27, 30–37, 46–48, 145–49, and 155–272.

The crates containing the artwork at issue, the artwork itself, the hermitage book, and any emails sent by or to the accused are clearly admissible and may be referenced during the opening statements. On this record, it is impossible to determine whether the other witnesses and exhibits defendant notes should be excluded. Exclusion of these witnesses and exhibits will have to be determined on a case-by-case basis at trial.

### 17. MOTION TO EXCLUDE ANY EVIDENCE NOT PROVIDED TO DEFENDANT IN DISCOVERY.

Despite the government's assurances, defendant complains that he has not been provided with all of the discovery he is entitled to and moves to exclude any evidence that he has not been provided. The government states that it has complied with FRCrP 16 and provided all discovery to defendant. If defendant can show that the government has not complied with FRCrP 16, then any evidence the government has kept from defendant may be excluded (except for the Hermitage Museum book).

### 18. MOTION TO REQUIRE GOVERNMENT TO TURN OVER ALL DISCOVERY.

Lastly, defendant moves for the Court to order the government to produce all discovery to him. Defendant specifically requests arrest records of Rose Long and Walter Maibaum. Mere arrest records are not admissible. The government has stated that it has provided defendant will all discovery. There is no contrary proof. Defendant's motion is thus **DENIED**.

**IT IS SO ORDERED.**

Dated: April 23, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16