IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUKE D. BRUGNARA,

    Defendant.

No. CR 14-00306 WHA

**MEMORANDUM OPINION RE ADMISSION OF DEFENDANT'S PRIOR CONVICTIONS**

In 2010, defendant Luke Brugnara pled guilty to two felonies (filing false tax returns and a violation of the Endangered Species Act). He is currently on trial for wire fraud, mail fraud, making false statements in court, and escape, and is proceeding *pro se*. Normally, defendant's prior convictions would not be admissible unless he testified.

The essence of the fraud case is that the accused, a former successful businessman who is now broke, told an art dealer in New York that he would pay $11 Million for various paintings and sculptures, negotiated a discount on behalf of his museum, but upon arrival of the art, he held it hostage and claimed it had been a gift. There was no museum. By the time the FBI recovered the art, a Degas sculpture was missing.

During several pretrial hearings, however, defendant indicated his intent to argue to the jury that he could have borrowed the money needed to purchase the art at issue in the present case. Based on defendant's pretrial statements, the government submitted a motion *in limine*, requesting permission to introduce defendant's prior convictions in its case-in-chief, in order to demonstrate that defendant's felony status negatively affected his creditworthiness and to show

1  that he could not have borrowed money to purchase the art at issue. In fact, he told the probation
2  officer supervising him and put in writing that he was penniless and the two convictions had
3  ruined his ability to borrow.

4  Before trial, the undersigned judge ruled that a wait-and-see approach would be taken in
5  regards to the admissibility of defendant's prior convictions. The omnibus order regarding
6  motions *in limine* held: "If defendant suggests in the presence of the jury that he could have
7  borrowed the money to purchase the art, then the government will be allowed to introduce
8  evidence relating to how defendant's felony status affected his creditworthiness" (Dkt No. 480 at
9  11–12). If defendant did not make this suggestion to the jury, however, the convictions would
10 not come in unless defendant testified. This presumed proper behavior by the accused in
11 presenting his case and presumed that he would not otherwise open the door. The ruling was
12 made clear to defendant and defendant acknowledged that he understood it.

13 During the first day of trial, defendant clearly put his creditworthiness at issue. In his
14 opening statement, defendant laid the following before the jury (Dkt. No. 518 at 325–27):

> The true story is actually a thousand times more shocking than his fictional story he told you, because the fact of the matter is I borrowed more, more than anybody on the west coast. I borrowed over a billion dollars, a billion three. And anybody knows how hard it is to get a $10,000 credit card, yet alone hundreds and hundreds of millions of dollars when you didn't inherit the pedigree banking connections. You know, I've done it all on my own because I honored my commitments for the last 22 years.
>
> I have honored all my obligations to every lender. I've paid back every single penny on $1.3 billion. The properties I've owned in downtown San Francisco are significant, and you'll probably know many of them. . . . 450 Pacific Avenue. 490 Post Street. You know, a 20-story medical and dental building right there on Union Square. New apartments. I owned all of them. And I honored all my obligations, sold these properties, paid back my lenders, invested in art.

24 During the next day of trial, defendant made the following statement to the jury (Dkt. No.
25 528 at 767):

> No one has accused me of any criminal misconduct for 50 years of my life, except this lady (indicating), I have a right to impeach her, and I'm going to.

2

This statement, as demonstrated by the existence of defendant's prior convictions, was clearly false.

The undersigned judge has stressed to the jury several times that anything the lawyers say, or anything defendant says in his capacity as his own lawyer, is not evidence. Nevertheless, the statements quoted above were laid before the jury, and are on the same level as statements contained in an opening or closing argument.

Thus, after defendant put his creditworthiness at issue and made the clearly false statement to the jury regarding no accusations of criminal conduct, the undersigned judge made a finding on the record that the government was permitted to introduce defendant's convictions into evidence (Dkt. No. 544 at 870–71). Although the introduction of the convictions is prejudicial to defendant, under FRE 403 their probative value outweighs that prejudice at this point in the trial for at least two distinct reasons.

*First*, defendant was admonished that if he put his creditworthiness at issue, the convictions would come in. Defendant did so anyway. It would be unfair to allow defendant to toot his own horn by stating that he has borrowed and paid back billions (and thus would have been able to borrow the money to close the art deal), without allowing the government to combat that premise by introducing evidence of how defendant's felony status affected his creditworthiness.

*Second*, defendant's statement that no one had ever accused him of any criminal misconduct was flatly false. To allow this to stand would have given defendant a license to lie to the face of the jurors. During argument outside the presence of the jury, defendant attempted to qualify his statement by arguing that by saying "no one" he meant no individual person, and did not mean that the government had never accused him of criminal misconduct. This argument is absurd. If this is what he meant, he should have fixed it then and there but, truth be told, it is just one more example of the many false statements by the accused in the presence of the judge that he later tries to excuse in some lame way. It would be a miscarriage of justice not to allow the government to undo the lie.

3

Therefore, as ruled on the record (Dkt. No. 544 at 870–71), defendant Luke Brugnara opened the door by putting his creditworthiness at issue and making a false statement regarding his prior criminal misconduct. The government is allowed to introduce evidence of defendant's prior convictions.

**IT IS SO ORDERED.**

Dated: May 5, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4