IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

LUKE D. BRUGNARA,

    Defendant.
                              /

No. CR 14-00306 WHA

**ORDER RE DEFENDANT'S MOTION TO INTRODUCE STATEMENTS BASED ON THE RULE OF COMPLETENESS**

At trial, the government read into evidence defendant Luke Brugnara's prior sworn statements from what has been referred to as a "Form 12" hearing. A Form 12 hearing is a proceeding to determine whether a convicted felon who is on supervised release has violated the conditions of that release. The government read into evidence the following testimony (Case No. 08-CR-222 Dkt. No. 310 at 21–22, 24–26; Dkt. No. 311 at 36–37)[*]:

> Q. Okay. So after you wrote Ms. Long this e-mail, the discussion sort of transitioned into when she was going to ship the art pieces to Seacliff; is that correct?
>
> A. No.
>
> Q. Okay.
>
> A. I took the e-mails that I got from her, and I sent them to the head of Sotheby's in New York, who's also the head of Bond Street and London, and I asked, you know, what's -- you know, what's the value or -- I don't have the specific e-mail in front of me, but the essence of it was "How much would you sell these for, and what are they worth?" Just a simple valuation inquiry.

---

[*] These sworn statements correspond to the government's trial exhibits 155, 156, and 161.

1    And I heard back that the de Koonings are not authentic, and they would not sell them as de Koonings, and the Degas – they would not sell the Degas because it's not authentic. It was cast ten, 12 years ago, 14 years ago. Whenever it was cast, it was cast recently. However, they do sell the original Degases.

4    So when I had that information, I phoned Rose Long, and I told Rose Long that, you know, these de Koonings are not authentic.

6    Q. Was that before she made arrangements for those to be shipped to Seacliff?

7    A. That was before.

8                    *     *     *

9    THE COURT: What was the name of the person at Sotheby's who told you they were not authentic?

11   THE WITNESS: I contacted Tobias Meyer, who runs the contemporary and impressionist department, and he's an auctioneer at Sotheby's, and someone in his office contacted me back. He has about ten assistants.

13   THE COURT: Which one?

14   THE WITNESS: I don't -- I don't have the name, but you can certainly contact Tobias Meyer and send him this information. He'll tell you the same thing, that they're not authentic.

16                   *     *     *

17   THE WITNESS: The e-mail asked regarding the authenticity. I was -- spoke over the phone to them. You can also contact the de Kooning Foundation, and they also have a website. So the fact of the matter is the pieces are not authentic.

                     *     *     *

20   Q. You testified that you got a phone call in response to this e-mail from one of 12 or one of 500 --

22   A. Uh-huh.

23   Q. -- people at Sotheby's; is that correct?

24   A. That's the way I testified. That's correct.

25   Q. And when did you get that phone call?

26   A. I don't have -- I have to -- I don't have my -- my -- it's recently -- I mean, right around this same period.

28   Q. Around Thursday, April 3rd?

United States District Court
For the Northern District of California

2

> A. Yeah, somewhere -- somewhere -- it would be somewhere in that range.
>
> Q. Was it before Ms. Long showed up at your house on April 7th?
>
> A. Yeah.
>
> Q. So between the evening of April 3rd and the morning of April 7th?
>
> A. I would have to check but somewhere in that period of time.
>
> THE COURT: Well, how could it possibly have been before your e-mail to the guy at Sotheby's?
>
> THE WITNESS: Well –
>
> THE COURT: That was April 3rd.
>
> THE WITNESS: Well, I sent an e-mail -- yeah. I sent an e-mail to Sotheby's here on the 3rd. So it would have to be sometime -- yeah, it would be sometime in that period. So --
>
> BY MR. SPRAGUE:
>
> Q. Okay. So on April 4th, 5th, or 6th, you get a call from somebody at Sotheby's who says that the de Koonings are not authentic?
>
> A. That's correct.
>
> Q. Who was that person?
>
> A. I don't have that person's name.

Under the rule of completeness, defendant seeks to add the following testimony into evidence, which are his statements from the same Form 12 hearing (Case No. 08-CR-222 Dkt. No. 311 at 84–86):

> Q. So it had to be after the night of Thursday, April 3rd, correct, when you sent the e-mail to Tobias Meyer?
>
> A. Well, before the Tobias Meyer e-mail, I -- because she had sent me information on the Degas, and I went and did my own due diligence on the Degas just online to try to make sense of how a Degas that was cast, you know, 14 years ago could be an original when all the originals I knew with the exception of one or two in private hands were in museums and were cast in 1917 or 1918.
>
> And what I discovered during my due diligence was that these particular Degases had a very colorful story behind them regarding this Russian person, you know, who's very wealthy, a

3

1  billionaire, what have you, who had these bizarre stories in his past, who claimed to have found -- they bought a foundry, and they had found original plasters.

2

3  And in fact, the Metropolitan Museum had in my due diligence said that not only are they fake, but they actually have a committee -- the Metropolitan Museum in Manhattan has a committee of various museums throughout the country whereas they take a strenuous opposition to anyone who will show these or make claims that they're authentic.

4

5

6

7  So the net result is everyone has rejected them in the art community and the museums at least here in the United States as being fakes.

8  THE COURT: All right. Next question.

9  BY MR. SPRAGUE:

10

11  Q. The question was: When did you communicate to Ms. Long that you knew they were fakes?

12  A. We -- I communicated that to her as soon as I -- my -- the way I

13  Q. Was it before or after Thursday, April 3rd?

14  A. I believe -- I believe it was even before that because I did that investigation on my own on the Internet and came to that information right after. I think she started sending me stuff on the 25th of March or something. You know, it was a couple-day period there.

15

16

17  Q. So you don't remember when --

18  A. I don't.

19  Q. -- you first --

20  A. This wasn't of -- I'm in the middle of probation issues. I'm in the middle of refinancing -- or getting forbearances on debt that's coming due. I was meeting with Mark Levinson as the testimony showed. This wasn't high on my priority list of things to do as far as importance, and I was doing –

21

22

23     This order finds that it is not necessary or appropriate to add the passage of prior

24  testimony defendant seeks to introduce under the rule of completeness. The above quoted

25  passage came almost fifty pages in the transcript after the statements the government has already

26  introduced. The proposed testimony refers to alleged due diligence defendant undertook

27  regarding the authenticity of the Degas sculpture at issue. It is not needed for the sake of

28  completeness of the testimony the government has already introduced, regarding the alleged

4

confirmation defendant received from Sotheby's confirming that the works were inauthentic. Therefore, it is inadmissible hearsay.

It is true that defendant's proffered testimony makes reference to Sotheby's employee Tobias Meyer, but this reference only places defendant's alleged due diligence in time, meaning before the email to Meyer. It does not purport to explain away the statements presented by the government that defendant emailed Tobias Meyer regarding the works and received a response from one of Meyer's assistants that the works were fake.

Even if everything defendant said in the proposed passages were true, it would not explain away the black and white statement defendant made at the Form 12 hearing, as presented by the government at trial, that one of Tobias Meyer's assistants told defendant that the works at issue were inauthentic.

Defendant's motion to include his own previous statements under the rule of completeness is **DENIED**. As hearsay, his proffer is inadmissible.

**IT IS SO ORDERED.**

Dated: May 5, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5