IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br> v.<br><br>LUKE D. BRUGNARA,<br><br>  Defendant.<br>               / | No. CR 14-00306 WHA<br><br>**MEMORANDUM OPINION RE DURESS AND NECESSITY JURY INSTRUCTION FOR ESCAPE CHARGE** |

   This case began with a single charge of mail fraud issued in June of 2014. In July, the government superseded the indictment, adding wire fraud and false statement charges. After several continuances, trial was set to begin on February 26, 2015. For most of the time between June and February, the accused was in custody.

   To help the defense prepare for trial, the undersigned judge put in place a procedure so the accused could be furloughed from the marshal's lockup on the 20th floor (in civilian clothes) to the custody of the CJA attorney representing him at that time, Erik Babcock, for the sole purpose of trial preparation in the attorney lounge on the 18th floor, all in the federal building (Dkt. No. 257). On February 5, however, the accused absconded while on furlough, leaving the federal building and remaining at large for six days until caught by the FBI on February 11.

   While the accused was on the lam, he left a voice message for the undersigned judge's courtroom clerk, Dawn Toland, stating that he absconded for medical reasons and intended to show up at the trial, which by that point had been vacated due to his absence. He also left a voice message for Stuart Gasner, an attorney at Keker & Van Nest LLP, asking him to become

his counsel. These messages were left on February 10, one day before the accused was apprehended (at which time he gave a false name and said he was on the way to the gym).

As the trial progressed, the accused made clear that his defense to the escape charge was that he absconded for medical reasons. He thus requested that the jury be instructed that duress and necessity are defenses to the charge of escape.

The jury was instructed on the escape count that the accused's reason for escaping from custody could not be considered for that count, as follows (Dkt. No. 602 at 14):

> You have heard evidence concerning reasons the defendant departed from custody on February 5 of this year. The government contends that the departure constituted flight and raises an inference of consciousness of guilt on the pending charges then set for trial on February 26. The defendant denies this and contends he left to obtain medical treatment. You may consider both arguments in evaluating whether his departure from custody raises an inference of consciousness of guilt on the wire fraud, mail fraud, and false declaration charges. It is up to you to decide how much weight to give the evidence and what inferences to draw.
>
> With respect to the escape charge itself, however, you may not consider the reason for departure. Put differently, if the government proves the above elements for escape, it does not matter what the reasons for the escape were in reaching your verdict.

In *United States v. Bailey*, 444 U.S. 394, 415 (1980) (emphasis added), the United States Supreme Court ruled as follows:

> We therefore hold that, where a criminal defendant is charged with escape and claims that he is entitled to an instruction on the theory of duress or necessity, *he must proffer evidence of a bonafide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force*. We have reviewed the evidence examined elaborately in the majority and dissenting opinions below, and find the case not even close, even under respondents' versions of the facts, as to whether they either surrendered or offered to surrender at their earliest possible opportunity. Since we have determined that this is an indispensable element of the defense of duress or necessity, respondents were not entitled to any instruction on such a theory. *Vague and necessarily self-serving statements of defendants or witnesses as to future good intentions or ambiguous conduct simply do not support a finding of this element of the defense.*

Based on the evidence presented at trial, and the arguments made by the accused, he was not entitled to a duress or necessity instruction under the standard laid out in *Bailey*. Even if all

of the accused's contentions had been true (that he'd lost 100 pounds and might have had cancer when he absconded), they would not have been sufficient under *Bailey*, as they did not equate to proffered evidence that the accused "made a bonafide effort to return to custody as soon as the claimed duress or necessity had lost its coercive force." Instead, the evidence showed that the accused sprinted away from the courthouse, took walks around Las Gatos while he was on the lam, and gave a fake name when the FBI finally caught up with him — evidence that the accused did not rebut at trial.

The voicemail that the accused left for courtroom clerk Dawn Toland did state that he would appear at his trial, previously scheduled for February 26, but already vacated due to his absconding before the voicemail. This type of statement, however, was contemplated by the Supreme Court in *Bailey*, which stated: "Vague and necessarily self-serving statements of defendants or witnesses as to future good intentions or ambiguous conduct simply do not support a finding of this element of the defense."

As stated, by the time the accused left the voicemail with Toland (on February 10), the February 26 trial date had already been vacated. The accused's idle act was made more apparent by the fact that while on the lam, he attempted to line up new counsel. There was no conceivable way that new counsel could have been ready for trial any time reasonably soon. There was nothing in either voicemail about surrendering. Thus, the accused was not entitled to a duress or necessity jury instruction under the standard set forth in *Bailey*.

In fact, defendant's actions while on the lam were very similar to those taken by one of the *Bailey* defendants (Ralph Walker). While at large, Walker "had jail officials called several times, but did not turn himself in." He also "called the FBI three times and spoke with an agent." *Id*. at 399. Despite these actions, the Supreme Court held that Walker was not entitled to a jury instruction stating that duress or necessity were defenses to his escape because he did not make a bonafide effort to return to custody.

Nevertheless, the evidence the accused presented in our case regarding his medical condition and other reasons for his escape were independently relevant. During trial, the government stated its intention to argue that the accused's abscond demonstrated consciousness

3

of guilt on the then-pending wire fraud, mail fraud, and false statement charges.  Thus, the accused was allowed in our trial to introduce other potential motives for his escape to rebut the government's consciousness of guilt line of argument.  He in fact did present several witnesses to testify on his physical and medial condition.  As stated on the record on Monday May 11 before the defense resumed for the day, defendant would also have been allowed to testify that he absconded in order to retain new counsel, and would have been to allowed to reference the fact of leaving the voicemails as evidence.  He would not, however, have been allowed to play the voicemails themselves for the jury, as they included self-serving hearsay and hearsay within hearsay.  When the accused decided not to testify, this further point became moot.

Dated:  May 14, 2015.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4