Volume 17

Pages 3329  -  3395

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
  vs.                           )  No. CR 08-0222 WHA
                                )  No. CR 14-0306 WHA
LUKE D. BRUGNARA,               )
                                )  San Francisco, California
            Defendant.          )  Tuesday
                                )  May 19, 2015
_____ )  7:30 a.m.

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**          MELINDA HAAG
                            United States Attorney
                            450 Golden Gate Ave.
                            San Francisco, California  94102
                    BY:  **ROBIN HARRIS, AUSA**
                         **BENJAMIN KINGSLEY, AUSA**


**For Defendant:**          **LUKE D. BRUGNARA**
                            - pro se


**Advisory Counsel:**       LAW OFFICES OF PAUL WOLF
                            717 Washington Street
                            Second Floor
                            Oakland, California 94607
                    BY:  **JAMES R. STEVENS, ESQ.**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 Official Reporter - US District Court
                 Computerized Transcription By Eclipse

3330

**APPEARANCES:   (CONTINUED)**

**Advisory Counsel:**          LAW OFFICES OF TAMOR & TAMOR
                               311 Oak Street
                               Suite 108
                               Oakland, California 94607
                          BY:  **RICHARD ALAN TAMOR, ESQ.**

**Also Present:**    FBI Special Agent Jeremy Desor

                     FBI Special Agent Aleksandr Kobzanets

                     Mary Mallory, U.S. Attorney's Office

                     Denise Oki, U.S. Attorney's Office

                            -   -   -

PROCEEDINGS

1                           **P R O C E E D I N G S**

2    **MAY 19, 2015**                                   **7:38 a.m.**

3          (Defendant present, in custody.)

4          (The following proceedings were held outside of the

5           presence of the jury)

6              **THE COURT:**  Everyone is here, but the jury is not.

7          Yesterday afternoon the clerk told me that Mr. Brugnara

8    wanted to come into the courtroom.  I said if he has a motion

9    to make, he should put it in writing.

10         No motion was made this morning and no motion was made in

11   writing.  Nevertheless, we are here.

12         Do you have a motion to make, Mr. Brugnara?

13             **MR. BRUGNARA:**  Unfortunately, I was never passed on

14   that message that you said.  I was told that you had left the

15   building and were on your way home or wherever you were going.

16   So I was not forwarded the message that you instructed to give

17   to me.

18             **THE COURT:**  Well, that's one of the problems of self

19   representation.

20         Do you have a motion to make this morning?

21             **MR. BRUGNARA:**  We can just do it --

22             **THE COURT:**  Do you have a motion?

23             **MR. BRUGNARA:**  Yes, I do.  I have a motion.

24             **THE COURT:**  What is the motion?

25             **MR. BRUGNARA:**  I have a motion to discuss what

PROCEEDINGS

1   "happened yesterday --

2            **THE COURT:**  We don't "discuss."  You can make a

3   motion, but we're not just here to vent.

4            **MR. BRUGNARA:**  Okay.  I'm not here to vent.  It's a

5   request for further inquiry into what happened yesterday after

6   now that I have had the opportunity to read the government's

7   motion to strike Juror No. 5, which I wasn't allowed sufficient

8   time to read through yesterday.  I was given, I believe,

9   two-and-a-half minutes to read, I think, it's 37 pages here.

10  But just going past their motion into the exhibits, I was very

11  troubled.

12       The defense, it was completely improper and needs further

13  inquiry by the Court regarding this -- this incident because,

14  for starters, as of Friday, the 15th, they had these signed

15  declaration from the USO [sic] officers regarding who this

16  Juror No. 5 was and it wasn't disclosed to me or my associate

17  counsels.  We were left in the dark up until, literally, two

18  minutes before the hearing.

19       And during that time this Court and the U.S. Attorneys

20  knew about this guy Jakic and we weren't given the benefit of

21  full disclosure, which I'm entitled to have under Rule 16.  I'm

22  entitled to have full disclosure of the evidence being

23  presented in this case throughout the entire jury

24  deliberations, and that was withheld from the defense.

25       But notwithstanding, when you go and you start reading

1  it -- I mean, I didn't see it, literally, until two minutes

2  before the hearing.

3      But when actually you start reading the declaration, it's

4  very troubling what I'm seeing in these sworn declarations from

5  the federal officers here.  They are saying, for starters, that

6  there's jurors that are prejudiced against me because of who I

7  am and that is a direct violation of my rights to a fair jury

8  deliberation process.

9      And they are also stating in a sworn declaration they

10 heard him state that they are prejudiced against Jakic and,

11 also, Jakic stating that he was, in fact, being coerced to say,

12 quote, Brugnara is guilty and to, quote, sign a document, you

13 know, affirming that Brugnara is guilty.

14     So here is a guy who is somewhat outspoken, to put it

15 mildly, and he's being subjected to coercion in the jury room

16 to find me guilty from one or more jurors to the point where,

17 you know, this incident happens.

18     I'm extremely concerned that the more subdued jurors, such

19 as some of the females and some of the more passive males in

20 there, are being bullied and coerced, if Jakic feels he's being

21 bullied and coerced, into finding me guilty.

22     The biggest issue, of course, is the prejudice comments.

23 And to be perfectly frank here, I'm really troubled by the USO

24 [sic] officers getting the call to respond to a "Russian"

25 individual on the 19th floor.

PROCEEDINGS

```
 1        I mean, your Honor, how would you feel if you got a call
 2   hey there an is a Jew.  There is a Jew down on the 19th floor.
 3   You need to tend to this.  No, no, no, no.  That doesn't work
 4   that way.  There is a Caucasian.  There is an African-American.
 5   There is a Hispanic male.
 6        In fact, Ms. Harris made a big issue about the affidavit,
 7   saying the Hispanic male dropping off the package.  And that's,
 8   still, I think somewhat sensible because it's a directive on
 9   even the federal forms.  Are you Hispanic?  Non-Hispanic?  You
10   don't say there is a Jew, or there's a Russian.  That, in
11   itself, is prejudice right there and actually lends credibility
12   to what Jakic was saying about him being prejudiced.  I mean, I
13   think you would be appalled if you said:  Hey, there is a Jew
14   on the 19th floor.  Go get him.
15        Okay.  So someone saying he's a Russian under the cloak of
16   the United States Government is completely inappropriate, and,
17   in fact, is prima facie prejudice.  Okay?
18        But notwithstanding that, let's talk about what's going on
19   in the jury right now.  Because now what it's doing is giving
20   credibility to possible prejudice in that jury deliberation
21   right now.
22        He's saying someone is prejudiced against me in there.
23   I've got a real problem with that.  We need to find out who is
24   prejudiced against me or we need to bring Jakic back and find
25   out who is prejudiced against Brugnara and then inquire into
```

PROCEEDINGS

1   those jurors:  Are you prejudiced against Brugnara?  Maybe they

2   are.  You know, maybe they are not.  Maybe they know me.

3       I can't believe for a second that no one on that jury

4   knows me.  Come on.  I've bought more property in the last 20

5   years than anybody.  But maybe they haven't.

6       The fact of the matter is, Ivan Jakic said there are

7   people that are prejudiced against me deliberating that are

8   using coercive tactics to try to get him to sign a guilty plea.

9   And this is an outspoken man and I am extremely concerned, like

10  I said, that some of the women or more passive men in there are

11  being coerced by these same individuals and it just needs

12  further inquiry from this Court.

13      And this is the thing, too.  In the inquiry process it's

14  funny, because I read Ms. Harris and then James Stevens'

15  recommendation when he asked me to put together a memoranda --

16  even though I filed my memoranda and not Stevens'.  They both

17  had the same suggestive requests to the Court; that you bring

18  out Jakic and you inquire whether or not he's truthful.  And

19  then if he's truthful, then, you know, you make your

20  determinations, you know, based upon what facts you get.  But

21  what's necessary for further inquiry is also what comes -- you

22  know, what's disclosed.

23      You didn't have to wait for the disclosure from Jakic to

24  have further inquiry because you have your own USO [sic]

25  officer saying there is people prejudiced against Brugnara.

PROCEEDINGS

 1   And, also, they are talking about punishment and things of that

 2   nature.  Who is in there, you know, discussing punishment?

 3   There is all sorts of things that are troubling that are going

 4   on here that were based upon what I heard yesterday.

 5       And, again, I wish I had, you know, the benefit of 30

 6   minutes before the hearing so I could have made this statement.

 7       The other thing that I concluded was Jakic, in my opinion,

 8   based upon the videos and what I read here, is he was down at

 9   the Public Defender's Office.  You've got to think about it.

10   What progressed Paul Castonopulos [sic], or whatever his name

11   was.  He confronts Jakic about a possible felony.  He said you

12   lied to a federal judge.  Blah, blah, blah.  You have a

13   conviction.

14       Jakic goes out of the room -- you've got to remember, he

15   didn't bolt out of the room.  If you remember, the USO [sic]

16   officer says he opened the door.  Then Jakic leaves.  He goes

17   down to the Public Defender's Office, then takes the stairs

18   down.

19       Okay.  So this guy invokes his Fifth Amendment.  It should

20   have stopped right at that point.  You should have said:  Okay.

21   Go down to the Public Defender's Office.  Go talk to -- because

22   if he went down to talk to the Public Defender's Office when he

23   invoked his Fifth Amendment yesterday, the blow-up would have

24   never happened.  You said -- you would have appointed him an

25   attorney.  The attorney would have advised him on what to do

```
 1   and that insanity yesterday wouldn't have erupted based upon

 2   his flashbacks of being tortured and --

 3            THE COURT:  So now it's my fault that he entered into

 4   the display yesterday that he did.

 5            MR. BRUGNARA:  You know what?  You know what, your

 6   Honor --

 7            THE COURT:  Once again, it's the judge's fault.

 8            MR. BRUGNARA:  Well, you know what?  This is the

 9   thing.  I think you're an extremely smart man and I think you

10   have a really interesting way that you conduct your courtroom

11   and the way that you entice people into getting the results

12   that you want.  And I've learned it now after six years.

13        You were moving heaven and earth to get me to testify,

14   waiving the apple of Bob Kane's and Dawn Toland's voicemails in

15   front of me to get me on that witness stand and I wouldn't bite

16   that.

17        You had Jakic in the palm of your hand out of the gate and

18   you could have stopped it.  But the fact -- I don't want to get

19   into that.  The fact is, you're saying people are prejudiced

20   against me --

21            THE COURT:  I tried to stop him at least 25 times.

22   He would not stop.  He would not let me even get a half

23   syllable in.  He was ranting at the top of his lungs,

24   gesticulating all over the place.  He was impossible to stop.

25   And I tried it.
```

1        Finally, the Marshal told me that it was unsafe to

2   continue and they had to get him out of the courtroom.  So I

3   gave them permission to remove him from the classroom.

4            MR. BRUGNARA:  At this point I'm concerned about --

5            THE COURT:  It's ridiculous to blame the judge for

6   what happened yesterday.

7            MR. BRUGNARA:  Your Honor, I'm concerned about the

8   statements that are being made about me in the jury -- or

9   what -- what is being said, is being said about me in the jury

10  room, that there are people that are prejudiced against me --

11           THE COURT:  Let me ask you a question.  Let's say

12  that in the jury room now there are people who are -- I'm

13  asking you hypothetically now, so I don't want you telling me

14  that somehow I know what's going on in the jury room.

15        But let's say there are people in the jury room who are

16  saying:  Mr. Brugnara is guilty.  And let's say they are

17  arguing that you are guilty.  What's wrong with that?

18        I mean, other than you disagree with the -- the

19  conclusion, but isn't that what happens in the jury room; that

20  one side can say he's guilty, and the other side can say he's

21  not guilty, and then they deliberate and finally they reach an

22  agreement on it.  That's what happens in the jury room.

23           MR. BRUGNARA:  And what happens often -- and I

24  understand this now.  What happens often is when those jury

25  deliberations go along and there is a dissident, the Court

1    often finds a way to remove the dissident.

2         In fact, we have a lot of case precedent.  If it's not an

3    outburst from a Jakic, it could be someone being pulled out and

4    put through an inquisition.  Have you discussed this with

5    anybody in your family?  Blah, blah, blah.  And then there's a

6    lady walking out the back door with a purse, you know, who's a

7    dissident.

8         And that came from a case of *Brad Stinn* --

9              **THE COURT:**  Nothing like that happened here.

10             **MR. BRUGNARA:**  It's a federal in New York court.

11   Okay?  And the fact is it's a common practice.  It's named

12   *Stinn*, S-T-I-N-N.

13        Same sort of thing.  Big, high profile case.  The guy is

14   from San Francisco.  His kids all went to school here in the

15   city.  He lived in Pacific Heights.  The case is back in New

16   York.  The jury is hung.  They pull off two jurors after they

17   have deliberated a week, who are the two dissidents, and then

18   he gets found guilty.

19        The fact of the matter is that, apparently, it happens all

20   the time.  But the fact is you could have orchestrated the

21   questions to find out more of what's going on in the jury room

22   about this alleged prejudice against Brugnara, rather than

23   asking about his torture when he was a teenager.

24        And, quite frankly, his explosion, or whatever you want to

25   call it, breakdown, happened because, obviously, of him being

```
 1  tortured as a teenager in the Croatian conflict.  And I

 2  sympathize with the man over that, but the fact is I'm -- I

 3  have my life in the balance.

 4       This is not about money.  If this was about money, I could

 5  care less.  This is about my life, my family, my liberty.  And

 6  I have people back there.

 7       We need to inquire, just like we needed to inquire with

 8  Jakic, about the truthfulness of what was being alleged.  We

 9  need to find out the truthfulness of what's being alleged about

10  me.

11       He's alleging that people are prejudiced against me.

12  People can certainly say I'm guilty and they can also say that

13  I'm not guilty.  But if people are using coercive tactics back

14  there on jurors that believe I'm not guilty, then there is a

15  real problem because they have a right -- the most diminutive,

16  subservient juror, male or female, has a right to their vote to

17  say that I'm not guilty and is not subject to coercive bullying

18  tactics by the other 11 jurors.

19       And especially after they saw what happened with Jakic,

20  who is very outspoken.  If he can get bullied into being cast

21  off the jury -- and then the other prat of that is, did they

22  hear what he was saying?  Which taints the jury pool in

23  totality, because he was loud.  I agree with you.

24       And I heard that someone said they heard him out by the

25  Public Defender's Office.  I heard that from a Public Defender.
```

PROCEEDINGS

1    So the fact of the matter is that:  Is the jury tainted by what

2    they heard from this courtroom here?

3         So we have all sorts of issues going on now from what

4    happened yesterday.  My main issue is that I'm worried there is

5    someone who is prejudiced against me, that knows me.

6         I'm also worried that they don't understand what the

7    burden of proof is beyond a reasonable doubt.  I don't think

8    that's made clear, especially in the notes that came in.  It

9    has to be beyond a reasonable doubt.  They need a layman's

10   perspective.  You've got some people that are checkers in, you

11   know, grocery stores.  They need to be:  Well, listen, beyond a

12   reasonable doubt, just so you understand it, you think he might

13   have done it, he's not guilty.  If you think, well, he probably

14   did it, that's still not guilty.  It's a reasonable doubt.

15   It's actually beyond a reasonable doubt.  And that needs to be

16   made clear at this level of deliberations on a voir dire with

17   each juror.

18        And the other thing is it should have been brought out

19   individually, not collectively, after Jakic's breakdown because

20   there is, as you know, pressure when you bring out 11 and ask

21   them for a showing of hands.  They should have been brought out

22   individually.

23        And that's what Mr. Tamor said, who has been doing this 25

24   years.  He's not here, but he advised me to ask you to --

25             THE COURT:  Well, it would have been interesting why

1   you didn't bring that up yesterday?

2           MR. BRUGNARA:  Well, the problem is I got two

3   minutes, less than two minutes to read 35 pages and prepare.

4   We rolled right into the proceedings.

5           THE COURT:  You elected -- wait, no.  Think about

6   this for a second.  I did ask the group of 11 if they --

7   explained that I was excusing Mr. Jakic and I asked if they

8   could -- would follow the instructions and decide the case

9   based on the evidence here in the courtroom and under the

10  instructions of law.  I don't remember the exact questions now.

11  I asked them to raise hands, and they did twice, and they

12  raised their hands.  And I felt that that was a proper and

13  adequate way to go.

14      And at the time you made no -- you're representing

15  yourself.  This is not a situation where you get to go back and

16  talk to Mr. Tamor and then come back after the fact and say:

17  Judge, you did it -- you should have done it a different way.

18  You elected to represent yourself and you should have made a

19  point then or shortly after the jury had gone out.  You didn't

20  do it.

21      This is the first I've heard of that; that I should have

22  done it individually.  Well, I'm sorry.  I don't agree with

23  that.

24          MR. BRUGNARA:  I'm talking about what I'm reading

25  here just in the exhibits about them telling the USOs [sic]

1  that I'm being prejudiced against and that there is coercive

2  tactics being used in the jury deliberation room against jurors

3  being -- trying to be forced -- the key words is that, "They

4  are trying to force me into signing a not guilty."  That's

5  different than having meaningful debate or conversations

6  whether someone is guilty or not guilty.

7       Someone said:  Well, they are trying to force Judge Alsup

8  into signing something.  Well, how are they trying to force

9  you?  Are they threatening you?  Are they intimidating you?

10  That's not allowed in the jury room and there is no governing

11  body in there, other than the jurors.

12       So when you have one juror saying I'm being coerced and

13  intimidated to say guilty, that needs to be inquired into.

14       Well, what are they doing to you to make you feel coerced

15  and intimidated into saying guilty when you don't believe that

16  he's guilty?  And I want to know what other jurors are being

17  coerced and intimidated, okay?

18       And I also want to know who is prejudiced against me.  You

19  know, this man got singled out and he has just as many rights

20  as the other 11 jurors.  Who is prejudiced against Luke?

21       You said here to three different USO [sic] officers, they

22  are prejudiced against Luke Brugnara.  That's totally different

23  than he's guilty or not guilty.  They are prejudiced.

24       Now, I want to know who is prejudiced against me and why

25  he said that they are prejudiced against me, because now this

1   needs to be inquired into.

2        So we have coercive issues that need to be addressed, and

3   then the bigger issue is the prejudice issues.  Who knows?

4   There may have been people that I've done business with.  I've

5   done business with thousands of people, tenants in the

6   building.  It may be their brother.

7        I want to know who is prejudiced against me and we need to

8   inquire and I want to make sure that the jurors also know what

9   the threshold is to find someone guilty in this courtroom,

10  clear -- or, not even clear and convincing.  It's beyond a

11  reasonable doubt threshold, which is the highest standard,

12  which is -- needs to be explained again to them.

13       So I'm asking this Court to voir dire each juror

14  individually.  Make sure that there is no prejudice.  Make sure

15  that none of them are being coerced.  Make sure they all

16  understand that they don't have to go with the collective

17  group.  If they believe I'm not guilty, that I'm assumed to be

18  not guilty.  I don't even have to prove anything in this Court.

19       You've reiterated -- you've reiterated numerous times

20  instructions.  You've said:  Oh, they can be doing fraud.  I

21  mean, you've reiterated.

22       I want it to be reiterated to them the fact that I'm

23  presumed innocent and they have independent votes.  They can

24  independently vote for me to be not guilty and have all 11 say

25  I'm guilty, or it could be the inverse.  You can have 11 say

PROCEEDINGS

1   that I'm not guilty and one could say I'm guilty.

2       I'm not looking for anything to prejudice either side one

3   way or another.  I just want -- in light of what Jakic said.

4   In light of what was put down in the USO [sic] reports.  You

5   had three different USO [sic] reports here.

6       And I'm really upset I didn't get these on Friday, because

7   under Rule 16 I should have had those on Friday or, certainly,

8   James Stevens should have had them.  But the fact of the matter

9   is they were withheld intentionally up until two minutes before

10  the hearing.  Intentionally, without a doubt.

11      But the fact of the matter is I want them to be inquired

12  individually, just like Jakic is, to make sure there is no

13  prejudice against me and that they are not being bullied or

14  coerced into going along with the group when their beliefs is

15  different.

16          **THE COURT:**  All right.  Let's hear from the

17  Government.

18          **MS. HARRIS:**  Your Honor, there are a number of things

19  I want to say.

20      First, the defendant was given ample time to read the

21  government's brief.  As I recall, the Court gave at least 15

22  minutes.  We were all here at 7:30 and I don't believe that

23  hearing started until after quarter to 8:00.  But, in any

24  event, we had a hearing and it's been decided.

25      There have been no notes from anyone on the jury

PROCEEDINGS

```
1   indicating that there are problems with any other jurors.  It

2   could be completely improper for the Court to yank a

3   deliberating jury in here on Mr. Brugnara's supposition when we

4   have no notes indicating any other issues in the jury.

5        I would also remind the Court and Mr. Brugnara that the

6   juror took the Fifth.  He became unglued and mentally unstable

7   in this courtroom.  He engaged in a terrifying rant.  None of

8   what he said can be given any credibility because he was

9   completely incoherent and mentally unstable.

10       I would also remind the Court that even occurring the

11  terrifying rant, the defendant disregarded this Court's

12  instructions and attempted to curry favor with the juror, which

13  was totally improper.

14       And there is no evidence whatsoever that the juror went to

15  the Federal Public Defender's Office when he took a frolic down

16  to the 18th floor.  The Federal Public Defender's Office is not

17  on the 18th floor.  The crime scene is.

18       I would also like the record to reflect that at one point

19  during the terrifying rant that this juror engaged in in open

20  court, he took a shoe off and it appeared to those of us at the

21  government's table he was about to throw it at the Court.

22       There have been no notes from the jury indicating any

23  confusion about the standard for reasonable doubt and it would

24  be completely improper for the Court to sua sponte bring the

25  jury in and say:  I think I need to explain reasonable doubt to
```

PROCEEDINGS

1    you again.

2         And during the voir dire that the Court did engage in

3    yesterday, the Court asked the jurors if they could disregard

4    any extraneous information that may have been in the jury room.

5    They all indicated by show of hands that they could.

6         And the case law is very clear that a Court cannot delve

7    deeply into any juror's motivations because the Court cannot

8    intrude on the secrecy of the jury's deliberations.  That is

9    particularly in high relief right now, when we have no note

10   from the jury and no indication that they are doing anything

11   other than following the Court's instructions and doing their

12   duty to deliberate.

13        There is, furthermore, no evidence that any juror, other

14   than Jakic, lied during voir dire.  Mr. Brugnara is making

15   completely narcissistic and unfounded suggestions that he is so

16   notorious in San Francisco and beyond, that members of the jury

17   intentionally withheld their knowledge of him.  There is no

18   evidence to support that whatsoever.

19        And, for the record, I never heard of Mr. Brugnara before

20   this trial, including his prior prosecution.

21        So I don't think that there is any basis for the Court to

22   do anything other than what the Court has already done.  And I

23   don't think that the Court should in any way allow this trial

24   to be any further turned upside down.

25        Everything that's gone on, including yesterday, is so

1  deeply troubling to the rule of law and what the purpose of a

2  criminal trial is.  And the Government believes in a fair trial

3  for the defendant, and for the Government, and we have tried

4  assiduously to ensure that Mr. Brugnara's rights have been

5  protected.  The Court has done the same.

6      The only person who has not attempted to abide by these

7  Court's rules and by what the rule of law is all about is

8  Mr. Brugnara.  And I do not think his suggestions should in any

9  way throw this jury into disrepair.  There is no indication

10 that there is any problem with this jury right now.

11          **MR. BRUGNARA:**  Okay.  Well --

12          **THE COURT:**  Before you respond.  I want to confirm

13 that the -- Mr. Jakic not only took his -- his coat off and

14 flailed it against the seats in the jury box as he was standing

15 there in the middle of his rant, but he -- he did -- I am

16 informed by several CSOs after the fact, he did do exactly what

17 the Government just said.  He took his shoe off, had it in his

18 right hand and was in a position to throw it at the judge or to

19 use it as a weapon against the CSOs, who then grabbed his arm

20 so that he could not use it as a weapon.  And that was about

21 the time that he was led from the courtroom when the Marshal

22 said that, to me, this cannot continue, it's a dangerous

23 situation, and he has to be taken out of the courtroom.  So

24 that's whenever I gave the okay to remove him from the

25 courtroom.

PROCEEDINGS

```
 1        So that -- it was a highly disturbing thing and -- all

 2   right.  Just --

 3             MS. HARRIS:  Your Honor, on --

 4             MR. BRUGNARA:  No, no, no.  Excuse me.  I just -- she

 5   made insidious comments about me, and I --

 6             THE COURT:  Please go ahead.  You -- I'm going to let

 7   you have your --

 8             MR. BRUGNARA:  I bit my tongue and let her finish.

 9             THE COURT:  All right.  Please, go ahead.  Of course,

10   you should do that.  Now it's your turn.

11             MR. BRUGNARA:  Okay.  Well, for starters, it just

12   affirms what I said about Ms. Harris not knowing of who I am;

13   that she knows nothing of business.  And it just affirms that

14   it was --

15             THE COURT:  Well, I never heard of you either,

16   Mr. Brugnara, until the tax case --

17             MR. BRUGNARA:  Well, I guess you don't read *Forbes*

18   magazine.  I guess you don't read *Forbes* magazine --

19             THE COURT:  -- and I know a lot of important people

20   in San Francisco.

21             MR. BRUGNARA:  Listen --

22             THE COURT:  So, listen.  Ms. Harris -- this -- this

23   is not a case about --

24             MR. BRUGNARA:  She injected that, your Honor.  She

25   injected that into the --
```

1          THE COURT:  You did.

2          MR. BRUGNARA:  No --

3          THE COURT:  No, you did.  You did it.

4          MR. BRUGNARA:  She injected it into the discussions.

5   She injected it.  I'm not notorious.  I have men up there that

6   lent me a total of a billion-three.  So --

7          THE COURT:  What difference does that make?

8          MR. BRUGNARA:  -- in her fantasy world, maybe.

9          THE COURT:  I don't understand what difference that

10  makes.

11         MR. BRUGNARA:  It makes a difference because it goes

12  to prejudice.  Okay, so --

13         THE COURT:  You're saying that some member of the

14  jury somehow knows about your past as a landlord and you are --

15  they don't like you for that or they resent the fact that you

16  were at one point a high-flying landlord in San Francisco?

17         MR. BRUGNARA:  Exactly.  Exactly.

18         THE COURT:  That's -- that is -- that is so beyond

19  the pale.

20         MR. BRUGNARA:  Actually, I believe it was racial --

21  the way -- this is the thing.  For starters -- let's get to the

22  facts of what she said.

23         THE COURT:  Racial?  You are a white guy.

24         MR. BRUGNARA:  Okay.  This --

25         THE COURT:  You're telling me that somebody is

1    prejudiced against you?

2         MR. BRUGNARA:  This is what -- this is what was said.

3    For starters, she said that Jakic's statements can't be used

4    for a basis for further inquiry, okay, because they were made

5    in this -- and I'm not here advocating Jakic's actions and I

6    don't want that to prejudice my trial.  And that's part of this

7    discussion.

8         But him being an advocate for me and acting disruptive

9    there, the jury heard that.  That taints -- just guilt by

10   association.  A crazy guy thinks Luke's guilty, so we've got to

11   find him not guilty.  I mean, these are all common tenets of

12   rational thought process, okay?

13        So, you know, this taints the jury, just by his

14   association with the not guilty supposition here.

15        But let's talk about --

16        THE COURT:  You mean, you're saying that through the

17   wall -- actually two walls.  Through two walls in the jury room

18   they were able to here the rant by Mr. Jakic and, therefore,

19   that somehow prejudices the jury against you?

20        MR. BRUGNARA:  Yes.  Yes.  Because they heard it down

21   in the Public Defender's Office, and that's all the way down

22   the hall behind three doors, okay?

23        So that's -- that's very prejudicial, okay?  But this is

24   the thing.  The prejudicial comments weren't made during the

25   rant.  The prejudicial comments were made not during the rant

PROCEEDINGS

1  when he was talking to the CSO officers.

2      And three different CSO officers put in the report that

3  there is prejudice against me in -- in that deliberation room,

4  whether it be because what he says they perceive me as being an

5  Italian.  Maybe they hate people that are Italians.  I'm not

6  even saying I am Italian.

7          **THE COURT:**  How could that be?

8          **MR. BRUGNARA:**  But the fact -- you know what?  I

9  don't know how or why people think or do or say what they do,

10 but the fact is there is an allegation of prejudice.  There is

11 an allegation of coercion.  And it wasn't done in the heat of

12 the moment when he's having his mental breakdown.

13     It was done when he was talking to the CSO officers, and

14 three independently said this guy said three things:

15     One, they are prejudiced against me.

16     Two, they are prejudiced against Brugnara.

17     And, three, there is coercive tactics being used in there

18 to try to extract a guilty plea.

19     All three of those are a violation of my right to a fair

20 trial.

21     And to have Ms. Harris sit here with a straight face and

22 go:  Okay, listen, we want a fair deliberation process.  Nobody

23 has heard of a 55-page filing in the second week of the

24 deliberations of a two-week trial, let alone even the second

25 week of deliberations in a two-week trial.

 1        Brandon LeBlanc has not heard of it in the eight years

 2   he's been here.  He goes:  I never heard of a two-week trial --

 3        **THE COURT:**  How do you know what Brandon LeBlanc

 4   thinks?

 5        **MR. BRUGNARA:**  Because I saw him in the attorney

 6   room.  You know, he just came to say hi.  He goes -- let me

 7   tell you something.  I've done a valid job from a feces-covered

 8   cell, fighting off the U.S. Attorneys Office with not even a

 9   paper claim.  That's what the talk of this building is.  You

10   can say what you want about Brugnara, man, but this guy is

11   pretty damn good.

12        And that's the fact of the matter.  You've got the whole

13   U.S. Attorneys Office staying up over the weekend putting

14   together all these exhibits with the FBI.  Here I am sitting

15   here with a pen that doesn't even work in solitary confinement

16   fighting them off.

17        And it's a fight right now.  We don't know how that jury

18   is going to come back.  We don't know how -- I'm just trying to

19   keep it straight, so if there is somebody that's prejudiced --

20   and I do want them to get an instruction, because there was

21   hasn't been enough admonishment about what is -- you know,

22   you -- the not guilty -- you know, what is -- you know, what is

23   the layman's interpretation of that?

24        Because, for me -- I'm pretty smart and I had a lot of

25   discussions with multiple attorneys.  What does "not guilty"

1   mean?  And it's beyond a reasonable doubt.  And I go:  Well,

2   what is a reasonable doubt?  And then it was put into layman's

3   terms.  Then it's beyond that.  So it's -- the highest is

4   beyond clear and convincing.  He says, highest threshold of

5   conviction.

6        Because I live in a world of civil issues, which is, you

7   know, 51 percent.  They go:  Oh, no, no, no.  It's so far

8   beyond that.

9        I want this jury to know what the threshold is so I don't

10  get found guilty of something and spending years in prison,

11  okay?  I want them to know what the threshold is.

12       Because it's clear and obvious they haven't met this

13  threshold or they would have had their guilty verdict a week

14  ago, okay?  Man, they're in about 40th, 35th hour of

15  deliberations on, what, a ten-day trial?

16       So there, clearly, needs to be another admonishment, just

17  about long the deliberations have gone on.  Just on that

18  logical, objective determinant.  Hey, listen.  I want you guys

19  to know, those that are perhaps advocating for guilty.  Those

20  that are perhaps advocating for not guilty.  Understand again,

21  he's presumed innocent.  This is the United States of America.

22  This is not Russia or Croatia.  This is the United States and

23  the man is presumed innocent unless it's beyond a reasonable

24  doubt.

25       And beyond a reasonable doubt, they have to instruct you

1  what it means.  And they can't use coercive tactics on

2  hold-outs, as Jakic is claiming.  Because I'm worried that one

3  of these -- the women are going to get bullied into saying

4  guilty if they believe I'm not guilty.  I'm very concerned

5  about that.

6      Because I saw on the showing of hands there was a delay in

7  two of the women raising their hands when you asked for the

8  show of hands.  There was a delay.  They looked, they turned

9  their heads sideways, and then put their hands up probably

10 about a second after --

11             **THE COURT:**  I did not notice that.

12             **MR. BRUGNARA:**  And I noticed it.  I'm extremely

13 observant, because my life is on the line.

14     Okay.  So I need them to be voir dired and just have you

15 ask a few simple questions.  Hey, listen.  I want to tell you

16 what "beyond a reasonable doubt" means.  I want -- you know,

17 there's been allegations that people are prejudiced against

18 Luke Brugnara from jurors sitting in that room for 30 hours.

19 Are you prejudiced against him?  Are you prepared to understand

20 that he's innocent unless and until, or if not proven guilty,

21 or not -- beyond a reasonable doubt, or he's not guilty.  And I

22 want these admonishments made in light of the accusations that

23 Jakic made.

24     Or, we can bring Jakic back here, if you want.  Bring him

25 in handcuffs.  I don't care if you bring him in chains.  But

1  have him sit there and find out which jurors are prejudiced

2  against me, and then bring out those jurors, and then see who

3  they are tainting in the jury pool.

4       Because I'm entitled, like Ms. Harris said, to a fair jury

5  deliberations.  And it's not fair.  What's going on there is

6  not fair.

7       They came out with smiles on their face.  And I'm prepared

8  to have James Stevens be sworn in under oath, because he was

9  the one saying:  Look, they are coming in smiling.

10      When they came in after Jakic's outburst, they all came in

11 smiling.  And they've never came in smiling.  Which means they

12 heard the outburst of Jakic, okay, and that taints my jury.

13 Okay?  So, and I'm happy to have you swear in James Stevens, if

14 you need to.

15      But the fact of the matter is I'm entitled to fair jury

16 deliberations.  Just like the U.S. Attorneys are entitled to

17 it, I'm entitled to it, too.  And I'm not getting it.  I'm not

18 getting -- they already yanked off a clear advocate for not

19 guilty.  Okay?

20      How many people are -- I mean, what happens if you sit

21 someone down and goes:  Yeah.  Okay.  I'm going to swear you

22 under oath.  Do you know Brugnara?  Yeah, I know him.  Why

23 didn't you tell me?  Well, I forgot.  It was actually my

24 brother.  He was a tenant in his building.  The guy is a jerk.

25 Or this or that.  Okay?  Guess what?  He's off.  You see what

1    I'm saying?

2              THE COURT:  Do you have proof that?  I mean --

3              MR. BRUGNARA:  I have proof --

4              THE COURT:  -- in the government's exhibit --

5              MR. BRUGNARA:  Yes, I do.  Yes, I do.  I have --

6              THE COURT:  Show me the proof that somebody on the

7    jury lied on the voir dire.

8              MR. BRUGNARA:  Here it is right here.  I'll read it

9    to:

10        CSO Officer William Lee -- okay, not him.

11        Let's go to the second one.  CSO Officer Thomas

12   Hoganmiller:  They are trying to make me say Brugnara is

13   guilty.  They are prejudiced against Brugnara.

14        And that's signed under penalty of perjury.

15             THE COURT:  No, no, no.  Okay.  You're talking about

16   Mr. Jakic.  That's the source.

17             MR. BRUGNARA:  But it wasn't when he was having his

18   breakdown here.  It was when he was -- when he was talking to

19   officers.

20        And then the other officer that said it here.  It's

21   confirmed not just by Hoganmiller.  It's confirmed in a sworn

22   declaration here by Mr. Arata.

23        And then it's also by Mr. Hugh Kidd, who is a CSO officer.

24   He says:  They are trying to convict an innocent man and give

25   him 20 years.  Who is doing an investigation on sentencing?

1  Okay.  And then it says:  They are prejudiced against Luke

2  Brugnara.

3       So we have three different CSO officers swearing under

4  penalty of perjury that they heard this man coherently tell

5  them there are prejudiced people that are trying to convict me,

6  because they are prejudiced against me.

7       And prejudice takes many forming.  It could be a racial

8  prejudice.  It could be a prejudice against people whose

9  personalities they don't like.  Whatever -- whatever the

10 proclivity of the prejudice, it doesn't need to be restricted

11 to racial.

12      But what I -- I don't mean prejudice according to sworn --

13 you know, these sworn statements here.  And that requires

14 inquiry to make sure I'm having a fair deliberation process.

15 And the coercion is also addressed in there.

16      So I want to make sure that there is not a handful of

17 jurors, or one juror in there, that's bullying those advocates

18 for not guilty, which is clearly going on.

19      Your Honor, just prima facie.  They are into, what, their

20 eighth day now?  What, fifth, seventh day?  Whatever it is.

21 We're into the second week and the trial only was, what, nine

22 days?  Okay?

23      I mean, from what I've heard from all the counsels in the

24 Public Defender's Office, they said even if you get to the

25 half-point mark of a trial -- so if the trial is a month and

 1  the jury deliberates two weeks, that's crazy.  This trial was

 2  only nine days and they are already into, what, their sixth,

 3  seventh day of deliberation.

 4          **THE COURT:**  They had to start all over again

 5  yesterday.

 6          **MR. BRUGNARA:**  Okay.  But even if they did have to

 7  start all over again, they were still at, what, 40 hours.

 8      The fact of the matter is the trial was only 50-something

 9  hours.  So the fact is that alone warrants further admonishment

10  to the jury.

11          **THE COURT:**  No, it doesn't.  No.  The jury can take

12  as long as they want.

13          **MR. BRUGNARA:**  You pulled off the dissident --

14          **THE COURT:**  If they reached a verdict after day one,

15  you would say they didn't do a good job.

16          **MR. BRUGNARA:**  No.  You know what --

17          **THE COURT:**  They can take as long as they want.

18          **MR. BRUGNARA:**  They can take -- and I want them to

19  take as long as they want, but you just pulled off someone

20  who's an advocate for the defense --

21          **THE COURT:**  I pulled them off?

22          **MR. BRUGNARA:**  Well, this is the thing.  And this is

23  where I disagree with you.  And I've seen you for six years

24  now.

25      You know exactly what you're doing and you have 20

1    Marshals here, just with a -- I mean, they can read your mind.

2    They can read your influctuations.  You don't even have to

3    verbally say anything.  That's how trained these Marshals are.

4         And you could have had that guy gagged and bound with one

5    look to one Marshal.  You orchestrated that because your goal

6    was to get him off the jury.  And you accomplished that.

7         And I'm not here defending Jakic.  That's not what this

8    request to you this morning is about.

9         **THE COURT:**  If that had been my goal, when I got the

10   first note, I would have done it then, but I didn't.  I gave --

11   I went against the Government and sent them back to deliberate

12   further.

13        So your story just doesn't -- it's just -- it's just not

14   making any sense.

15        **MR. BRUGNARA:**  That's proof that --

16        **THE COURT:**  I want to make it clear to you:  That was

17   not my goal.  I would never, never, never excuse a sitting

18   juror in deliberations or any other time because they were

19   leaning to the defense or leaning to the government.  And it's

20   an insult, an insult that you would make that suggestion time

21   and time again --

22        **MR. BRUGNARA:**  Okay.

23        **THE COURT:**  -- and I want you to know, and the Court

24   of Appeals and anyone else who is listening to know, I am -- as

25   part of my job, I have to sit here and take this kind of insult

1  because I believe in the system and as distasteful as what

2  you're saying is, I've got to just listen to it, and I accept

3  it as part of my job.  And I -- it hurts me to think that you

4  would feel that, that I would ever excuse somebody because --

5          **MR. BRUGNARA:**  It's not personal --

6          **THE COURT:**  -- because of the way they were leaning.

7          **MR. BRUGNARA:**  It's not personal.  Listen, it's not

8  meant to be a personal attack at all.  I'm making a statement,

9  in fact, because you, in fact, said you're going to be

10 convicted, not -- numerous times in the last 30 days.  It's on

11 the transcript.  So --

12         **THE COURT:**  I would like for you to find those.  You

13 keep saying that.

14         **MR. BRUGNARA:**  Okay.  I will find that --

15         **THE COURT:**  I don't think I ever said you were going

16 to be convicted.

17         **MR. BRUGNARA:**  I'll make you a deal.  I know you're a

18 straight shooter.  I'll make you a deal.  I show that to you on

19 the transcript, you wipe out all the summary contempt.

20         **THE COURT:**  I'm not going to do that.

21         **MR. BRUGNARA:**  If I don't show it, I will double my

22 summary contempt.  I know you said it and I'll prove it up.

23        But this is the thing.  The fact of the matter is, the

24 fact that Jakic went back there after this note and deliberated

25 for another hour and then deliberated whatever he did yesterday

1   morning before you called out this voir dire was proof positive

2   that the man was continuing in his duties as a juror to

3   deliberate.

4         And that whole meltdown over there -- you have got to

5   remember, too.  This guy was in the Croatian/Serbian conflict.

6   He was urinated, defecated on.  Beaten from head to toe.  So

7   this guy is not, you know, just a normal guy walking down the

8   street.  This is someone who has been severely tortured, okay.

9   And to trigger that sort of flash back, yeah, I mean, that sort

10  of thing happens.  That would be like saying, man, how was it

11  when you got raped when you were 12?

12        You've got to be compassionate to a situation like that.

13  I'm a compassionate person.  One thing you may have seen now

14  after six years, I'm a very compassionate person.  And the fact

15  of the matter is, I show compassion to what that man has dealt

16  with.  He sat there for four weeks during this trial and

17  deliberations, three-and-a-half weeks, on time doing his duty

18  to the United States, digging up something when he was a

19  teenager in 19- -- this guy is your age, okay?  He's 69, 68.

20  When he was -- you know, 45 years ago --

21              **THE COURT:**  He was not a teenager.

22              **MR. BRUGNARA:**  It was '71.  How old were you in '71?

23  The guy is 69.  Okay?  So in '71 he paid a prostitute and she

24  shook him down for more money by saying he raped her.

25              **THE COURT:**  He was 36.

1           **MR. BRUGNARA:**  The guy was incredibly transparent.  I

2    mean, he gave you way more information than he needed to give

3    you, which even showed that he was trying to comply with the

4    transparency request of:  Hey, tell me what happened.  And he

5    would give you these lurid details of what happened.  So he was

6    honest.

7        At that point I would have said:  You know what?  Go back

8    in the jury deliberation room.  Keep deliberating.  And that's

9    what you should have done.  Or you should have said:  Who is

10   prejudiced against Brugnara?  You said to my CSO officers

11   people are prejudiced --

12           **THE COURT:**  You're just venting and ranting yourself.

13           **MR. BRUGNARA:**  I'm not venting.

14           **THE COURT:**  All right.  You have -- what is your

15   motion?

16           **MR. BRUGNARA:**  My motion is for you to either, A, put

17   Jakic back on the jury --

18           **THE COURT:**  No.

19           **MR. BRUGNARA:**  Okay.

20           **THE COURT:**  It's impossible.

21           **MR. BRUGNARA:**  Or, B, voir dire each juror

22   individually and inquire whether or not, based upon Jakic's and

23   the USO's [sic] sworn declarations, that there is allegations

24   of prejudice against Mr. Brugnara, and I want to find out if

25   you've heard anything prejudiced against Mr. Brugnara or if, in

1   fact, you are prejudiced.

2        So, A, if they have heard any prejudice; or, B, if they

3   are prejudiced.

4        And this benefits the U.S. Attorneys, too.  This is for

5   our mutual benefit here.  Okay?  Because they don't want this

6   to go unabated here.  So find out if anyone is prejudiced

7   against me, if they have heard anything.  Then ask them:  Are

8   you being pressured or coerced in any way to either say guilty

9   or not guilty or if you heard any coercion in there against

10  guilty or not guilty.  Just -- on either side.  And then we'll

11  find out what's really going on back there.  Because -- and

12  I'll you what it does.  It cleans up the record.

13       I would also ask, the third thing is:  Did you hear

14  this -- this loudness in the courtroom from Jakic yesterday?

15  And if they did hear the loudness in the courtroom, that's an

16  issue.  You know, does that affect the way you interpret this

17  case at all?  Because I noticed you were smiling when you came

18  in.  Why were you smiling?

19       Okay.  These are issues because it affects my freedom.  It

20  affects my family.  It affects by liberty.

21       And, listen, if this was about money, man, I wouldn't even

22  care about that.

23            THE COURT:  You said that.

24            MR. BRUGNARA:  But the --

25            THE COURT:  I need for you ever to stop so I can make

1    a ruling.

2          **MR. BRUGNARA:**  Your Honor, if you were put in a cell

3    even for a day, you would understand -- if Ms. Harris was or

4    Mr. Kingsley -- how serious this is.  Okay?

5          I need to have a fair process and I'm not asking for

6    anything more than they would ask or get.  So that's what I'm

7    asking for.  Either put Jakic back on or have a voir dire.

8          And then the fourth thing I want you to do is admonish

9    them individually, not collectively, of what "beyond a

10   reasonable doubt" means and that I'm presumed innocent.  And

11   that -- and that's fair because you've done multiple

12   admonishments about:  Hey, you know, because they were

13   committing fraud doesn't mean Brugnara can't -- you know, can't

14   be doing it himself.

15         You did that admonishment on the record, I counted, five

16   times.  And you've only done the admonishment on the not guilty

17   once or twice.  So the fact is you're doing an admonishment

18   about what the determinant is to actually find me.  I think

19   it's very relevant at this point, especially how long they have

20   been deliberating.

21         So that's what I'm requesting.

22         **THE COURT:**  All right.  I'm going to ask you now not

23   to interrupt me while I try to remember all those points.

24         The jury has been adequately and thoroughly instructed on

25   what "beyond a reasonable doubt" means, as well as the fact

```
1   that the Government has the burden of proof on the supplemental
2   instruction that we gave.  I, at your request, again instructed
3   that they had to find beyond a reasonable doubt.  The
4   Government didn't want me to do that, but I did it anyway
5   because you had requested it.
6       And it is true that they must find beyond a reasonable
7   doubt.  So there is no doubt in my mind that the jury is
8   thoroughly aware and properly instructed on what the burden of
9   proof is by the Government.
10      All right.  That's number one.
11      Number two.  The -- on the outburst by -- and the rant,
12  extremely loud, yesterday by Mr. Jakic, there is no denying
13  that; but -- and I can't say whether or not somebody in the
14  jury room was able to hear it through two walls, one of which
15  is a granite wall, marble.  But even if they did, the jury came
16  back and I inquired whether or not they could do their job
17  properly at that point in time, even though Mr. Jakic had been
18  excused, and -- and they said yes.  So I think I adequately
19  covered that.
20      There is a danger, I should say, if you start -- if you
21  start saying to a jury:  By the way, Mr. Jakic was out here
22  ranting and raving and would that in some way affect your
23  deliberations?  You could be accused of making more of an issue
24  out of it than it already was and exacerbating the problem.  So
25  you can't just -- you can't just plow headlong into it.
```

PROCEEDINGS

1    And I tried to -- I tried to go through that problem as

2  delicately as I could, but at the same time do it adequately,

3  and I think I did.

4    So now with respect to this suggestion that there are

5  people on the jury who are prejudiced against Mr. Brugnara,

6  there is no credible suggestion, much less evidence to that

7  effect.

8    Now, it is true, Mr. Brugnara is correct, that the -- that

9  Mr. Jakic made that statement to CSOs, Court Security Officers,

10  during his bizarre behavior on the 18th and 19th floors.  And

11  that was not as bad a performance as what happened in the

12  courtroom yesterday, but it was still bizarre activity.  He was

13  doing -- saying all these things in a very loud voice.  Not

14  being provoked by the CSOs, by the way.  He was voluntarily

15  saying all these things in a public place.

16    But we can tell from the way he performed yesterday that

17  he -- his mind is not working correctly, and that he is

18  severely mentally disabled; and that when he says that the --

19  somebody on the jury is prejudiced against Mr. Brugnara, that

20  means nothing more than there are people on the jury who

21  believe the evidence shows that Mr. Brugnara is guilty, and

22  that they are arguing that case in the jury room, and that's

23  all it means.

24    It cannot -- it does not mean that there is somebody who

25  harbors prejudice against Mr. Brugnara because they may have

1    heard about him, of which there is no proof of being a

2    high-flying landlord in the 1990s.  That is preposterous.

3        So that's not -- that's not the way I read the situation.

4    I think there is nothing to support the idea, nothing credible

5    to support the idea that Mr. Brugnara is the victim of any kind

6    of prejudice.

7        I'm not done.  I want to -- there is a further point on

8    this.  The idea that we would call in the jury and ask them

9    about their deliberations on this flies in the face of

10   everything the Court of Appeals has told us we, as judges,

11   cannot do.  We cannot inquire about where they are in the

12   deliberations and try to put -- no, we can't do that.  And so

13   for me to bring them in and say:  By the way, are any of you

14   prejudiced against Mr. Brugnara?  That is -- we don't do that.

15       Now, as an aside, I would like to point out that yesterday

16   when I brought in Mr. Jakic, I did not ask him what had

17   happened in the jury room.  He eventually on his own, in his

18   rant, started going off about that.

19       But my questions that I had directed to him were about his

20   criminal record, and I was about to ask him why he didn't

21   disclose in the voir dire and did he understand the question

22   that I -- and he -- and once he began his non-stop rant, I

23   could not get a word in -- not even a syllable in edgewise.

24       It was impossible to continue any further questioning of

25   him even when he came back after his rest break he launched

PROCEEDINGS

1   immediately into the tirade again.  So I got as much

2   information as I was ever going to get out of Mr. Jakic

3   yesterday.

4        So I asked him about the -- two things:  His criminal

5   record, and whether he had been in prison prior to -- back in

6   his past, "had he been in prison and/or tortured," I believe

7   was the way I phrased that.

8        I did not ask him about anything that was said -- that he

9   said in the jury room.  I'm not saying you can never, never,

10  never ask about what's happened in the jury room, but I am

11  saying you have to be very careful not to intrude on the

12  deliberative process, and so I stuck to things that were

13  pre-dated his ever showing up at the U.S. District Court.  And

14  that's as far as we got before his tirade and before

15  Mr. Brugnara commenced to have personal direct communications

16  with the juror while he was in the middle of his rant, and

17  things went down -- very steeply downhill from there.

18       So the answer is, I'm not going to call in the jury and

19  give them further instructions.  I'm not going to do -- conduct

20  an inquiry based upon the ranting and raving about people being

21  prejudiced against Mr. Brugnara because it's not credible,

22  considering the source, considering the circumstances.

23       If the jury sends back a note -- oh, I want to say one

24  other thing.  The jury is entitled to take as much time as they

25  want.  They started deliberating in earnest on Tuesday, and

 1  then they got to Friday.  Friday was the day that the -- Mr.

 2  Jakic bolted out of the jury room and ran off and things had to

 3  be suspended.  That happened at 11:00-something in the morning.

 4  And then we got the note later in the day.

 5      So the fact that they have not reached a verdict yet, or

 6  by that point, is to me not surprising.  To me, it shows that

 7  they are trying to do a careful job to understand the

 8  instructions, go through the evidence, and then see if the

 9  Government has proven the case.

10      Now, they are starting all over again as of yesterday

11  because they have to do that under my instructions.

12      Anyway, if a note comes out from the jury suggesting that

13  we need to follow-up in some way, then we'll have to address

14  it.  But that's not what happened and I'm not -- in the absence

15  of a note, I am not going to interrupt their deliberations to

16  do the things that Mr. Brugnara wants.

17      All right.  So we're not going to argue any more about it.

18  It's done.

19          MR. BRUGNARA:  Okay.  I have something else --

20          THE COURT:  If you have a brand new motion, I will

21  hear it.  Go ahead.

22          MR. BRUGNARA:  Can I make one correction, though,

23  just for the record?

24          THE COURT:  No.  I --

25          MR. BRUGNARA:  They didn't say I was a high-flying

1    landlord.  They said it was because I'm, quote, Italian.  So

2    just to correct that's what the USO [sic] report officer said.

3              **THE COURT:**  Well, you, yourself, told me a minute ago

4    that they had possibly heard of you as a famous personage in

5    San Francisco, and, therefore, you -- that --

6              **MR. BRUGNARA:**  Your Honor, I'm just quoting your

7    officers' reports.  It doesn't talk about landlord.  It talks

8    about Italian.

9              **THE COURT:**  You, yourself, said "landlord" awhile

10   ago.

11       So whatever the basis is for supposed prejudice, it is not

12   credible.

13             **MR. BRUGNARA:**  Okay.  Okay.  Now, the next thing

14   is -- well, two things.

15       A, I want to be released on reasonable bail conditions

16   pending, like you said, the jury deliberations may very well go

17   on another week --

18             **THE COURT:**  No.

19             **MR. BRUGNARA:**  -- and I'll continue --

20             **THE COURT:**  You're a flight risk.  I'm not going to

21   do that.  You ran off once.  I'm not going to do it.

22             **MR. BRUGNARA:**  Okay.  Well, I think there is

23   reasonable bail conditions, especially in light now of the

24   evidence that this Court heard for two weeks, about the items

25   of no value that were proffered in front of this Court of being

1   of tangible value for a year.

2        Sprague even said on the record independent of the charges

3   for the purposes of sentencing --

4             THE COURT:  You're a flight risk.  There is no set of

5   circumstances I can imagine --

6             MR. BRUGNARA:  No, no, no.  You're not letting me

7   finish.

8        It comes down to what the sentence is.  If something is

9   worth $1,000, the sentencing guidelines is -- or $5,000 or

10  $10,000, the sentencing guidelines is zero to three months.

11  I've already been sitting in that jail, incredulously, for

12  almost a year, for 11-and-a-half months, and I'm entitled to an

13  initial 54 days and another two weeks.  So the fact is I

14  basically have 14 months in the bank.  Okay?

15       So the reality is even if I get convicted, under of the

16  guidelines I've already exceeded my sentence.  So -- and that

17  is grounds for you to give me reasonable bail conditions and I

18  would request that of this Court.

19            THE COURT:  Well, you -- I don't know if you -- I

20  haven't looked at the sentencing guidelines on this yet, but I

21  cannot believe that the sentence would be three months under

22  the guidelines.

23       What is the government's view of this?

24            MS. HARRIS:  Your Honor, it would not.  And, by the

25  way, the loss, if the jury comes back on the fraud counts, is

```
 1  going to be -- the intended loss was $11 million, as the Court

 2  knows, from Rose Long's testimony.

 3           MR. BRUGNARA:  That's not true.

 4           MS. HARRIS:  The Valsuani --

 5       (Simultaneous cross talk.)

 6           MS. HARRIS:  Your Honor, may I finish?

 7       (Simultaneous cross talk.)

 8           MS. HARRIS:  Your Honor, may I finish?

 9           MR. BRUGNARA:  The Valsuani isn't the perceived

10  value.  It's the actual value.

11           THE COURT:  Mr. Brugnara.  Mr. Brugnara.

12           MR. BRUGNARA:  Based upon a fair and independent

13  valuation.  Sprague --

14           MS. HARRIS:  Your Honor, this is what he has done

15  through this --

16           THE COURT:  I want the record to be very clear.

17  Mister -- I hope that the -- if there is a conviction and if

18  there is an appeal, I hope that someone brings to the attention

19  of the Court of Appeals that Mr. Brugnara insinuates into the

20  record statements that are incorrect.  He continues to talk.

21  He goes on for so long that we forget that he made the

22  statements.

23      It's impossible to correct everything that he says at the

24  moment that he says it.  And then later he will probably claim

25  to the Court of Appeals:  Hey, you know, I said this and he
```

PROCEEDINGS

1    didn't deny it, so, therefore, it must be true.

2         Please, please, do not fall for that.  Most -- most of

3    what Mr. Brugnara says, in my judgment, is exaggerated.  And

4    some of it I have found in the past to be downright false.

5         And I'm making this statement from having done this in my

6    course of doing my job as a judicial officer on things like

7    listening to the testimony at the Form 12.  Making a bail

8    release decision.  And his other tactic is interrupt and not

9    let the other side finish their point.  So that they never get

10   the chance to make the point because he interrupts and takes

11   charge.

12        You know, it is so -- he has exercised the right to

13   represent himself and has abused that right so dramatically

14   that it hurts to see what he's done to the process.

15        There is no doubt in my mind that this trial, he tried his

16   best to make this a train wreck and -- and violated the direct

17   orders of the Court, did exactly what he told his mother he was

18   going to do.

19            **MR. BRUGNARA:**  Oh, come on.  You give me nine

20   directives that are --

21            **THE COURT:**  There he goes again.  There he goes

22   again.  Interrupting the judge.

23            **MR. BRUGNARA:**  What can I --

24            **THE COURT:**  Ms. Harris, please finish the point you

25   were trying to make, if you can even remember it now.

PROCEEDINGS

```
 1              MS. HARRIS:  Yeah, I can.

 2         It's about the value of the Valsuani Degas, which

 3    Mr. Brugnara stole.  That Valsuani Degas --

 4              MR. BRUGNARA:  Really?  You're kidding me --

 5              MS. HARRIS:  Mr. Maibaum -- he's doing it again, your

 6    Honor.

 7              MR. BRUGNARA:  That's a false statement --

 8              THE COURT:  Mr. Brugnara, I'm -- we're going to stop

 9    the hearing if you don't behave.

10         Please, go ahead.

11              MS. HARRIS:  I, too, share the Court's concern about

12    the rule of law and what's happened in this trial.

13         But be that as it may, the Valsuani Degas, which was

14    disclosed to Mr. Brugnara as a Valsuani Degas, does not have No

15    Sale Value.  It has No Sale Value at Sotheby's.  That is not

16    where Mr. Maibaum and Ms. Long were selling it to.  They were

17    selling it to Mr. Brugnara.  And we will be able to present

18    evidence about the valve that, as well as what Mr. Maibaum paid

19    for it in 2007.

20         Mr. Brugnara does not have time in the bank where he can

21    commit new crimes.  And I suspect that's what he's thinking

22    with these contempt things.

23         The credit for time served doesn't apply to new crimes

24    that he continues to commit in this courtroom --

25              MR. BRUGNARA:  This is -- this is --
```

PROCEEDINGS

```
1            MS. HARRIS:  The --

2         (Simultaneous cross talk.)

3            MR. BRUGNARA:  Objection, your Honor.  This is an

4   attack on my persona and this is completely unwarranted --

5            THE COURT:  All right.  All right.  The hearing is

6   going to be at an end.  The motion is denied and I want the

7   record to show that Mr. Brugnara has repeatedly interrupted and

8   not tried -- and not allowed the other side to have their fair

9   say.

10       Go back and look at how much time you took today,

11  Mr. Brugnara.  You spoke for 75 percent of the time.  Ms.

12  Harris and I spoke 25 percent of the time.  And you

13  interrupted --

14           MR. BRUGNARA:  You give me nothing though.  She

15  doesn't have to speak.  You're her advocate.

16           THE COURT:  Thank you for being so supportive and

17  for --

18           MR. BRUGNARA:  You give me nothing.

19           THE COURT:  -- and so easily forgetting the many

20  times that I have ruled for you.

21           MR. BRUGNARA:  In the in limines it was twenty-two to

22  nothing.  Can you help me with that math?  Because I know I'm

23  not a math major like you.

24           THE COURT:  Another false statement by Mr. Brugnara.

25           MR. BRUGNARA:  All right.  Excuse me.  It's
```

PROCEEDINGS

```
1  twenty-one to one.
2          THE COURT:  Whatever it was, it was not twenty-two to
3  nothing.
4          MR. BRUGNARA:  It's on the record.  Mr. Brugnara, I
5  gave you one.  It wasn't twenty-two to zero.
6      And you did say you're going to be convicted three times
7  just in the last two weeks.  I'm going to bring it --
8          THE COURT:  Fine.  I would like to see that.  I don't
9  believe I said it.
10         MR. BRUGNARA:  I have another motion regarding --
11         THE COURT:  Mr. Brugnara, I'm bringing the hearing to
12 an end.
13         MR. BRUGNARA:  But I'm a pro se litigant.  I'm not --
14         THE COURT:  You don't have a right to bring up any
15 more hearings.
16     I'm going to order you now, anything further you want to
17 bring up must be done in writing.  If your motion is cogent, I
18 will call you in here for a hearing.  We will have no more of
19 these on-the-fly things.  It's a speech --
20         MR. BRUGNARA:  There is a written motion pending I
21 filed last Thursday that hasn't been heard yet.
22         THE COURT:  Denied.  Denied.
23         MR. BRUGNARA:  What is it?
24         THE COURT:  I don't even know what it is because
25 it's --
```

1           **MR. BRUGNARA:**  That's prejudicial.  Oh, my God.

2           **THE COURT:**  You haven't brought it up today.  I

3    didn't -- I don't remember what you're even talking about.  I'm

4    going to go back and ask my law clerk to find some written

5    motion and see if we ruled on it or not.

6        Mr. Stevens, I want you to check in with your client

7    periodically.  If he has a written motion that's cogent, we'll

8    hear it.  But from now on the -- these oral -- he has abused

9    this process and we have indulged it to a fault.

10       And, I'm sorry, but I'm -- I am going to start putting my

11   foot down.  We're not going to just keep doing that.

12          **MR. BRUGNARA:**  I have a right as a pro se litigant --

13          **THE COURT:**  To what?

14          **MR. BRUGNARA:**  -- despite you believing that I don't

15   have rights, and the rights are constrained because I'm held in

16   a jail; but I certainly have a right to file a motion, which I

17   filed on Thursday on James Stevens --

18          **THE COURT:**  What was it that I didn't rule on?

19          **MR. BRUGNARA:**  The motion was to -- and we discussed

20   it yesterday.

21          **THE COURT:**   Then I must have ruled on it.

22          **MR. BRUGNARA:**  You haven't ruled on it, because --

23          **THE COURT:**  What is it?

24          **MR. BRUGNARA:**  On the summary contempt, that there is

25   all sorts of case precedent regarding that it can't exceed 180

1    days in an instant matter --

2            **THE COURT:**  I'm researching that now.  You're totally

3    wrong on that, and I'm writing an order on that.

4            **MR. BRUGNARA:**  So your interpretation, which is

5    completely disassociated with all the rulings that -- in your

6    -- under your --

7            **THE COURT:**  We heard this motion already.

8            **MR. BRUGNARA:**  But under your theory, you can give

9    somebody five years in an instant matter on summary contempt --

10   let's say, if the instant matter lasts three days -- as long as

11   you break it into little five-month increments.  That's absurd.

12       That's like saying if somebody is a part-time employee and

13   they are working 100 hours a week, and you're hired as a

14   part-time employee, the entire concept --

15           **THE COURT:**  We have argued this yesterday.

16           **MR. BRUGNARA:**  Yeah, you said you have made a -- now

17   you're saying you made a ruling on it.

18           **THE COURT:**  I haven't issued it yet, but I went back

19   and did research on this and you are just wrong about the case

20   law.

21           **MR. BRUGNARA:**  The fact of the matter is, nobody has

22   ever done what you've done.  Okay?  Nobody has ever done -- you

23   can't stop --

24           **THE COURT:**  Maybe no one has ever done what you've

25   done.

PROCEEDINGS

1         **MR. BRUGNARA:**  Look.  She's laughing.  I want to make

2  on the record, Ms. Harris is laughing and Mr. Kingsley is

3  laughing with my liberty at stake, and that Judge Alsup is

4  facilitating their amusement here at the sake of my liberty.

5         I, by the way, pay their salaries.  This washed-up

6  has-been is doing a $150 million loan, as Barbato said, right

7  now --

8         **THE COURT:**  Do we have to hear this speech again?

9         **MR. BRUGNARA:**  -- pays these people's salaries.  And

10  yours, quite frankly.

11         But I know you worked at MoFo for 25 years and were self

12  sufficient.  They've never been.  Okay?  So I don't have much

13  -- and you say no one has ever heard of me?

14         For someone who has never heard of me, I've done a pretty

15  good job keeping these two at bay.  And it's, apparently,

16  according to the Public Defender's Office, quite a talk that I

17  can take two litigators with 15 people in their office helping

18  them.  I'm in a little cell in Oakland.  And we're now in our

19  second week of deliberations.

20         Everyone said I beat her soundly in the closing argument.

21  Soundly.  I heard that from ten different people in the

22  audience.  They --

23         **THE COURT:**  That's for the jury to decide.

24         **MR. BRUGNARA:**  -- said it wasn't even close.

25         That's pretty good for a guy who is a real estate guy and

1  someone who has done it for 25 years.  Okay?  So let's make

2  that on the record.

3      But I'm entitled to have my liberty maintained.  I have

4  four children that are waiting to see me.  I don't -- let me

5  tell you something.

6      I'm going to end this with a story.  I know a guy named

7  Brian Sandoval.  He's the governor of Nevada, okay?  And you

8  know what?  Let me tell you a story.  Okay?  He was a sitting

9  judge, like you, and they asked him:  Why did you resign?  He

10 was a federal judge appointed by Bush around 2003, '04.  He

11 goes:  Oh, I couldn't do it any more.  Why couldn't you do it

12 any more?  Because I couldn't sleep at night.  I couldn't sleep

13 at night.  Putting people locked up in chains, putting them in

14 jail.

15     The guy had a heart.  Okay?  The guy had a heart.  It

16 takes a really cold-hearted individual to seize somebody's

17 liberty and throw them away from their wife and their children

18 who need them desperately.  Unless this person absolutely is

19 guilty.  Then, yes, you have to be hard-nosed.  You have to be

20 tough.  Absolutely.  It takes a real man to do that.

21         THE COURT:  Mr. Brugnara.

22     (Simultaneous cross talk.)

23         THE COURT:  Mr. Brugnara.  Mr. Brugnara --

24         MR. BRUGNARA:  You locked me up for 11-and-a-half

25 months and you know I have no history of violence.  You did it

```
 1  vindictively.  Prejudiced.  Because you think I'm a big mouth.

 2  You wanted to shut me down.  And you have hurt my family so

 3  bad.

 4       And a guy like that had a --

 5            THE COURT:  Mr. Brugnara.  Mr. Brugnara.

 6            MR. BRUGNARA:  You have no heart.  You're

 7  cold-hearted.

 8       Ms. Harris is exactly like you.  She wants to sit in that

 9  bench and she has been dying to get in that bench for God -- I

10  know nothing about her.  I bet you on my life she has no

11  children.  I bet she has no life --

12            THE COURT:  All right.  The Marshals --

13            MR. BRUGNARA:  -- outside of her job.  All right?  Am

14  I right?

15            THE COURT:  The Marshal will escort --

16            MR. BRUGNARA:  That's a yes.  Just by the way she

17  acts.

18            THE COURT:  -- Mr. Brugnara to the holding cell and

19  the hearing is over.

20       Thank you.

21       (Whereupon there was a recess in the proceedings

22        from 8:41 a.m. until 10:46 a.m.)

23            THE COURT:  Everyone is here except the jury.

24  Mr. Brugnara is here.

25       We have note number six that says, "The injury has reached
```

1    a unanimous verdict."

2        I want to bring the jury in and take the verdict.

3        I need to say to the CSO officers.  In a moment, once we

4    start bringing the jury in, I want you to lock the doors and

5    not have any distractions because we need to poll the jury.

6        But I need to address a preliminary point on one of the

7    motions you made this morning, Mr. Brugnara.  And that is that

8    you were -- made a request for counsel for certain purposes.

9    But Diana Weiss, I sent her to talk to you in response to your

10   motion, and I want to make sure that you -- that you want

11   Mr. Boisseau for all purposes, is that correct?

12           MR. BRUGNARA:  That's correct.

13           THE COURT:  All right.  Now --

14           MR. BRUGNARA:  Excuse me.  And Dena and James Stevens

15   in the transitory capacity.

16           THE COURT:  Mr. Stevens will be in a transition

17   period only, but there -- Dena Young would also be appointed.

18       But you need to know that once they are appointed, you say

19   nothing, other than if there is a sentencing allocution or

20   sworn testimony.  They will speak for you.  So you would be

21   giving up your right of self representation.

22       Do you understand that?

23           MR. BRUGNARA:  Understood.  And she also said that

24   there would be holding off on any orders on the contempt

25   pending receiving the motion from Dena and Boisseau.

```
 1           THE COURT:  That's not true.  I don't know where,
 2   where you got that.  I'm not holding off on anything.
 3        So if you want to hold this in abeyance, I'm not going to
 4   deal with it further now then.  I'm not going to appoint anyone
 5   until I get that part straightened out.  So I'm not holding off
 6   on anything.
 7        All right.  Is there any reason why we should not bring
 8   the jury in and receive the verdict?
 9           MS. HARRIS:  No, your Honor.
10           THE COURT:  Mr. Brugnara?
11           MR. BRUGNARA:  No.
12           THE COURT:  All right.  We'll bring the jury in and
13   receive the verdict.
14        (Jury enters the courtroom at 10:49 a.m.)
15           THE COURT:  Welcome back.  Please be seated.
16        Mr. Hellman is the foreperson.  Let me ask you this
17   question.  We have received a note saying that you had reached
18   a verdict, a unanimous verdict.  Is that true?
19           FOREPERSON HELLMAN:  Yes, your Honor.
20           THE COURT:  Have you signed the verdict form?
21           FOREPERSON HELLMAN:  Yes, your Honor.
22           THE COURT:  Have you dated the verdict form?
23           FOREPERSON HELLMAN:  Yes, your Honor.
24           THE COURT:  All right.  I want you to hand the
25   envelope to the Court Security Officer and the Court Security
```

1    Officer will hand it to me.

2         (Whereupon, document was tendered to the Court.)

3         **THE COURT:**  And before I even look at it, I want to

4    say the following, which is that the Court appreciates the hard

5    work that you have done over there in the jury box and in the

6    jury room, and on behalf of the United States District Court

7    thank you for your service.

8         What I am going to do now is read the form.  First, I will

9    just check it to make sure that the -- it's properly filled

10   out.  By that I mean, that the proper boxes are filled out and

11   it's dated and signed.  Because if it's not, I have to give it

12   back to you to do it right.

13        Then I will read the verdict form, each question with your

14   answer.  And all 12 of you must listen carefully because

15   afterwards the clerk will ask you if that verdict, as read, is

16   your individual verdict.  So each of you over there should pay

17   close attention.

18        All right.  The Court will now read the verdict.

19        (Brief pause.)

20        **THE COURT:**  Okay.  Question number one:  Has the

21   Government proven beyond a reasonable doubt that Defendant Luke

22   Brugnara is guilty of wire fraud in violation of 18 USC 1343,

23   as charged in Count One of the indictment?  No, not guilty.

24        Question two:  Has the Government proven beyond a

25   reasonable doubt that Defendant Luke Brugnara is guilty of wire

1   fraud in violation of 18 USC 1343, as charged in Count Two of

2   the indictment?  Yes, guilty.

3        Question three:  Has the Government proven beyond a

4   reasonable doubt that Defendant Luke Brugnara is guilty of wire

5   fraud in violation of 18 USC 1343, as charged in Count Three of

6   the indictment?  No, not guilty.

7        Four:  Has the Government proven beyond a reasonable doubt

8   that Defendant Luke Brugnara is guilty of wire fraud in

9   violation of 18 USC 1343 as charged in Count Four of the

10  indictment?  Yes, guilty.

11       Five:  Has the Government proven beyond a reasonable doubt

12  that Defendant Luke Brugnara is guilty of mail fraud in

13  violation of 18 USC 1341, as charged in Count Five of the

14  indictment?  Yes, guilty.

15       Six:  Has the Government proven beyond a reasonable doubt

16  that Defendant Luke Brugnara is guilty of making a false

17  declaration before the Court in violation of 18 USC

18  Section 1623, as charged in Count Six of the indictment?  Yes,

19  guilty.

20       Number seven:  Has the Government proven beyond a

21  reasonable doubt that Defendant Luke Brugnara is guilty of

22  making a false declaration before the Court in violation of

23  18 USC 1623, as charged in Count Seven of the indictment?  No,

24  not guilty.

25       Question eight:  Has the Government proven beyond a

1    reasonable doubt that Defendant Luke Brugnara is guilty of

2    escape in violation of 18 USC 751(a), as charged in Count Eight

3    of the indictment?  Yes, guilty.

4         Question nine:  Has the Government proven beyond a

5    reasonable doubt that Defendant Luke Brugnara is guilty of

6    contempt of court in violation of 18 USC 4013, as charged in

7    Count Nine of the indictment?  Yes, guilty.

8         Dated May 19th, 2015 signed by the foreperson,

9    Mr. Hellman.

10        Let me ask now the clerk to poll -- do you have the names

11   of the jurors?

12             **THE CLERK:**  Mr. Hellman --

13             **THE COURT:**  Wait, wait.  You need to keep your voice

14   up.

15        The clerk will now poll each member of the jury.

16             **THE CLERK:**  Mr. Hellman, is the verdict read your

17   verdict?

18             **FOREPERSON HELLMAN:**  Yes.

19             **THE CLERK:**  Ms. Dutta, is the verdict read your

20   verdict?

21             **JUROR DUTTA:**  Yes.

22             **THE CLERK:**  Mr. Garrett, is the verdict read your

23   verdict?

24             **JUROR GARRETT:**  Yes.

25             **THE CLERK:**  Mr. Ferren, is the verdict read your

PROCEEDINGS

1    verdict?

2              **JUROR FERREN:**  Yes.

3              **THE CLERK:**  Ms. Stromberg, is the verdict read your

4    verdict?

5              **JUROR STROMBERG:**  Yes.

6              **THE CLERK:**  Mr. Christopulos, is the verdict read

7    your verdict?

8              **JUROR CHRISTOPULOS:**  Yes.

9              **THE CLERK:**  Mr. Arkin, is the verdict read your

10   verdict?

11             **JUROR ARKIN:**  Yes.

12             **THE CLERK:**  Mr. Patterson, is the verdict read your

13   verdict?

14             **JUROR PATTERSON:**  Yes.

15             **THE CLERK:**  Ms. Velez, is the verdict read your

16   verdict?

17             **JUROR VELEZ:**  Yes.

18             **THE CLERK:**  Ms. Caldwell, is the verdict read your

19   verdict?

20             **JUROR CALDWELL:**  Yes.

21             **THE CLERK:**  Ms. Demorest, is the verdict read your

22   verdict?

23             **JUROR DEMOREST:**  Yes.

24             **THE CLERK:**  And, Mr. Panagopoulous, is the verdict

25   read your verdict?

PROCEEDINGS

```
 1              JUROR PANAGOPOULOUS:  Yes.

 2              THE COURT:  All right.

 3              THE CLERK:  Your Honor, the verdict is unanimous.

 4              THE COURT:  Thank you.

 5      I need to ask both sides two questions.  The first is:  In

 6  reading the verdict form, did I read the questions correctly?

 7  I believe I did, but I just want to make sure that no one

 8  thought I misspoke in some way.

 9      (Brief pause.)

10              THE COURT:  I'm just asking whether I literally read

11  the questions correctly or misspoke in some way.

12              MS. HARRIS:  You did read them correctly, your Honor.

13              THE COURT:  All right.

14              MR. BRUGNARA:  I don't know if you read the questions

15  correctly.  I have ten garbage bags full of my material sitting

16  in a cell.  So I can't -- I can't answer your question

17  accurately.

18              THE COURT:  All right.  Thank you, Mr. Brugnara.

19              MR. BRUGNARA:  But I can tell you that the one

20  dissenting juror --

21              THE COURT:  Mr. Brugnara --

22              MR. BRUGNARA:  -- soon after the 11th hour, who said

23  that I am not guilty in this court, took my not guilty verdict

24  and --

25              THE COURT:  Mr. Brugnara.  Mr. Brugnara --
```

1          **MR. BRUGNARA:**  -- and got (inaudible) --

2          **THE COURT:**  Please.

3          **MR. BRUGNARA:**  So --

4          **THE COURT:**  All right.  Is there any reason why the

5    jury should not be discharged at this time?

6          **MR. BRUGNARA:**  Yes.

7          **MS. HARRIS:**  No, your Honor.

8          **MR. BRUGNARA:**  Yes, there is.  Because, in fact, I

9    already put in a motion this morning, asked them to be voir

10   dired, to find out why the jurors said that there was coercion

11   going on in the jury; that there was prejudice going on in the

12   jury.  And you refused to voir dire them and ask them questions

13   that were in sworn declarations from three CSOs; that, in fact,

14   I was being prejudiced.

15          And, in fact, the one party that said I was absolutely not

16   guilty, he was forced off the jury.  And it's just totally

17   unacceptable.  I ask for a mistrial.

18          Moreover, I ask you to voir dire the jury to see if they

19   heard what happened yesterday because of the loud yelling and

20   them coming and smiling.  You refused to do that.

21          You have been prejudiced against me from day one in this

22   jury.  You said, you're going to be convicted.  You called me a

23   crook, a flim-flam artist, a fraudster.  You said I don't have

24   any lenders --

25          **MS. HARRIS:**  Your Honor, can we do this outside the

1    presence of the jury?

2            **MR. BRUGNARA:**  Excuse me.  Excuse me.

3        (Simultaneous cross talk.)

4            **MR. BRUGNARA:**  The fact of the matter is you

5    orchestrated this venue.  This is a show --

6            **THE COURT:**  Mr. Brugnara, I'm ordering you to please

7    cease.

8            **MR. BRUGNARA:**  If this -- look.  Everyone can see I'm

9    not surprised.  Do I look surprised to anyone out there?  This

10   judge hates me.  This judge hates me.

11           **MS. HARRIS:**  Your Honor --

12           **MR. BRUGNARA:**  He personally --

13           **MS. HARRIS:**  This is improper.

14           **MR. BRUGNARA:**  He's prejudiced against me and he

15   orchestrated this --

16           **THE COURT:**  Mr. Brugnara --

17           **MR. BRUGNARA:**  I didn't did do anything.

18           **THE COURT:**  Ladies and gentlemen, I would like to ask

19   you to go into the jury room.  I'm dismissing you and

20   discharging you from further service.  I will come into the

21   jury room in a minute and individually shake your hand.  I

22   won't talk about this case --

23           **MR. BRUGNARA:**  Shake their hand and pay them off,

24   because you said I was going to be convicted on the record

25   three times in the last two weeks.

PROCEEDINGS                          3392

1          **THE COURT:**  I would like to thank you individually

2     for your service.  At this time please go to the jury room.

3          **MR. BRUGNARA:**  I'm not surprised.  You know, I'm not

4     surprised.  You orchestrated this for the last 12 months.

5          (Jury exits courtroom at 10:59 a.m.)

6          **MR. BRUGNARA:**  This is your show.  You're God in this

7     room.  Outside this room, you're just another man.  In this

8     room you're God.  You should -- you should sleep in here, too.

9     Then pretend you're God 24/7.

10         **THE COURT:**  Be seated out there.

11         **MR. BRUGNARA:**  In the real world, you're just another

12    man that has to answer --

13         **THE COURT:**  Mr. Brugnara.

14         **MR. BRUGNARA:**  When your day comes -- Judge Alsup,

15    when you're day comes, you're going to be judged for what you

16    did to me.  I'm 100 percent innocent.  I didn't take any stupid

17    fake Degas for --

18         **MR. STEVENS:**  Come on --

19         **THE COURT:**  I need a date for sentencing.

20         **MR. BRUGNARA:**  No.

21         **THE COURT:**  I need my clerk.

22         **MR. BRUGNARA:**  I am going to say what I want.  There

23    is no "coming on."  These people here --

24         **THE COURT:**  We're going to set a date for sentencing

25    now.

PROCEEDINGS

```
1          MR. BRUGNARA:  Well, no, because I already said I'm
2   having George Boisseau represent me.
3          THE COURT:  Too bad.  We're setting a date for
4   sentencing, and he can make it.
5          MR. BRUGNARA:  Your Honor, you should do it right
6   now.
7          THE COURT:  Tracy --
8          MR. BRUGNARA:  Get the noose --
9          THE COURT:  Tracy, would you get me the date for
10  sentencing.
11         MR. BRUGNARA:  Get the noose ready.  Why set a date
12  for sentencing?
13         THE COURT:  Mr. Brugnara.  Mr. Brugnara, I'm ordering
14  you to cease.
15         MR. BRUGNARA:  There is a place you can loop up the
16  noose right over there (indicating).
17         THE COURT:  I'm ordering you to cease these
18  outbursts.
19         MR. BRUGNARA:  What are you going to do?  Are you
20  going to put me in jail for 11 more months?  I'm innocent.
21  What are you going to do?
22      You already threw me in a feces-covered cell for 30 hours
23  and --
24         THE COURT:  Tracy, may I have the date for
25  sentencing?
```

1        **MR. BRUGNARA:**  -- scattered all of my documents in my

2   cell, 85,000 pages.  What else can you do?  Put up the noose.

3        **THE COURT:**  Ms. Lucero, can you give me a date?

4        **MR. BRUGNARA:**  Does this surprise anybody?  This is

5   called a kangaroo court.  A kangaroo court means a railroad

6   job.  It means you're set up.  They pulled --

7        **THE COURT:**  Sentencing will be September the 8th.

8        **MR. BRUGNARA:**  They pulled off the one dissenting

9   juror and took him off the jury because he said not guilty.

10  That's called a hung jury and it allows me to be retried.

11       **THE COURT:**  Mr. Brugnara --

12       **MR. BRUGNARA:**  Judge Alsup summarily pulled him off

13  of the jury.

14       **THE COURT:**  Mr. Brugnara.  Sentencing is

15  September 8th 2:00 p.m.

16       **MR. BRUGNARA:**  I suggest you do it now and you can

17  use my belt on the thing.  It's called a lynching.

18       **THE COURT:**  All right.  The hearing is now -- is

19  there any further business from the Government?

20       **MS. HARRIS:**  No, your Honor.

21       **THE COURT:**  May we adjourn?

22       **MS. HARRIS:**  Yes, your Honor.

23       **MR. KINGSLEY:**  Yes, your Honor.

24       **THE COURT:**  All right.  The Marshals will take

25  Mr. Brugnara away, and see you on September 8th.

PROCEEDINGS

1          (Marshals escort Mr. Brugnara from the courtroom.)

2              **MR. TAMOR:**  Your Honor, I did just want to clarify --

3              **THE COURT:**  I can't let you be clarified, because

4    Mr. Brugnara needs to be present.

5              **MS. HARRIS:**  Thank you, your Honor.

6          (Whereupon at 11:01 a.m. further proceedings were

7           adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, May 19, 2015