Volume 16

Pages 3226 – 3328

(Pages 3252:9 to 3268:17 sealed, placed in separate transcript)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
   vs.                         )   No. CR 08-0222 WHA
                               )   No. CR 14-0306 WHA
                               )
LUKE D. BRUGNARA,              )
                               )   San Francisco, California
              Defendant.       )   Monday
                               )   May 18, 2015
_____)   7:41 a.m.

**PARTIAL TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**        MELINDA HAAG
                          United States Attorney
                          450 Golden Gate Ave.
                          San Francisco, California  94102
                   BY:  **ROBIN HARRIS, AUSA**
                        **BENJAMIN KINGSLEY, AUSA**

**For Defendant:**        **LUKE D. BRUGNARA**
                          – pro se


**Advisory Counsel:**     LAW OFFICES OF PAUL WOLF
                          717 Washington Street
                          Second Floor
                          Oakland, California 94607
                   BY:  **JAMES R. STEVENS, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by: Belle Ball, CSR
           *Official Reporter - US District Court*

1    **APPEARANCES:   (CONTINUED)**

2

3    **Advisory Counsel:**         LAW OFFICES OF TAMOR & TAMOR
                                    311 Oak Street
4                                   Suite 108
                                    Oakland, California 94607
5                          BY:   **RICHARD ALAN TAMOR, ESQ.**

6

7    **Also Present:**   FBI Special Agent Jeremy Desor

8                        FBI Special Agent Aleksandr Kobzanets

9                        Denise Oki, U.S. Attorney's Office

10                       Mary Mallory, U.S. Attorney's Office

11                                  –   –   –

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2    **MONDAY, MAY 18, 2015**                              **7:41 A.M.**

3         (The following proceedings were held outside of the

4    presence of the Jury)

5         (Defendant present)

6         (Off-the-Record discussion)

7              **THE COURT:**  Please, on the record.

8              **MR. BRUGNARA:**  Wasn't I supposed to see this on

9    Sunday?

10             **THE COURT:**  Maybe Mr. Stevens let you down.

11             **MR. BRUGNARA:**  Whether he does -- am I supposed to see

12   this on Sunday?

13             **THE COURT:**  No, not necessarily.

14             **MR. BRUGNARA:**  But certainly not two minutes before

15   7:30, right?

16        **THE COURT:**  Why don't you take a minute and talk with

17   Mr. Stevens now.  We're going to discuss it now.

18             **MR. BRUGNARA:**  Can't discuss anything until I read it.

19        (Off-the-Record discussion between Defendant and Counsel)

20             **MR. BRUGNARA:**  He came at 6:50, and nobody would let

21   him talk to me.  In Mr. Stevens' defense.  So, see the

22   disconnect here?

23             **THE COURT:**  All right, please, please confer with

24   Mr. Stevens now, as you both read it.

25        (Off-the-Record discussion between Defendant and Counsel)

PROCEEDINGS

1          (A pause in the proceedings)

2          **MR. BRUGNARA:**  I still haven't finished it

3    (Inaudible).

4          **THE COURT:**  I'm sorry?

5          **MR. BRUGNARA:**  It's about 55 pages long, including the

6    attachments.  I'm a pretty fast reader, but --

7          **THE COURT:**  How much time do you need?

8          **MR. BRUGNARA:**  Well, it depends on the direction this

9    thing goes, but --

10         **THE COURT:**  Well, I think we ought to discuss it.

11         **MR. BRUGNARA:**  Trying to scan through the other pages.

12         **THE COURT:**  Why don't you -- go ahead.  I'll give you

13   five more minutes.

14         (A pause in the proceedings)

15         **MR. BRUGNARA:**  All right.

16         **THE COURT:**  All right.  Let's -- Mr. Brugnara says

17   he's ready now.

18        I have read both sides' submissions.  We'll start with the

19   Government, and ask the Government what your proposal is.

20         **MS. HARRIS:**  Our proposal, your Honor, would be for

21   the Court to confirm that Juror No. 5 is the juror with the rap

22   sheet.  And once that is confirmed, to strike him based on the

23   case law we cited, and based on the factual declarations we

24   filed.

25        And then we would leave it to the Court's discrimination

1    as to whether there's good cause to proceed with deliberations

2    with eleven jurors, or whether to seat one of the alternates at

3    this stage in the proceedings.  But that's our position.

4        He cannot seven impartially as a juror.  He lied about

5    something very material.  He concealed a bias.  And now the

6    purpose for concealing that bias has become clear because he

7    has infected the jury pool with the improper materials from his

8    background that were not brought out from the voir dire.

9        He's also shown mental instability.  And in that regard,

10   we wanted to show the Court the videotape we have from the 19th

11   and 18th Floor.

12           **THE COURT:**  Is it teed up?

13       **MS. HARRIS:**  Yes.  And there's something else I wanted

14   to say, your Honor.  It is not lost on the Government that this

15   juror was found on the 18th Floor, which is also a crime scene

16   in this case.  And when you see the video, I think the Court

17   will understand our concerns in that regard.

18       But it seems very clear to me that there are multiple

19   bases for striking this juror.  Any one of them would be

20   sufficient.  But in toto, it mandates that he be removed from

21   this jury.

22       And so we're ready to tee up the video, if the Court is

23   ready.

24           **THE COURT:**  How long will that take?

25       **MR. BRUGNARA:**  I object to any teeing up of any video

1   until I look at it in advance.  And if this goes any further --

2   I need to have my right to speak now --

3           THE COURT:  I'm sorry; I want to see the video.  Your

4   objection is overruled.  Let's play the video.

5           MS. HARRIS:  There are five different videos,

6   your Honor, from both the 19th and 18th Floor.  And we can just

7   play them --

8           MR. BRUGNARA:  I haven't seen any of the videos, Judge

9   Alsup.

10          THE COURT:  Well, you get to see them now.

11          MR. BRUGNARA:  How?

12          THE COURT:  They're going to be on the screen.

13          MR. BRUGNARA:  Okay, but this is the thing:  I was

14  supposed to get any information yesterday, in order to properly

15  conduct my case-precedent research as a pro se litigant.  And

16  now this is being thrown at me three minutes before this

17  motion.  And now you want to look at videos.

18      First I want to be heard before you get tainted any

19  further, because it's totally inaccurate what she said --

20          THE COURT:  Overruled.  Overruled.  I'm going to see

21  the videos.

22          MR. BRUGNARA:  When do I get to speak?

23          THE COURT:  After I see the videos.

24          MR. BRUGNARA:  All right.

25          MS. HARRIS:  Your Honor, it is pretty self-evident

1   where they're from, but if at any point you want us to stop we

2   can, and we can explain where everything is.

3        (Off-the-Record discussion between the Court and Clerk)

4        (Portion of videotape played)

5        MS. HARRIS:  This is him pushing the down button now.

6        MR. BRUGNARA:  Your Honor, her narrative isn't

7   necessary, really.  I think with a Harvard degree, I think you

8   can figure out what he's doing.  Twenty-five years at MoFo.

9        MS. HARRIS:  Your Honor, this is the 18th Floor now.

10        (Portion of videotape played)

11        MS. HARRIS:  These are his hands moving, your Honor.

12        MR. BRUGNARA:  And that's his hands that move like

13   that for the last four weeks, your Honor.  That obviously were

14   not in issue until they hear that he's a defense advocate.

15   Now -- he's always made hand gestures, for four -- for four

16   weeks.  While the man talks.

17     I think that's unnecessary.  Four or five USOs (sic)

18   around him?

19        MS. HARRIS:  Your Honor, there are other pictures that

20   we can show the Court, if necessary.  But the point we are

21   making is that he was found on the 18th Floor coming from the

22   direction of the attorneys' lounge in a highly-agitated state.

23        MR. BRUGNARA:  And that's where the bathroom is.

24        MS. HARRIS:  Can I please finish, your Honor?

25        (Multiple speakers)

1          **THE COURT:**  Ms. Harris -- let her finish, then I'm

2    going to let you have your say.

3          **MS. HARRIS:**  With regard to Mr. Brugnara's

4    interruption, there are plenty of bathroom facilities on the

5    19th Floor, including the one for the jurors, and ones on the

6    19th Floor for the public.  So --

7          (Portion of videotape played)

8          **MS. HARRIS:**  -- it is of concern had that's where this

9    juror was located.  But the greater concern is his concealment

10   of a very material fact going straight to his bias in this

11   case.  And that bias is now being played out.  That's concern

12   number one.

13        Concern number two is the emotional instability and

14   irrationality that was witnessed by the CSOs.

15        **THE COURT:**  Let's hear from Mr. Brugnara.  Let's

16   suspend the videos.

17        **MR. BRUGNARA:**  I wasn't aware that Ms. Harris is a

18   Ph.D. or a psychiatrist, too.  We get a new surprise every day

19   with her.  Either that, or she's just playing armchair

20   psychiatrist.  I guess she thinks I'm nuts too.

21        The reality is -- you know, the precedent is to leave

22   jurors alone.  Not to influence, not to interfere, not to

23   disrupt the jury deliberation process.

24        And it's not a coincidence that they come up with this

25   50-page motion after they hear that one of the jurors is an

1    advocate for defense for an acquittal, based on an improper

2    note.  And then they layer upon layer all sorts of supposition

3    and attacks on this juror.

4        This juror, of all the jurors, was the one that was

5    actually the most compliant with your -- remember when he had

6    his hands over his eyes (Indicating)?  And everyone goes:

7    What's this guy doing?  And he goes, "You told me not to read

8    anything in Russian, and it's up on my screen."

9        This man is compliant beyond what would be expected.  He's

10   a good man.  You know, the --

11           THE COURT:  What do you say about the criminal

12   history?

13           MR. BRUGNARA:  I have a lot to say about that.  For

14   starters, from what I was given, *U.S. versus Warner* cited

15   *McDonogh* as the guiding principle of the grounds to remove a

16   juror.  And in that particular case, stale, old convictions --

17   these were only going back less than 20 years, these were going

18   back 10 or 15 years -- were discounted as not material.

19       But the bigger issue is in *Warner*, they had a written voir

20   dire.  So there was no -- there has to be -- there has to be a

21   clear intentional misrepresentation at the voir dire.

22       So Jakic -- or it could be anybody -- would have to

23   clearly intentionally lie to you on the voir dire.  That's

24   like, you know, just putting it in layman's language, he's got

25   to clearly and intentionally deceive you.

PROCEEDINGS

1    And that would not even allow him to get dismissed.  That

2    would just open additional voir dire questions if you felt that

3    was the case.  And then after you did those additional voir

4    dire questions, if you feel he's unable to be fair or unable to

5    deliberate, then you would have a right to remove him.  But,

6    you know, it's a multi-step process.  They haven't even met the

7    first step.

8        And the other thing is, you know, this 28 U.S.C. 1865 says

9    somebody who has a criminal conviction, doesn't preclude him

10   from being on a jury.  Even a felony, a nexus of a year.  They

11   just need to be able to deliberate and be fair.

12       Okay, in these cases, the defense was the one trying to

13   remove the jurors.  Okay.  Not the prosecution.  The one that

14   was removed by the prosecution, the defense didn't object to

15   the removal.  They only objected to the standard for the

16   removal in *Warner*.

17       But the bigger issue is you have to look at the voir dire

18   process that happened in this Court.  It was very loose

19   compared to -- and it's at your discretion.  You can do it

20   however you want.  But the process didn't begin with a formal

21   questionnaire, as these other cases, where there would be an

22   absolute actual misrepresentation, you know.

23       "Are you from here, yes or no," check yes -- your voir

24   dire is kind of interesting.  You ask loose questions.  And the

25   question was actually a compound question, which I know you

1    don't like.  You know, asking, you know:  Have you ever been a

2    defendant in a criminal case or, you know, accused of any

3    misconduct.

4         And the funny thing is Hellman, who is probably the most

5    intelligent and certainly the most highly-educated of the

6    panel, even misunderstood the compound question.  Because then

7    he raised his hand and said "Oh, I had a defendant -- I had a

8    client who was a defendant in a case."  So, the question was

9    confusing enough where the most educated man on the panel

10   didn't answer the question properly.

11        But moreover, the bigger issue is the fact there is no

12   proof whatsoever that we even get to the first step of inquiry

13   because there's no proof that there was an intentional

14   misrepresentation of a clear and unambiguous voir dire

15   question.

16        The other thing is what you did, just to make -- to avoid

17   this in its totality is you said -- and I have the transcript

18   here -- you gave -- when Mr. Kingsley asked you about the voir

19   dire, because he was trying to understand your voir dire on

20   April 22, and you said to him -- he asked you, "Well, can we

21   ask questions?"

22        And I want to tell you exactly what you responded.  What

23   you said was -- he said (As read):

24             "Your Honor, I have some questions about the voir

25             dire and opening.  So, on the voir dire, I'm not

1          sure..."

2      This is Ben Kingsley talking.

3          "...I'm not sure if I understood.  You will ask the

4          first questions and then you'll have us submit

5          followup questions to you?

6          "**THE COURT:** if you want followup questions, you run

7          it by me and then I'll ask the questions."

8      So basically you gave him the right and me the right if

9  they weren't happy with your informal process, which is

10  certainly informal compared to *Warner* and *McDonogh* where they

11  have the written voir dire, where there's absolutely no

12  ambiguity, it's totally a straightforward, cut and dried, where

13  you have a written voir dire that someone sent in.

14      So you go through more of a loose process, that -- but you

15  gave both the defendant and the prosecutors an opportunity:

16  Well, if you don't like it, you can give me additional

17  questions and I'll ask.

18      They certainly had the opportunity during the voir dire to

19  say:  Your Honor, we want this tightened up, this compound, you

20  know, loose question.  Ask:  Have you ever been arrested?  Ask

21  this, ask that.

22      This is the thing.  They didn't do that.  They didn't do

23  that.  They didn't -- they weren't upset with Jakic -- Jakic's

24  acted the same for the last four -- American citizens, whether

25  they're immigrants or whether they have been here ten

1    generations, are allowed the same respect and dignity.  And

2    Jakic's certainly allowed that same respect and dignity, as

3    someone would who's been sitting in this country for 300 years.

4    And he's been compliant.  He's a good juror, he's here on time,

5    he deliberates.

6        The grounds for removing a juror is somebody who's

7    refusing to deliberate.  Not somebody who goes out to the

8    bathroom.

9        In the *Warner* case there was profanity, there was personal

10   insults, there was even, quote, physical intimidation going on.

11   And the judge didn't remove any of the jurors, based upon those

12   claims.

13       So, somebody leaving going to the bathroom, talking to

14   himself -- he clearly wasn't speaking to anybody else -- and

15   then having the guards try to interpret what he's saying is not

16   appropriate grounds to start judging him.

17       But this is the thing:  In *Warner* though, the judge made a

18   ruling that in fact these old stale convictions were not

19   relevant to the voir dire.  And this is people that actually

20   lied.  I mean, black and white, lied on the written voir dire:

21   Hey, I've never been arrested for anything or -- boom.  No, I

22   have not.  Flat-out lie.  You know, can't wiggle out of it.

23   And they still allowed those jurors to sit.  The only one he

24   removed off was the one that had seven convictions and a

25   current warrant and a fake ID.  He was currently using a fake

1    ID.

2         The ones that had old stale -- got to remember, too, Jakic

3    goes back -- these in the *Warner* case go back ten, 15 years.

4    Jakic's case goes back to when I was in diapers.  1970s.  I

5    mean, it's not even worth -- and the man was acquitted.  So

6    it's not even worth talking about.

7         And tainting the jury pool.  They've been deliberating now

8    for two weeks -- not two weeks, but this is going into the

9    second week.  We're going into the second week of

10   deliberations.  And, you know, they're doing their job.

11        And for the U.S. Attorneys to come in here and start going

12   through the inquisition on jurors that they think are not going

13   to benefit their cause is outrageous.  Is outrageous.  I mean,

14   that would set a heinous precedent for all future time, to:

15   Hey, listen, the prosecution doesn't like the fact that this

16   trial is supposed to be over, you know, deliberations were

17   going to be a day or two, Brugnara's going to get hung in a day

18   or two, and this thing's dragging into the second week, and now

19   there's a defense advocate,  at least one that we know of.

20        So they go and start using Government resources to run

21   full-blown investigations, doing all they can to try to extract

22   this guy off the jury panel.  I think it's a complete insult to

23   this Court, complete insult to the process and what they're

24   supposed to be standing for.  Knowing this goes back 40-plus

25   years, and trying to castigate this man, it's a disgrace.

1      There is absolutely no proof whatsoever that he

2  intentionally misrepresented anything to this Court.  And this

3  Court asked a very loose -- didn't even ask for a verbal

4  recitation, let alone a written recitation response of its

5  answer.

6      And I saw a lot of hands go up.  So unless somebody can

7  sit here and say:  I was sitting or I was right next to him and

8  I swear to God -- both people say:  Hey your Honor, the man

9  never -- I don't know that he didn't raise his hand, and you

10  don't know that he didn't ever raise his hand.

11      The fact of the matter is you asked --

12          **THE COURT:**  I know that he did not raise his hand.

13          **MR. BRUGNARA:**  Whether you know or you didn't --

14          **THE COURT:**  I was watching.

15          **MR. BRUGNARA:**  You were watching him specifically?

16          **THE COURT:**  I was watching all of them.

17          **MR. BRUGNARA:**  Okay.  Well, whether he did or whether

18  he didn't, or whether he understood the question or whether he

19  didn't understand the question, under *Warner*, it still doesn't

20  preclude him from being on the jury, because the fact of the

21  matter is they all had convictions that weren't stale, and they

22  remained on the jury.  Not ones that they were acquitted of,

23  ones that they were convicted of.

24      And it goes -- comes down to whether or not he is willing

25  to deliberate -- which he clearly is.  He's on time, he's

1    coming every morning.  He's been here now for four weeks.  He

2    needs to be shown some respect.  These people that sit on this

3    jury have sacrificed four weeks of their life for the sake of

4    the United States of America and justice.

5        And to have the U.S. Attorneys willing:  Oh, we're going

6    to toss this guy off, he doesn't speak real clear English,

7    this, that, and the other thing, it's an insult to what being

8    an American is all about.

9        This Court -- you know, four weeks is a long time for

10   these people to be coming in at 7:30 in the morning and

11   committing that time to this court, and then for them to go:

12   Hey -- and funny thing, the note that was written, A, it was

13   improper.  Didn't even follow the procedures where you said

14   "I'm not to be told about any guilt or acquittal or innocence

15   in any note."

16       So A, it was an improper note.  You specifically said --

17            **THE COURT:**  I told them to not tell me how they stand.

18            **MR. BRUGNARA:**  That's correct.

19            **THE COURT:**  But under the law, under the law, that

20   does not prevent me --

21            **MR. BRUGNARA:**  Correct.

22            **THE COURT:**  -- from making inquiry.

23            **MR. BRUGNARA:**  I understand.  But independent --

24   independent from that, it was inaccurate.  It said that you

25   asked if anyone had been arrested.  Which further shows the

PROCEEDINGS

1   confusion among the jury.

2       This guy doesn't even remember your question correctly,

3   who wrote the note to you.

4           **MS. HARRIS:**  Your Honor --

5           **MR. BRUGNARA:**  Excuse me.  Don't interrupt me, please.

6       He said:  Has anyone ever been arrested?  Which is

7   diametrically different than:  Has anyone ever been in a -- a

8   defendant --

9           **THE COURT:**  The question, to be precise, was: Ever

10  been a defendant in a criminal case, or accused of criminal

11  conduct?

12          **MR. BRUGNARA:**  That's correct.

13          **THE COURT:**  So that's close to be arrested, but not

14  quite the same thing.

15          **MR. BRUGNARA:**  Well, that's correct.  And you know,

16  the fact of the matter is it's a very loose question, and you

17  know --

18          **THE COURT:**  It's not a loose question.  I disagree

19  with --

20          **MR. BRUGNARA:**  Well, the legal interpretation of that

21  could be if you ever got pulled over for a traffic ticket.  And

22  even if you weren't given a ticket, you could actually raise

23  your hand on that.

24          **THE COURT:**  Well, if he was the same guy, he has been

25  a defendant in a criminal case, and he has been accused of

PROCEEDINGS

1    criminal conduct on more than one occasion.  If he's the same

2    one that's in the rap sheet.

3         **MR. BRUGNARA:**  And I --

4         **THE COURT:**  I don't see how you can -- how you can

5    explain that away.

6         **MR. BRUGNARA:**  You're missing the point.  For

7    starters, you shouldn't -- you know, when I gave to you the

8    Harris Taback emails, and I said:  I want you to look at this

9    because I want to see if it's going to waive attorney/client

10   privilege with Kane.

11      And you said:  I'm not looking at this, I'm not looking at

12   this, I'm not looking at this.

13      You shouldn't have looked at what was sealed, thrown in my

14   lap three minutes before the court proceedings, because she had

15   no right to go and start doing an inquisition on a juror when

16   there is no basis.

17        **THE COURT:**  Yes, she does.  It's not an inquisition.

18   If the Government finds that one may have lied in the voir dire

19   process, that's a serious problem.

20      Let's say that you got convicted.  Let's say that.  This

21   would be Exhibit A in your motion for a new trial.

22        **MR. BRUGNARA:**  Let me tell you something.  This man's

23   already said that he is an advocate for the defense.  And I

24   guarantee you if he said:  I was an advocate for being guilty,

25   you would not have those 50 pages in front of you.

1          THE COURT:  No, that's a different point.  And

2     different --

3          MR. BRUGNARA:  No, it's not the point, because I've

4     said it all along, the prejudice --

5          THE COURT:  Bring your point -- you're repeating

6     yourself.  So make your last point and then I'm --

7          MR. BRUGNARA:  No, the point that I'm making is:  The

8     only thing that removes him from the jury, even if he didn't

9     give an accurate answer or -- he didn't give an -- I mean, this

10    is the thing.  You're going upon an action he didn't do as a

11    negative, rather than -- I mean, if somebody lies, it's much

12    different than if they don't respond.  And that's the first

13    thing I think we need to make clear here.

14        If somebody doesn't raise their hand, or if somebody

15    doesn't respond, that's much different than somebody lying to

16    you.  Much different.

17        Like if you say:  Mr. Brugnara --

18        THE COURT:  Perhaps in your mind it is, but in my mind

19    it's not.  If they know they're supposed to raise their, and

20    they're telling me --

21        MR. BRUGNARA:  You're absolutely right.  It goes to

22    intent.  And if he didn't have that intention, if he

23    misunderstood the question, or if he didn't have that

24    intention, then it's absolutely no harm.

25        But the funny thing, even if that is, in fact, the case

1    and you determine that, it still doesn't preclude him from

2    being on the jury under *Warner* and *McDonogh*, because he would

3    have to then be unable to perform his duties as a juror by

4    being fair, and unwilling to deliberate.  Those are the two --

5    those are the two thresholds.

6        And he's clearly been deliberating, going into the second

7    week.  He's here on time --

8            THE COURT:  He didn't deliberate.  He bolted out of

9    the jury room during deliberations.

10           MR. BRUGNARA:  (Inaudible)

11           THE COURT:  And looks to me like if the CSOs had not

12   corralled him down on the 18th Floor, he might have left the

13   building.

14           MR. BRUGNARA:  Well, they shouldn't have corralled

15   him, then.  They should have let the jury process continue.

16   And that may have been a basis then.  If -- a man can go use

17   the bathroom a floor down, if he goes into a bathroom and the

18   stalls are taken, or there's a bad smell --

19           THE COURT:  There's a bathroom in the jury room.

20           MR. BRUGNARA:  I don't know what's back there.  All

21   I'm trying to -- to start singling out a sole juror --

22           THE COURT:  There's two bathrooms.

23           MR. BRUGNARA:  -- who is saying:  I want to acquit the

24   defendant, and have you go:  Hey, guess what, it's time to pull

25   this person off --

1          THE COURT:  Mr. Brugnara, you are correct.

2          MR. BRUGNARA:  That's what I'm saying --

3          THE COURT:  Absolutely correct that we would never

4    dismiss somebody just because they are deliberating in favor of

5    one side or the other.  That -- you are correct on that.

6          And I'm sorry that you feel that that's what's going on

7    here, but this is not what's going on.  What's going on is:  A

8    legitimate question has arisen whether or not he had a lack of

9    candor on his answer on voir dire.  That's number one.

10         The second thing is:  Has he been doing things outside --

11   discussing the case outside the jury room?  Like on the 18th

12   Floor, he used -- if I believe what's been submitted to me, he

13   did do that.  So, I can't just ignore this.

14         MR. BRUGNARA:  He said he was speaking to himself.

15   That's not speaking to a third party.

16         THE COURT:  Well, then, why did the CSOs happen to

17   hear it all?

18         MR. BRUGNARA:  They said he's talking to himself.  He

19   wasn't speaking to a third party --

20         MS. HARRIS:  Actually, that isn't correct.

21         MR. BRUGNARA:  -- speaking to himself.

22         MS. HARRIS:  They did not say that.

23         THE COURT:  Look.

24         MR. BRUGNARA:  Listen:  The fact of the matter is they

25   are singling out the sole advocate for the defense, four weeks

PROCEEDINGS

1  into this trial, and --

2          **THE COURT:**  All right.

3          **MR. BRUGNARA:**  -- it's completely improper to

4  intimidate and interfere with the jury deliberation process.

5          **THE COURT:**  All right, you've said this point seven

6  times.

7          **MR. BRUGNARA:**  Let me say one more.  *Warner* said you

8  can't go into stale convictions, and use that as a grounds for

9  -- a grounds for --

10          **THE COURT:**  Well, let's see.  Is that true,

11  Ms. Harris?

12          **MS. HARRIS:**  No, Your Honor, it's not.

13          **THE COURT:**  All right.

14          **MS. HARRIS:**  And the issue here is not the staleness

15  or freshness of the convictions.  It's the veracity of the

16  juror, and what he concealed.  And as the Court knows, an

17  omission is, in the eyes of the law, the same as --

18          **THE COURT:**  Well, I do think if -- well, that's not

19  quite right.  Because under that decision, the Government would

20  have to show that it would have led to a for-cause challenge,

21  don't you?

22          **MS. HARRIS:**  That was on a new trial motion,

23  your Honor, not in mid-deliberations like we are here.

24          **MR. BRUGNARA:**  That's not true.

25          **MS. HARRIS:**  Can I please finish?

1      The point is that we have proven that, based on the jury

2   note.  The jury note was that he was not able to set aside his

3   prior experiences --

4           **MR. BRUGNARA:**  That's one person.  That's the guy

5   who's driving two hours from Sonoma.

6           **THE COURT:**  The jury note -- look.  You two are not

7   helping me.  I'm going to bring him in, I'm going to ask some

8   questions.  You two cannot say anything.  I may, but I'm not

9   promising, give you a chance to see me at the sidebar before I

10   -- but I'm going to ask him some questions.

11      And I feel that that's my duty in these circumstances,

12   that I cannot ignore this, and let -- just let the jury

13   continue to deliberate in the face of the information that's

14   been provided to me.

15           **MR. BRUGNARA:**  I would like to say, the jury's

16   continuing to deliberate right now, and did on Friday

17   afternoon, without any further notes.  So for you to make

18   statement that "I can't allow them" -- there's no disruption

19   going on.  They are deliberating.  They deliberated Friday

20   afternoon for another hour when we were doing our homework on

21   this.

22      So, they're doing their job right now.  They need to be

23   left alone, and this is --

24           **THE COURT:**  Your point has been made.  You're

25   repeating yourself.  I'm overruling that.  Your point is

```
1    preserved for appeal.

2              MR. BRUGNARA:  I request, Your Honor, that the

3    questions be absolutely limited to cause, where you ask him

4    whether he's -- can be fair --

5              THE COURT:  I'm not going to limit myself.  I'm not

6    going to limit myself.  I'm going to use my judgment on what to

7    ask.  I'm sorry, Mr. Brugnara --

8              MR. BRUGNARA:  Well, I'm in a position --

9              THE COURT:  Your point is preserved for appeal.

10             MR. BRUGNARA:  Why would I need an appeal when I have

11   a defendant who says he's going to acquit me?  I don't need to

12   appeal, because he says he's going to acquit me.  So now we're

13   going to pull him off of the jury?

14             THE COURT:  If it's deadlocked, we just go to another

15   trial.  That doesn't mean you get an acquittal.

16             MR. BRUGNARA:  Okay, that's not an appeal.

17             THE COURT:  The Marshals will please escort

18   Mr. Brugnara to his chair.

19        Now I need the assistance of the Government on something.

20   And that is:  I'm going to have to bring up these prior rap

21   sheets.  Does that mean I have to excuse the public from the

22   courtroom?

23             MS. HARRIS:  Your Honor, when the Court discussed this

24   with the venire as a whole, it allowed the jurors to address

25   the Court at sidebar.  But what I recall the Court did was did
```

1   it at a break, and it was in an open court but at a break so

2   the rest of the jury pool didn't hear it.

3       We would have no objection to clearing the courtroom, but

4   the way the Court did it with the voir dire in the past was not

5   to do that.

6       **MR. BRUGNARA:**  I don't even have the opportunity,

7   your Honor, to rebut that, because I've been denied the right

8   to legal research and due process.  As a pro se litigant, I

9   just got dropped this in my lap literally two minutes when I

10  was back there, because I was denied the rights to even have a

11  meaningful preparation.

12      But nevertheless, this juror covered his eyes, your Honor,

13  and you asked him why.  That says it all.  "Because I want to

14  follow your instruction.  Your Honor, I want to follow your

15  instructions.  You told me not to read this in Russian."

16      He put his hand over his eyes.  Okay?  The man's a good

17  man.  You know?  And you're talking about something that

18  happened 50 years ago that he was acquitted on.  Why would he

19  be castigated and embarrassed over something that happened 50

20  years ago?  That's completely in direct opposition to *Warner*

21  and *McDonogh*.  You know, he hasn't done anything.  He's

22  deliberating.

23          **THE COURT:**  Would you please have a seat.

24      **MS. HARRIS:**  Your Honor, we would have no objection to

25  the Court sealing the courtroom for the inquiry, because I

1    think the Court is going to have to make an inquiry as to the

2    juror's Social Security number.

3         **THE COURT:**  All right.  When the -- when -- the

4    courtroom will be cleared of all people unless you are court

5    staff, or members of the United States Attorney's office.  I

6    want to bring in both the foreperson and the -- Mr. Jakic.

7         (Court cleared of public.  Proceedings from Page 3257,

8    Line 9 through 3268, Line 16 were held under seal, and placed

9    in a sealed transcript filed with the Court)

10   /

11   /

12   /

13   /

14   /

15   /

16   /

17   /

18   /

19   /

20   /

21   /

22   /

23   /

24   /

25   /

PROCEEDINGS

```
 1    /

 2    /

 3    /

 4    /

 5    /

 6    /

 7    /

 8    /

 9    /

10    /

11    /

12    /

13    /

14    /

15    /
```

16          (The following proceedings were held in open court,

17    outside of the presence of the jury)

18          **THE COURT:**  All right.  The record will show that

19    Mr. Jakic has been escorted out of the courtroom.  And my

20    instructions to the CSOs were to take him to a separate room

21    where he could cool off, and not perform that way in the

22    presence of the other jurors.

23          **MR. BRUGNARA:**  I would like to make a comment.

24       My life is on the line right now.  And you have a man

25    there that's --

1          **THE COURT:**  Wait.  I need to -- you violated a direct

2     order.  Another 90 days in -- in prison for you on account of

3     violating a direct order not to say a word while this juror was

4     in here, several times.  Not just once, at least four times you

5     tried to curry favor with this juror.

6          **MR. BRUGNARA:**  I'm not trying to curry -- I told him

7     to stop.

8          **THE COURT:**  No, you didn't.

9          **MR. BRUGNARA:**  -- I'm --

10         **THE COURT:**  No matter what you said, Mr. Brugnara --

11         **MR. BRUGNARA:**  I said "Stop."

12         **THE COURT:**  I said not to say a word, and you violated

13    that order.  Ninety days.

14         **MR. BRUGNARA:**  That is inappropriate.

15         **THE COURT:**  Take it up on appeal, then.  You have --

16    you have had nothing but contempt for this Court from day one.

17         **MR. BRUGNARA:**  Your Honor, you have been prejudiced

18    against me from day one.

19         **THE COURT:**  No, no; I tried to give you a fair trial.

20         **MR. BRUGNARA:**  By saying:  You're going to be

21    convicted?  You said three times on the record:  You are going

22    to be convicted.

23         **THE COURT:**  Ninety days.  Now I want to hear whether

24    or not I have heard enough to excuse this juror.

25         **MR. BRUGNARA:**  Well, absolutely, he shouldn't be

PROCEEDINGS

1   excused.  Just because the man is passionate about being an

2   American citizen, that's probably the only person in this room

3   that you would want by your side if hell ever comes down on

4   this country from an attack or an assault.  That's the guy,

5   that's the American you want next to you to defend this

6   country.

7       THE COURT:  Maybe you do, but I'm not sure about

8   anyone else.

9       MR. BRUGNARA:  To defend this country and defend your

10   rights.  This Court orchestrated this venue.  This Court knew

11   that this man was a director of Amnesty International.  It's

12   right on his bio.  They knew -- Do you know what Amnesty

13   International is, your Honor?

14       THE COURT:  I get to ask the questions.  You don't.

15       MR. BRUGNARA:  Okay.  Well, Amnesty International is

16   exactly what that sort of person is.  And the fact of the

17   matter --

18       THE COURT:  I'm sorry, just a second.

19       (Reporter interruption)

20       THE COURT:  Did the CSOs let -- all right, the public

21   can come back in for now.  All right.

22       Look, I want to hear from the Government first, and then

23   I'll hear from Mr. Brugnara.

24       MR. BRUGNARA:  He has not created any problems in

25   that -- the key here is what's not happened in this courtroom.

1   The key is what's happened in the jury room.  I mean, let's

2   keep it real clear here.  The key is what's happened in the

3   happened in the deliberations of the jury, not just what

4   happened here in the courtroom on the voir dire.

5       Because if you go to *Warner* and *McDonogh* which are guiding

6   here, the voir dire just asks questions to expand on the

7   reasons why there was a miscommunication in the voir dire.  And

8   he made it clear, well, his understanding was he was acquitted,

9   so he felt that he didn't have to raise his hand.  That's my

10  interpretation of his interpretation of your question.

11      And that, of course, is consistent with *Warner* and

12  *McDonogh*, whereas the ten- to 15-year-old convictions were

13  discounted in their entirety where there were convictions.  In

14  his particular matter, he was acquitted.  So, he misunderstood

15  the direct -- the question.

16      When you asked him the question, and this goes back to

17  *Warner* and *McDonogh*, as long as the juror is honest and

18  truthful, then that resolves that -- that further inquiry.  And

19  that's very important here because in *Warner* there was further

20  lies and untruthfulness when the continued voir dire inquiry

21  was expanded, and this particular juror lied to the court.

22      This gentleman here was completely honest.  He was

23  passionate, yes, but hey, we're in the United States of

24  America, and he has a First-Amendment right to freedom of

25  speech and freedom of expression.  And he should not be

1    prejudiced for exerting his right to freedom of speech and

2    freedom of expression.

3        But he conveyed very clearly to you that this, in fact, he

4    was acquitted of, it was nearly 50 years ago, and it doesn't

5    preclude him from being on the jury.  He's caused no disruption

6    in that jury room.

7        He said on the record there's a very strong bias against

8    the defendant, Luke Brugnara.  And he is an advocate because he

9    believes that I'm not guilty, that's what he said.  He's made

10   very straight comments direct -- talking about the other jurors

11   in there, saying that they want to find me guilty, and he

12   believes I'm not guilty.  And he even said the reason why.  And

13   it wasn't based upon conjecture or prejudice.  He said because

14   he doesn't believe the emails were the foundation to find me

15   guilty.  Which was the basis of their entire prosecution, this

16   handful of emails.

17       So the fact is it wasn't based upon just some errant sort

18   of, you know, insane conjecture:  Oh, he's going to be innocent

19   because -- no.  He even told the Court why he believed that I'm

20   not guilty, which was -- which was meaningful.

21       The fact is this man needs to continue to deliberate with

22   the jurors.  He hasn't caused any disruption, whereas we

23   received a note from any foreperson who would have an

24   obligation to let you know if he's disrupting the process.

25       In *Warner* there was actually profanity and name --

1   personal name-calling in the jury, whereas those jurors were

2   only admonished after such name-calling and profanity ensued,

3   and even, quote, physical intimidation.

4       This man hasn't been accused of any of that in the

5   deliberation process.  He's in there as an American citizen,

6   passionate, prepared to die for the country.  How many other

7   people in the room are prepared to die today for this country?

8   I bet you, a couple.  That man is one of them.

9       We should admire him and respect him for his passion and

10  for his commitment, sitting there for four weeks, respecting

11  Your Honor to the point where he was even covering his eyes,

12  not looking at the book in Russian.

13      Let him go back to the jury room and deliberate.  If

14  there's any -- you should keep true, your Honor, now that

15  you've had further inquiry to what you correctly determined on

16  Friday that if you get another note, you know, and it's from --

17  done properly from Hellman, and there's discontent in the jury

18  room whereas somebody is being disruptive to the point where

19  this Court finds that he needs to be removed, well, then,

20  that's -- that needs to be dealt with.

21      But at this point, he's performing his duty as a juror.

22  He came out here, he answered the questions honestly,

23  completely honestly.  He answered honestly the questions that

24  you asked him, and they're stale old accusations which he was

25  acquitted from, and, you know, people like Ms. Harris may not

1    like his passion.  I particularly like it.  Nick Barbato who

2    sat up there particularly would like him.

3        The funny thing is everyone has their own tastes and

4    dislikes about people's personality.  I like certain people

5    like that.  Nick Barbato who does $5 billion of deals, and Tony

6    Crossley who does billions of dollars, we like people like

7    that.

8        You don't, maybe Ms. Harris doesn't, but that doesn't --

9    this is the United States of America.  We are all entitled to

10   have our own preferences to personalities.  But that doesn't

11   preclude him from being -- this isn't 12 white cookie-cutter

12   jurors that dress like Ms. Harris and Mr. Kingsley going to sit

13   on the jury.

14       You're going to have -- the United States of America, mix

15   of black, white, Croatians, people of every single race and

16   personality type.  And that doesn't preclude them from sitting

17   in a jury deliberation, and deliberating for my innocence,

18   innocent unless proven guilty by 12 jurors by unanimous vote.

19   And he takes that very seriously.

20           **MS. HARRIS:**  Your Honor --

21       **MR. BRUGNARA:**  And he can't be pulled off this jury

22   pool because the Government doesn't like the way that this

23   trial has gone.  And that's it, in a nutshell.

24           **THE COURT:**  All right, thank you.

25       Ms. Harris.

1        **MS. HARRIS:**  Your Honor, in more than 20 years of

2   being a prosecutor, I have never seen a performance like we

3   just witnessed with this juror.  It was deeply disturbing on

4   every level.  And it's shocking that Mr. Brugnara, of all

5   people, would be advocating for this man to stay in the jury

6   pool.

7        He is clearly unstable.  He has admitted to the bias.  He

8   invoked the Fifth when the Court tried to inquire about his

9   past criminal history.  And I would also add that

10  notwithstanding a complete emotional meltdown that we

11  witnessed.

12       And I hope we have the tapes of the loud screaming

13  irrational gesticulation that all of us witnessed.

14       Mr. Brugnara himself has ensured that this man can't stay

15  on this jury.  Mr. Brugnara, despite the Court's admonition,

16  yelled to the juror "Stop, this isn't helping me," and clapped

17  his hands to try and get the juror to cease his behavior.  That

18  alone polluted an already tainted juror.

19       But beyond what Mr. Brugnara improperly did in violation

20  of the Court order, the juror himself made statements: "I am

21  biased because I suffered too much."

22       He escaped from a Yugoslavian jail.  He made comments that

23  he believes Mr. Brugnara is being prosecuted because he is

24  Italian, despite the fact that there is nothing in the evidence

25  in this case of Mr. Brugnara's ethnicity.

1      He made a statement that nobody is guilty.  He referred to

2   "Nazi lawyers," and pointed at me when he did that.

3   Mr. Brugnara has no one but himself to blame for that.

4      He talked about black people, white people, and went on,

5   and also made the statement:  Lawyers are crooks.  There is so

6   much in that record that I really don't think I need to go any

7   further.

8      But, in light of Mr. Brugnara advocating for this juror to

9   stay on, I really wonder who wants a fair trial in this case.

10  And I would point out that the Government is also entitled to a

11  fair and impartial jury.

12      **MR. BRUGNARA:**  And, and moreover, in *Warner* and in

13  *McDonogh*, the same inquisition was done on each and every

14  juror, fairly.  Each one of them was put through the inquiry

15  process.

16      The fact of the matter is this man was singled out because

17  he's an advocate for the defense.  The -- the prosecution

18  waited until the bottom of the ninth inning, the bottom of the

19  eleventh -- eleventh hour and 59th minute to do a full,

20  thorough background check on them.

21      And then when they came up with nothing under the *Warner*

22  and *McDonogh* standard, which is basically old, stale

23  convictions don't have any merit, you know, to warrant further

24  -- you know, dismissal of the jury, then, you know, they wanted

25  to goad him into what happened here.

1      But, you know, if you listen to the content of what he

2   said, he's an American citizen.  He voiced his opinions.  He's

3   entitled to his opinions.  And he, in fact, said he respects

4   the Court, is following the directions of the Court.

5      There's been no notes from any foreman of the jury.  Now,

6   Your Honor, you remember, we're going into the second week of

7   deliberations.  Hellman is a very conscientious foreman.  And

8   he never said: Hey, your Honor, this guy is disruptive; hey,

9   this guy's nuts; hey, this guy needs some help here.  Which he

10  certainly would do.  You never received one note like that.

11     This man is being singled out by a jury of 12 people,

12  after spending his entire life being singled out, from the

13  time -- if you listen carefully, from the time he was a child,

14  being tortured.

15     Moreover, this happened outside the laws of the United

16  States of America regarding the torture and imprisonment, so,

17  you know -- but the fact of the matter is, you know, they knew

18  this.  He's Amnesty International.  And, and the fact is what

19  they're trying to do, like I said, is trying to pull off an

20  advocate for the defense.

21     And there's nothing that I saw or heard that would warrant

22  having him removed from the jury pool, because he's not doing

23  anything to disrupt the deliberation.  They've been

24  deliberating for, what, 30, 40 hours?  Thirty hours or

25  something?  He hasn't disrupted the jurors in there.  He hasn't

1    -- in fact, he even said --

2          **THE COURT:**  Well, Mr. Brugnara, how can you say that

3    when he bolted out of the jury room, and deliberations had to

4    stop as soon as he left?

5          **MR. BRUGNARA:**  I understand --

6          **THE COURT:**  He did disrupt the deliberations.

7          **MR. BRUGNARA:**  Your Honor, I understand.  But this is

8    the thing:  In the *Warner* case, in the *Warner* case, there were

9    far more egregious disruptions in the deliberation process

10   where people felt physically intimidated, and people were

11   actually called names, personal name-calling with profanity

12   used.  And the judge brought them in and admonished them, but

13   did not dislodge the jury pool.

14       It wasn't until days later where the newspapers did a

15   cursory check on all of the jurors, and then they published it

16   in the *Tribune*, and then they came and the jurors actually read

17   it in violation of the Court's directives, read the newspapers

18   and read the internet.  Then they had at that point inquired,

19   and told the jurors passed.  The court had no choice.

20       But the fact of the matter is he hasn't disrupted

21   anything.  I mean, there's been instances where there is

22   physical violence in the jury room.  The fact of the matter is:

23   This man's done nothing to disrupt the proceedings other than

24   when he left -- and you got to remember, again, I only had 30

25   seconds, so forgive me if I don't have it exactly right.  He

1    was down by the bathroom.  Okay?  The man was going to the

2    bathroom.

3         So the fact of the matter is -- and you heard what he

4    said.  He's maybe one of a small number of defense advocates.

5    He made it very clear in that coliloquy (sic) there, that

6    there's not many defense advocates.  So if you have ten people

7    that are -- you know, who you feel are ganging up on you or

8    what have you, whatever you feel the case is, it would be best

9    served to have a cooling-off period.

10        In fact, the Judge even said, it's always good to have

11   cooling-off periods during heated discussions.  That's part of

12   the jury process.  Heated discussions, passionate discussions.

13   But the key is you've got to continue to deliberate.

14        When you stop -- if he said "I'm not deliberating

15   anymore..."  The key question is:  Can you be fair?  Because

16   you may think he's innocent, but John Smith over here may think

17   he's guilty.  Can you respect John Smith and his feelings,

18   thinking he was guilty?  Can you deliberate, as you show me

19   respect, can you continue to show respect as you've done for

20   the last week?

21        And if he answers, as he answered truthfully here:  Yes, I

22   can, your Honor; I will continue to respect all the jurors

23   independent, and we'll have meaningful debate and dialogue,

24   then it continues on.

25        It's only if you can't have continued meaningful debate

1    and dialogue where then you can say:  Okay, get him off the

2    jury; this guy's unwilling to listen and to be heard.  And

3    that's the basis to remove him.

4        There's been no proof or evidence whatsoever -- in fact,

5    if you really look to the bones of what this man said, he

6    answered your questions honestly.

7        **MS. HARRIS:**  Actually, your Honor --

8        **MR. BRUGNARA:**  He answered your questions honestly,

9    which is the mandate not to take it any further under *Warner*

10   and *McDonogh*.

11       If he lied to you when he sat there and said:  You know

12   what, your Honor, I've never had any -- any issues, then you

13   would say:  Well, look at this.  Boom.  You're a liar.

14       He answered you, the man answered you honestly.  He was

15   very transparent.  And, and the fact is he needs to continue to

16   deliberate with the jury pool.  He's been there for four weeks.

17       **THE COURT:**  All right, you're repeating yourself.  All

18   right, I'm ready to rule, unless there's something the

19   Government has just got to say.

20       **MS. HARRIS:**  No, Your Honor.

21       **THE COURT:**  All right.  I have to say I haven't been

22   on the job 20 years, but I've been on the job 16 years.  And

23   nothing comes close to what the Court just saw in a juror.  And

24   he will be -- he will be discharged for cause, for good cause,

25   and just cause.  And I want to explain the reasons.

1        First of all, I want to say we would never excuse somebody

2   merely because or even taking into account that they were

3   leaning one way or the other on a -- in a criminal case, or for

4   that matter, a civil case.  So it's unfortunate that we happen

5   to know which way he favors the verdict here, but that is not

6   the reason.  I want to make that very clear.

7        First of all, the Court finds that he lied to the Court

8   when he failed to raise his hand and reveal his criminal

9   history.  The question was clear, and several people did raise

10   their hand.  I repeated the question.  He did not raise his

11   hand.

12        And he has a substantial criminal history that would cause

13   him to be biased against the criminal justice system.  And that

14   would have been grounds for cause to excuse him from jury

15   service, just on that, alone.  But he failed to raise his hand.

16   And in light of what I've seen now, I believe and find that

17   that was intentional.  An intentional deception.

18        Now, I want to further say that I was going to ask a few

19   more questions on that, concerning the other charges.  And when

20   I tried to interrupt his long tirade, he would not stop.  By

21   "he" I mean Mr. Jakic.

22        And I should say he was standing in the jury box, waving

23   his hands around, his arms around.  At one point he yanked off

24   his jacket and threw it down on the -- violently onto the

25   seats.  He was out of control.  It was a meltdown -- "meltdown"

1   is not -- "meltdown" is too tame a word for what we just saw.

2   It was a physical threat to the security of the courtroom, what

3   we just witnessed.

4        And so, it was impossible for the Court to follow up with

5   any more questions.  I tried several times to interrupt.  But

6   it was pointless.  And so, the -- we will not have the

7   opportunity to ask more questions.

8        But based on the questions I asked and the answers given,

9   it is clear that he was the one in the criminal history that

10  the FBI found.  He admitted the rape charge.  And, even though

11  he was acquitted, it's quite clear that he was -- that he felt

12  he was unjustly accused, and he was very biased against the

13  criminal justice system.  And the rap sheet shows that he had

14  later convictions as well.

15       So, it's quite clear that he concealed that.  He should

16  have revealed it in response to the question.  He did not.  The

17  Court finds that that was conscious and intentional on his

18  part.  And that alone, because it was material and would have

19  led to for-cause, is enough to excuse him.  But there's a lot

20  more here.

21       Next, Mr. Brugnara did -- I ordered him and the Government

22  not to say anything during the voir dire of this juror.  And

23  Mr. Brugnara repeatedly tried to interject and to curry favor

24  with the juror, and to communicate directly with the juror,

25  making comments of the type that Ms. Harris summarized and

1    which are now on the record.

2         And that alone would be another ground to excuse him,

3    having Mr. Brugnara trying to reach across the aisle, so to

4    speak, shake his hand and befriend him while he was in the

5    middle of his tirade.

6         I'm sorry, but Mr. Brugnara, I told you --

7              **MR. BRUGNARA:**  Your Honor, I --

8              **THE COURT:**  Mr. Brugnara, I'm making a ruling.  Please

9    do not interrupt.

10        All right.  Next, the conduct of Mr. Jakic in the jury

11   room, as -- as vouched for by the CSOs in their affidavits

12   that's part of the record, shows that during deliberations on

13   Friday, he bolted out of the jury room in an agitated state.

14   He went down to the 18th Floor, the scene of the crime -- part

15   of the scene of the crime.  And he was shouting to the CSOs in

16   much the same way as -- or at least to an extent, the same way

17   as we saw in this the courtroom.

18             **MR. BRUGNARA:**  Your Honor may -- Ms. Harris is nodding

19   her head up and down at you.

20             **THE COURT:**  I don't care if she is or not.  I'm not

21   paying attention to that.  I didn't even know that.

22             **MR. BRUGNARA:**  She --

23             **THE COURT:**  I'm looking down at my notes.  I don't

24   care what she's doing.  I'm making my ruling.

25        All right.  So he goes down there, and is talking to the

1   CSOs about the case.  And, that -- he was ordered not to do

2   that.  So he violated one of the instructions right there, not

3   to talk about the case outside the jury room.

4        He refused to deliberate by bolting out of the jury room

5   during deliberations.  So, there are two, two more counts

6   against him there.  He's clearly guilty on those two.

7        All right.  So then we come to -- there's more.  This is a

8   -- this is a person who called me, the Court, a Nazi judge.  He

9   called the prosecutors a Nazi -- Nazi prosecutors.  I'm not

10  doing justice to the tirade.  It was so vehement and so -- so

11  despicably anti-law enforcement and judicial system that he

12  could not possibly be fair and follow instructions of law.

13       He refused -- when I repeatedly tried to get him to take a

14  seat and not to interrupt and stop his tirade, he refused.  He

15  did not.  He had to be led out of the courtroom by the CSOs to

16  a safe room, so that he could calm down.

17       So, this is someone who will not follow instructions.

18  This is someone who has his own agenda, and is bound and

19  determined to -- to follow that out.  In this case it happens

20  to work for the benefit of the defendant, but this is not a

21  deliberations-based or evidence-based decision.  This is a

22  prejudice against the basic American institution of the

23  judiciary and the American law-enforcement system.  He's just

24  totally biased against it.  His tirade shows that.

25       And, I'm sorry, but -- all right.  He took the Fifth

1   Amendment.  He wouldn't let me inquire.  Then he began to let

2   me inquire.  Well, it was never quite clear where he was

3   drawing the line on the Fifth Amendment.  And then he -- then

4   he launched into his tirade, and it was impossible to ask him

5   more questions.

6        He is not rational.  He is a deeply-disturbed individual.

7   He is unstable.  At one point he was saying he was doing this

8   so that we would pay the jurors $200 a day, and not $40 a day.

9   What -- his -- his irrationality was beyond anything that I've

10  ever heard from the jury box.

11       I believe further that he is a danger to the other jurors.

12  I feel it would be irresponsible for me to let him go back into

13  the jury room, after his violent outburst.  And by "violent," I

14  mean physically.  He was throwing his jacket around, whipping

15  it against the seats in the jury box.  He was so deeply

16  agitated over, I guess, his experiences in Yugoslavia and the

17  Communists, and how great America was, but his -- his tirade,

18  even though he said how great America was, he equated us as

19  being -- the system as being the bad guys.  And he was very

20  violently opposed to that.

21       And he referred to the other -- the other jurors as Nazis

22  at one point.  I think he's a danger to the other jurors, and

23  will not deliberate.  I find he will not deliberate with the

24  other jurors.  He is a danger to the other jurors.  And I mean

25  a physical danger.  Based upon his conduct.

PROCEEDINGS

1          Now, we have a -- I'm told by my clerk, a recording that

2     was done.  The recording will be made part of the proceedings.

3          And I'm going to ask the Marshals to see if we -- if the

4     -- the -- the camera system in the courtroom was working during

5     that time.  If it was, I want that to be part of the record,

6     because it was a shocking display and performance.

7          And I feel for his safety, his own mental safety.  And --

8               MR. BRUGNARA:  He -- he's not --

9               THE COURT:  Wait, Mr. Brugnara --

10              MR. BRUGNARA:  She just has a bad habit, I guess, of

11    nodding her head.

12              THE COURT:  Mr. Brugnara, I'm making a ruling.  I'm

13    not finished.

14              MR. BRUGNARA:  This is what I have to see, Your Honor.

15    (Nods head)

16              MS. HARRIS:  Get him away from me.

17              MR. BRUGNARA:  Okay, nodding your head.  The

18    puppeteer.

19              THE COURT:  Anyway, I've made a number of findings

20    here.  But he will not -- he will not follow -- I find he will

21    not follow the instructions of law.  I find that he will not

22    deliberate in good faith.  I find that he is a danger to the

23    other -- physical danger to the other jurors, and will disrupt

24    the deliberation process by his violence and threats of

25    physical violence.

1      I find that he lied to the Court during the voir dire.

2   And that he concealed his criminal history.  And that that was

3   material, and would have been cause to -- to excuse him.

4      I find that Mr. Brugnara violated the Court order and

5   communicated with the juror during the voir dire several times,

6   despite my order not to do so.  And, tried to curry favor with

7   the juror, and had communication directly with the juror or

8   tried to have those communications during the voir dire,

9   itself.

10      I'm repeating myself at this point, so I'm just going to

11   say that, I believe, is more than ample.  And so that's going

12   to be done.

13      MR. BRUGNARA:  Okay, your Honor, I would like to make

14   one statement because my name is put into -- injected into this

15   situation.

16      For starters, I wasn't trying to curry favor with him.  I

17   was trying to help the Court out because he felt he was my

18   advocate.  Okay, so I thought I was doing the Court a service.

19   And I again get hit with a summary charge which --

20      THE COURT:  I'm sorry.  The rules are for me to -- I

21   laid down a very clear rule.  This is indicative of why you

22   were not amenable to supervision.

23      MR. BRUGNARA:  Your Honor --

24      THE COURT:  You decide what's good, you decide what

25   you want to do, and then you do it, and then you come up with

1    some screwball explanation.

2           **MR. BRUGNARA:**  Your Honor, your Honor --

3           **THE COURT:**  I'm sorry; that doesn't fly --

4        (Multiple speakers)

5           **MR. BRUGNARA:**  -- screened probably 20 men and women,

6    25 men and women, and they said they lent me a billion, six.

7    So obviously, people that live in the top of the pyramid in

8    this world certainly do trust my judgment.

9        And I think if the Court allowed him just to --

10          **THE COURT:**  We're not going to reargue it.  It's done!

11          **MR. BRUGNARA:**  I know that.

12          **THE COURT:**  So just stop!

13          **MR. BRUGNARA:**  But based upon what he said, now

14   there's more questions that arisen about the existing jurors in

15   there.

16       Because he said something, this Court has a duty --

17          **THE COURT:**  I'm going to find out.  I'm going to bring

18   them.

19          **MR. BRUGNARA:**  Can I just please finish?  He said that

20   they were prejudiced against me in there, so now we got a --

21   now we got an even bigger issue.

22       He was prejudiced against, you said, the government.  That

23   was your interpretation.  Wasn't mine; that was yours.  And

24   you're certainly entitled to rule; this is your court.

25       But unequivocally, he said those jurors are prejudiced

1    against me.  And that's a serious violation of my rights as a

2    defendant to a fair trial.  And he made that on the record.

3    Okay.  So that's the first thing.

4        The second thing I want to say is:  I am not somebody here

5    who one day of my life is meaningless.  I have four children:

6    Briana (Phonetic) who's 11, Lauren who's 14, Vinnie who is 16,

7    and Luke who is 18.  And I have not seen them in 11 months.

8    And for you to make presumptive comments about me going to

9    prison and giving me out 90 days like it's passing out candy on

10   Halloween is totally improper.

11       The minimal amount of due diligence that I've been allowed

12   to do is it can only be capped at 180 days in an instant

13   matter.  And you're well beyond that.

14       And there has to be a whole set of procedures and

15   processes.  There has to be an absolute intentional violation

16   that rises to the level of obstruction of justice each and

17   every time, which certainly doesn't apply on the great majority

18   of these matters.

19       So, that's just not fair to me.  You know, your Honor, we

20   can cherry-pick the record -- and I don't do this.  I'm a

21   global sort of person, but we can check things you've said on

22   the record:  You're going to be convicted.  Mr. Brugnara,

23   you're going to be convicted.

24       Do you know how many times you said that, I'm going to be

25   convicted?  Just in the last 3,000 pages?  I don't have -- I

PROCEEDINGS

1    didn't do it for the other -- you said it four times.  So since

2    the pretrial motion, through the trial, you said I'm going to

3    be convicted, three times.

4        Okay?  That's totally prejudicial, totally, looking at the

5    whole thing.  But I'm not that sort of guy.  I take people in

6    totality --

7            THE COURT:  Mr. Brugnara, this is beside the point.

8            MR. BRUGNARA:  No, but you just gave me 90 days.  It's

9    not beside --

10        (Multiple speakers)

11           THE COURT:  I gave you 90 days, and you can take an

12   appeal.

13           MR. BRUGNARA:  Okay, how about this?  You said before

14   the jury:  There you go with your propaganda.  You apologized

15   to the jury:  I shouldn't have said propaganda.

16       Then the very next day, Ms. Harris, here, said the exact

17   same words:  There he goes with his propaganda.  Parroting the

18   exact same words.

19           THE COURT:  Mr. Brugnara, you're out of control.

20       Would the Marshals escort Mr. Brugnara to his seat?

21       Have a seat.

22           MR. BRUGNARA:  I'm not allowed to speak?

23           THE COURT:  You've had your say.

24           MR. BRUGNARA:  Am I allowed a glass of water?

25           THE COURT:  We have a deliberation to run here.

PROCEEDINGS

1          **MR. BRUGNARA:**  Yeah.  It's for my freedom.

2          **THE COURT:**  Have a seat.  I'm going to bring in the

3     juror in question, I'm going to --

4          **MR. BRUGNARA:**  Can I get some water, your Honor?

5     Because apparently they can't figure out a way to get the

6     five-gallon drum filled.

7          **THE COURT:**  Is there water in there, Chris?  Can

8     somebody give him water?

9          **MS. HARRIS:**  Your Honor, can I just ask that when

10    Mr. Hellman is brought in, that Mr. Brugnara is not permitted

11    to sit in the middle here (Indicating), but he sits behind his

12    table?

13         **MR. BRUGNARA:**  She doesn't direct this Court, your

14    Honor.

15         **THE COURT:**  I can't hear you, Ms. Harris.

16         **MS. HARRIS:**  That Mr. Brugnara sit behind the table as

17    Government counsel did, and not sit in the middle of the aisle

18    in the line of sight of the jury?

19         And that he again be admonished not say a word or make any

20    sounds with his hands or anything else?  That he just sit there

21    quietly?  And the Government --

22         **THE COURT:**  I'm so admonishing Mr. Brugnara to --

23         **MR. BRUGNARA:**  I can sit wherever I want at this

24    table.

25         **THE COURT:**  You can sit where you are now.

1    **MR. BRUGNARA:**  I can sit right here (Indicating).

2    **THE COURT:**  No, you're not going to say a word to this

3    prospective -- prospective -- to this discharged juror.

4    I need to find out something.  My plan is to just bring

5    him in, discharge him, and tell him he's free to go.  And, and,

6    and that he's not to communicate with any of the other jurors.

7    I don't know what I can say beyond that.

8    **MS. HARRIS:**  I think that would be fine, your Honor.

9    And for the record, Mr. Brugnara is still sitting not behind

10   the table.

11   **MR. BRUGNARA:**  You just said I could sit right here.

12   She's not going to tell me where I can sit.  Who does she think

13   she is?

14   **THE COURT:**  Ms. -- you can sit there.  You can sit

15   there.

16   (Multiple speakers)

17   **THE COURT:**  Mr. Brugnara, stop.  And do not say a

18   word.

19   Please bring in Mr. Jakic.

20   **MR. BRUGNARA:**  Now, just on the record, I vehemently

21   oppose what's -- I object to what's going on here.  It's a

22   violation of the *Warner* and *McDonogh* case precedent.  It was

23   staged, and got to show the venue that -- that he provided.

24   And Your Honor, one other thing I would like to say for

25   the record --

1      **THE COURT:**  No, you don't get to say anything!

2      **MR. BRUGNARA:**  But your Honor, they picked him for the

3  jury.  The United States Government picked him as one of 12

4  jurors, just to let you know.

5      So that's someone -- like she says, she has 25 years of

6  experience.  Ms. Harris obviously doesn't know how to read

7  people.  Okay?  Because I knew who that guy was the first

8  minute I saw him.  Ms. Harris obviously can't figure it out in

9  25 years.

10      **THE COURT:**  Mr. Brugnara, I'm ordering you to be

11  quiet.

12      Are we bringing in the -- are we bringing him in?  All

13  right.  Can we bring him in now?

14      (Juror Jakic escorted into the courtroom)

15      **JUROR JAKIC:**  I have a dream for better America!  For

16  justice!  For freedom!  I have a dream!

17      Down with the Nazi!  Non-Nazi!  Down with the Communist,

18  down with the mockery of justice!

19      **MR. BRUGNARA:**  This isn't fair to me.

20      **JUROR JAKIC:**  I have a dream!  Black, white, unite!

21  (Unintelligible)  He's not guilty!  He's not guilty because he

22  is Italia.  You are not guilty because you are black!  You are

23  guilty because you are poor!  You are guilty because you are

24  white!

25      **THE COURT:**  Mr. Jakic, please.  I'm ordering you, I'm

PROCEEDINGS

1    ordering you to be quiet.

2         **JUROR JAKIC:**  You leave justice (Unintelligible) jury,

3    white jury.

4         **THE COURT:**  Mr. Jakic.

5         **JUROR JAKIC:**  Okay.

6         **THE COURT:**  Mr. Jakic.  Please.

7         **JUROR JAKIC:**  Okay.  I will.  I respect your Honor.

8         **THE COURT:**  Well, now -- all right.  The record will

9    show that you're sitting down.

10        I need to tell you that I'm excusing you, and discharging

11   you from further service in this case.  And, I'm ordering to

12   you leave the building.

13        And -- now --

14        **MR. JAKIC:**  And I will tell all the press, kill me,

15   New York Times, BBC, international!  This is a Nazi system,

16   Communist system!  I have a dream for better America!  You are

17   a -- (Unintelligible) Nazi system!  You are a prosecutor of

18   Stalin!  You are a Communist!

19        **THE COURT:**  Mr. Jakic, Mr. Jakic, please.  Sit down --

20        (Multiple speakers)

21        **MR. JAKIC:**  I'm going to talk every day --

22        **THE COURT:**  Place seat sit down, Mr. Jakic.

23        **MR. JAKIC:**  Italian, black, unite!  I have a dream!  I

24   have a dream!

25        **THE COURT:**  Mr. Jakic --

1        **MR. JAKIC:**  (Unintelligible) Italia.

2        **THE COURT:**  Mr. Jakic, stop.  Stop.

3        **MR. JAKIC:**  Not going to listen -- you represent --

4    you oppress!  You represent, you represent Nazi system!  Nazi

5    justice!  You are -- I blame you (Indicating)!  I blame Your

6    Honor!  You don't have any duty to tell me what to do!

7        **THE COURT:**  All right.  Please.

8        **MR. JAKIC:**  I am a -- you are just an agent.  Agent to

9    (Unintelligible) killers.  God bless America!  (Unintelligible)

10   America fight for better society!  I have a dream.  Luke

11   Brugnara is not guilty!

12       **COURT SECURITY OFFICER:**  Sit down.

13       **MR. JAKIC:**  He is not guilty!  He is Italian!

14       **COURT SECURITY OFFICER:**  Sit down.

15       **MR. JAKIC:**  Don't push.  Leave me alone.

16       **THE COURT:**  Mr. Jakic, Mr. Jakic, Mr. Jakic --

17       **MR. JAKIC:**  BBC, all (Unintelligible) call all

18   European Union, Africa, Asia.  I have a dream!  Everybody!

19   Luke Brugnara is Italian!  You jury, idiots, Communist jury!

20       **THE COURT:**  Mr. Jakic, Mister --

21       **MR. JAKIC:**  Communist jury!

22       **THE COURT:**  Mr. Jakic, please be quiet.

23     May I say something, Mr. Jakic?  Mr. Jakic --

24       **MR. JAKIC:**  You are a mockery!  You represent

25   (Unintelligible) -- you are corrupt, you are anarchy!  You all

1    be put to death!  Innocent until guilty --

2         (Multiple speakers)

3         **THE COURT:**  Okay, the CSOs will take out -- Mr. Jakic

4    will be escorted out of the building.

5         **MR. JAKIC:**  The Italians wake up, blacks wake up, all

6    oppressed people wake up!  Don't listen to him!  He is an agent

7    of guilty system, Nazi, Nazi, fascist system, Communist!

8         (Mr. Jakic is escorted from the courtroom)

9         **MR. BRUGNARA:**  Your Honor, I have my life in the

10   balance, and the jurors obviously heard the level which that

11   occurred at, I would assume.  And I think we've got serious

12   problems going on now.  Okay?  My life's in the balance.

13        And I am -- one thing that he said that was true is I'm

14   innocent.  I haven't done anything.  I'm not guilty.  And I'm

15   presumed innocent, despite this Court saying:  You're going to

16   be found guilty, you're going to be convicted, at least six or

17   seven times.

18        So I got a real problem with everything that's happened in

19   this court about me basically being sent to the gallows --

20        **THE COURT:**  The Court of Appeals will please not take

21   Mr. Brugnara's pronouncements as -- well, then, he will find

22   them from the Court of Appeals.

23        **MR. BRUGNARA:**  Why would I have to go to the Court of

24   Appeals if I'm acquitted?  I can't be if --

25        **THE COURT:**  Well, it's moot.  It's otherwise moot.

1    Please be quiet.  We need to have a plan here.  We're not going

2    to argue about those things.

3        All right.  We have eleven jurors here.  I am going to

4    ask -- I do feel obligated to ask the other jurors if they --

5    after what has gone on, they can deliberate and follow the

6    instructions and follow the evidence.  And, and -- or whether

7    or not they feel that Mr. Jakic has in some way impeded their

8    ability, anything that's happened impedes their ability to do

9    that.  So --

10        **MR. BRUGNARA:**  I would like you to ask them if they

11   have come to a verdict on any -- on any prior -- before you

12   tell them about Mr. Jakic, I want to find out if they have come

13   to any verdicts --

14        **THE COURT:**  They can't come to a verdict with just

15   eleven, unless I give them the authority to do that.

16        **MR. BRUGNARA:**  I don't want them to know that

17   Mr. Jakic has been released.

18        **THE COURT:**  Of course, I have to tell them that.

19   They're entitled to know that.  Now, I need to know, do we want

20   to go and get an alternate?  Or do we want to go with eleven?

21        **MR. BRUGNARA:**  Well, we go with an alternate,

22   obviously.

23        **MS. HARRIS:**  Your Honor, we would leave that to the

24   Court's discretion.

25        **MR. BRUGNARA:**  I oppose again, Mr. Jakic, despite his

1    outburst and his conduct which is not appropriate, it still

2    doesn't rise to the level of him not being able to deliberate,

3    because he actually did it for a week without any outburst.

4         It's prima facie proof how he's behaved in that jury

5    deliberation room for a week, for 30-plus hours.

6              THE COURT:  We don't know that.  We don't know how he

7    behaved in there.

8              MR. BRUGNARA:  Well, the foreman certainly had a duty

9    to notify you of that, and he didn't.

10             THE COURT:  Well, they did notify me, and maybe they

11   were just being gentle whenever they -- in the way they

12   described it.

13        What I'm going to do is bring the other eleven in now.  I

14   want to order:  Neither side will say a word.  I'm going to do

15   all the talking when the jury is in here.

16        Please bring the eleven in, please.

17             MR. BRUGNARA:  Your Honor, I would like to make a

18   record:  The two prosecutors are smiling and nodding their

19   heads.  Mr. Kingsley and Ms. Harris are both smiling.

20        Congratulations, your Honor.

21             MS. HARRIS:  Your Honor, gratuitous (Inaudible)

22             MR. BRUGNARA:  Congratulations, Your Honor.  You're

23   doing a good job.  Getting --

24             THE CLERK:  All rise.

25             (The following proceedings were held in the presence of

PROCEEDINGS

1  the Jury)

2          **THE COURT:**  All right, welcome back.  Be seated.  I

3  hope you all had a restful weekend, and I thank you for being

4  on time this morning and prepared to go forward.

5          I need to inform you that I have excused and discharged

6  Mr. Jakic from the jury.  I do not need to get into the

7  reasons, and I don't want you to speculate over the reasons.  I

8  am going to ask one of the alternates to join the jury.  That

9  will be done, I think, pretty soon, if I -- if my information

10  is correct.

11          But I need to ask you eleven whether or not you are able

12  and willing and feel you can -- well, able and willing to go

13  forward and to deliberate, follow the instructions of law, and

14  to decide this case based on the evidence at trial.

15          If you feel that you are able to do that, please raise

16  your hand.

17          (All jurors raise their hands)

18          **THE COURT:**  All right.  Everyone has raised their

19  hand.  In doing that, are you able to start deliberations anew

20  with another juror, which you will be required to do, and to

21  put aside any extraneous information that came to your

22  attention, if there was any, by way of Mr. Jakic?

23          If so, I want you to -- I just assume that you are all

24  going to be able to decide this case based on the evidence

25  presented here at trial and not extraneous information.  And,

1    and that you will be able to ignore any extraneous information

2    that might have been laid before you when Mr. Jakic was here.

3         All right.  If you are able to do that, please raise your

4    hand.

5         (All jurors raise their hands)

6         **THE COURT:**  All right.  All hands go up.  All right.

7    I -- then -- just a moment.

8         (Note handed up from Clerk)

9         (The Court examines note)

10        **THE COURT:**  All right.  What we are going to do, I'm

11   going to ask you to go back into the jury room for a just a few

12   minutes.  Do not deliberate.

13        I'm -- I'm told now that the alternate is now in the

14   building.  I'm going to bring the alternate down here, and then

15   we -- I'll have to give her the same instructions, supplemental

16   instructions that I gave you.  So you all have the same deck of

17   cards, so to speak.  And then, the 12 of you will go into the

18   jury room at that time and start your deliberations anew.  So,

19   that is -- that is the way it has to be, under the law.

20        So, please go back to the jury room; do not deliberate.

21   And, we'll see you back here in a few moments.

22        **THE CLERK:**  All rise.

23        (Jury excused)

24        (The following proceedings were held outside of the

25   presence of the Jury)

PROCEEDINGS

1           THE COURT:  All right, be seated.  And, I need my law

2      clerk to find for me my -- those instructions.  Where are they?

3           (Off-the-Record discussion between the Court and Law

4      Clerk)

5           THE COURT:  Can we bring the alternate juror down and

6      have her, I think, stand right outside the doorway there until

7      we're ready for her?  Can we do that, Dawn?

8           THE CLERK:  I'm trying to see if I can get somebody

9      down there to bring her down.

10          THE COURT:  All right.  I'm ready to proceed.

11          MR. BRUGNARA:  Your Honor, I think the Court needs to

12     determine whether we need a mistrial at this point.

13          THE COURT:  Well, let's hear your motion.

14          MR. BRUGNARA:  Well, Your Honor, you don't give me the

15     benefit of research.  I'm entitled to legal research as a

16     pro se litigant, which I have been denied.  You've heard

17     testimony are from Deputy Lacey that it's an eight-day process

18     to in fact return the legal research to me once the written

19     request is provided to the Sheriffs at Alameda County.

20          And, it would take me at least that number of days to get

21     the legal research on case precedent on such a motion to have

22     any -- any meaning, any significance.  I mean, for me to -- to

23     rattle off an opinion on it without having case-precedent

24     research would be meaningless, certainly in the eyes of the

25     Court.

1        But this is just absurd what's happened to me today.

2   Another 90 days when there's certainly no -- no intent --

3   certainly no intent to disrupt or harm the Court.

4        Certainly, it was obvious I was trying to calm the

5   situation down, because he clearly was an advocate for me.  I

6   was doing my best to try to help the situation, not inflame it.

7        And I just can't be put in this situation -- listen:  I'm

8   a family man with four children.  And I am so disrespected in

9   this court.  It is just beyond my comprehension.  I would never

10  do that to you or anybody, the way I have been treated, the way

11  I have sat in jail for the last eleven and a half months with

12  murderers, literally with murderers.  It's insane.

13       And you know, the things you say --

14       **THE COURT:**  Mr. Brugnara --

15       **MR. BRUGNARA:**  Hey, listen.

16       **THE COURT:**  Your motion -- this -- you're not giving

17  me -- the fact that you've been in jail and pretrial detention

18  is not a grounds for a mistrial.

19       **MR. BRUGNARA:**  No, it goes to the -- you're missing

20  the point.  It goes to the -- it goes to the due diligence of

21  getting the case precedent as a pro se litigant.  If I was a

22  pro se litigant and I wasn't in the jail, we wouldn't have the

23  delay in getting the case-precedent legal research.

24       **THE COURT:**  Well, in the meantime, I see no basis for

25  a mistrial.

1          MR. BRUGNARA:  You see no basis for a mistrial after

2    what we saw?

3          THE COURT:  I see no basis for a mistrial.  And I --

4    and so -- are we ready?  And so we will --

5          MR. BRUGNARA:  A juror sitting there telling you that

6    the other sitting jurors are prejudiced against me, and you

7    don't even demand further inquiry?  You have the sitting jury

8    sitting right in front of you literally two minutes ago, and

9    you didn't even ask them:  Are any of you prejudiced against

10   Mr. Brugnara, where you can't deliberate fairly?

11       Just a simple inquiry like that, you didn't ask.

12         THE COURT:  I asked whether they can decide the case

13   based on the evidence, and follow the instructions of law.

14         MR. BRUGNARA:  You didn't ask about the prejudice

15   point, and that's what he said.

16         THE COURT:  That's inherent now.

17         MR. BRUGNARA:  He said they're prejudiced against me.

18         THE COURT:  All right.

19         MR. BRUGNARA:  And you didn't inquire into that, and

20   you're required to do that.

21         THE COURT:  I tried to inquire of the -- the man, and

22   he would not let me go --

23         MR. BRUGNARA:  Your Honor, I'm talking about

24   (Inaudible) the jurors.

25         THE COURT:  Mr. Brugnara, I'm ordering you to be

PROCEEDINGS

1    quiet.

2            **MR. BRUGNARA:**  (Inaudible)

3            **THE COURT:**  Your motion is denied.

4        Let's bring in the next juror.

5            **MR. BRUGNARA:**  I request that you inquire of the other

6    11 jurors of prejudice --

7            **THE COURT:**  Denied.  Unnecessary.

8            **MR. BRUGNARA:**  Based on --

9            **THE COURT:**  Mr. Brugnara, please.

10           **THE CLERK:**  All rise.

11       (Alternate Juror Stromberg enters the courtroom)

12           **THE COURT:**  Ms. Stromberg, welcome back.  Please come

13   over here.  And, just stay right there for a moment.

14       Why don't you have that seat, that -- Dawn will show you

15   the seat in the jury box.  And, and then, we will bring in the

16   other jurors.

17           **THE CLERK:**  Okay, No. 6.  5?  5.  Right there

18   (Indicating)

19           **THE COURT:**  All right.  Now, please bring in the other

20   jurors.

21       You've drove in all the way from --

22           **ALTERNATE JUROR STROMBERG:**  Petaluma.

23           **THE COURT:**  Petaluma.  Thank you.

24           **ALTERNATE JUROR STROMBERG:**  You're welcome.

25           **MR. BRUGNARA:**  Your Honor, I would like to make a

1   statement at sidebar.

2           THE COURT:  No.

3           MR. BRUGNARA:  It's important, right now?

4           THE COURT:  No, no.  Sorry.

5           MR. BRUGNARA:  *Ex parte*?

6           THE COURT:  It will have to be done after I instruct

7   the jury.

8           MR. BRUGNARA:  Well, it's related to that.

9           THE COURT:  I'm sorry.

10      (The following proceedings were held in the presence of

11   the Jury)

12          THE COURT:  All right, please be seated.  You will see

13   that we have Ms. Stromberg back.

14      Welcome back.  And, we -- we need to ask you to stand and

15   take the oath as a juror now.  You have taken the oath as an

16   alternate.  But let's take the oath as the -- as a regular

17   member of the jury.

18      Dawn?

19      (Juror Stromberg sworn in)

20          THE CLERK:  Thank you.

21          THE COURT:  Thank you.  And let me just ask one

22   question, Ms. Stromberg.  When you left here the other day, I

23   gave you some instructions as an alternate, and admonitions.

24      Have you followed all of those admonitions?

25          JUROR STROMBERG:  (Nods head)

1          THE COURT:  You have to say yes or no.

2          JUROR STROMBERG:  Yes.

3          THE COURT:  All right, thank you.  So, we -- you were

4     here for the reading of the instructions, so we do not need to

5     repeat that.  But, what I do need to repeat is -- are some

6     supplemental instructions that came up during the last few

7     days.

8          One member of the jury has been discharged and you are

9     replacing him, so we need to go back over those questions,

10    those supplemental questions, so you will have the benefit of

11    that instruction as well.

12         All right?

13         JUROR STROMBERG:  Okay.

14         THE COURT:  And the rest of you have already heard

15    this, but it wouldn't probably hurt for you to hear it again,

16    so there you go.  This will take about, I'm going to say, five

17    or six minutes, so, because there were several questions.

18         All right.  So, now I know this is all happening very

19    quickly, Ms. Stromberg, to you, so let me just -- are you

20    mentally back in synch and ready to go forward?

21         JUROR STROMBERG:  I'm trying to.

22         THE COURT:  All right, all right.  Thank you.

23         Here we go.  The first question dealt with how to work the

24    video equipment, and I don't think I need to go into that.  I

25    think that was a technical person who answered that question,

1   anyway.

2       So the second question was as follows (As read):

3           "In relation to jury instruction on Page 10,

4           Paragraph 30, Lines 22 to 23, quote, 'It does not

5           matter whether the alleged scheme covered an entire

6           course of dealing or only part of it, so long as all

7           four elements are proven,' does the evidence need to

8           prove that the defendant had a plan to defraud at the

9           exact moment that the email in Count One, Exhibit 59

10          was written?  Or can subsequent events help inform

11          our understanding of his intent?"

12      And here was the answer that I gave to that:

13          "Okay, that was your question, and here's the answer.

14          The Government must prove beyond a reasonable doubt

15          that the defendant sent the email for the purpose of

16          furthering a fraudulent scheme or plan.  That's the

17          first part.  Second part is but in evaluating intent,

18          you may consider all events and evidence before you

19          before and after the exact moment of the email to

20          help inform your understanding of defendant's intent

21          in sending the email.  So, I'm going to try to say

22          that again.  I may not use exactly the same words but

23          I'll -- because I've got it sketched out here, I'll

24          say the answer again.  The Government must prove

25          beyond a reasonable doubt that the defendant sent the

1          email for the purpose of furthering a fraudulent

2          scheme or plan.  And in evaluating intent, you may

3          consider all the evidence in the case, both before

4          and after the exact moment of the email, to help

5          inform your understanding of the defendant's intent

6          in sending the email."

7     So that's number two.  Now we go to No. 3.  Question No. 3

8 was -- this is me talking from the transcript (As read):

9          "All right, I'll read the note that you sent out

10          which says 'On Page 13, Paragraph 38, Element Fourth,

11          does the instruction apply to the current matter the

12          jury is considering, or the June 18, 2014 hearing?

13          If it is June 17, 2014 hearing, what was the context

14          of that hearing?'

15          "And just so you'll have it in mind, I'll read to you

16          the fourth element of Paragraph 38.  Quote:  'Fourth,

17          the false testimony was material to the matters

18          before the Court, that is, it had a natural tendency

19          to influence or was capable of influencing the

20          Court.'

21          "And, again, your question was '...does the

22          instruction apply to the current matter the jury is

23          considering or the June 17, 2014 hearing?  If it is

24          the June 17, 2014 hearing, what was the context of

25          that hearing?'

1          "And here's the answer:  If the matter before the

2          court that's referring to in that Fourth is the

3          June 17..."

4     No.  It should say "The matter before the Court that's

5     referred to in that Fourth is the June 17, 2014 hearing."

6          "And the context of that hearing, you heard some

7          testimony about that, but I'm not at liberty, now

8          that the record is closed, to add or subtract from

9          the record.  So I cannot give you a further answer

10          concerning what was the context of that hearing,

11          beyond what you already have in the trial record.

12          There we are."

13     Now we come to Question 4.  And, I say (As read):

14          "I have your note, No. 4.  I want to read the answer.

15          I will first read -- and you have two parts, A and B

16          part.  I'm going to read A first and then answer

17          that, and then go to B.

18          "A says:  'Related to jury instruction Paragraph 38,

19          element Fourth, Lines 9 and 10 on Page 13, what does

20          "It had a natural tendency to influence or was

21          capable of influencing the Court" mean?'

22          "So I'm going to stop reading there and just read to

23          you the fourth element in full so that you will have

24          the context.  Paragraph 38:  'Fourth, the false

25          testimony was material to matters before the Court,

1          that is, it had a natural tendency to influence or

2          was capable of influencing the Court.'

3          "So the question again, to repeat your question:

4          'What does "It had a natural tendency to influence or

5          was capable of influencing the Court" mean?'  And

6          then you give three possibilities:  For example:

7          '(1) Alter the decision of the June 2014 hearing.'"

8      (Mr. Stevens leaves the courtroom)

9      **THE COURT:**  (As read):

10         "'(2) Affects the Court's understanding, regardless of

11         the outcome of the decision in the June 2014 hearing,

12         or (3), something else?'

13         "So number (1), which is 'Alter the decision of the

14         June 2014 hearing,' no, that is not the test.

15         "No. (2), 'Affects the Court's understanding

16         regardless of the outcome or decision in the

17         June 2014 hearing,' no, that's not the test either.

18         (3), something else."

19     All right.  So that's -- well, I'm sorry.  This does not

20 have what I read in as the -- okay.  No -- yes, it does.

21         "All right, so that's -- that's Part A.  Now we go to

22         B.  And your Question B says: 'Related to jury

23         instruction 38, all elements, Line 6 through 10 on

24         Page 13:  Hypothetically if the jury finds that the

25         first three elements to be true, for the first --

1          fourth element, does the purpose of the June 2014

2          hearing matter?"

3      All right, then the further answer is:

4          "So I will read to you the something else."

5      I need to pause here and say, remember that the note had

6  three possibilities in Part A, No. (1), No. (2), and No. (3)

7  was "something else."  So I said:

8          "Now I will read you the something else.  The law on

9          the question you asked.  'A statement is material if

10         it has a natural tendency to influence or was capable

11         of influencing the decision of the decision-making

12         body to which it was addressed.  To be material, a

13         false statement need only be relevant to any

14         subsidiary issue under consideration.  The Government

15         need not prove that the perjured testimony actually

16         influenced the relevant decision-making body.

17         Further, materiality is tested at the time the

18         alleged false statement was made.  Later are proof

19         that a truthful state would not have helped the

20         decision-making body does not render the false

21         testimony immaterial."

22      (Mr. Stevens returns)

23      **THE COURT:**  (As read):

24         "All right.  So, that's part A.  Now we go to B.  And

25         your Question B says:  'Related to Jury Instruction

1          Paragraph 38, all elements, Lines 6 through 10 on

2          Page 13:  Hypothetically if the jury find the first

3          three elements to be true, for the fourth element,

4          does the purpose of the June 2014 hearing matter?'

5          "So, in short, you asked:  For the fourth element,

6          does the purpose of the June 2014 hearing matter.  My

7          answer to you is that purpose is not the right

8          concept.  The right concept is subject matter,

9          including subsidiary issues.  I repeat.  The right

10         concept is subject matter, including its subsidiary

11         issues."

12     Now we come to Note No. 5.  And that -- that relates to a

13 matter that I don't need to instruct you on.  So, that is --

14 I've now covered with you all of the supplemental instructions

15 that are necessary, and I've repeated it.  You all now have the

16 same information.  And, you need to go back to the jury room

17 and deliberate on the case.

18     Oh, by the way I'll get you your own copy, Ms. Stromberg,

19 of the jury instructions.  I'll also get you your own working

20 copy of the verdict form, and so that you'll start even with

21 all of the other jurors.

22     And, all of the jury need to go back to the jury room and

23 start your deliberations anew, now that we have a new member of

24 the jury.  And I think we're at the point where you just go the

25 jury room.

1      All right?  All right.  Thank you.

2           THE CLERK:  Okay, all rise.

3      (Jury excused)

4      (The following proceedings were held outside of the

5  presence of the Jury)

6           THE COURT:  All right, be seated.  All right.

7      Mr. Brugnara, you wanted to say something as the jury was

8  coming in, so I'll give you the opportunity to do that now.

9           MR. BRUGNARA:  I don't want the Marshal standing like

10  he's a sentry, standing over me.  That's indicative of --

11  defeating the whole purpose of me being in -- in dress clothes.

12      I don't -- I don't need a sentry position with the back

13  facing --

14           THE MARSHAL:  He was sitting down.

15           THE COURT:  The Marshal was sitting down while the

16  jury was present.

17           MR. BRUGNARA:  You know what?  I said when they walked

18  in.  I don't need somebody with their back to the jury, facing

19  me, like I'm some murderer.  That's highly prejudicial to me.

20           THE MARSHAL:  Your Honor, my back was not to the jury.

21           MR. BRUGNARA:  Why would I ask for a sidebar over

22  there?  Okay?  Please.  And you denied it.  And it's again

23  continued prejudicial conduct, right along with saying

24  "propaganda" in front of the jury, right along with saying

25  "After the jury's done you're going to be convicted," right

PROCEEDINGS

1    along with having sentries standing with their back to the

2    jury, facing me like I'm some criminal.

3        I have no history of violence at all.  So the fact of the

4    matter is this is all --

5        **THE COURT:**  That's not true.  Your own brother got a

6    TRO --

7        **MR. BRUGNARA:**  No, that is not true!  That is not

8    history of violence, and it was retracted.  So, you continue to

9    make prejudicial comments on the record.

10       **THE COURT:**  That's not prejudicial; that's -- I'm just

11   correcting you.

12       **MR. BRUGNARA:**  That's a purely prejudicial comment on

13   the record.

14       **THE COURT:**  I'm correcting -- May I hear from the

15   Marshal.

16       **MR. BRUGNARA:**  That's a prejudicial comment.

17       **THE COURT:**  May I hear form the Marshal, tell us what

18   you did.

19       **THE MARSHAL:**  I was standing, your Honor; my back was

20   not to the jury.

21       **THE COURT:**  Okay.

22       **MR. BRUGNARA:**  Okay.  Well, I guess then I asked for a

23   sidebar for no purpose.

24       **THE COURT:**  Well, he stood when the jury was coming

25   in.  That's what everybody does.

1        **MR. BRUGNARA:**  The one juror was already standing

2   there.  And he had his back to the jury, standing sentry over

3   me.  That's her first impression.  First impressions are very

4   important.

5        **THE COURT:**  No.

6        **MR. BRUGNARA:**  What do you mean, "No"?

7        **THE COURT:**  There is no way that what happened here

8   could be --

9        **MR. BRUGNARA:**  You don't think -- you know, let me ask

10  you this.  You said I'm going to be convicted, it's

11  unequivocal.  And look, the jury is in their second week

12  already.  Please.

13       **THE COURT:**  I don't remember saying any such thing.

14       **MR. BRUGNARA:**  You think you know more than me?  I

15  don't think you do.

16       **THE COURT:**  All right.  I believe that nothing

17  happened in the courtroom with the Marshals that's prejudicial.

18       **MR. BRUGNARA:**  I'm an expert in -- I have a degree in

19  communication.  I know you're an expert in math.  I have a

20  degree in communications, including nonverbal communications.

21  Nonverbal communications are as important as verbal

22  communications.

23      Everything that happens in this courtroom is absolutely

24  material to how those jurors perceive what's happening.  And

25  him standing sentry over me with his back to the jurors like

1    I'm some murderer gives the impression:  This guy is dangerous,

2    this guy is unruly, we have to -- and the other thing is: I

3    don't know if these jurors -- and I've certainly heard

4    screaming from Jakic.  They don't know if that was me.

5         This whole thing is thrown in discombobulation right now.

6    Highly prejudiced against me.  The one advocate that I had was

7    triggered into an emotional breakdown.  You know, the fact of

8    the matter is this is just -- just isn't right.

9         You know, I'm presumed innocent.  I'm not getting a fair

10   trial.  I have not gotten a fair trial.  The more I read the

11   transcript, the more I read the pretrial, April 22, it'll make

12   your stomach -- read it as an objective observer.  Take three

13   or four hours, and read what you've said on the record.

14        Every comment out of your mouth is prejudicial against me.

15   Everything that you say is prejudiced against me.  Every ruling

16   that you make is prejudiced against me.  Yet, I'm presumed

17   innocent.

18        Yet, there's a jury now that's been deliberating for 30

19   hours, and hasn't back and said "He's guilty," something that

20   you've already determined on the record seven or eight times:

21   You're guilty, unequivocally.  You said it.

22             THE COURT:  All right, please --

23             MR. BRUGNARA:  You said it on the record, your Honor.

24             THE COURT:  All right, you're repeating yourself now.

25             MR. BRUGNARA:  It's not fair to me.

1          **THE COURT:**  I want --

2          **MR. STEVENS:**  My life is in the balance, and I have

3     four children that need me.  And that is important to me.

4          And you know what?  I am not being treated fairly in this

5     court.  And I haven't been treated fairly since you said I'm a

6     crook, since you said I'm a flimflam artist, since you said:

7     Giving you a phone is like giving you a gun, since you said:

8     You're going to be found guilty, since you said:  You haven't

9     proven your innocence yet, since you said:  You're using

10    propaganda in front of the jury, since you said:  You're going

11    to be convicted, since you said:  You're going to be convicted,

12    you said it numerous times.

13         That's prejudicial.  If you were honorable and you were

14    fair, you would say:  You know what?  That wasn't right.  I

15    need to step down.

16         And the funny thing is when I went back and I looked at

17    the contempt, for summary contempt, it's funny.  There are

18    honorable judges that actually cited themselves for contempt,

19    because what they did was improper.

20         You are at such a level that you don't answer to anybody,

21    you can't even evaluate yourself objectively and say:  You know

22    what?  I haven't treated Brugnara right, and it -- it's

23    improper.  You won't do that.  You won't do that.  And you

24    haven't done it because you're prejudiced against me.

25         You don't -- you said for six months, on the record, and I

1    will bring it in here tomorrow:  You don't have any lenders

2    that can sit here from New York.  Let's see your big-shot

3    lenders from New York.  You haven't done these deals, Brugnara.

4    You're all hot air.

5        They came in, sat right there:  Yeah, I lent Brugnara...

6            **THE COURT:**  Mr. Brugnara, you're repeating yourself.

7            **MR. BRUGNARA:**  Yeah, but you know what?  I'm trying to

8    make my point --

9            **THE COURT:**  Please have a seat.

10           **MR. BRUGNARA:**  -- that I'm being prejudiced.

11           **THE COURT:**  Please have a seat.

12           **MR. BRUGNARA:**  Let's do a mistrial, then.

13           **THE COURT:**  No.

14           **MR. BRUGNARA:**  No?  Okay.

15           **THE COURT:**  What are the grounds?

16           **MR. BRUGNARA:**  What are the grounds?  You're

17   prejudiced.  And the fact is you pulled off the only advocate

18   for the defense, and you also said that everyone in that jury

19   room is prejudiced against me.

20       And you haven't even inquired of the jury yet:  Are you

21   prejudiced against Mr. Brugnara?  A juror said that you are

22   prejudiced against him.

23       You didn't even make that inquiry.

24           **THE COURT:**  All right.  Thank you.

25       Mr. Brugnara has given me a number of points there I want

1    to go back, lest anyone say on appeal that the Judge failed to

2    address it.

3        Nothing that the Marshal did was prejudicial.  And, and,

4    Mr. Brugnara's recitation of the facts is incorrect.  That is

5    number one.

6        Number two, the motion for mistrial is denied.

7        Number one, the things that I have said in the past about

8    Mr. Brugnara were -- some of which were misstated, but some of

9    those I did say, but each of those things that I did say was in

10   the course of performing my duties as a judicial officer.  For

11   example, ruling on pretrial detention or the conditions of

12   pretrial detention.  So, I did have to address the cell phone

13   aspect.  And that's how some of those things came up.  It

14   wasn't like those were gratuitous comments.

15       And then the dismissing of that juror, it had to be done.

16   It was -- that was the only possible way to go.

17       I have tried very hard to give Mr. Brugnara a fair trial

18   in this case, and despite his comments to the contrary.  If

19   anybody has not gotten a fair trial, it's been the Government,

20   on account of the -- the misbehavior by the defendant,

21   repeatedly doing exactly what he told his mother he was going

22   to do.

23           MR. BRUGNARA:  That's totally improper.

24           THE COURT:  So --

25           MR. BRUGNARA:  I never told my mother any such thing.

PROCEEDINGS

1   If you want to play completeness of the record --

2           THE COURT:  So once again, he interrupts the poor

3   judge, trying to make a ruling.  Just interrupts me.  So -- all

4   right.

5           MR. BRUGNARA:  You're misstating the facts.

6           THE COURT:  No.  I heard -- I heard what you said to

7   your mother.

8           MR. BRUGNARA:  Yeah, but did you hear the entire tape?

9           THE COURT:  I don't need to.

10          MR. BRUGNARA:  You only heard one snippet.

11          THE COURT:  I heard enough, that you did exactly what

12  you told her.

13          MR. BRUGNARA:  You heard one snippet of a 15-minute

14  conversation.

15          THE COURT:  (Inaudible)  You can bring to my attention

16  where it is you took it back.  I don't believe --

17          MR. BRUGNARA:  You took -- you took -- how can I bring

18  anything to your attention when you have me locked in a dungeon

19  for eleven months?

20          THE COURT:  All right --

21          MR. BRUGNARA:  No.

22          THE COURT:  We're done on this.

23          MR. BRUGNARA:  This is my liberty at stake.

24          THE COURT:  Your motion is denied.

25          MR. BRUGNARA:  No, you tried to muffle me.

PROCEEDINGS

```
 1   Your Honor, one of the reasons I'm pro se is to not be muffled.
 2        THE COURT:  All right.  Here's what we're going to do.
 3   As soon as I know anything about where the jury is on how long
 4   they're going to stay --
 5        THE CLERK:  1:00.
 6        THE COURT:  Okay, they're going to stay until 1:00
 7   today.  Then we'll all go back to our waiting positions, and I
 8   will keep you informed.
 9     Thank you.
10        MR. BRUGNARA:  I want to address the issue of summary
11   contempt --
12        MR. KINGSLEY:  Thank you, Your Honor.
13        MR. BRUGNARA:  -- which you can't do without due
14   process.  I'm not allowed due process.  A jury trial --
15        THE COURT:  I gave you -- all right, wait a minute,
16   Ms. Harris.
17     What is your -- you did exactly what I told you not to do.
18   It could not have been clearer.  And, so, go ahead.  Address
19   it.
20        MR. BRUGNARA:  Okay.  The first is -- the first is
21   that it can't exceed 180 days in an instant matter.  You can't
22   stack -- it's like having a part-time employee and having them
23   work 100 hours a week, and saying --
24        THE COURT:  Well, give me your authorities to that
25   effect.
```

PROCEEDINGS

```
1          MR. BRUGNARA:  I put the authorities that I had, I

2    already filed a motion last Thursday.  And I gave you one page

3    of authorities.

4          THE COURT:  Is that true that I'm limited to 180 days,

5    Ms. Harris?

6          MS. HARRIS:  Not that we know of, your Honor.

7          THE COURT:  All right --

8          MR. BRUGNARA:  You're limited to 180 days, it's

9    considered a --

10          THE COURT:  Show me the statute where it says that.

11          MR. BRUGNARA:  Do you know what?  Excuse me.

12       Did you file on Thursday what you claimed to have filed?

13          MR. STEVENS:  Yeah.

14          MS. HARRIS:  Your Honor, it's per incident.

15          MR. BRUGNARA:  He filed a motion for reconsideration

16    on the contempt.  And it's --

17          THE COURT:  It's per incident.  It's per incident.

18          MR. BRUGNARA:  No, no.

19          THE COURT:  Each one of these are incidents.

20          MR. BRUGNARA:  No, no, because the whole -- the whole

21    -- the whole rule is that you cannot deprive a defendant of due

22    process of a jury trial on anything in excess of six months.

23    Otherwise, you could essentially stack, you know, 15, you know,

24    90 days, up to ten years.

25          The fact is it's 180 days with -- and they actually termed
```

1    it as "petty" versus "serious."  So if you have a petty, what's

2    called petty, it's less than six months.  And then they call it

3    serious if it's over six months.

4         And they ruled if it's serious, then I'm entitled to a

5    jury trial.  And if a such a jury trial occurs, then the

6    sitting judge is advised to not show bias, he's advised to not

7    even hear the proceedings.  Especially if it involved any

8    perceived slight to the Judge, rather than to, you know, an

9    officer -- another officer of the court or something of those

10   lines.

11        So if you felt that the contempt that you issued to me,

12   the summary contempt was a slight to you, or it was perceived

13   as a slight to you or disrespect to you, you can't -- it's

14   advised that you don't even rule on that, on that jury trial

15   proceeding.  That it be sent a separate judge.

16        But under 180 days, you have your discretion.  But the

17   thing is:  There's different thresholds for a layperson versus

18   an attorney or a pro se litigant.  And the threshold for you to

19   find a layperson in summary contempt is a much lower standard

20   than a pro se litigant or an attorney, because the pro se

21   litigant, and the attorney, you have to then reach an extra

22   threshold of clear and convincing --

23             **THE COURT:**  Hold on.

24        Has the Government briefed this yet?

25             **MS. HARRIS:**  We have not, your Honor.

1      MR. BRUGNARA:  I filed it Thursday.

2      THE COURT:  Well, then, it's -- you have plenty of

3   time to deal with this.

4      MR. BRUGNARA:  You know, now, you always cut me off

5   when I'm in the middle of communicating.

6      THE COURT:  You're repeating yourself.

7      MR. BRUGNARA:  I'm not repeating --

8      THE COURT:  And I'm going to -- I'm going to look into

9   whether there's any merit to what you're saying.

10      MR. BRUGNARA:  It absolutely makes --

11      THE COURT:  What difference does it make right now?

12      MR. BRUGNARA:  Because they may come back with an

13   acquittal in five minutes, and I want to be able to walk out

14   that door (Indicating) and go see my family.

15      THE COURT:  Well, maybe they will.

16      MR. BRUGNARA:  But, you have summary contempt hanging

17   over --

18      THE COURT:  Then we'll litigate it then.  But I need

19   -- I'm going to do some homework on this in the meantime, and

20   I'm not going to just take your word for it.

21      MR. BRUGNARA:  But the other thing, you also have to

22   go by the precedent of your own trial.  So we've been in this

23   matter now, this instant matter for six years, the WHA 02 --

24   and then the new one, 0-306 (sic).

25      And it wasn't only until Ms. Harris started pulling your

1    strings to start doling out summary contempts to me that you

2    started doing it.  You never, upon your own initiative, ever

3    said:  Okay, these are going to be the ground rules, boom,

4    boom, boom.  If you do this, I'm going to find you in contempt.

5        And that's really what the directive is from the Supreme

6    Court.  And, they strongly advise only as an absolute last

7    resort, that you use it.

8        So you already knew what my personality was over the last

9    six years, certainly over the last year in this court.  So, to

10   change -- to change the protocol and start doling out

11   significant amounts of summary contempt is just not

12   appropriate.

13       It also has to be clearly intentional, meaning if I have a

14   propensity to interrupt, which I've apologized for on the

15   record, and I go:  Yes, I'm interrupt -- I mean, I've admitted

16   it.  It may be a bad habit of mine.  It may be something that I

17   do because, you know, I do that in business when I have

18   subordinates for 25 years that I need interrupt and get on to

19   the next level.

20       That's no disrespect to the Court.  That's a bad habit.

21   That's something that should not be considered and construed as

22   an intentional slight, an intentional deleterious act that

23   rises to the level of obstruction of justice.

24       So, the point is -- it also says civil contempt is always

25   more -- more favorable than doling out criminal contempt.

1  Criminal contempt is the last measure.  So the fact of the

2  matter is there's so many -- listen, your Honor.  Listen.

3  Listen.  I just want you to go back and check on the record.

4          **THE COURT:**  I'm going to look up the law on this, and

5  see if you're right.

6          **MR. BRUGNARA:**  My life -- and I think I've proven

7  it -- is as valuable as anybody's in this room.  Every day of

8  it.  Every minute of it.

9      And you know what, that's all I'm asking, every minute of

10 it -- and your life's important.  Every minute of your life is

11 a blessing, and you deserve to live it to the fullest.  And so

12 do I.  I just want to be treated the same that you would want

13 to be treated.

14     I would want you to treat me the same as I would treat you

15 if I was sitting there judging you.  That is all I'm asking you

16 for.  You know, that's all I'm asking for.  You know, just

17 mutual respect.

18         **THE COURT:**  Okay.  We'll take a break now, and the

19 Government will in due course give me a brief on this 180-day

20 thing.

21         **MS. HARRIS:**  Yes, Your Honor.  And should we proffer

22 the CD that we played for the Court on the juror's behavior so

23 we have it as part of the record?

24         **THE COURT:**  Yes, I want all of that to be part of the

25 record.

PROCEEDINGS

1          **THE CLERK:**  Should all of these things be placed under

2     seal, the audio -- the video of the juror --

3          **THE COURT:**  Yes.

4          (Record completed at 9:55 a.m.)

PROCEEDINGS

1

2

3                                **INDEX**

4                                                    **PAGE**   **VOL**.

**JAKIC, IVAN**
5   (PREVIOUSLY SWORN)                                 3253      16
    Voir Dire Examination by The Court                 3253      16
6   (This portion of the transcript was sealed by the Court
    and placed in a separate transcript)

7

8         (Proceedings concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6    Court, Northern District of California, hereby certify that the

7    foregoing is a correct transcript from the record of

8    proceedings in the above-entitled matter.

9

10   /s/  Belle Ball_____

11             Monday, May 18, 2015

12         Belle Ball, CSR 8785, CRR, RDR

13

14

15

16

17

18

19

20

21

22

23

24

25