Law Offices of GEORGE C. BOISSEAU
State Bar Number 75872
740 4th Street, Second Floor
Santa Rosa, California 95404
Phone: (707) 578-5636
Fax: (707) 578-1141
E-Mail: boisseaugc@msn.com

Law Offices of DENA MARIE YOUNG
State Bar Number 215344
2360 Mendocino Ave., Suite A2, PMB #206
Santa Rosa, California 95403
Phone: (707) 528-9479
Fax: (707) 692-5314
E-Mail: dmyounglaw@gmail.com

Attorneys for Defendant
LUKE D. BRUGNARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUKE D. BRUGNARA,<br><br>Defendant. | CR-14-00306-WHA<br><br>NOTICE OF MOTION AND MOTION FOR NEW TRIAL<br><br>(F.R.Crim.P. 33)<br><br>Date: September 8, 2015<br>Time: 2:00 p.m.<br><br>SPEEDY TRIAL EXCLUSION: Not Applicable |

TO: MELINDA HAAG, United States Attorney, and
ROBIN HARRIS and BENJAMIN KINGSLEY, Assistant United States Attorneys

NOTICE

PLEASE TAKE NOTICE that on the date and time indicated above, or as soon thereafter as counsel may be heard, defendant LUKE D. BRUGNARA (BRUGNARA), by and through his attorneys, George C. Boisseau and Dena Marie Young, will move this Court to enter an order granting a motion for new trial.

MOTION

The defendant, LUKE D. BRUGNARA, by and through his attorneys, George C. Boisseau and Dena Marie Young, and pursuant to the provisions of Rule 33 of the Federal Rules of Criminal Procedure, and the Fifth and Sixth Amendments to the United States Constitution, hereby moves this Court to order a motion for new trial.

This Court should grant a new trial because the failures to allow BRUGNARA the opportunity to explore the value of the de Kooning paintings with government witness Alexander Rotter; to terminate BRUGNARA's right to self-representation when it became apparent that BRUGNARA could not or would not control his behavior; and to grant a mistrial when it became apparent that the jail had made it impossible for BRUGNARA to effectively prepare and present his defense denied him his right to Confrontation and Due Process of Law under the Fifth and Sixth Amendment to the United States Constitution. Further, this Court should grant a mistrial because a sitting juror failed to truthfully answer the court's questions regarding past criminal offenses.

This motion is based upon the instant motion, the files and records in the above entitled case, and any and all matters that may be brought to this court's attention prior to or during the hearing of this motion.

Dated: July 20, 2015

Respectfully submitted,

/s/
GEORGE C. BOISSEAU
DENA MARIE YOUNG

Attorneys for Defendant
LUKE D. BRUGNARA

Law Offices of GEORGE C. BOISSEAU
State Bar Number 75872
740 4th Street, Second Floor
Santa Rosa, California 95404
Phone: (707) 578-5636
Fax: (707) 578-1141
E-Mail: boisseaugc@msn.com

Law Offices of DENA MARIE YOUNG
State Bar Number 215344
2360 Mendocino Ave., Suite A2, PMB #206
Santa Rosa, California 95403
Phone: (707) 528-9479
Fax: (707) 692-5314
E-Mail: dmyounglaw@gmail.com

Attorneys for Defendant
LUKE D. BRUGNARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUKE D. BRUGNARA,<br><br>Defendant. | CR-14-00306-WHA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR NEW TRIAL<br><br>(F.R.Crim.P. 33)<br><br>SPEEDY TRIAL EXCLUSION: Not Applicable |

STATEMENT OF THE CASE

Defendant LUKE D. BRUGNARA (BRUGNARA) is charged in the nine-count Second Superceding Indictment with wire fraud in violation of 18 U.S.C. §1343 (Counts One, Two, Three and Four), mail fraud in violation of 18 U.S.C. §1341 (Count Five), false declarations before a court in violation of 18 U.S.C. §1623 (Counts Six and Seven), escape in violation of 18 U.S.C. §751(a)) (Count Eight), and contempt of court in violation of 18 U.S.C. §401(3)(Count Nine).

Trial commenced on April 27, 2015. On May 19, 2015, the jury returned a verdict of guilty on two counts of wire fraud (Counts Two and Four), one count of mail fraud (Count Five),

one count of making a false declaration (Count Six), escape (Count Eight) and contempt of court (Count Nine). The jury returned not guilty verdicts on two wire fraud counts (Counts One and Three) and one count of making a false declaration (Count Seven).

BRUGNARA represented himself throughout the trial. Present counsel were appointed for post-conviction proceedings on May 19, 2015.

This Court ordered that post-trial motions were to be filed by July 20, 2015.

STATEMENT OF THE FACTS

Sometime in March of 2014, Rose Long (Long) phoned BRUGNARA offering to sell him some of her art works for his museum. (RT 630.) In a series of emails, Long and BRUGNARA discussed his purchase of a number of works including included 16 de Kooning paintings, some Picasso etchings, a portrait by Luks, and a drawing by Miro, and a Valsuani Degas bronze “Little Dancer Aged 14 Years” (RT 632, 635-637.) Although, the discussion was for the sale of Long’s art, the only work owned by Long was the Luks portrait which she had purchased from another dealer, Walter Maibaum (Maibaum), a year before for $350,000.[1] (RT 492, 635-636.) The rest were owned by, or on consignment to, Maibaum (RT 636.)

Long and her unnamed partner (Maibaum) negotiated a discounted price with BRUGNARA and made arrangements to ship the pieces to BRUGNARA’s “museum” - actually his residence- in San Francisco. Long shipped the art works in five crates to San Francisco despite BRUGNARA’s refusal to pay any deposit or shipping costs. (RT 654-55, 658.) She then flew to San Francisco to be there when the art arrived. (RT 694.) She signed for all five crates in BRUGNARA’s garage. (RT 699-700.)

Over the next several days, BRUGNARA through his attorney, Bob Kane, negotiated unsuccessfully with Maibaum’s attorney, Harvey Schochet, for the return of the artworks. (RT 1327, 1332-1413.) At some point during these negotiations, the discussion changed from five crates to four, and the crate containing the Little Dancer bronze went missing. (RT 1400.) The

[1]The authenticity of this painting, which was heavily damaged, is at issue in a pending lawsuit between Maibaum and Long. (RT 494.)

remaining crates were recovered, unopened, by the FBI during a search of BRUGNARA's garage. (RT 1690-1692.)

ARGUMENT

I.

BRUGNARA WAS DENIED A FAIR TRIAL BECAUSE HE WAS DENIED THE OPPORTUNITY ASK A WITNESS, WHO ARGUABLY WAS AN ART EXPERT, QUESTIONS REGARDING THE VALUE OF THE DELIVERED WORKS OF ART, WHICH WOULD HAVE SHOWN THAT THEY WERE EITHER WORTHLESS OR WORTH SUBSTANTIALLY LESS THAN THE $11 MILLION ASKED BY MAIBAUM AND LONG, THEREBY DEPRIVING HIM THE OPPORTUNITY TO SHOW THAT HE WAS DEFRAUDED BY THEM OR THAT LONG's AND MAIBAUM's CREDIBILITY WAS SUSPECT.

A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. F.R.Crim.Pro. 33(a); United States v. Alston, 974 F.2d 1206, 1211 (9th Cir.1991).[2] "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of witnesses." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir.1980); accord United States v. Indelicato, 611 F.2d 376, 387 (1st Cir.1979). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage has occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Lincoln, 630 F.2d at 1319, cited by United States v. Alston, supra, 974 F.2d at 1211.

In this case, BRUGNARA wanted to defend himself on the theory that he was defrauded by Long and Maibaum. The value of the Valsuani cast Degas Little Dancer and the de Kooning paintings were at the heart of the matter. The only evidence on the issue was from very persons who were selling the artwork for $11 million–Long and Maibaum. The government, over defense objection, introduced the evidence of the sculpture's and paintings' value through these two witnesses.

---

[2] Rule 33(a) provides that upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interests of justice so requires.

It was clear, however, that no independent witness verified these appraisals or valuations. The government position was that it did not matter whether the art was worth $11 million or whether BRUGNARA was defrauded as it was not a defense to the charged mail fraud. Primarily relying on United States v. Oren, 893 F.2d 1057, 1061 (9th Cir.1990) and United States v. Treadwell, 593 F.3d 990, 996 (9th Cir.2010), the government posited that all evidence regarding the value or authenticity of the artwork should be excluded.

One witness did testify what it would take to value such artwork. Alexander Rotter (Rotter), the worldwide head of contemporary art at Sotheby's in New York City, testified for the government as to what was necessary to appraise a Willem de Kooning painting. (RT 1074, 1079-1080.) An expert such as him would have to look at the painting's history, literature references, exhibit history and ultimately speak to representatives from the de Kooning Foundation. (RT 1080-1081.)

Although Rotter did not do any appraisal for the government of the 16 de Kooning paintings at issue in this case, BRUGNARA wanted to ask him questions regarding their "provenance" in cross-examination. (RT 1098-1099.) This information was critical to his defense that the de Kooning paintings were neither authentic nor valuable, thus refuting the government evidence from Long and Maibaum that there were both.

In light of the BRUGNARA's failure to have any other witness to support his defense as to being defrauded or to cast doubt on the credibility of Long and Maibaum, the failure to allow BRUGNARA to explore this issue with Rotter denied him a fair trial. At the very least, he should been allowed to ask whether the government had ever asked Rotter to appraise the de Kooning paintings. Such a failure to inquire would have been beneficial to the defense.

This Court had previously denied the government's motion to exclude evidence regarding value or the authenticity of the art at issue. (Final Order re Motions in Limine, Document 224) As this Court correctly pointed out, the government sought to show that the defendant was broke but that fact was only relevant if the art was worth millions and if it were worth only a few hundred dollars, then even a broke defendant could have scrounged around for the money. Further, this Court held that:

> Also, the value goes to the credibility of the government's victim witnesses. If they were trying themselves to defraud the accused in the very same deal, then that conduct would shed light on their credibility.

(Final Order re Motions in Limine, Document 224.)

The final charge to the jury made this exclusion of evidence even more unfair. After setting forth the elements of wire fraud and mail fraud, the court instructed the jury that:

> I will now give you instructions of law that apply to both wire fraud and mail fraud.
>
> It does not matter whether the material mailed or wired was itself false or deceptive so long as the mail or wires were used as part of or used to further a fraudulent scheme, nor does it matter whether the alleged scheme or plan was successful or that any money or property was obtained. It does not matter whether the alleged scheme covered an entire course of dealing or only part of it so long as all four elements are proven. Nor does it matter whether the alleged scheme was directed at a single victim versus multiple victims.
>
> If the Government proves a wire or mail fraud count against the defendant, the fact that some or all of their property was returned to the alleged victims does not undo or erase the crime. In determining whether or not the mail or wire fraud has been proven, of course, you may take into account all reasonable inferences from all the evidence, including the facts and circumstances surrounding the recovery of some or all of the property at issue in this case.
>
> To prove wire or mail fraud, the Government need not prove that a contract was signed or formed. If the Government proves all elements of wire or mail fraud, it need not go further and prove that a contractual relationship existed. Nor is it necessary for the government to prove a breach of any contract. On the other hand, in determining the intent of the defendant and all other elements of the offense, you may take into account as part of the overall evidence in the case, any purchase terms and conditions you find from the evidence, influenced the defendant's intentions.
>
> To prove wire or mail fraud, the Government is not required to prove that the alleged victims relied upon the alleged misleading statements or promises.
>
> **If the Government proves that the defendant committed wire or mail fraud beyond a reasonable doubt, it would not matter whether any alleged victim of the scheme was trying to defraud the defendant, trying to defraud someone else, or was negligent in some manner. The crimes of wire or mail fraud are complete upon the occurrence of all four elements of the crime. If you -- if, however, you find that an alleged victim acted dishonestly or carelessly in any way, then you may consider such conduct in evaluating the credibility of his or her testimony, giving it such weight as you think it deserves, taking into account all the facts and circumstances shown by the evidence.**
>
> One issue for you to decide is intent. In this regard, it is not fraud to make a misstatement based upon an innocent and good-faith mistake. Under the law, however, fraudulent intent is shown if a representation were made knowing it is untrue, or even if it were not known to be false, it was made with reckless

> disregard as to its truth or falsity. It is for you, the jury, to determine whether or not the Government has proven beyond a reasonable doubt that the defendant intended to defraud.

(RT 3114-3117.)(emphasis added). It was therefore critical that BRUGNARA be allowed to show that the artwork was not authentic. Such evidence would have cast doubt on the credibility of Maibaum and Long and the nature of the scheme. Alas, the entire defense was premised on the fact that the artwork was relatively worthless and certainly not the $11 million opined by Maibaum and Long.

This Court did point out to BRUGNARA that he knew he was buying a Valsuani Degas Little Dancer and that Maibaum and Long could charge anything they wanted for it despite the considerable controversy regarding its authenticity and worth. While that may well be true, the value of the de Koonings and other paintings depended upon their authenticity, the very issue BRUGNARA wanted to explore.

At the heart of this case was the value of the artwork Maibaum and Long delivered to BRUGNARA's garage. Stripped of the histrionics, complaints about not being released on bail and conditions of confinement, BRUGNARA at all times complained that the art was worthless. While the government posited that it did not matter whether it was worth $10 or $11 million, logic dictates otherwise.[3]

The failure to allow BRUGNARA to explore the valuation of art issue with Rotter denied him a fair trial. A new trial should be granted.

---

[3] The defense has long argued that United States v. Oren, 893 F.2d 1057, 1061 (9th Cir.1990) does not support the proposition that it is not a defense to mail and wire fraud that the one defrauding is himself or herself being defrauded by the alleged victims. "Fundamental fairness" would seem to at least bring into play the civil concepts of equitable estoppel and unjust enrichment to such a situation. See generally, Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008); Coda v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990). In such a situation, how does the government choose which party to prosecute, bringing into play selective prosecution issues. If indeed it could be established that BRUGNARA was being defrauded because he was being sold worthless art, is the one who is defrauding another of worthless art which is being sold for millions of dollars more culpable than the one who is trying to sell such worthless art in the first place. If the government decides to prosecute one and not the other, should not the jury be able to decide who is more culpable or if anyone broke a law, leaving it to a civil jury to decide damages?

II.

BRUGNARA WAS DENIED A FAIR TRIAL BECAUSE HE WAS DENIED ACCESS TO HIS LEGAL MATERIALS AT A CRITICAL POINT DURING THE TRIAL.

Prisoners are guaranteed under the Sixth Amendment the right to adequate, effective and meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 822 (1983). If the prisoner is a pre-trial detainee, the government has a duty to provide access to a law library, witnesses, and other tools necessary to prepare a defense if the detainee has chosen to represent himself. United States v. Sarno, 73 F.3d 1470, 1491 (9th Cir.1985); Taylor v List, 880 F.2d 1040, 1047 (9th Cir.1989). Denying a pre-trial detainee access to the courts or his legal materials violates his Sixth Amendment right to prepare a defense under Faretta v. California, 422 U.S. 806, 808 (1975). See Milton v. Morris, 767 F.2d 1443, 1445-47 (9th Cir.1985)[4] The court must permit the criminal defendant to have his voice heard. Id. at p. 1446 (citing McKaskle v. Wiggins, 465 U.S. 168 (1984). Importantly, the Sixth Amendment is meant to assure fairness in the adversary criminal process. See generally United States v. Danielson, 325 F.3d 1054, 1066 (9th Cir.2003).

BRUGNARA was denied his Sixth Amendment right to prepare a defense when the deputies at the Glen Dyer Detention Facility removed all his legal materials, including his trial preparation, and put them in plastic bags with the intention of moving them and BRUGNARA out of their facility. This was done mid-trial at a critical junction. Despite BRUGNARA's attempts to recover from this actions, and this Court's concern and attention to the matter to insure that the situation not get worse, it is clear from the state of the record that BRUGNARA

---

[4] The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). When a pre-trial detainee challenges the conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. Bell v. Wolfish, 441 U.S. 520, 536 (1979). "The state does not acquire the power to punish with which the Eight Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent guarantee is the Due Process Clause. See Ingraham v. Wright, 430 U.S. 651, 671 (1977).

was irreparably prejudiced by the jails actions. The jails actions made it impossible to prepare for cross-examination of government witnesses or to prepare his own case and subpoena and prepare defense witnesses. The resulting disorder contributed to BRUGNARA's ineffectiveness and his disruptive behavior.

III.

BRUGNARA'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY THIS COURT'S FAILURE TO TERMINATE HIS RIGHT TO REPRESENT HIMSELF WHEN IT BECAME APPARENT THAT BRUGNARA COULD NOT CONTROL HIS BEHAVIOR.

A criminal defendant's right to represent himself is implied within the Sixth Amendment right to counsel. Faretta v. California, 422 U.S. 806, 819 (1975). An accused has a Sixth Amendment right to conduct his own defense, provided that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol. Id. at 835-836. However, the right to self-representation is not absolute: "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Id. at 835 n. 46.

A defendant's right to be personally present during trial may be forfeited or waived by his disruptive behavior. Illinois v. Allen, 397 U.S. 337, 342-343 (1970); Badger v. Cardwell, 587 F.2d 968, 970 (9th Cir. 1978). "[I]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." Allen, 397 U.S. at 341. Therefore, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id. at 343.

The same rationale extends to the right to self-representation. United States v. Dougherty, 473 F.2d 1113, 1125 n. 20 (D.C. Cir. 1972) - ( under Allen, "obstreperous behavior may constitute waiver of the pro se right"). "[W]hen a defendant's obstreperous behavior is so

disruptive that the trial cannot move forward, it is within the trial judge's discretion to require the defendant to be represented by counsel." United States v. Brock, 159 F.3d 1077, 1079 (1998).

Here, rather than terminate BRUGNARA's right to self-representation, the court exercised its summary contempt power. Summary contempt proceedings are unique to criminal procedure: "the otherwise inconsistent functions of prosecutor, jury, and judge are united in one individual." In re Gustafson, 650 F.2d 1017, 1022 (9th Cir.1981)(en banc). Courts have long noted the manifest potential for abuse. See, e.g., Bloom v. Illinois, 391 U.S. 194, 202 (1968); Ex parte Terry, 128 U.S. 289, 313 (1888). Moreover, summary contempt dispenses with the usual guarantees of notice and hearing. Groppi v. Leslie, 404 U.S. 496, 502 (1972). Therefore, must take special care to ensure that trial judges invoke summary contempt only with careful consideration and good reason. United States v. Flynt, 756 F.2d 1352, 1363 (9th Cir.1985).

The summary contempt power set forth in Rule 42(b) was intended to be reserved "for exceptional circumstances." Harris v. United States, 382 U.S. 162, 164 (1965)(quoting Brown v. United States, 359 U.S. 41, 54 (1959). The rule is to be applied when the contemnor's conduct is "such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures, (is) necessary." Harris v. United States, 382 U.S. at 165 (citation omitted). Rule 42(b) is to be applied only "where instant action is necessary to protect the judicial institution itself." Id. at 167.

Due to the necessity of maintaining an appropriate courtroom atmosphere, trial judges have broad discretion in dealing with disruptive, contumacious, stubbornly defiant defendants. Illinois v. Allen, 397 U.S. 337, 343 (1970). Allen suggested at least three constitutionally permissible ways for a trial judge to handle a difficult defendant: "(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." Ibid.

In this case, BRUGNARA's behavior while acting as his own attorney was often disorderly and disrespectful, to the point where it was difficult to proceed with trial. It appears that he frequently attempted to bypass the Rules of Evidence by making inappropriate comments and speeches in the guise of cross-examination. He engaged in lengthy arguments with

government counsel, the Court, and even the witnesses in front of the jury. He directed inappropriate comments to witnesses, and to individual jurors. He had to be removed from the courtroom or physically escorted to his seat on more than one occasion. BRUGNARA was repeatedly admonished for his behavior. He was cited for summary contempt a total of thirteen times for an aggregated sentence of 471 days. (See Docket Nos. 529, 547, 561, 592, 606, 626.) Nevertheless, BRUGNARA's conduct did not improve. Instead, it appeared to worsen as the trial went on, and the pressure and his frustration increased.

The court had discretion to exercise its contempt power in an effort to control BRUGNARA's behavior and maintain order in the courtroom. However, in some situations the immediate need was not present. Indeed, at times, the court only exercised its contempt power at the end of the day when requested to do so by the prosecutor. Also, since BRUGNARA's behavior continued to deteriorate, despite the contempt citations, the summary contempt was not serving the intended purpose of controlling the courtroom. Under these circumstances, it would have better served both the court's need for order and BRUGNARA's right to a fair trial had the court simply removed BRUGNARA from the courtroom, even if that meant a mistrial, or representation by advisory counsel.

BRUGNARA's conduct as his own attorney should not have come as a surprise to the court. Even when he was represented by counsel, the record reflects that he engaged in numerous outbursts. Even when represented, his behavior was so bad that it prompted the government to file Briefing Regarding Defendant's Outbursts and Presence During Trial in January, 2015, before the February trial setting. (Docket # 305.) It was clear before he was permitted to represent himself, that he was not going to be able to handle the pressure.

The stress of trial, and the added stress of the conditions of his confinement and limited access to his legal materials was too much for him. By the third day (the first day on which he was cited for contempt), BRUGNARA was already losing control of the situation. As the trial went on, it is clear that BRUGNARA was becoming increasingly frustrated with his circumstances. Lack of sleep, moves from one jail to another, and the mixing up of his papers made it impossible to cope. His behavior just got worse, despite the contempt citations.

BRUGNARA's loud, obstreperous, and sometimes frightening, behavior negatively affected the jury's impression of him, and negatively impacted the entire trial. The behavior should not have been allowed to continue. Since contempt was not working, as the court recognized in its own comments, the only reasonable option left to the court was to remove BRUGNARA from the courtroom. In that circumstance, the court could have either continued on with the trial with advisory counsel representing BRUGNARA, or declare a mistrial.

BRUGNARA respectfully requests that this court grant him a new trial at which he does not represent himself, and reverse the contempt orders.

IV.

BRUGNARA WAS DENIED HIS RIGHT TO A FAIR TRIAL BECAUSE A PROSPECTIVE JUROR FAILED TO ANSWER TRUTHFULLY IN RESPONSE TO THE COURT'S VOIR DIRE.

Jury selection took place on April 27, 2015.

Prospective Juror C..D. provided the following information to the court:

> PROSPECTIVE JUROR: My name is C.D. I live in San Bruno. I'm a cashier at a grocery store. I'm divorced. I have a 13-year-old son. I've never been on a jury. And I've never been in law enforcement.
> THE COURT: So, wait. Wait. Are you going to get paid for jury services?
> PROSPECTIVE JUROR: Sorry?
> THE COURT: Are you a member of the union?
> PROSPECTIVE JUROR: Yes, I am.
> THE COURT: All right. So you get paid for jury service, right?
> PROSPECTIVE JUROR: Yes, I do.
> THE COURT: Okay. So you have a 13-year-old?
> PROSPECTIVE JUROR: Yes.
> THE COURT: Who is watching after your 13-year-old during the -- when --
> PROSPECTIVE JUROR: He mostly lives with my ex-husband.
> THE COURT: All right. Okay.
> PROSPECTIVE JUROR: I really don't have any hardships, so I have no problem serving.
> THE COURT: Okay. Very good. Thank you.

(RT 137-138.) C.D. made no other disclosures in response to the court's questions.

The court questioned the panel as follows:

> THE COURT: Have any of you ever – or a member of your family or a close friend, ever been a defendant in a criminal case or accused of criminal conduct? And I want to say that if you feel that the answer is yes and you want to talk about it privately, we will figure out a way to do it more privately with just counsel and the defendant present. But if you're willing to talk about it publicly, that would – but we need to know.

(RT 198-189.) Prospective juror C.D. made no response to that question, and did not request to talk privately.

A background check conducted on C.D. by a private investigator working for the defense reveals the following criminal history in San Mateo County:

1) 6/15/10, plead no contest to violation of Vehicle Code §23103a (reckless driving)

2) 8/11/04, Health and Safety Code §11364 (possession of drug paraphernalia) case dismissed.

3) 7/26/04, Penal Code §242 (battery) sentenced to 10 days.

4) 7/22/04, Penal Code §l66a (contempt in court) 10 days.

5) 6/1/04, Health and Safety Code §1l377a (possession of methamphetamine) no record of disposition

Even a single partial juror violates a defendant's right to a fair trial. United States v. Angulo, 4 F.3d 843, 846 (9th Cir. 1993). It is vitally important that prospective jurors give truthful answers in voir dire, so that any potential bias can be exposed and eliminated through the use of challenges for cause and peremptory challenges. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984); Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998).

The Ninth Circuit "recognizes three forms of juror bias: (1) 'actual bias, which stems from a pre-set disposition not to decide an issue impartially'; (2) 'implied (or presumptive) bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury'; and 3) 'so-called McDonough[5]-style bias, which turns on the truthfulness of a juror's responses on voir dire' where a truthful response 'would have provided a

---

[5] McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, supra (plurality) (holding that to get a new trial based on a juror's responses in voir dire, a party must demonstrate that the juror failed to answer honestly and that a correct response would have provided a basis for a challenge for cause).

valid basis for a challenge for cause.'" United States v. Olsen, 704 F.3d 1172, 1189 (9th Cir. 2013) (citations omitted).

Here, at the very least, it appears that juror C.D. failed to provide truthful answers in response to the court's questions on voir dire regarding her criminal history. Truthful answers would have formed the basis for further inquiry and may have resulted in a challenge for cause. It is also possible, depending on the disposition of the 6/1/04 felony drug arrest, that the prospective juror may not be qualified to serve at all. Because the juror answered only the required introductory questions, it is impossible to know whether she concealed anything else to obtain her seat on the jury.

CONCLUSION

For the foregoing reasons, BRUGNARA respectfully requests that the court grant this motion for new trial.

Dated: July 20, 2015

Respectfully submitted,

/s/
GEORGE C. BOISSEAU
DENA MARIEYOUNG

Attorneys for Defendant
LUKE D. BRUGNARA

CERTIFICATE OF ELECTRONIC FILING

The undersigned hereby certifies that a copy of the foregoing NOTICE OF MOTION AND MOTION FOR NEW TRIAL was served this date to the following parties and attorneys for parties by e-filing and mailing a copy to:

Benjamin Kingsley
Robin Harris
Assistant U.S. Attorneys
United States Attorney's Office
Northern District of California
11th Floor Federal Building
450 Golden Gate Avenue
San Francisco, California 94102
Fax: (415) 436-7234

I caused the following additional parties to be personally served by mailing a copy to:

Not Applicable

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of July, 2015, in Santa Rosa, California.

/s/

GEORGE C. BOISSEAU