Law Offices of GEORGE C. BOISSEAU
State Bar Number 75872
740 4th Street, Second Floor
Santa Rosa, California 95404
Phone:  (707) 578-5636
Fax: (707) 578-1141
E-Mail: boisseaugc@msn.com

Law Offices of  DENA MARIE YOUNG
State Bar Number 215344
2360 Mendocino Ave., Suite A2, PMB #206
Santa Rosa, California 95403
Phone:  (707) 528-9479
Fax: (707) 692-5314
E-Mail: dmyounglaw@gmail.com

Attorneys for Defendant
LUKE D. BRUGNARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | CR-14-00306-WHA |
|---|---|---|
| Plaintiff, | ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR COMPETENCY HEARING |
| v. | ) | |
| LUKE D. BRUGNARA, | ) | |
| Defendant. | ) | |
| | | SPEEDY TRIAL EXCLUSION: Not Applicable |

INTRODUCTION

BRUGNARA has continued to be disorderly at his sentencing hearing.  He has insisted on commenting on issues which are being handled by his counsel to the point that he and his counsel seem to be working at cross-purposes.  It is clear that he cannot control his behavior, not just that he will not.  None of this behavior is helpful for sentencing.

The undersigned counsel have a doubt whether BRUGNARA is mentally competent for sentencing.  While he may understand the nature of the proceedings, he cannot cooperate or assist his counsel in the most critical of proceedings.  His behavior is consistent with the submitted psychological evaluation by the defense psychologist, Dr. John Shields.  Dr. Shields believes that

1

BRUGNARA suffers from bi-polar, narcissistic personality and delusional disorders and that his courtroom behavior is consistent with the actions of a person suffering from such disorders.

BRUGNARA's behavior while acting as his own attorney was often disorderly and disrespectful, to the point where it was difficult to proceed with trial.  It appears that he frequently attempted to bypass the Rules of Evidence by making inappropriate comments and speeches in the guise of cross-examination.  He engaged in lengthy arguments with government counsel, the Court, and even the witnesses in front of the jury.  He directed inappropriate comments to witnesses, and to individual jurors.  He had to be removed from the courtroom or physically escorted to his seat on more than one occasion.  BRUGNARA was repeatedly admonished for his behavior.  He was cited for summary contempt a total of thirteen times for an aggregated sentence of 471 days.  (See Docket Nos.  529, 547, 561, 592, 606, 626.)   Nevertheless, BRUGNARA's conduct did not improve.  Instead, it appeared to worsen as the trial went on, and the pressure and his frustration  increased.

BRUGNARA's behavior may or may not be worse than it was during trial but nevertheless he is now represented by counsel who has spent a considerable amount of time with BRUGNARA in jail visits and has had to try to work with him, finding this impossible because BRUGNARA has difficulty focusing on real issues and is unable to deal with any issues which are closely linked to his self-image.  While some visits end relatively cordially, others do not.  The undersigned counsel believe that BRUGNARA's behavior is fueled by his delusional disorder.

## ARGUMENT

COUNSEL FOR BRUGNARA DECLARE A DOUBT AS TO BRUGNARA's PRESENT MENTAL COMPETENCY AND REQUEST THAT HE BE EVALUATED TO DETERMINE HIS COMPETENCY TO GO FORWARD WITH SENTENCING.

The Constitution provides criminal defendants with the right to be competent during trial. *Indiana v. Edwards,* 554 U.S.164, 170, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)(citing *Dusky v. United States,* 362 U.S. 402, 80 S. Ct.788, 4 L. Ed. 2d 824 (1960) (*per curiam*), and *Drope v. Missouri,* 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103(1975)).  At all times before his conviction, a defendant must have "a rational as well as factual understanding of the proceedings

against him" and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Id*. (internal quotation marks and emphasis omitted). If a defendant fails to satisfy either of those requirements, then the proceedings against him may go no further. *Id*. And the competency right does not end at a conviction. In addition, a defendant must have the "'capacity to appreciate his position and make a rational choice'"whether to challenge his conviction or sentence on appeal or in post-conviction proceedings. *Miller ex rel. Jones v. Stewart,* 231 F.3d 1248, 1250 (9th Cir. 2000) (quoting *Rees v. Peyton,* 384 U.S. 312, 313, 86 S. Ct. 1505, 16 L.Ed. 2d 583 (1966) (*per curiam*)).

      Congress has set out specific procedures for determining a criminal defendant's mental competence. *18 U.S.C. § 4241* (governing motions for competency hearings made "[a]t any time after the commencement of a prosecution . . . and prior to the sentencing of the defendant"). The statute compels the district court to hold a competency hearing, either on defense counsel's motion or on its own motion, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id*. The "reasonable cause" standard set out in *§ 4241(a)* tracks the standard for deciding the need for a competency hearing that the Ninth Circuit has used in its cases. See *de Kaplany v. Enomoto,* 540 F.2d 975, 981 (9th Cir. 1976) (*en banc*)(holding that, at any time "there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competence, the trial court "*sua sponte* must order an evidentiary hearing on the competency issue"); *Moore v. United States,* 464 F.2d 663, 666 (9th Cir. 1972) (*per curiam*). As the court explained in *Moore,*"[e]vidence is 'substantial' if it raises a reasonable doubt about the defendant's competenc[e] to stand trial." *Id*.

      "A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial." *Maxwell v. Roe*, 606 F.3d 561 (9th Cir. 2010). The test is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960); see also *18*

3

1  *U.S.C § 4241(1)* - [a defendant cannot stand trial if there is reasonable cause to believe that he
2  may presently be suffering from a mental disease or defect rendering him mentally incompetent to
3  the extent that he is unable to understand the nature and consequences of the proceedings against
4  him or to assist properly in his defense].  Once competency is raised, the government bears the
5  burden to establish that the defendant is competent "by a preponderance of the evidence." *18*
6  *U.S.C. § 4241(d)*.   When the trial court fails to observe procedures adequate to protect a
7  defendant's right not to be tried or convicted while incompetent, the defendant is deprived of his
8  due process right to a fair trial.  *Pate v. Robinson*, 383 U.S. 375, 386  (1966).  It makes no sense to
9  argue that a defendant who might be incompetent can knowingly and intelligently waive the right
10 to have the court determine his competency to stand trial.  *Id.,* at 384.  Due to the difficulties
11 inherent in trying to determine after the fact whether the defendant was competent at the time of
12 trial, such a *post-hoc* determination is not an adequate remedy.  *Drope v. Missouri*, *supra*, 420
13 U.S. at 183.
14          "Even when a defendant is competent at the commencement of his trial, a trial court must
15 always be alert to circumstances suggesting a change that would render the accused unable to
16 meet the standards of competence to stand trial." *Drope v. Missouri*, *supra*, 420 U.S. at 181.  Due
17 process requires a trial court to hold a competency hearing *sua sponte* whenever the evidence
18 before it raises a reasonable doubt whether the defendant is competent.  *Pate v. Robinson*, *supra*,
19 383 U.S. at 385.   In *Illinois v. Allen*, the Court held:

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.  Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

24 397 U.S. 337, 343 (1970).   Thus, the failure to recognize and to treat a mentally ill defendant may
25 lead to his being unfairly excluded from participation in his court proceedings physically as well
26 as mentally.
27
28          In *Maxwell v. Roe*, *supra*, 606 F.3d at 565, Maxwell was examined by five psychiatrists,

4

1    four of whom opined that he was faking or embellishing a psychosis, and that he was competent
2    to stand trial.  The fifth found him incompetent.  *Ibid.*  Based on these reports and opinions, the
3    court found Maxwell competent and reinstated criminal proceedings.  *Ibid.*  At trial, eleven
4    months later, Maxwell behaved in an erratic, irrational and disruptive manner in and out of the
5    courtroom.  *Ibid.*  Maxwell posed a danger to the court staff and to defense counsel and had to be
6    removed.  *Ibid.*   Maxwell's attorney repeatedly advised the court that his condition was getting
7    worse, and that communication between him and Maxwell was becoming increasingly strained.
8    *Ibid.*  The court reviewed the earlier psychiatric reports and concluded that Maxwell was faking
9    his mental illness.  *Ibid.*  Maxwell attempted suicide about halfway through the trial.  *Ibid.*  The
10   trial continued in his absence despite an involuntary fourteen-day psychiatric hold.  *Id.,* at 566.
11   The reviewing court found that "Maxwell's uncontrolled and disruptive behavior in the courtroom
12   and signs of irrationality an paranoia when it came to his own defense should have raised a doubt
13   as to his competency."  *Id.*, at 569.

14            Whether or not a hearing is required depends heavily on the facts of an individual case.
15   *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983).   Relevant factors include, but are
16   not limited to, the defendant's medical history, the opinions of psychiatric experts, and the
17   defendant's own behavior at trial.  *Ibid.*  The length of time elapsed between a competency
18   determination and the trial may also be relevant*.  Battle v. United States*, 419 F.3d 1292, 1296-
19   1297 (11th Cir. 2005).   Courtroom demeanor indicating alertness and understanding, could not be
20   solely relied upon to establish competency.  *Pate v. Robinson*, *supra*, 383 U.S. at 386-386.  In
21   *Robinson*, a competency hearing was required where there was testimony from four witnesses that
22   Robinson had a long history of disturbed and violent behavior.  383 U.S. at 378.

23            In  *Moore v. United States*, *supra*, 464 F.2d at 665, a psychiatrist's report indicated that
24   Moore was competent to stand trial.  Nevertheless, the report contained information regarding a
25   history of mental illness which was markedly inconsistent with the doctor's conclusions, and with
26   other available records.  *Id.*, at 665-666.  This variance "constituted substantial evidence casting a
27   reasonable doubt upon Moore's competency to stand trial as a matter of law."  *Id.*, at 666.

28            Although the level of competency mandated by Due Process does not vary based on the

specific stage of the criminal proceedings (*Godinez v. Moran*, 509 U.S. 389, 400 (1993)), the defendant's ability to participate or assist his counsel must be evaluated in light of the type of participation required. *United States v. Dreyer*, 705 F.3d 951, 961 (9th Cir.2013); see also *United States v. Ahrendt*, 560 F.3d 69, 74 (1st Cir.2009). As *Dreyer* explained, sentencing is a critical stage of the proceedings. *Dreyer*, *supra*, 705 F.3d at p. 961; see also, *Boardman v. Estelle*, 957 F.2d 1523, 1525 (9th Cir.1992)(citing *Mempa v. Rhay*, 389 U.S. 128 (1967)). The defendant's right to allocution, "is an essential element of a criminal defense." *Boardman v. Estelle, supra, 957 F.2d. at 1526*. Competence at sentencing therefore requires, among other things, that the defendant be able to assist in his own defense by participating in his "elementary right"of allocution. *Id.* at *1527* (quoting *United States v. Behrens,* 375 U.S. 162, 84 S. Ct. 295, 11 L. Ed. 2d 224 (1963)). Although a defendant is not compelled to speak on his own behalf at sentencing, courts have long recognized the importance of affording him such an opportunity. The creation of various procedural protections has not "lessen[ed] the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L. Ed. 2d 670 (1961). At sentencing, "the test [of competency] is whether the defendant is able to understand the nature of the proceedings and participate intelligently to the extent participation is called  for." *Chavez v. United States,* 656 F.2d 512, 518 (9th Cir. 1981). The ability to allocute, in short, is an essential element of this participation.

In *Dreyer*, the Ninth Circuit reversed where there was substantial evidence of the defendant's competence at sentencing. At sentencing, Dreyer refrained from allocuting. While the defendant has the right to make this choice, defense counsel explained the reason underlying Dreyer's silence: his disease prevented him from coherently speaking on his own behalf. Counsel expressed concern that Dreyer might contradict himself by accepting responsibility and then refusing to do so, or would speak to the court inappropriately. He also explicitly informed the court that Dreyer had difficulty perceiving the truth as a result of his dementia and was only "partially with us." The decision not to allocute was therefore obviously viewed by the

defense as necessitated by Dreyer's medical condition. The court pointed out that although it is true that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense," (*Medina v. California,* 505 U.S. 437, 450 (1992)), the district court need not have relied merely on the defense counsel's statements to determine whether Dreyer's competence was in question. Counsel's assessment of Dreyer was supported by all three medical evaluations presented to the court. Although the medical experts described Dreyer as generally cooperative and articulate, they also found his behavior to be inappropriate, his personality emotionally-blunted, and his speech laced with sexual references and profanity. He was prone to lies and exaggerations due to his faulty judgment, insight and recall. Despite Dreyer's apparent proclivity for falsehood, the experts observed that these statements were not made in a deliberate attempt to misrepresent the truth. Dreyer lacked an awareness of social norms of comportment and exhibited poor social judgment and a penchant for engaging in provocative and antagonistic behavior had already resulted in his receiving a severe beating during his brief prison stay. The experts explicitly recognized that Dreyer had a "profound lack of social propriety," and an inability to "filter himself effectively." They additionally noted that he was prone to making inflammatory religious and racial statements that conflicted with his long-held beliefs, and that, if incarcerated, he would need protective custody "essentially to protect him from himself." As a result of his frontotemporal dementia, Dreyer was not only incapable of making a reasoned plea for leniency, but was unable to even refrain from making comments that were contrary to his own beliefs and that placed him in physical danger. The uncontradicted medical evidence before the district court supported counsel's representation that Dreyer's failure to allocute was compelled by his ailment and his resultant inability to regulate his speech or behavior in a manner that could assist in his defense. Given the consistency between counsel's statements and the supporting expert reports, the district court had substantial evidence before it that should have created a reasonable doubt in its mind as to Dreyer's ability to assist in his own defense, and thus as to his competency.

When the Ninth Circuit has considered a record containing expert diagnoses of a medical disorder bearing on the defendant's mental state, it has found this evidence sufficient to cause

...

genuine doubt as to the defendant's competency. See, *e.g., Deere v. Woodford,* 339 F.3d 1084, 1086-87 (9th Cir. 2003); *Odle v. Woodford,* 238 F.3d 1084, 1088-89 (9th Cir. 2001); *Morris v. United States,* 414 F.2d 258 (9th Cir. 1969) (*per curiam*); *United States v. Garza*, 75 F.3d 1130, 1134 (9th Cir.2014). Even in the absence of expert evidence, the Ninth Circuit has found cause to grant a motion for a competency hearing when defense counsel reported an attempted suicide by the defendant the night before trial. *United States v. Loyola-Dominguez,* 125 F.3d 1315 (9th Cir. 1997). The reviewing courts have generally found that when such evidence is presented the district courts are obligated to determine only whether doubt has been created, not whether the defendant is competent or incompetent. In such cases that question can ordinarily be resolved only after an evidentiary hearing.

There are various factors the district court should examine. The first factor, questions the strength of the evidence of a serious mental disease or defect. The Ninth Circuit has deemed it sufficient in either of two situations: first, where it is undisputed that the defendant has a serious mental disease or defect. See *Torres v. Prunty,* 223 F.3d 1103, 1109-10 (9th Cir. 2000); *Miles v. Stainer,* 108 F.3d 1109, 1112-13 (9th Cir. 1997); *Moore v. United States,* 464 F.2d 663, 665-67 (9th Cir. 1972); and second, where the existence of a mental disease or defect is disputed, but the defendant engages in bizarre or erratic behavior, especially in court. See *Maxwell v. Roe,* 606 F.3d 561, 574-76 (9th Cir. 2010); *McMurtrey v. Ryan,* 539 F.3d 1112, 1125-27 (9th Cir. 2008); *Chavez v. United States,* 656 F.2d 512, 519 (9th Cir. 1981); *Tillery v. Eyman,* 492 F.2d 1056, 1059 (9th Cir. 1974). The second factor is a clear connection between the defendant's serious mental disease or defect--established via the first factor--and some failure by the defendant to understand the proceedings or assist in his own defense. Where the defendant's mental problem--even if severe--has no discernible impact on the proceedings, the courts have have not found substantial evidence. See *Davis v. Woodford,* 384 F.3d 628, 645-46 (9th Cir. 2003); *Boag v. Raines,* 769 F.2d 1341, 1343-44 (9th Cir, 1984); *Steinsvik v. Vinzant,* 640 F.2d 949, 952-54 (9th Cir. 1981); *Bassett v. McCarthy,* 549 F.2d 616, 620-21 (9th Cir. 1977). Even a mentally deranged defendant is out of luck if there is no indication that he failed to understand or assist in his criminal proceedings. See, *e.g., Steinsvik,* 640 F.2d at 951-54. And even if that same

defendant did fail to understand or assist in his proceedings, he would still be out of luck unless his mental impairment caused the failure. See*, e.g., Amaya-Ruiz v. Stewart,* 121 F.3d 486, 492-93 (9th Cir. 1997). There thus must be a connection between the mental disorder and the failure to work with counsel. A defendant who refuses to work with his lawyer out of spite alone is not incompetent even if that defendant has a serious mental disease or defect. See*, e.g., Davis, supra,* 384 F.3d at 645-46.

A finding of substantial evidence has consistently turned on these two key factors. In *Dreyer, supra*, 705 F.3d at 958-59, all the medical experts diagnosed the defendant with frontotemporal dementia. *Id.* Because the dementia was the stated reason why the defendant chose not to allocute at sentencing, the court found substantial evidence that a reasonable judge would harbor a genuine doubt about his competency. *Id*. Both factors were present. There was no dispute that Dreyer suffered from a serious mental disease or defect and it was that disease or defect that prevented him from assisting in his defense by preventing him from allocuting. Similarly, in *Rhay v. White,* 385 F.2d 883, 884 (9th Cir. 1967), it was undisputed that the defendant had a "history of chronic mental disturbances, paranoid traits, violent behavioral explosions and previous institutional diagnoses, from the time he was a boy to his commission at age 22 of the murders." Equally clear was that his inability to control himself hindered his defense, as defense counsel had to ask for recesses throughout the trial to allow his client time to cool down. *Ibid.*

The courts have identified three factors to be considered in determining whether information that a court has establishes a "bona fide doubt regarding the defendant's competence": "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial." *Tiller v. Esposito,* 911 F.2d 575, 576 (11th Cir. 1990). And the courts have found that the "bona fide doubt" standard satisfies *Section 4241(a)*'s "reasonable cause" requirement. *United States v. Nickels,* 324 F.3d 1250,1251-52 (11th Cir. 2003) (*per curiam*). In explaining the "bona fide doubt" inquiry, the Supreme Court has emphasized that a court must consider the aggregate of evidence pertaining to all three prongs and not evaluate each prong in a vacuum. *Drope,* 420 U.S. at 180. Nevertheless,

because "[t]here are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," evidence under a single prong of the test--even standing alone--"may, in some circumstances, be sufficient" to establish a bona fide doubt about a defendant's competence.  *Id.*; see also *United States v. Duncan,* 643 F.3d 1242, 1249 (9th Cir.2011)(defendant suffered from delusions that impaired his judgment and rendered him unable to understand the proceedings or waive his right to counsel intelligently); *United States v. Wingo*, 789 F.3d 1226, 1236 (1st Cir.2015).

BRUGNARA has received a copy of the Pre-Sentence Report but his fixed delusions make meaningful discussion of some of the issues impossible.  Nor can BRUGNARA meaningfully participate in developing any factual argument which would address the sentencing factors under 18 U.S.C. §3553(a).

The court had ample opportunity to observe BRUGNARA's courtroom behavior, hear his delusional comments, and to see first hand the connection between his mental disorders and his behavior.  This Court's comments that BRUGNARA is a pathological liar and bully may be consistent with the court's experience with him but may also be a product of BRUGNARA's mental illness.  Dr. Shields' forensic evaluation of BRUGNARA points to the connection between BRUGNARA's behavior and his mental illness.  During the sentencing proceeding, as throughout the trial, BRUGNARA's outbursts are triggered by anything which is inconsistent with his delusional and grandiose image of himself as a non-violent, upstanding family man, and a successful business man, who has ample money, pays all his bills, never lies, and would not steal.  They are also triggered by any assertion of value for the Little Dancer other than the zero-value at which BRUGNARA (falsely) believes Christie's and Sotheby's have appraised it.  It is impossible to have a rational discussion with him in any of these areas.

BRUGNARA has a documented history of mental illness.  He had previously been diagnosed as suffering from bipolar disorder.  Now, post-testing, it appears that he actually suffers from bi-polar, delusional and narcissistic mental disorders.  "'[S]ufficient doubt ' may be predicated on any relevant evidence, including evidence of a defendant's irrational behavior, his demeanor at trial, or medical opinion, either taken alone or considered together." *Drope v.*

*Missouri, supra*, at 180.  The symptoms and severity of mental illness can change over time.  Thus, it is an abuse of discretion for the trial court to refuse to consider new information as it arises.  *United States v. Ives, supra*, 574 F.2d at 1006-1007.  See also *Maxwell v. Roe*, 606 F.3d 56, 569 (9th Cir. 2010) (where the defendant was found competent in the face of conflicting expert opinions, his irrational and disruptive behavior in the courtroom raised a doubt as to his competency).

      As further evidence of his inability to rationally assist in his own defense, BRUGNARA, consistent with his diagnosed mental illnesses, disagrees with the findings of Dr. Shields, and with any suggestion that he might be mentally ill.   Therefore, counsels' request that his competency be assessed is inconsistent with his wishes.  However, counsel have an ethical duty, acting in BRUGNARA's best interests, to assure that he is competent to participate in the sentencing process.  See *Mason ex rel. Marson v. Vasquez*, 5 F.3d 1220, 1221 (9th Cir. 1993); *Lenhard v, Wolff*, 603 F.2d 91, 92-93 (9th Cir. 1979.)

## CONCLUSION

      For the foregoing reasons, BRUGNARA respectfully requests that this Court order a competency evaluation and conduct a hearing to determine whether BRUGNARA is presently competent to proceed to sentencing.

Dated: October 11, 2015

Respectfully submitted,

/s/
GEORGE C. BOISSEAU
DENA MARIE YOUNG

Attorneys for Defendant
LUKE D. BRUGNARA

## CERTIFICATE OF ELECTRONIC FILING

The undersigned hereby certifies that a copy of the foregoing <u>MEMORANDUM IN SUPPORT OF REQUEST FOR COMPETENCY HEARING</u> was served this date to the following parties and attorneys for parties by e-filing and mailing a copy to:

Benjamin Kingsley
Robin Harris
Assistant U.S. Attorneys
United States Attorney's Office
Northern District of California
11th Floor Federal Building
450 Golden Gate Avenue
San Francisco, California 94102
Fax: (415) 436-7234

I caused the following additional parties to be personally served by mailing a copy to:

Not Applicable

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of October, 2015, in Santa Rosa, California.

/s/

GEORGE C. BOISSEAU