BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROBIN L. HARRIS (CABN 123364)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 14-0306 WHA |
| Plaintiff, | |
| v. | UNITED STATES' RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING |
| LUKE D. BRUGNARA, | Hearing Date: October 14, 2015 |
| Defendant. | Court: Hon. William Alsup |

# INTRODUCTION

On Thursday, October 7, defense counsel asserted that he believes defendant may be incompetent. This assertion took place after the end of a hearing that had been scheduled for resolution of posttrial motions and sentencing, after defense counsel had represented defendant for over four months, meeting with him repeatedly, filing many motions, and making many arguments on his behalf. It was made after what may have been defendant's most well-behaved court appearance in this case, where he sat without speaking for hours as the parties argued various motions and objections to the PSR.

Defense counsel now reasserts that defendant may be incompetent and requests a psychiatric evaluation of competency pursuant to 18 U.S.C. § 4241(a). Dkt. 765. Defense counsel supports this motion with a declaration of Dr. John Shields, who, without issuing an opinion regarding competency and while acknowledging that defendant understands the proceedings, expresses concerns about defendant's ability to assist counsel in what remains of his defense. Dkt. 765-2 at 5.

There is overwhelming evidence of defendant's competency. Defense counsel's last-second motion and Dr. Shields' declaration offer no new information about defendant's mental state. Nor do they offer an explanation of what has changed since this Court found defendant competent to stand trial and represent himself or since defense counsel represented defendant, with defendant's aid, throughout the sentencing process over the last several months. As a result, the motion does not establish "reasonable cause" for a competency evaluation, and should be denied.

# ARGUMENT

## A.   Legal Background

Under 18 U.S.C. § 4241, either party "may file a motion for a hearing to determine the mental competency of the defendant." 18 U.S.C. § 4241(a). "The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.*

Unlike its predecessor statute, § 4241(a) does not mandate a psychiatric evaluation simply because a party has moved for one. *United States v. George*, 85 F.3d 1433, 1437 (9th Cir. 1996). The

district court has discretion to grant or deny a motion for an evaluation or competency hearing, and the Ninth Circuit reviews such determinations for abuse of discretion. *Id.*

In exercising its discretion to determine whether to order a competency evaluation, courts look to the Due Process Clause standard for competency. *United States v. Duncan*, 643 F.3d 1242, 1249 n.2 (9th Cir. 2011); *see also United States v. Dreyer*, 705 F.3d 951, 961 (9th Cir. 2013) (en banc). Under this standard, the Court must order an evaluation only if "there is substantial evidence that, due to a mental disease or defect, the defendant is either 'unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Dreyer*, 705 F.3d at 961 (quoting statute). "Although the level of competency mandated by due process does not vary based on the specific stage of the criminal proceeding, the defendant's ability to participate or assist his counsel must be evaluated in light of the type of participation required." *Id.* at 962.

To be competent, defendant is not required to work well with counsel, agree with counsel, or share counsel's view of the facts of a case. Instead, all that is required for competence is "a rational as well as factual understanding of the proceedings against him" and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Duncan*, 643 F.3d at 1248 (quotations omitted); *see also Indiana v. Edwards*, 554 U.S. 164, 170 (2008).

**B.     There Is Not Substantial Evidence of Defendant's Incompetence**

Dr. Shields concedes that defendant is able to understand the nature of the proceedings against him. Dkt. 765-2 at 10. He rests his concerns instead on his belief that defendant *may* not be able to rationally assist his legal counsel. *Id.* Dr. Shields and defense counsel identify three different forms of evidence of defendant's possible inability to assist his defense: (1) his inability to comply with the rules of Court as evidenced by his contempt citations, (2) his outbursts and inability to comport himself in Court, and (3) his many repeated lies, as evidence of possible delusional or irrational thinking. Despite meeting extensively with defendant, Dr. Shields offers no actual opinion that defendant is incompetent.

This Court has already held that the first two categories of misbehavior are not evidence of incompetence, and, with respect to the third category, defendant's lies are plainly not irrational delusions but calculated efforts to get what he wants. Defense counsel and Dr. Shields merely repackage facts already known to this Court, and which this Court has already correctly ruled are not evidence of

incompetence.

Defendant has competently assisted counsel in his representation for many years. All that remains in this case is sentencing. Neither Dr. Shields nor defense counsel offer any explanation as to how defendant's competency, demonstrated for the last seven years in these cases, has degraded just recently the point that he cannot assist counsel for one final sentencing hearing and his allocution.

### 1. The Court's Prior Findings of Competence and Rationality

As an initial matter, this Court has already determined that defendant was competent, in allowing him to waive his right to counsel at the *Faretta* hearing in March 2015. The Court's recent order denying posttrial motions recounts the reasons that defendant was competent before and during the trial. Dkt. 763 at 6–7, 28–30. Nothing has changed since that order. As the Court noted in that order, defendant exhibited competence throughout the proceedings, including specifically when he was pro se, when he "filed several motions *in limine*, requested subpoenas be served, opposed the government's motions *in limine*, and competently argued several issues at the pre-trial conference." *Id.* at 7.

As this Court suggested, defendant's rational conduct as a pro se defendant is strong evidence of his competency. *See United States v. George*, 85 F.3d 1433, 1438 (9th Cir. 1996) (holding that pro se defendant's "myriad motions and oral presentations before the court indicated that [he] was quite competent"). Defendant's filings consistently and rationally recognized weaknesses in his own case. For example, defendant persistently tried to exclude pieces of evidence that he knew were particularly damaging to him, including the Hermitage Book and the email from Bob Kane regarding the book, and his financial statements made to Probation. Defendant persistently tried to admit evidence of prior wrongdoing by Rose Long and Walter Maibaum, to lead the jury to believe that they had attempted to defraud him. He tried again and again to bring in witnesses to testify regarding the value of the artwork, such as the Sotheby's intern who had sent an email to Erik Babcock regarding the Degas. His witness examinations, though almost always objectionable, were typically rational attempts to impeach the government's witnesses and bring out facts that defendant rationally believed would help him.

This Court's order also explicitly rejected two of the claimed categories of evidence of defendant's incompetency. First, with respect to defendant's failure to follow the rules at trial, this Court has already found that, "his misbehavior was part of a considered strategy to bull his way through

difficult situations." Dkt. 763 at 29.  As this Court noted, defendant explained this strategy to his mother on a jail call before the trial, stating:

> I'm going to bring up everything in court.  I'm going to bring up everything.  And they may say, oh you can't hear that.  But once it comes out of my mouth, it's already out of my mouth and the jury hears it.  That's the other reason they don't want me to go pro se.  I'm going to say everything I need to say, believe me.

Dkt. 763 at 2 (quoting Dkt. 489).  "This constituted a calculated, thought-out, consistently executed ploy, not a series of random acts caused by any incapacitating mental disease." *Id.*

Second, with respect to defendant's "hostile and disrespectful outbursts," this Court has already found that "these resulted from his attack-dog personality, meaning his modus operandi is to attack everyone who argues or rules against him with character assassinations." *Id.*  As this Court explained, these outbursts "do not show mental incompetence," but instead reveal defendant's "true personality, one that rarely accepts responsibility, has no empathy for others, almost always viciously blames someone else, and tries to find a misstep in their past and repackage it as a monumental dishonesty—all the while lying himself." *Id.*  Whether defendant is disruptive in Court or with defense counsel, it is not evidence of incompetence but of his "true personality." *See Davis v. Woodford*, 384 F.3d 628, 645–46 (9th Cir. 2004) (denying habeas claim that defendant was entitled to competency hearing when defendant "was recalcitrant and acted in ways that were detrimental to his case," refused to wear civilian clothes, and refused to sit at counsel table).

Nothing has changed about defendant's conduct—nor has the defense presented any contradictory evidence—since the Court reached these conclusions on Friday.

    2.  *Defendant's Lies Do Not Evidence Irrationality*

With respect to defendant's lies and exaggerations, as this Court stated on the record on Thursday, defendant is a "pathological liar."  Dr. Shields suggests that his lies may be the result of delusion and detachment from reality.  Dkt. 765-2 at 12.  Whatever causes defendant's lies, they are intentional, rational, self-serving attempts to get what he wants, as his bullying, outbursts, and cheating at trial were.  In countless instances, defendant crafted lies to try to get something he wanted.  In many other instances, he changed his story during the course of a hearing or the case, assimilating different pieces of evidence into his falsehood to make it appear more plausible.  They are not evidence of an

incompetent inability to assist counsel but of a lack of empathy and narcissism.

First, defendant's lies are rational, self-serving attempts to get what he wants. Defendant does not typically lie about bizarre things that do not matter. Instead, he lies about important issues that affect him. This Court's order recounts various lies that were designed by defendant to serve a specific purpose, such as getting the artwork in this case or getting out of custody. *See id.* at 13 (lies or exaggerations regarding halfway house and attorney access); *id.* at 16 (exaggerations regarding attorney access at Glenn Dyer and mistreatment by Deputy Alex Farber); *id.* at 19 (lies regarding the art transaction). Defendant's lies during the June 2014 Form 12 hearing regarding the phone call from Sotheby's and the financing of the museum by Nick Barbato were designed to portray his conduct as innocent and to get him out of custody. Even defendant's lies about his own status as a wealthy, powerful man were often told to demonstrate that he could have paid for the artwork delivered to his garage or so he could post property to get out on bail. The idea, suggested by defense counsel and Dr. Shields, that defendant truly has a consistent delusion of himself as a wealthy man is undercut by his financial submissions to Probation, where he described himself as a broken man so as to avoid having to pay restitution. These were not simply random, irrational delusions; they were intelligently created falsehoods. The record is full of such examples.

Second, defendant has frequently changed his falsehoods to assimilate new information and to sound more plausible. This strongly evidences competence. For example, defendant's story about the missing fifth crate changed during the course of the case—initially, defendant said that he did not receive a fifth crate or it was a small, cardboard box. By defendant's closing argument, the story had changed, assimilating the overwhelming evidence at trial that Eddy Castillo delivered five crates of art to his garage: the fifth crate now probably had been delivered to defendant but then was stolen by someone who thought that it was a toilet or a vanity. As another example, during the evidentiary hearing on the halfway house, defendant initially told Attorney Babcock that one halfway house employee had authorized his phone calls; when that employee stated otherwise, defendant changed his story to blame another and stated that the two "were always standing concurrent." Dkt. 142 at 106–07.

Third, defendant is at times careful about his lies, and is reluctant to tell lies that he knows the government will easily be able to disprove. The Barbato and Sotheby's lies are examples—he first

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306 WHA                           5

1  refused to name Nick Barbato specifically as the financier of the museum, and he persistently refused to
2  name the person who called him back from Sotheby's.  At trial, he repeated disprovable lies when acting
3  as his own attorney, but rationally chose not to testify, likely fearing cross-examination on the many lies
4  that he had told.

5  Dr. Shields and Attorney Boisseau offer only a few examples of lies by defendant that support
6  their concerns about defendant's incompetence.  None of these even remotely evidences incompetence.

7  For example, Dr. Shields notes that defendant, "despite his having been convicted by a jury,
8  insists on his innocence."  Dkt. 765-2 at 12.  Attorney Boisseau states that defendant "believes that he
9  has served his time and that he will be released as soon as he is sentenced."  Dkt. 765-1 at 3.  A
10 defendant who refuses—even under the veil of the attorney-client privilege—to accept responsibility for
11 his actions is not incompetent.  Many defendants go through sentencing and far beyond persistently
12 claiming their innocence to whoever is there to hear it.

13 Defendant tells lies again and again, in varying forms and with modified specifics, to try to get
14 his way, because "persistence wears down resistance."  Dkt. 763 at 30.  His insistence on his innocence
15 is but the strongest example of this.  As this Court has held, defendant's "repetition of arguments
16 rejected over and over," is intentional, rational conduct on the part of defendant to get his way.  *Id.* at 30.
17 Defendant's failure to admit that he stole the "Little Dancer" or that the "Little Dancer" is worth
18 something—to Dr. Shields, his attorneys, or this Court—is not proof that he is incompetent.  *See United*
19 *States v. Mendez-Sanchez*, 563 F.3d 935, 939–40 (9th Cir. 2009) (finding no plain error in a court's
20 failure to conduct a *sua sponte* competency hearing in case where defendant's attorneys told the district
21 court that they believed he could assist in his defense even though he was uncooperative and refused to
22 accept the facts of his guilt); *United States v. Marks*, 530 F.3d 799, 814–15 (9th Cir. 2008) (finding no
23 plain error in a court's failure to conduct a *sua sponte* competency hearing in case where defendant
24 repeatedly asserted arguments that the court lacked jurisdiction over him, was disrespectful to the court,
25 and was uncooperative with counsel).

26 As another example, Dr. Shields notes defendant's lie that he has cancer.  Dkt. 765-2 at 12.
27 Defendant's understanding was rational enough for him to call a witness at trial from Glenn Dyer who
28 testified that she told him that his rapid weight loss could have been caused by cancer.  This was no

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306  WHA                    6

delusion, but a calculated ploy to get released from custody, justify his escape, and elicit juror sympathy.

Indeed, Dr. Shields himself acknowledges the rationality of defendant's lies. After going through some instances where defendant changed his story over time, Dr. Shields notes that defendant "amends his story" when he is "faced with contradictory information." Dkt. 765-2 at 16. The government agrees that defendant does this all of the time. Dr. Shields offers no explanation for how such rational assimilation of actual, factual information evidences delusion or irrationality. He cannot, because it proves just the opposite.

Dr. Shields also compares defendant to the defendant in *United States v. Dreyer*, 705 F.3d 951 (9th Cir. 2013), arguing that *Dreyer* supports the proposition that lies may not be deliberate attempts to misrepresent the truth. The incompetence of defendant in *Dreyer* only underscores the competence of defendant here. In that case, Dreyer had been diagnosed by three psychiatrists with "frontotemporal dementia," which caused many forms of cognitive impairment, as well as "inappropriate sexual references, profanity and facetiousness." *Id.* at 958. There was evidence in the record of incredibly bizarre behavior by Dreyer, including meeting his daughter and family friend at an expensive hotel "nude from the waist up" and reading a newspaper during his grandson's bar mitzvah speech. *Id.* at 958 n.1. Defendant did not allocute at sentencing because, as his counsel stated, counsel could not know what he would say—he could speak inappropriately, he could deny responsibility, accept responsibility, or do both in the same allocution. *Id.* at 959. Defendant is nothing like Dreyer.

### 3. Defendant's Lengthy History of Assisting in His Defense

The record in this case demonstrates that defendant is able to assist counsel in the preparation of his defense—he has done so, with the exception of his brief pro se period in this case, for approximately seven years. Defendant was first charged in CR 08-222 in 2008. He has been in proceedings before, or under the supervision of, this Court since that time. Defendant was first charged in CR 14-306 in May 2014. During the pendency of either case, defendant has been represented or advised by attorneys Ken Wine, Harris Taback, Brandon LeBlanc, Erik Babcock, James Stevens, Jeff Bornstein, Richard Tamor, George Boisseau, and Dena Young.

These attorneys worked with defendant through various motions and two separate convictions via guilty pleas and sentencings before this Court and Judge Chesney. Attorneys represented defendant

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306 WHA                             7

through several supervised release violations in CR 08-222.  Attorneys Babcock and LeBlanc represented defendant from the initiation of CR 14-306, through multiple detention hearings, and convinced this Court to release defendant from custody.  Dkt. 92, 93.  Attorney Babcock represented defendant through numerous pretrial motions, including an initial round of motions *in limine* on which this Court ruled for defendant on several issues.  Dkt. 224.  During this time, defendant met repeatedly with counsel and assisted in his defense.  Defendant's need to meet with counsel to prepare his own defense was the basis of Attorney Babcock's requests for bail and ultimately this Court's furlough order under which defendant escaped.

Defendant also has been represented by Attorneys Boisseau and Young since the conclusion of trial over four months ago, on May 20, 2015.  Dkt. 639 (appointing counsel).  Since that date, defense counsel filed a motion regarding the return of property, Dkt. 682; a motion for a judgment of acquittal, Dkt. 694; a motion for a new trial, Dkt. 695; a response regarding the participation of Modernism Fine Arts in the loss evidentiary hearing, Dkt. 706; an expert report regarding the artwork, Dkt. 723, 724; briefs on value, Dkt. 733; another motion for a new trial, Dkt. 731; and a lengthy sentencing memorandum, Dkt. 748.  Defense counsel represented defendant at hearings on June 30, July 28, September 2, and October 7.  Defense counsel's arguments in the new trial motion regarding the value of the artwork and defendant's role as a "victim" parrot claims made by defendant throughout this case that defense counsel now implies are "irrational."

This lengthy representation demonstrates two things.  First, defendant is able to assist counsel in his own defense, as he has done so for seven years.  Defendant apparently was able to assist Attorneys Boisseau and Young in his defense for four months before Attorney Boisseau determined that defendant could no longer competently assist.  It is certainly true that mental illness can change over time.  But neither defense counsel nor Dr. Shields has offered an explanation of what changed here, and when.

Second, during this time, as far as government counsel is aware, prior counsel did not move for a competency evaluation or assert that defendant was unable to assist in his own defense.  (Attorney Tamor, with almost no familiarity of defendant or case, at one point raised the issue when defendant went pro se, and this Court rejected Attorney Tamor's argument.)  Through the extensive work that they did for defendant representing him consecutively from May 2014 through February 2014, neither

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306  WHA                                8

Attorney LeBlanc nor Attorney Babcock asserted that defendant was unable to assist them.

### 4. *Defendant's Outburst on Thursday Was Consistent with Prior Behavior*

The only change from the morning of October 7, 2015 (through which point defendant had been assisting the preparation of pretrial motions, a sentencing memorandum, and litigation about the loss amount in this case for months) and the end the hearing on October 7 (when defense counsel moved for a competency evaluation) is a single outburst in court.

This outburst is important, as it was apparently the basis for defense counsel's motion. Up until that point, Dr. Shields and defense counsel had both spent hours meeting with defendant without raising the issue of competency. Dr. Shields filed a lengthy evaluation without raising competency. In fact, Dr. Shields' evaluation described defendant as possessing "high-average level cognitive ability," with "no doubt that he is quite intellectually capable and neurocognitively sound." Shields Evaluation at 3, 6.

Defense counsel represented defendant through multiple hearings and motions without raising competency. Other than the outburst, nothing changed regarding defendant's mental competence between 9 a.m. on Thursday, October 7, when defense counsel competently represented defendant through an extensive posttrial hearing and defendant sat compliantly, whispering to counsel, and 3 p.m. that same day, when suddenly defense counsel determined that defendant might be incompetent.

But that outburst is plainly not evidence of incompetence. The Court's general conclusions about defendant's outbursts apply equally to his conduct on October 7. During that hearing, defendant was a model participant for hours when things were going his way. He did not interrupt. He did not speak over counsel. He did not attack the government or berate the judge. It was not until this Court began ruling against him on certain issues at sentencing that defendant became agitated, and attacked his counsel and the Court for ruling against him, all while airing, yet again, many of the same grievances he had aired previously. This outburst was no different from defendant's prior outbursts, and like the others, reflected his desire to bully this Court, and his manifest failure to accept responsibility. It may have been caused (like defendant's other outbursts) by his personality disorder. It may not be the best strategy for a defendant in a federal criminal case to execute. But, as this Court already ruled with respect to all of the other times defendant has so erupted, it did not reflect incompetence.

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306 WHA                     9

### 5. *No Evidence of Inability to Assist*

Even assuming for the purposes of argument that a small subset of defendant's lies are irrational, defendant need only possess "a reasonable degree of rational understanding" to assist in his defense. *Duncan*, 643 F.3d at 1248. For the remainder of the case—which includes the resolution of several objections to the PSR, allocution, and imposition of sentence—it is irrelevant whether defendant believes that he is a family man, his house is worth millions of dollars, and Sotheby's and Christie's appraised the Degas. *See* Dkt. 765-1 at 2–3 (describing these as areas in which Attorney Boisseau believes defendant is delusional). Defendant has a reasonable degree of rational understanding of what is happening to him and why it is happening for him to consult with his attorneys. That he disagrees with them, is unable to ever accept responsibility, has inflated views of himself, and still believes himself to be innocent does not mean he cannot assist in his defense.

## CONCLUSION

The government respectfully requests that this Court deny defendant's motion for a competency evaluation and hearing.

DATED: October 12, 2015                                    Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

_____/s/_____
ROBIN L. HARRIS
BENJAMIN KINGSLEY
Assistant United States Attorneys

RESPONSE TO MOTION FOR A COMPETENCY EVALUATION AND HEARING
CR 14-306 WHA                                10