UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>  v.<br><br>BRUGNARA,<br><br>    Defendant. | No. CR 14-00306 WHA<br><br>**ORDER DENYING MOTION FOR RELEASE FROM CUSTODY** |

## INTRODUCTION

In this motion for compassionate release, in-custody defendant seeks release on the basis of various medical conditions, family circumstances, and alleged abuse while incarcerated. For the reasons stated herein, the motion is **DENIED**.

## STATEMENT

Defendant began his three-year term of supervised release in November 2020. On January 16, 2023, a Form 12 issued in connection with several supervised release violations. Defendant attended at January 18 evidentiary hearing via Zoom. Defendant remained out of custody at this time. On January 24, defendant failed to make an appearance for a newly-added charge related to a domestic violence incident. Defendant appeared before Judge Thomas Hixson two days later and was again released with conditions. After a series of lengthy evidentiary hearings, a sentencing hearing was scheduled for February 28, and later continued to March 14. Defendant again failed to appear, and an arrest warrant again issued.

Defendant went into hiding, against his counsel's repeated advice to surrender. Defendant was captured by U.S. Marshals on May 17, 64 days after he absconded, and was held in custody at Santa Rita Jail for the remainder of the proceedings. On July 20, following an extensive, two-day sentencing hearing, this Court sentenced defendant to a 456 day term of imprisonment. Defendant is serving that sentence at USP Victorville, and now seeks compassionate release on various grounds, including alleged mistreatment by Victorville staff.

Before turning to defendant's present motion, this order surveys defendant's prior requests for release, where allegations similar to those now levied against Victorville were first asserted against Santa Rita. In the two months before his sentencing, defendant filed a total of seven requests for release (Dkt. Nos. 1117, 1124, 1126, 1128, 1141, 1145, 1147). An eighth request – which alternatively sought compassionate release – was made following sentencing (Dkt. No. 1175). All were denied.

In his June 14 request for release, defendant described Santa Rita as "a notorious, decrepit jail in East Bay that puts my health and life at risk," and requested that he serve any future sentence at a federal facility, because "[t]he federal facilities in which I have been housed in the past are immaculate when compared to Santa Rita" (Dkt. No. 1124-1). Defendant complained of, among other things, graffiti, subpar HVAC, various misconducts by other inmates, noise from "screaming, laughing, arguing, rapping, and blaring TV," lack of medical care, and alleged verbal harassment "from the 90% black inmates' [*sic*] population, mostly homeless from Oakland who can't make bail, directed at the few white inmates who are unfortunately housed at this jail" (*ibid*.).

In his June 19 request for release, defendant alleged that he was "being subjected to subhuman torturous conditions in this jail . . . I'm being treated worse than a Vietnam War prisoner" (Dkt. No. 1126-1). Defendant alleged that he lost consciousness due to the heat in his cell, stating that "[i]t seemed as if the staff was trying to intentionally suffocate me with heat in the middle of the night to induce a heart attack or stroke" (*ibid.*). Defendant further alleged that medical staff withheld or delayed distribution of his medication on several occasions (*ibid*.). Judge Jon Tigar denied the motion (Dkt. No. 1127).

1    In his June 28 request for release, defendant again alleged that Santa Rita Jail deprived him of his amlodipine and baby aspirin (Dkt. No. 1128). After an evidentiary hearing and the examination of three witnesses from that facility, the Court found that defendant's hoarding of pills caused the cessation of medication pending investigation (Dkt. No. 1192). Defendant prolonged that investigation, and delayed the continuation of his medication, by refusing to engage with medical staff regarding any concerns about, and necessary alterations to, his medication (*ibid*).

Defendant now remakes many of the above allegations against Victorville, albeit in less detail, claiming that "he has been assaulted and deprived of medication," and moves to reduce his term of imprisonment as a result (Br. at 4). Defendant's motion fails on several counts and is therefore denied.

## ANALYSIS

In order to grant a request for compassionate release, a court must find: (1) that a reduction in sentence is compatible with the sentencing factors in Section 3553; (2) that an "extraordinary and compelling reason" justifies the reduction of defendant's sentence; and (3) that defendant is not a danger to the safety of any other person in the community under Section 3142(g). U.S.S.G. 1B1.13. A successful motion must meet every mark. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022).

The law governing the second and third prongs has recently changed. For over 30 years, only the BOP could file a motion for compassionate release. However, the First Step Act of 2018 amended Section 3582 to allow a defendant to seek compassionate release directly from the court. As a result, Section 3582 now allows modification of a term of imprisonment "upon motion of the director of the [BOP], *or upon motion of the defendant*" if (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) a reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission, and (3) the request is in keeping with the sentencing concerns in Section 3553. To determine "extraordinary and compelling reasons," courts typically looked to a policy statement promulgated by the Sentencing Commission in 2006. *See* U.S.S.G. § 1B1.13. That same policy required the court

3

1    to find that defendant is not a danger to others. However, because this policy statement
2    predated defendants' ability to move for compassionate release, it referenced only "motion[s]
3    by the Director of the [BOP]." *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021). As
4    a result, the Ninth Circuit held that, for motions filed by defendants, statements in Section
5    1B1.13 are not "applicable policy statements" – while they "may inform a district court's
6    discretion . . . they are not binding." *Id.* at 802.

7    The Sentencing Commission has since amended 1B1.13, effective November 1, 2023. It
8    now reads: "[u]pon motion of the Director of the Bureau of Prisons *or the defendant pursuant*
9    *to 18 U.S.C. § 3582(c)(1)(A)*, the court may reduce a term of imprisonment . . . if, after
10   considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable,
11   the court determines that . . . extraordinary and compelling reasons warrant the reduction," and
12   "the defendant is not a danger to the safety of any other person or to the community, as
13   provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement."
14   The statement goes on to define various species of extraordinary and compelling reasons
15   warranting reduction, including medical conditions, family circumstances, and abuse during
16   incarceration. *Ibid.* Applying the reasoning in *Aruda* to the present iteration of 1B1.13, this
17   order finds that, as of November 1, it is an "applicable policy statement" for motions filed by a
18   defendant and, as a result, binds the district court's analysis.

19   Defendant filed a *pro se* motion for compassionate release (and habeas) on October 26,
20   2023, after which he was appointed counsel. Defendant's counsel filed the present motion for
21   compassionate release on November 20, 2023 (Dkt. No. 1209). Section 1B1.13 therefore binds
22   this Court's consideration of defendant's motion for compassionate release. Nevertheless, the
23   timing of defendant's motion is not, in this instance, material. The outcome is the same
24   whether the Court hews to the Sentencing Commission's newly-amended statement or avails
25   itself of the broad discretion afforded by *Aruda*: defendant has not established "extraordinary
26   and compelling reasons" warranting a reduction in his sentence. Moreover, defendant has
27   failed every other necessary showing. A reduction in sentencing is not compatible with the
28   sentencing considerations of Section 3553(a), and defendant has not shown that he is not a

danger to others in the community.  Any one failure precludes a reduction in sentence.  This order addresses each in turn.

1. **DEFENDANT HAS NOT SHOWN THAT A REDUCTION IN HIS TERM OF IMPRISONMENT SERVES THE FACTORS IN SECTION 3553(A).**

Defendant is entitled to compassionate release only if "*after considering the factors set forth in section 3553(a) ... extraordinary and compelling reasons warrant*" such a release.  18 U.S.C. § 3582(c)(1)(A).

The court carefully considered defendant's term of imprisonment during sentencing.  Defendant received a total term of 456 days:  364 days due to the severity of charges on the Form 12, 64 days for the 64 days he absconded and went into hiding until his forcible arrest by U.S. Marshals, and 28 days for a vulgar outburst in court concerning a probation officer.  The sentence given is well below the 24 months recommended by both the government and probation.  The term is in the middle of the guideline range of 12-18 months, which of course does not account for defendant's temporary fugitive status, courtroom outburst, and other inappropriate behavior during sentencing.

Further, defendant sought consideration of his mental illness, his high blood pressure, and his role as a caretaker for his son during his sentencing.  The only new facts advanced in the present motion are defendant's chest pains, stenosis, and alleged mistreatment (at Victorville).  As explained below, defendant's medical condition and allegations of mistreatment do not rise to an extraordinary and compelling reason justifying a reduction.  Nor do they alter the Court's carefully considered sentence of 456 days of imprisonment – the minimum sentence necessary to comply with the purposes set out in Section 3553, then and now.  This alone precludes a reduction in defendant's sentence.  This order nevertheless addresses the remaining showings.

2. **DEFENDANT HAS NOT MADE OUT AN EXTRAORDINARY AND COMPELLING REASON FOR THE REDUCTION OF HIS SENTENCE.**

The First Step Act does not define "extraordinary and compelling reasons," instead referring courts to the sentencing commission's policy statements.  The applicable policy statement sets out various grounds warranting reduction, including medical conditions, family circumstances, abuse during incarceration, and "other reasons" of similar gravity.  U.S.S.G.

5

1B1.13(b)(1)-(5). Each of defendant's proffered reasons are considered below, both individually and in combination.

### A. MEDICAL CONDITIONS.

Defendant's medical circumstances do not present an extraordinary and compelling reason for the reduction of his sentence. Exceptional and compelling medical circumstances may take several forms, including: (1) "a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)," such as "metastatic solid-tumor cancer" or "end-stage organ disease," (2) a medical condition "that requires long-term or specialized medical care that is not being provided and without which defendant is at risk of serious deterioration in health or death," (3) serious physical or medical conditions that diminish the ability to provide self-care, and (4) imminent risk of an infectious disease outbreak for those defendants at an increased risk of complications or death. U.S.S.G. 1B1.13(b)(1). Medical grounds for release are appropriate where the BOP is not equipped to manage a certain condition:

> "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from two chronic conditions that she is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."

*United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019).

Defendant offers various medical circumstances: hypertension, chest pains, and stenosis. The CDC states that nearly half of American adults have hypertension. The BOP provides medical services to over 150,000 incarcerated individuals, tens of thousands of whom undoubtedly suffer from hypertension. Nor are chest pains and other conditions such as stenosis unusual or unmanageable. While regrettable, these medical ailments are far from extraordinary, and the BOP's professional medical staff and facilities are certainly equipped to provide the necessary care, assuming defendant's cooperation. The medical records provided by the government – reflecting medication orders, clinical visits, and health screens – show that the medical staff at Victorville are doing just that. Defendant has not established a need for long-term or specialized medical care unavailable through the BOP.

### B. FAMILY CIRCUMSTANCES.

Defendant's family circumstances do not present an extraordinary and compelling reason for the reduction of his sentence. A compelling family circumstance exists where "defendant [is] the only available caregiver" for "the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. 1B1.13(b)(3). Defendant states that his adult son, Luke Jr., requires rehabilitative walks, and that Luke Jr.'s mother, Kay, is unable to assist on those walks due to her own limited mobility. Nevertheless, defendant's motion does not claim that Luke Jr. lacks an available caregiver. Defendant does not argue that Kay is unable to engage in broader caretaking activities, including "eye rehabilitation exercises" and interfacing with doctors. Defendant only states that Kay is unable to accompany Luke Jr. on walks. While Luke Jr. may benefit from defendant's assistance during his rehabilitative walks, this alone is not an extraordinary and compelling reason for release. Luke Jr.'s available caregiver, Kay, may need to arrange for a third party to accompany Luke Jr. on his walks, or explore other solutions to this narrow issue.

Defendant further states that he wishes to help Luke Jr. with his depression. Defendant's desire to raise his son's spirits, while again laudable, is again not enough. Many incarcerated individuals have children who would benefit in myriad ways from the presence of their parent. Nevertheless, defendant's own misconduct has necessitated his imprisonment. His inability to freely provide emotional support to his son is a regrettable, but unavoidable, byproduct of that misconduct.

### C. MISTREATMENT.

Defendant's allegations of abuse do not make out an extraordinary and compelling reason for the reduction of his sentence. Abuse may constitute an extraordinary and compelling reason where defendant is the victim of "physical abuse resulting in serious bodily injury . . . that was committed by, or at the direction of," a correctional officer, or any other individual who had custody or control over the defendant. U.S.S.G. 1B1.13(b)(4). Further, "for the purposes of this provision, the misconduct must be established by a conviction in a criminal

7

case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." *Ibid*.

Defendant alleges that he has been "singled out for more severe treatment than that given the average prisoner" (Br. 4). Defendant cites Victorville's purported "reputation for violence and danger," and alleges that he "has been assaulted and deprived of medication" (*ibid*.). No more is said. Defendant at no point attributes his alleged assault to an individual who had custody or control over him. Nor does defendant suggest that he suffered serious bodily injury as a result. Nor is there any record of such misconduct, such as a previously filed grievance or medical complaint. Defendant's statement that he "has been assaulted," and nothing more, is not enough. Defendant has a long history of false statements, generally and on this issue specifically. As a result, the Court is skeptical of any uncorroborated assertions.

The withholding of medicine is not a novel allegation, as laid out above. Defendant does not allege that he is being deprived of medication absent cause, such as his hoarding of that medication or refusal to cooperate with the medical staff's evaluation of existing prescriptions. He does not specify which medication and for how long. Moreover, the defendant's BOP health screen states that he was prescribed amlodipine and aspirin, to be administered daily, on August 21, 2023 (Dkt. No. 1213). During that health screen, defendant was told that he can speak with medical staff, and how to do so (*ibid*.). In October, defendant, at his own request, was evaluated by a clinician (*ibid*.). He denied experiencing any loss of consciousness, abdominal pain, headaches, blurred vision, chest pain, or shortness of breath (*ibid*.). Defendant was "informed on how to reach medical and advised to contact medical with any negative change in his condition," and "verbalized [his] understanding" (*ibid.*). The record further reflects that during his August 21 health screen, defendant refused to receive certain treatment against the advice of the BOP (*ibid*.).

*First*, defendant's BOP health records suggest that he is receiving adequate care, including access to necessary medication. *Second*, the record suggests that the medical staff have on several occasions told defendant how to contact them with regards to any health

8

concerns. *Third*, the record suggests that the medical staff at Victorville have listened to and investigated defendant's prior complaints. *Finally*, the only refusal for treatment or testing found in the record was on the part of the defendant himself. Defendant's brief and attached exhibits do little to gainsay that record, offering only that "[defendant] reports that he has been assaulted and deprived of medication" (Dkt. No. 1209-4). As before, that is not enough.

### D. FIRST STEP ACT CREDITS.

Defendant further alleges that the BOP has improperly denied him FSA credits. This argument was presented in his August 9, 2023 request for release. That motion was denied (Dkt. No. 1178). Indeed, much of the argument here regurgitates the August 9 motion. The record reflects only that the BOP reviewed Brugnara's file in August of 2023 and determined that he was ineligible (Hageman Decl. Exh. B).

Moreover, defendant provides no indication that he has exhausted existing administrative relief through the BOP:

> "The assessment of whether a prisoner's programming qualifies for earned time credit under the FSA, and if so, to what extent, falls particularly within the BOP's expertise. This assessment should be undertaken by the agency before a federal court is asked to make such assessment and calculations on an undeveloped record. Exhaustion would allow the BOP the opportunity to grant the relief sought, if warranted, but even if no relief were forthcoming, exhaustion would allow the BOP to explain why not."

*Tran v. Thompson*, No. 221CV1707KJMDBP, 2022 WL 2672478, at *4 (E.D. Cal. July 11, 2022), report and recommendation adopted, No. 221CV01707KJMDBP, 2023 WL 199597 (E.D. Cal. Jan. 17, 2023). Administrative procedures applicable to all incarcerated individuals are not an extraordinary and compelling reason warranting a reduction in sentence.

Lastly, the court may reduce a term of imprisonment for "other reasons," so long as defendant "presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. 1B1.13(b)(5). Defendant's stated reasons, when considered alone or in combination, within the categories of Section 1B1.13(b)(1)-(4) or within the meaning of Section 1B1.13(b)(5), do

9

not make out an extraordinary and compelling reason for the reduction of his sentence. Nor do they do so when the policy statements in Section 1B1.13 are viewed as mere "guidance," per *Aruda*.

3. **DEFENDANT FAILS TO ARGUE THAT HE IS NOT A DANGER TO THE SAFETY OF OTHERS.**

Defendant fails to argue that he is not a danger to the safety of any other person in the community under 18 U.S.C.A. § 3142(g). Facts in the underlying record, including the nature of his supervised release violations, his decision to abscond (both during his Form 12 sentencing and underlying prosecution), letters submitted to the court by family members attesting to threats made by defendant, and his behavior at evidentiary and sentencing hearings all suggest that defendant may be a danger to the safety of others if released early.

## CONCLUSION

For the foregoing reasons, defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 28, 2024

                                                                        WILLIAM ALSUP
                                                                        UNITED STATES DISTRICT JUDGE

10